## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| HOT CRETE, LLC, | § | Case No. 24-10303-smr |
| | § | |
| Debtor. | § | Chapter 11 |
| | § | |

---

### DEBTOR'S WITNESS AND EXHIBIT LIST FOR HEARING ON APPROVAL OF DEBTOR'S DISCLOSURE STATEMENT SET FOR THURSDAY, JUNE 5, 2025 AT 10:00 A.M. (CT)
### (*Reference Docket No. 199*)

---

Hot Crete, LLC (the "Debtor") reserves the right to call any or all of the following as witnesses at the hearing, including but not limited by affidavit, declaration, or proffer.

1. Any witness called or designated by any other party; and

2. Any rebuttal or impeachment witnesses, as appropriate.

The Debtor reserves all rights to introduce and/or request judicial notice of any or all of the following exhibits as evidence at the hearing, each as may be amended, and expressly including any filed responses thereto, and any exhibits, schedules, addenda, and any and all other attachments or amendments thereto:

| No. | Exhibit | Offered | Admitted |
|-----|---------|---------|----------|
| D-1 | Hot Crete, LLC's Disclosure Statement Under 11 U.S.C. §1125 (Docket No. 199) | | |
| D-2 | Exhibit A to Disclosure Statement – Liquidating Plan (Docket No. 199-1) | | |
| D-3 | Proposed Insurance Settlement | | |
| D-4 | Proposed Liquidation Trust Agreement | | |
| | Any document entered or filed in the above-styled bankruptcy case, including any exhibits thereto. | | |
| | All exhibits necessary for impeachment and/or rebuttal purposes. | | |
| | All exhibits identified by or offered by any other party at the hearing. | | |

The Debtor reserves the right to supplement or amend the proposed exhibits as may be required. The Debtor further reserves the right to introduce any impeachment or rebuttal exhibit as may be required. The Debtor further reserves the right to call any witness introduced by any other party and to call any impeachment or rebuttal witness as may be required.

Dated: May 30, 2025

Respectfully submitted,

**HAYWARD PLLC**

By: /s/*Todd Headden*
Todd Headden
Texas State Bar No. 24096285
7600 Burnet Road, Suite 530
Austin, TX 78757
(737) 881-7100 (Phone/Fax)
theadden@haywardfirm.com

***Counsel for Hot Crete, LLC***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 30, 2025, a true and correct copy of the foregoing without exhibits were served electronically to all parties receiving notice via the Court's CM/ECF system. Further, on May 30, 2025, or within one business day thereof, the foregoing was served without exhibits via United States First Class mail to the party listed below.

| | |
|---|---|
| Hot Crete, LLC<br>2010 Brushy Creek Road, Unit A<br>Cedar Park, TX 78613<br><br>***Debtor*** | United States Trustee<br>Attn: Gary W. Wright<br>903 San Jacinto Blvd., Suite 230<br>Austin, TX 78701<br><br>***United States Trustee*** |
| Martin Marietta Materials, Inc.<br>P.O. Box 677061<br>Dallas, TX 75267-7061<br><br>***Top 20 Unsecured Creditors*** | Federated Mutual Insurance Company<br>9001 Airport Fwy., Suite 500<br>North Richland Hills, TX 76180<br><br>***Top 20 Unsecured Creditors*** |
| Arcosa Aggregates Texas, LLC<br>P.O. Box 911205<br>Dallas, TX 75373-1205<br><br>***Top 20 Unsecured Creditors*** | Express Materials Services, LLC<br>556 S HWY-95<br>Elgin, TN 78621<br><br>***Top 20 Unsecured Creditors*** |
| CEMEX Construction Materials South, LLC<br>10100 Katy Freeway, Ste 300<br>Houston, TX 77043-5267<br><br>***Top 20 Unsecured Creditors*** | Chanas Aggregates, LLC<br>7850 E. State Hwy. 29<br>Llano, TX 78643<br><br>***Top 20 Unsecured Creditors*** |
| Texas Lehigh Cement Company, LP<br>P.O. Box 736821<br>Dallas, TX 75373-6821<br><br>***Top 20 Unsecured Creditors*** | Capital One Spark Business<br>P.O. Box 60519<br>City of Industry, CA 91716-0519<br><br>***Top 20 Unsecured Creditors*** |
| Oscar Carreon<br>201 Lollipop Ln<br>Cedar Park, TX 78613<br><br>***Top 20 Unsecured Creditors*** | WEX Inc.<br>1 Hancock Drive<br>Portland, ME 04101<br><br>***Top 20 Unsecured Creditors*** |

| | |
|---|---|
| Hillard Dozer, LP<br>12495 Reeds Lake Loop<br>Temple, TX 76501<br><br>***Top 20 Unsecured Creditors*** | Texas Department of Transportation<br>12719 Burnet Road<br>Austin, TN 78727<br><br>***Top 20 Unsecured Creditors*** |
| WW Air Compressor<br>402 Burleson St<br>Smithville, TX 78957<br><br>***Top 20 Unsecured Creditors*** | Central Texas Regional Mobility Authority<br>3300 N IH-35, Suite 300<br>Austin, TX 78705<br><br>***Top 20 Unsecured Creditors*** |
| Hill Country Electric Supply<br>3003 N. E. LOOP 410, SUITE 101<br>San Antonio, TX 78218<br><br>***Top 20 Unsecured Creditors*** | Hasten Energy Solutions<br>405 N Post Oak Ln<br>Houston, TX 77024-5913<br><br>***Top 20 Unsecured Creditors*** |
| Texas Enterprises. Inc. dba Allied Sales Company<br>5005 E 7th Street<br>Austin, TX 78702<br><br>***Top 20 Unsecured Creditors*** | Fleetistics<br>1936 Bruce B Downs Blvd. #505<br>Wesley Chapel, FL 33544<br><br>***Top 20 Unsecured Creditors*** |
| Liberty Hill Truck Service<br>12830 TX-29<br>Liberty Hill, TX 78642<br><br>***Top 20 Unsecured Creditors*** | United States Trustee Program<br>Attn: Jessica Lanoue Hazlik<br>615 E. Houston Street, Ste. 533<br>San Antonio, TX 78205<br><br>***Notice of Appearance for United States Trustee*** |
| McCreary, Veselka, Bragg, & Allen, P.C.<br>Attn: Julie Anne Parsons<br>P.O. Box 1269<br>Round Rock, TX 78680-1269<br><br>***Notice of Appearance for The County of Williamson*** | Luttrell & Carmody Law Group<br>Attn: Leslie M. Luttrell &<br>Morris E. "Trey" White III &<br>Jessica A. Henry<br>100 N.E. Loop 410, Suite 615<br>San Antonio, TX 78216<br><br>***Notice of Appearances for Frost Bank*** |

| | |
|---|---|
| Padfield & Stout, LLP<br>Attn: Jessica N. Alt &<br>Matthew B. Fronda<br>420 Throckmorton Street, Suite 700<br>Fort Worth, TX 76102<br><br>***Notice of Appearances for Trans Lease, Inc.*** | Frank B. Lyon<br>P.O. Box 50210<br>Austin, TX 78763<br><br>***Notice of Appearance for Cody Pools, Inc.*** |
| Chamberlain, Hrdlicka, White, Williams &<br>Aughtry, PC<br>Attn: Tara T. LeDay<br>1200 Smith Street, Suite 1400<br>Houston, TX 77002<br><br>***Notice of Appearance for Rose Wheeler*** | Sprouse Law Firm<br>Attn: Marvin E. Sprouse III<br>901 Mopac Expressway South<br>Building 1, Suite 300<br>Austin, TX 78746<br><br>***Notice of Appearance for Kevin Wilson*** |
| Kane Russell Coleman Logan, PC<br>Attn: Michael P. Ridulfo<br>5151 San Felipe, Suite 800<br>Houston, TX 77056<br><br>***Notice of Appearance for Jeremy &<br>Elizabeth Spicer*** | Holland & Knight, LLP<br>Attn: William R. "Trip" Nix<br>100 Congress Avenue, Suite 1800<br>Austin, TX 78701<br><br>***Notice of Appearance for James Murdock,<br>Brad Wheeler, and Jason Nichol*** |
| Padfield & Stout, LLP<br>Attn: Christopher V. Arisco &<br>Ivan Escobar & Jessica N. Alt<br>100 Throckmorton Street, Suite 700<br>Fort Worth, TX 76102<br><br>***Notice of Appearances for North Mill Credit<br>Trust*** | Kye Law Group, P.C.<br>Attn: Matthew F. Kye<br>201 Old Country Road, Suite 120<br>Melville, NY 11747<br><br>***Notice of Appearance for Sumitomo Mitsui<br>Finance and Leasing Co., Ltd.*** |
| The Cronfel Firm<br>Attn: Guillermo Ochoa-Cronfel<br>7500 Rialto Blvd., Bldg. 1, Suite 250<br>Austin, TX 78735<br><br>***Notice of Appearance for Doo Reid*** | VBPena Law, PLLC<br>Attn: Abigail Ventress<br>406 N. Lee St., Ste. 103<br>Round Rock, TX 78664<br><br>***Notice of Appearance for Kathy & Corey<br>Westbrook/Westbrook Residential Pool*** |

| | |
|---|---|
| Spicewood Professional Offices<br>Attn: B. Weldon Ponder, Jr.<br>4408 Spicewood Springs Road<br>Austin, TX 78759<br><br>**Notice of Appearance for Pools by Blue Haven, Inc.** | The Law Offices of Brian Cooper Guequierre<br>Attn: Brian Guequierre<br>4315 Airport Blvd.<br>Austin, TX 78722<br><br>**Notice of Appearance for Spark Root Construction, LLC** |
| Dickinson Wright PLLC<br>Attn: Stephanie E. Kaiser<br>607 W. 3rd Street, Suite 2500<br>Austin, TX 78701<br><br>**Notice of Appearance for Diego & Elaine Suarez** | Ross, Smith, & Binford, PC<br>Attn: Frances A. Smith<br>Plaza of the Americas<br>700 N. Pearl St., Suite 1610<br>Dallas, TX 75201<br><br>**Notice of Appearance for Arcosa Aggregates Texas LLC** |
| Cain & Skarnulis PLLC<br>Attn: Ryan E. Chapple & Michael Moody & Joshua A. Eames-Cepero<br>303 Colorado Street, Suite 2850<br>Austin, TX 78701<br><br>**Notice of Appearances for Donn Wurts, Jamie Wurts, Rowena Hernandez, Edward Weltens, Julie Weltens, Wade Landers, Patricia Landers, Melissa Jordan, Nick Russell, Jeffrey Szastak, Heather Szastak, Lewis (Brad) Warnock, and Amy Warnock** | Offerman & King, LLP<br>Attn: James W. King<br>6410 Wellington Place<br>Beaumont, TX 77706<br><br>**Notice of Appearance for Sumitomo Mitsui Finance and Leasing Co., Ltd.** |
| D'Amura & Zaidman, PLLC<br>Attn: Lydia R. Zaidman<br>609 Josephine Street<br>Austin, TX 78704<br><br>**Notice of Appearance for Ansar Chmeis** | Kell C. Mercer, P.C.<br>Attn: Kell C. Mercer<br>901 S. MoPac Expy., Bldg. 1, Suite 300<br>Austin, TX 78746<br><br>**Notice of Appearance for Julie Stivers and Daryl Elsea** |

| | |
|---|---|
| The Roarty Law Firm, PLLC<br>Attn: Rekha Roarty & Nicholl Wade & Lex Townsley<br>1301 S Capital of Texas Hwy, Suite B-202<br>Austin, TX 78746<br><br>***Notice of Appearances for John Bretz*** | Barron & Newburger, P.C.<br>Attn: Stephen W. Sather<br>7320 N. MoPac Expy., Suite 400<br>Austin, TX 78731<br><br>***Notice of Appearance for Rachel Mouton*** |
| Meltzer, Purtill & Stelle, LLC<br>Attn: Timothy W. Brink<br>125 South Wacker Drive, Suite 2900<br>Chicago, IL 60606<br>tbrink@mpslaw.com<br><br>***Notice of Appearance for Amerisure Mutual Insurance Company*** | Spencer Fane LLP<br>Attn: David H. Timmins & Eric M. Van Horn<br>2200 Ross Avenue, Suite 4800 West<br>Dallas, Texas 75201<br>dtimmins@spencerfane.com<br>ericvanhorn@spencerfane.com<br><br>***Notice of Appearance for Continental Insurance Company and National Fire Insurance of Hartford*** |
| Lovins Trosclair PLLC<br>Attn: Michael E. Lovins<br>1301 S. Capital of Texas Highway<br>Building A, Suite 136<br>Austin, Texas 78746<br>Michael@LovinsLaw.com<br><br>***Notice of Appearances for Dominic Van, Janell Gregerson, and Jennifer Johnson*** | Kane Russell Coleman Logan, P.C.<br>Attn: Stephanie E. Kaiser<br>901 Main Street, Suite 5200<br>Dallas, TX 75202<br>skaiser@krcl.com<br><br>***Notice of Appearance for Diego and Elaine Suarez*** |

/s/ *Todd Headden*
Todd Headden

**Exhibit**

**D-1**

exhibitsticker.com

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| HOT CRETE, LLC, | § | Case No. 24-10303-smr |
| | § | |
| Debtor. | § | Chapter 11 |
| | § | |

---

**HOT CRETE, LLC's**
**DISCLOSURE STATEMENT UNDER 11 U.S.C. §1125**

---

DATED: April 18, 2025

Todd Headden
Texas State Bar No. 24096285
HAYWARD, PLLC
7600 Burnet Rd., Ste. 530
Austin, TX 78757
(737) 881-7104 (phone and fax)
Email: THeadden@HaywardFirm.com
ATTORNEYS FOR DEBTORS

i

**D1-0001**

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION.................................................................................2
        A.      Identity of the Debtors ..................................................................2
        B.      General Information Concerning Disclosure Statement .............................3
        C.      Definitions.................................................................................3
        D.      Answers to Commonly Asked Questions ...........................................3
                1.      **WHO IS THE DEBTOR?** ...............................................3
                2.      **HOW LONG HAS THE DEBTOR BEEN IN CHAPTER 11?** .4
                3.      **WHAT IS CHAPTER 11?** ...............................................4
                4.      **WHAT IS THE DEBTOR ATTEMPTING TO DO IN CHAPTER 11?** ...............................................................4
                5.      **IF THE LIQUIDATING PLAN GOVERNS HOW MY CLAIM IS TREATED, WHY AM I RECEIVING THIS DISCLOSURE STATEMENT?** ...................................................................4
                6.      **HAS THIS DISCLOSURE STATEMENT BEEN APPROVED BY THE COURT?** ...........................................................5
                7.      **WHY IS CONFIRMATION OF THE LIQUIDATING PLAN IMPORTANT?** ...............................................................5
                8.      **WHAT IS NECESSARY TO CONFIRM THE LIQUIDATING PLAN?** .......................................................................5
                9.      **ARE CREDITORS ENTITLED TO VOTE ON THE PLAN?** .6
                10.     **HOW WILL THIS PLAN TREAT MY CLAIM?** .....................6
                11.     **WHEN IS THE DEADLINE FOR RETURNING MY BALLOT?** ...................................................................7
II.     INFORMATION CONCERNING THE DEBTOR............................................7
        A.      Overview of the Debtor ................................................................7
        B.      Management of the Debtor .............................................................7
        C.      Significant Transactions Prior to Bankruptcy......................................7
        D.      Events Leading to Filing................................................................8
        E.      Significant Events Since Filing Bankruptcy ........................................8
                a.      In General....................................................................8
                b.      Legal Proceedings..........................................................8
                c.      Employment of Professionals. ...........................................9
                f.      Liquidation of Assets. .....................................................9
                g.      Insurance Settlement.......................................................9
III.    ANALYSIS AND VALUATION OF ESTATE ASSETS ....................................9
        A.      Liquidation Value/Analysis ...........................................................9
IV.     SUMMARY OF PLAN OF REORGANIZATION ........................................10
        A.      Analysis and Treatment of Claims...................................................10
        B.      Unclassified Claims. ...................................................................11
        C.      Administrative Expense Claims......................................................11
        D.      Class 1 – Allowed Priority Claims...................................................12
        E.      Class 2 – Other Secured Claim. ......................................................13
        F.      Class 3 – Convenience Claims.......................................................13
        G.      Class 4 – Pool Claims. .................................................................14

D1-0002

H.    Class 5 – Non-Pool Claims .................................................................14

I.     Class 6- Contingent Indemnification Claims .................................15

J.     Class 7- Interests in the Debtor ......................................................15

K.    Risk to Creditors ...............................................................................15

       1.    **Bankruptcy Law Considerations** ...............................................16

       **The Debtor May Not Be Able to Satisfy Vote Requirements** ..............16

       **The Debtor May Not Be Able to Secure Confirmation** ........................17

       **Releases, Injunctions, and Exculpations Provisions May Not Be Approved** ....................................................................................17

       **The Debtor May Not Be Able to Pursue Nonconsensual Confirmation Over Certain Impaired Non-Accepting Classes** ......................18

       **The Chapter 11 Case May Be Converted to a Case under Chapter 7 of the Bankruptcy Code** ..................................................................18

       **The Chapter 11 Case May Be Dismissed** ...............................................18

       **Risk of Non-Occurrence of the Plan Effective Date** .............................18

       2.    Risks Related to Recoveries Under the Plan.................................19

       3.Miscellaneous         Risk        Factors       and Disclaimers ................................................................................20

L.     Claims Allowance Procedure ...........................................................21

M.   Settlement, Release, Exculpation and Related Provisions ...........21

       1.    Released Parties and Exculpated Parties........................................22

       2.    Estate Release ..................................................................................22

       3.    Other Releases. ................................................................................22

       4.    Exculpation ......................................................................................24

       5.    Channeling Injunction.....................................................................24

O.    Retention of Jurisdiction ...................................................................26

P.     Post-Confirmation Procedure............................................................26

**V.**    **ALTERNATIVES TO THE DEBTORS' PLAN** ..........................................**26**

**VI.**   **TAX CONSEQUENCES** ...............................................................................**26**

**VII.**  **PENDING AND POTENTIAL LITIGATION** ............................................**27**

A.    Avoidance Actions..............................................................................27

B.    Other Litigation..................................................................................28

**VIII.** **SOLICITATION OF VOTES**......................................................................**28**

D1-0003

<u>IMPORTANT NOTICE AND DISCLAIMER</u>

**THIS DISCLOSURE STATEMENT ("DISCLOSURE STATEMENT") HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND RULE 3016 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE, AND NOT NECESSARILY IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER NON-BANKRUPTCY LAW. THIS DISCLOSURE STATEMENT WAS PREPARED TO PROVIDE HOLDERS OF CLAIMS AGAINST THE DEBTORS WITH "ADEQUATE INFORMATION" (AS DEFINED IN THE BANKRUPTCY CODE) SO THAT THEY CAN MAKE AN INFORMED JUDGMENT ABOUT THE PLAN. THIS DISCLOSURE STATEMENT AND ALL EXHIBITS HERETO, INCLUDING THE PLAN, SHOULD BE READ. PLAN SUMMARIES AND STATEMENTS MADE IN THIS DISCLOSURE STATEMENT ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE PLAN AND THE EXHIBITS ANNEXED TO THE DISCLOSURE STATEMENT AND THE PLAN.**

**THERE HAS BEEN NO INDEPENDENT AUDIT OF THE FINANCIAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT EXCEPT AS EXPRESSLY INDICATED HEREIN. THIS DISCLOSURE STATEMENT WAS COMPILED FROM INFORMATION OBTAINED FROM NUMEROUS SOURCES BELIEVED TO BE ACCURATE TO THE BEST OF THE DEBTORS' KNOWLEDGE, INFORMATION AND BELIEF. NO GOVERNMENTAL AUTHORITY HAS PASSED ON, CONFIRMED OR DETERMINED THE ACCURACY OR ADEQUACY OF THE INFORMATION CONTAINED HEREIN.**

**NOTHING STATED HEREIN WILL BE DEEMED OR CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, OR BE ADMISSIBLE IN ANY OTHER PROCEEDING INVOLVING THE DEBTORS OR ANY OTHER PARTY, OR BE DEEMED CONCLUSIVE EVIDENCE OF THE TAX OR OTHER LEGAL EFFECTS OF THE PLAN ON THE DEBTOR OR HOLDERS OF CLAIMS OR EQUITY INTERESTS. CERTAIN STATEMENTS CONTAINED HEREIN, BY NATURE, ARE FORWARD-LOOKING AND CONTAIN ESTIMATES AND ASSUMPTIONS. THERE CAN BE NO ASSURANCE THAT SUCH STATEMENTS WILL REFLECT ACTUAL OUTCOMES.**

**THE STATEMENTS CONTAINED HEREIN ARE MADE AS OF THE DATE HEREOF, UNLESS ANOTHER TIME IS SPECIFIED. THE DELIVERY OF THIS DISCLOSURE STATEMENT WILL NOT BE DEEMED OR CONSTRUED TO CREATE ANY IMPLICATION THAT THE INFORMATION CONTAINED HEREIN IS CORRECT AT ANY TIME AFTER THE DATE HEREOF.**

**HOLDERS OF CLAIMS AND EQUITY INTERESTS SHOULD NOT CONSTRUE THE CONTENTS OF THIS DISCLOSURE STATEMENT OR THE PLAN AS PROVIDING ANY LEGAL, BUSINESS, FINANCIAL OR TAX ADVICE. THEREFORE, EACH SUCH HOLDER SHOULD CONSULT WITH ITS OWN LEGAL, BUSINESS, FINANCIAL AND TAX ADVISORS AS TO ANY SUCH MATTERS CONCERNING THIS DISCLOSURE**

D1-0004

**STATEMENT OR THE PLAN AND THE TRANSACTIONS CONTEMPLATED THEREBY.**

**NO SOLICITATION OF VOTES HAS BEEN OR MAY BE MADE EXCEPT PURSUANT TO THIS DISCLOSURE STATEMENT AND 11 U.S.C. § 1125 AND NO PERSON HAS BEEN AUTHORIZED TO USE ANY INFORMATION CONCERNING THE DEBTORS TO SOLICIT ACCEPTANCES OR REJECTIONS OF THE PLAN OTHER THAN THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT. CREDITORS SHOULD NOT RELY ON ANY INFORMATION RELATING TO THE DEBTORS OTHER THAN THAT CONTAINED IN THIS DISCLOSURE STATEMENT AND THE EXHIBITS ATTACHED HERETO OR SUBMITTED HEREWITH.**

**EXCEPT AS SET FORTH IN THIS DISCLOSURE STATEMENT AND THE EXHIBITS, NO REPRESENTATION CONCERNING THE DEBTORS, THEIR ASSETS, PAST OR FUTURE OPERATIONS, OR CONCERNING THE PLAN IS AUTHORIZED, NOR ARE ANY SUCH REPRESENTATIONS TO BE RELIED UPON IN ARRIVING AT A DECISION WITH RESPECT TO THE PLAN. ANY REPRESENTATIONS MADE TO SECURE ACCEPTANCE OR REJECTION OF THE PLAN OTHER THAN AS CONTAINED IN THIS DISCLOSURE STATEMENT SHOULD BE REPORTED TO COUNSEL FOR THE DEBTORS.**

**NEITHER DELIVERY OF THE DISCLOSURE STATEMENT NOR ANY EXCHANGE OF RIGHTS MADE IN CONNECTION WITH THE DISCLOSURE STATEMENT AND THE PLAN SHALL UNDER ANY CIRCUMSTANCES IMPLY THAT THERE HAS BEEN NO CHANGE IN THE FACTS SET FORTH HEREIN SINCE THE DATE THE DISCLOSURE STATEMENT AND THE MATERIALS RELIED UPON IN PREPARATION OF THE DISCLOSURE STATEMENT WERE COMPILED.**

**THE APPROVAL BY THE BANKRUPTCY COURT OF THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE AN ENDORSEMENT BY THE BANKRUPTCY COURT OF THE PLAN OR A GUARANTEE OF THE ACCURACY OR THE COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.**

**THIS DISCLOSURE STATEMENT AND THE PLAN ATTACHED HERETO SHOULD BE READ IN THEIR ENTIRETY PRIOR TO VOTING ON THE PLAN. FOR THE CONVENIENCE OF HOLDERS OF CLAIMS, THE TERMS OF THE PLAN ARE SUMMARIZED IN THIS DISCLOSURE STATEMENT, BUT ALL SUMMARIES ARE QUALIFIED IN THEIR ENTIRETY BY THE PLAN, WHICH CONTROLS IN THE EVENT OF ANY INCONSISTENCY WITH THIS DISCLOSURE STATEMENT.**

## I.   <u>INTRODUCTION</u>

**A.     Identity of the Debtors**

Hot Crete, LLC (the "Debtor"), filed its voluntary petition under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101, et seq. (the "<u>Bankruptcy Code</u>") on March 22, 2024, in the United States Bankruptcy Court for the Western District of Texas, Austin Division

D1-0005

("Bankruptcy Court"). The Debtor has been serving as debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108 since the bankruptcy filing.

## B.  General Information Concerning Disclosure Statement

The Debtor has prepared and filed this Disclosure Statement consistent with the provisions of the Bankruptcy Code. The purpose of the Plan is to maximize recovery to the Creditors, including the numerous homeowners that were unintentionally harmed by pool cancer/ASR. The Debtor believes that the Plan achieves maximum recovery to all Creditors while facilitating the liquidation of the Debtor.

The Debtor submits this Disclosure Statement pursuant to 11 U.S.C. § 1125 and Rules 3016 and 3017 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") to all Creditors of the Debtor for the purpose of disclosing that information which the Court has determined is material, important, and necessary for creditors and the members of the Debtor in order to arrive at an intelligent, reasonably informed decision in exercising the right to vote for acceptance or rejection of the Debtor's Plan of Liquidation ("Plan"), including as it may later be amended. A copy of the Plan is attached hereto as **Exhibit 1** and incorporated herein by reference.

This Disclosure Statement describes the Liquidation of the Debtor including the specific treatment you, as a Creditor, will receive under the Plan. The disclosure of information contained here is submitted as an aid and supplement to your review of the Plan in an effort to explain the terms and implications of the Plan. If any questions arise, the Debtor urges you to consult with your own legal counsel, alternatively you may contact the Debtor's counsel and every effort will be made to address your questions.

## C.  Definitions

Capitalized terms used herein are defined herein and in the Definitions section included in the Plan. If not defined, capitalized terms have the meanings assigned to in the Bankruptcy Code and Bankruptcy Rules.

## D.  Answers to Commonly Asked Questions

As part of the Debtor's effort to inform Creditors regarding the Debtor's Plan and the Plan confirmation process, the following summary provides answers to various questions which are often asked by a party receiving a disclosure statement.

**THE FOLLOWING SUMMARIES ARE QUALIFIED IN THEIR ENTIRETY BY THE PLAN, WHICH CONTROLS IN THE EVENT OF ANY INCONSISTENCY.**

1.  **WHO IS THE DEBTOR?**

Hot Crete, LLC. ("Hot Crete").

D1-0006

2.    **HOW LONG HAS THE DEBTOR BEEN IN CHAPTER 11?**

Hot Crete filed its bankruptcy petition on March 22, 2024.

3.    **WHAT IS CHAPTER 11?**

Chapter 11 is the business reorganization provision of the Bankruptcy Code. Beyond reorganization, it permits a debtor to submit a Plan of Liquidation providing for the sale and distribution of its assets to be used for the repayment of their debts. In this instance, the Debtor will seek for the appointment of a liquidating trustee ("Liquidating Trustee") that will oversee the collection of assets and distribution of those proceeds to various creditors.

4.    **WHAT IS THE DEBTOR ATTEMPTING TO DO IN CHAPTER 11?**

The principal objective of a Chapter 11 case is confirmation (approval) of a plan. In this instance, the Debtor does not intend to continue with operations after approval of the Plan and ceased operations before filing the bankruptcy petition. Here, a confirmed plan will enable a financially distressed debtor to liquidate its assets under Court supervision and to structure a settlement with its insurance company to provide structure to the insurance claim process for a more equitable distribution of policy proceeds than a proverbial race to the courthouse.

A plan sets forth the means for treating impaired and unimpaired claims against a debtor. A claim is impaired under a plan if the plan provides that such claim will not be repaid in full or that the legal, equitable, or contractual rights of the holder of such claim will be altered. A claim is unimpaired if it will be paid in full or the legal, equitable, or contractual rights of the holder of such claim are not altered by the plan. A holder of an impaired claim generally is entitled to vote on a plan if such claim has been allowed under Section 502 of the Bankruptcy Code.

In this instance, Hot Crete proposes to pay what it can to its creditors from the following primary categories of assets: First) the proceeds after liquidating its assets;, Second) the proceeds from applicable insurance policies and, specifically, the Settlement with Federated Insurance to be provided in the Plan Supplement, and, Third) all other assets of the Debtor, such as, but not limited to, retained causes of action.

5.    **IF THE LIQUIDATING PLAN GOVERNS HOW MY CLAIM IS TREATED, WHY AM I RECEIVING THIS DISCLOSURE STATEMENT?**

The Bankruptcy Code requires that a debtor solicit acceptances and rejections of its proposed Plan before the Plan can be confirmed (approved) by the Bankruptcy Court. Before a debtor can solicit acceptance of its Plan, the Bankruptcy Court must approve the Disclosure Statement and determine that the Disclosure Statement contains information adequate to allow creditors to make informed judgments about the Plan. After Bankruptcy Court approval of the Disclosure Statement, then the Disclosure Statement, the proposed Plan and a ballot are sent to the holders of claims. The creditors then can vote on the Plan.

D1-0007

6. **HAS THIS DISCLOSURE STATEMENT BEEN APPROVED BY THE COURT?**

The Court has not approved this Disclosure Statement yet. Before a Plan can be confirmed, the Bankruptcy Court must find that a debtor's Disclosure Statement contains information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition for the debtor's books and records to enable a hypothetical, reasonable investor typical of holders of claims of the relevant classes to make an informed judgment whether to vote to accept or reject the Plan. The Bankruptcy Court's approval of the Disclosure Statement in this case does not constitute an endorsement of any of the information contained in either the Disclosure Statement or the Plan.

Likewise, although the Debtor has utilized information believed to be accurate in preparing this Disclosure Statement, neither the Debtor nor its counsel warrant the accuracy of the information contained in or relied upon in preparing this Disclosure Statement nor should the Disclosure Statement be construed to be any representation or warranty whatsoever, express, implied or otherwise, that the Plan is free from risk, that acceptance or confirmation of the Plan will result in a risk-free or assured restructuring of the debts of the Debtor, or that the projections or plans of the Debtor for payment will be realized.

7. **WHY IS CONFIRMATION OF THE LIQUIDATING PLAN IMPORTANT?**

Confirmation (approval) of the Plan by the Bankruptcy Court is necessary for the Debtor to provide the proposed payment to Creditors under the Plan. Unless the Plan is confirmed by the Bankruptcy Court, the Debtor is legally prohibited from paying you what has been proposed in the Plan.

8. **WHAT IS NECESSARY TO CONFIRM THE LIQUIDATING PLAN?**

The Bankruptcy Court will hold hearing before the Honorable Shad M. Robinson, United States Bankruptcy Judge in person at Austin Courtroom #1, Homer J. Thornberry Federal Judicial Building, 903 San Jacinto Blvd., 3rd Floor, Austin, Texas 78701. The hearing is scheduled on **[DATE]**, at **[TIME]** (CT). Prior court approval is required to appear virtually or phone for this hearing. The Bankruptcy Court will consider whether the Liquidating Plan should be confirmed. Section 1129 of the Bankruptcy Code contains the requirements for confirmation of a Plan.

YOUR VOTE IS IMPORTANT.

In order for the Plan to be accepted by creditors, at least two-thirds in amount and more than one-half in number of the voting creditors in each class must affirmatively vote for the Plan. Even if all classes of claims accept the Plan, the Bankruptcy Court may refuse to confirm the Plan. The Bankruptcy Court must also find that the Plan complies with the applicable provisions of the Bankruptcy Code and that the proponent of the Plan has also complied with the Bankruptcy Code. The Bankruptcy Court must also find that the Plan has been proposed in good faith and not by any means forbidden by law. The Bankruptcy Court must find that the proponent of the Plan (here, the Debtor) has disclosed the identity

5

and affiliation of the persons who will manage the Debtor after confirmation, that the appointment of such persons is consistent with the interest of creditors and equity security holders and with public policy, and that the identity and compensation of any insiders that will be employed or retained by the Debtor, or the successor, has been disclosed. The Bankruptcy Court must additionally find that each class of claims has either accepted the Plan or will receive at least as much as it would under a Chapter 7 liquidation. The Bankruptcy Code also provides for the treatment of certain priority claims. If any classes of claims are impaired under the Plan, the Court must find that at least one class of claims that is impaired has accepted the Plan without counting any votes by insiders. Additionally, the Plan must provide for payment of fees to the United States Trustee.

If the Plan is not accepted by all classes of claims or interest, the Debtor may attempt to obtain confirmation under what is known as "cramdown." To obtain confirmation by cramdown, in general, the Bankruptcy Court must find that the Plan does not discriminate unfairly and is fair and equitable with respect to each class of claims or interests that is impaired by the Plan and has not accepted the Plan. The Code provides several options for a Plan to be "fair and equitable" to a secured creditor, which includes the secured creditor retaining its lien and receiving deferred cash payments at a market interest rate totaling either the value of the property securing the claim or the amount of the allowed claim as found by the Bankruptcy Court, whichever is less. With respect to a class of unsecured claims, the requirement that a Plan be "fair and equitable" requires that the holder of an unsecured claim be paid the allowed amount of its claim or that no junior interest receive or retain any property on account of its prior claim. If the Plan is not accepted by all classes, notice is hereby given that the Debtors will seek to obtain confirmation of the Plan through "cramdown."

9. **ARE CREDITORS ENTITLED TO VOTE ON THE PLAN?**

Impaired Creditors are entitled to vote on the Debtor's proposed Plan. If you are a Creditor, a ballot to be used for voting on the Plan has been distributed to you with this Disclosure Statement. If you lose your Ballot, you may request another one from Debtor's counsel. Instructions for completing and returning the Ballot are set forth on the Ballot and should be reviewed carefully. For purposes of clarification, the Debtor will identify on the Ballot the class of claim the Holder's Claim will be treated as.

10. **HOW WILL THIS PLAN TREAT MY CLAIM?**

People who are owed money by the Debtor hold what is known as a "claim." The Plan organizes claims into classes based upon the type of claim and the treatment which it will receive under the Plan. To determine how the Plan treats your claim, you must first determine which class covers your claim. To find the treatment of your claim, look in the Table of Contents to find the category which best describes your claim. Many creditors will hold what are known as unsecured claims.

D1-0009

11.     **WHEN IS THE DEADLINE FOR RETURNING MY BALLOT?**

The Bankruptcy Court has directed that, in order to be counted for voting purposes, the Debtor must receive your ballot by **no later than 5:00 p.m.** (prevailing central time), on **[DATE]** ("Voting Deadline") via mail service, fax, or email, unless the Debtor agrees otherwise. If mailed, the ballot must be delivered timely to the following address:

    **By Mail:**

    PLAN BALLOTS
    Hot Crete, LLC
    c/o Hayward, PLLC
    Attn: Todd Headden
    7600 Burnet Road, Ste. 530
    Austin, Texas 78757
    Main/fax: (737) 881-7100
    THeadden@HaywardFirm.com

**By Fax:** You may also vote and submit your ballot by fax by sending your ballot to PLAN BALLOTS Hot Crete, LLC. c/o Hayward, PLLC Attn: Todd Headden, fax number: (737) 881-7100 so that it is received by the Voting Deadline.

**By Email:** You may also vote and submit your ballot by email by sending a copy of your ballot attached to an email addressed to THeadden@HaywardFirm.com with the language "PLAN BALLOTS – Hot Crete, L.P." in the subject line.

**IT IS IMPORTANT THAT ALL CREDITORS VOTE ON THE PLAN. THE DEBTOR BELIEVES THAT THE PLAN PROVIDES THE BEST POSSIBLE RECOVERY TO CREDITORS. FOR THIS REASON, THE DEBTOR BELIEVES THAT ACCEPTANCE OF THE PLAN IS IN THE BEST INTERESTS OF THE CREDITORS AND RECOMMENDS THAT ALL CREDITORS VOTE TO ACCEPT THE PLAN.**

## II.     INFORMATION CONCERNING THE DEBTOR

**A.     Overview of the Debtor**

The Debtor is a Texas limited liability corporation that operated as a provider and installer for pool concrete or shotcrete. The Debtor operates in the greater Austin, Texas metropolitan area.

**B.     Management of the Debtor**

The managing members for Hot Crete were Edgar and Fausto Castro. Additionally, Edgar served as the President of the company. The Debtor is no longer operating, hence Edgar has overseen the liquidation of the assets and the bankruptcy process. Confirmation of the Plan will result with the appointment of a liquidating trustee.

**C.     Significant Transactions Prior to Bankruptcy**

D1-0010

Other than the events leading to filing stated below, the Debtors are not aware of significant transactions to be disclosed.

**D.    Events Leading to Filing**

a.    Hot Crete, LLC was opened in 2019 by Edgar and Fausto Castro. They obtained equipment and hired staff experienced in shooting shotcrete and gunite to form the shells/bowls of pools in Central Texas. Hot Crete operated out of Liberty Hill, Texas and served the greater Austin metro area.

b.    Hot Crete was busy shooting pools for numerous pool builders, serving as a sub-contractor to many entities. Unbeknownst to Hot Crete, its directors, officers, owners, or employees, pool builders and contractors in Central Texas were provided with raw materials and aggregate that was defective causing many pools to be afflicted with a condition commonly referred to as Concrete Cancer.

c.    Alkali-Silica Reaction ("ASR" or "Concrete Cancer") is a defect in the concrete mixtures that causes the shell of a pool to weaken and ultimately crack, causing severe damage to the pool. The concrete mixture lacked sufficient fly ash, causing the reaction due to excessive exposure to water, a key function of a swimming pool. Ultimately, a pool suffering from Concrete Cancer may not be able to hold water.

d.    Starting in late 2022 or early 2023, Hot Crete began to learn about the rampant issue with pools in Central Texas experiencing Concrete Cancer.

e.    Along with many other companies, Hot Crete contacted its insurance carrier, Federated Insurance, when claims started being made against its policies. Over time, many homeowners filed lawsuits against Hot Crete, in addition to pool builders, aggregate providers, and the like.

f.    In 2023, Federated Insurance terminated the insurance policy with Hot Crete and Hot Crete found a new insurance provider, but that Commercial General Liability Policy contained a prior work exclusion. In early 2024, the automobile insurance for the company terminated and the Debtor ceased operations.

**E.    Significant Events Since Filing Bankruptcy**

a.    In General. Debtor was no longer operating when it filed for bankruptcy protection. Instead, Debtor took steps to liquidate the significant assets it owned, ultimately obtaining Court Authority to sell the items via a broker.

b.    Legal Proceedings. A creditors' meeting under §341 of the Bankruptcy Code was held on April 16, 2024 at 2:30 pm, at which the Debtors' representative appeared and testified. No official Committee of Unsecured Creditors has been appointed. The Bar Date for government agencies' Claims was September 18, 2024 and the Bar Date for all other Claims was October 31, 2024.

D1-0011

c. <u>Employment of Professionals</u>. On April 19, 2024, Debtor filed its Application to Employ Hayward, PLLC ("HPLLC") as lead bankruptcy counsel to provide the following services: (i) provide legal advice with respect to the powers and duties as Debtor-in-Possession in the continued operation of its business and management of its property; (ii) advise the Debtor of its responsibilities under the Bankruptcy Code and to assist with such responsibilities; (iii) assist with the preparation and filing of the bankruptcy petition, schedules, statement of financial affairs, monthly operating reports and other documents required by the Bankruptcy Court and associated rules and procedures; (iv) represent the Debtor in adversary proceedings and other contested and uncontested matters; (v) represent the Debtor in the negotiation and documentation of any sales or refinancing of property of the estate and obtaining the necessary approvals of such sales or refinancing; and, (vi) assist the Debtor with the formulation of a plan of reorganization and disclosure statement, and obtaining Court approval of same. The Order approving the application to employ HPLLC was entered on May 16, 2024 and effective as of the Petition Date, March 22, 2024.

d. On May 3, 2024, Debtor filed its application to employ Terra Point, LLC as its broker to sell the valuable assets of the business. On June 27, 2024, the Court entered the Order approving the application to employ TerraPoint.

e. On June 7, 2024, Debtor filed its application to employ Royston, Rayzor, Vickery & Williams, LLP as Special Counsel to assist with the defense and analysis of the claims resulting from allegations of Concrete Cancer. The Order approving the application to employ special counsel was entered on July 25, 2024.

f. <u>Liquidation of Assets</u>. Debtor hired TerraPoint to sell its assets. However, the market for the specialized vehicles was less than ideal and the items either did not sell before the secured lenders repossessed the vehicles or otherwise did not generate the proceeds anticipated.

g. <u>Insurance Settlement</u>. The Debtor is in ongoing negotiations with Federated Insurance, which will, if agreed to and approved by the Court, provide for the remaining policy proceeds be deposited into a Liquidating Trust to be disbursed to the Pool Creditors. The estimated proceeds to be deposited in the Liquidating Trust will exceed $9 million.

## III.   ANALYSIS AND VALUATION OF ESTATE ASSETS

### A.   Liquidation Value/Analysis

In this case, the Debtor is liquidating. Accordingly, the Debtor believes that the creditors will receive under the Plan at least what they would receive had the case converted to chapter 7. The Debtors' liquidation analysis will be attached as an exhibit in the Plan Supplement and all parties in interest are encouraged to review such liquidation analysis for more details regarding the Debtors' liquidation analysis. In summary, the liquidation analysis sets forth that the Debtors

9

**D1-0012**

believe the liquidation of all assets in chapter 7 would generate less net recovery to general unsecured creditors. Therefore, the Debtor believes that the Plan is in the best interest of creditors.

There are two likely consequences if the Plan is rejected, or the Bankruptcy Court denies confirmation of the Plan: (a) the Bankruptcy Court could dismiss the Debtor's Chapter 11 Bankruptcy Case or (b) the Debtor's Chapter 11 Bankruptcy Case could be converted to Chapter 7 liquidation under the Bankruptcy Code, possibly losing the benefit of the Insurance Settlement.

<u>Dismissal</u>. If the Debtor's bankruptcy case was to be dismissed, the Debtor would no longer have the protection of the Bankruptcy Court and the applicable provisions of the Bankruptcy Code and a run to the Courthouse would be expected. Dismissal would negatively impact the majority of the Pool Creditor in that a small number of creditors could, if they obtain a judgment on their claims, extinguish the applicable policy proceeds.

<u>Chapter 7 Liquidation</u>. If the Plan is not confirmed, it is possible that the Debtor's Chapter 11 case will be converted to a case under Chapter 7 of the Bankruptcy Code, in which a trustee would be elected or appointed to liquidate the assets of the Debtors for distribution to creditors in accordance with the priorities established by the Bankruptcy Code. Whether a bankruptcy case is one under Chapter 7 or Chapter 11, secured creditors, Administrative Claims, and Priority Claims are entitled to be paid in cash and in full before unsecured creditors receive any funds.

If the Debtor's Chapter 11 case were converted to Chapter 7, the present Priority Claims may have priority lower than priority claims generated by the Chapter 7 case, such as the Chapter 7 trustee's fees or the fees of attorneys, accountants, and other professionals engaged by the trustee.

As it stands, the main assets have been liquidated with the exception of Retained Causes of Action, including the Employee Retention Tax Credit. As such, the Debtor believes that liquidation under Chapter 7 would result in significantly lower distributions to the unsecured creditors and to Administrative and Priority Claimants.

The Liquidation Analysis will be included in the Plan Supplement and will include a breakdown of all of Debtors' unencumbered assets, estimated liquidated value if sold at fire sale or auction, and the amount by which the Debtors' Plan will result in a better financial outcome for unsecured creditors than if the Debtors' cases were converted to a Chapter 7.

## IV.    <u>SUMMARY OF PLAN OF REORGANIZATION</u>

This section of the Disclosure Statement is intended only to provide a summary of the key terms, structure, classification, treatment, and implementation of the Plan, and is qualified in its entirety by reference to the entire plan, a copy of which is attached hereto as **Exhibit 1**. To the extent there are any inconsistencies between this summary and the Plan, the Plan shall govern.

### A.    **Analysis and Treatment of Claims.**

The following chart depicts the classification of Claims and Interests for the Debtor pursuant to the Plan.

10

**D1-0013**

| Class | Claim or Interest | Status | Voting Rights | Projected Claim Amounts | Estimated Recovery |
|-------|-------------------|--------|---------------|-------------------------|--------------------|
| 1 | Priority Claims | Impaired | Entitled to Vote | $5,115.15 | 100% |
| 2 | Secured Claims | Impaired | Entitled to Vote | $43,663.77 | 100% |
| 3 | Convenience Claims | Impaired | Entitled to Vote | $4,730.40 | 100% |
| 4 | Pool Claims | Impaired | Entitled to Vote | Unknown Over $125,510.078 In filed claims | Unknown |
| 5 | Non-Pool Claims | Impaired | Entitled to Vote | $23,235,608 | 0% |
| 6 | Contingent Indemnification Claims | Impaired | Not Entitled to Vote | $Unknown | N/A |
| 7 | Allowed Equity Interests in the Debtor | Impaired | Not Entitled to Vote | N/A | N/A |

**B.** **Unclassified Claims.**

The current known claimants in this category are as follows.

| Claimant | Amount Claimed | Basis | Treatment |
|----------|----------------|-------|-----------|
| United States Trustee | $500 | Quarterly Fee Estimate- Q1 + Q2 2025 | Subject to objection and allowance as set forth herein, this claim shall be paid in full on the Effective Date. |

**C.** **Administrative Expense Claims.**

Administrative claims consist of expenses incurred during the Chapter 11 case, which are approved by the Bankruptcy Court and expenses incurred in operating the Debtor's business. Most administrative expense claims consist of claims by professionals employed by the Debtor in the bankruptcy case, which must be approved by the Bankruptcy Court. Other administrative claims are claims arising post-petition which may have not been paid. The Debtor has paid and intends to continue to pay normal post-petition operating expenses as they become due in the ordinary course of business. The Debtor is aware of the following Administrative Claims:

11

D1-0014

| Hayward LLC (estimated) | HPLLC's fees are currently at approximately $90,000.00 for the bankruptcy. HPLLC anticipates additional fees and expenses related to this matter as it relates to plan implementation, claim objections, and finalizing its fee application, which may bring the total fees for the bankruptcy up to $110,000, but anticipates no higher than $125,000.00 in total.<br><br>Hayward PLLC has $8,191.50 in trust as security for the payment of these fees. |
|---|---|

The Debtor will pay each Allowed Administrative Expense against the Debtor in full, in from Cash on hand, on the later of (a) the Effective Date (or as soon as practicable thereafter), (b) the date on which the Bankruptcy Court enters an order allowing such Administrative Expense, or (c) such other date to which the Debtor and the Holder of the Allowed Administrative Expense agree; provided, however, that Allowed Administrative Expenses representing (a) obligations incurred in the ordinary course of business or assumed by the Debtor will be paid in full or performed by the Debtor in the ordinary course of business, consistent with past practice and (b) obligations incurred to Professionals for services provided through the Confirmation Date will be paid in accordance with the applicable Bankruptcy Court order approving the fees and expenses of each such Professional; provided, further, however, that Administrative Expense Claims filed after the Administrative Expense Claim Bar Date will be forever barred and disallowed without further order of the Bankruptcy Court.

Final Application for Compensation and Reimbursement of Professionals' Fees and Expenses. All applications for final allowance of compensation and reimbursement of Professionals' fees and expenses must be filed no later than 30 days following the Effective Date and will be subject to the authorization and approval of the Bankruptcy Court.

(a)     Full Settlement. As more specifically set forth in, and without in any way limiting, the Discharge pursuant to this Plan, the distributions provided for in and when paid pursuant to this section are in full settlement and release of all Administrative Expenses.

## D.     Class 1 – Allowed Priority Claims

(a)     *Treatment*: Except to the extent that a Holder of an Allowed Other Priority Claim agrees to less favorable treatment, each Holder of an Allowed Other Priority Claim shall receive, in full and final satisfaction of such Claim, payment in full in Cash from the Liquidation Trustee on (or as soon as reasonably practicable after) the later of (i) the Effective Date or (ii) thirty (30) days after such Other Priority Claim becomes Allowed, or (iii) a date on which the Holder of such Other Priority Claim and the Debtor or Liquidation Trustee, as applicable, shall otherwise agree in writing.

D1-0015

      *(b)*    *Voting*: Class 1 is Unimpaired under the Plan. Holders of Allowed Other Priority Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan

Class 1 is impaired and entitled to vote.

**E.**      **Class 2 – Other Secured Claim.**

      *(a)*    *Treatment*: Except to the extent that a Holder of an Allowed Other Secured Claim agrees to a less favorable treatment, each Holder of an Allowed Other Secured Claim shall receive, in full and final satisfaction of such Claim, at the sole option of the Debtor or Liquidation Trustee, as applicable, either:

      (i)    payment in full in Cash on the later of (w) the Effective Date (or as soon as reasonably practicable thereafter), (x) the date on which such Other Secured Claim becomes Allowed, (y) the date payment on account of such Other Secured Claim is due; or (z) the date on which the Holder of such Allowed Other Secured Claim and the Debtor or the Liquidation Trustee, as applicable, shall otherwise agree in writing;

      (ii)    the Debtor's interest in the collateral securing such Allowed Other Secured Claim; or

      (iii)    other treatment that renders such Allowed Other Secured Claim Unimpaired.

*Voting*: Class 2 is Impaired under the Plan. Holders of Allowed Other Secured Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

**F.**      **Class 3 – Convenience Claims.**

      *(a)*    *Treatment*: On the first Business Day that is thirty (30) days following the Effective Date, each Holder of a Convenience Claim shall receive, in full and final satisfaction of such Claim, payment in full in Cash.

      *(b)*    *Voting*: Class 3 is Impaired under the Plan. Holders of Allowed Convenience Claims are entitled to vote to accept or reject the Plan.

**D1-0016**

G. **Class 4 – Pool Claims.**

    (a) *Treatment*:

        1. Subject to first seeking a recovery from any applicable insurance or other third parties pursuant to Article VI.G, on the Effective Date (or as soon as reasonably practicable thereafter) except to the extent that a Holder of an Allowed Pool Claim agrees to less favorable treatment, each Holder of an Allowed Pool Claim shall receive, in full and final satisfaction of such Claim, a beneficial interest in the insurance proceeds held by the Liquidating Trustee.

        2. Distributions from the Liquidating Trust to Holders of Allowed Pool Claims shall be paid in accordance with the terms of the Liquidating Trust Agreement. After accounting for the insurance proceeds for Pool Claims, the remaining amount of the Pool Claims shall receive beneficial interests in the Liquidation Trust and will be treated pro-rata with the non-Pool claims. For the avoidance of doubt, any treatment provided to one or more Holders of Pool Claims pursuant to the provisions of the Confirmation Order approving the Insurance Settlement Motion shall take precedence over the treatment provided in this Article III.B.5.

    (b) *Voting*: Class 4 is Impaired under the Plan. Holders of Allowed Pool Claims are entitled to vote to accept or reject the Plan.

H. **Class 5 – Non-Pool Claims**

    (a) *Treatment*:

        (i) Subject to first seeking a recovery from any applicable insurance or other third parties pursuant to Article VI.G, on the Effective Date (or as soon as reasonably practicable thereafter) except to the extent that a Holder of an Allowed Non-Pool Claim agrees to less favorable treatment, each Holder of an Allowed Non-Pool Claim shall receive, in full and final satisfaction of such Claim, a beneficial interest in the Liquidation Trust. Thereafter each such Holder shall receive Cash distributions from the Liquidation Trust. Distributions from the Liquidation Trust to Holders of Allowed Non-Pool Claims shall be on a Pro Rata basis with all other holders of Liquidation Trust beneficial interests in accordance with the terms of the Liquidation Trust Agreement. For the avoidance of doubt, only Consenting Creditors will have the right to receive distributions from the excess ERC Funds, if any.

14

(b)      *Voting*: Class 5 is Impaired under the Plan. Holders of Allowed Non-Pool Claims are entitled to vote to accept or reject the Plan.

**I.**      **Class 6- Contingent Indemnification Claims**

(a)      *Treatment*: On the Effective Date, all Contingent Indemnification Claims shall be Disallowed pursuant to section 502(e)(1)(B) of the Bankruptcy Code. Holders of Contingent Indemnification Claims shall not receive any distribution on account of such Claims.

(b)      *Voting*: Class 6 is Impaired under the Plan. Holders of Contingent Indemnification Claims are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

**J.**      **Class 7- Interests in the Debtor**

(a)      *Treatment*: On the Effective Date, all Interests in the Debtor shall be cancelled, released, discharged, and extinguished. Holders of Interests in the Debtor shall not receive any distribution on account of such Interests.

(b)      *Voting*: Class 7 is Impaired under the Plan. Holders of Interests in the Debtor are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

**K.**      **Risk to Creditors**

**BEFORE TAKING ANY ACTION WITH RESPECT TO THE PLAN, HOLDERS OF CLAIMS AGAINST THE DEBTOR WHO ARE ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN SHOULD READ AND CONSIDER CAREFULLY THE RISK FACTORS SET FORTH BELOW, AS WELL AS THE OTHER INFORMATION SET FORTH IN THIS DISCLOSURE STATEMENT, THE PLAN, AND THE PLAN SUPPLEMENT AND THE OTHER DOCUMENTS REFERRED TO, OR INCORPORATED BY REFERENCE INTO THIS DISCLOSURE STATEMENT, INCLUDING OTHER DOCUMENTS FILED WITH THE BANKRUPTCY COURT IN THE CHAPTER 11 CASES. THE RISK FACTORS SHOULD NOT BE REGARDED AS CONSTITUTING THE ONLY RISKS PRESENT IN CONNECTION WITH THE DEBTOR'S RESTRUCTURING AND CONSUMMATION OF THE PLAN.**

D1-0018

1.   **Bankruptcy Law Considerations.**

a.   **The Debtor Will Consider All Available Alternatives if the Plan Transactions Are Not Implemented, and Such Alternatives May Result in Lower Recoveries for Holders of Claims Against and Interests in the Debtor.**

If the transactions contemplated by the Plan are not implemented, the Debtor will consider all available alternatives, including filing an alternative chapter 11 plan, converting to chapter 7, and any other transaction that would maximize the value of the Debtor's Estate. The terms of any alternative restructuring proposal may be less favorable to Holders of Claims against and Interests in the Debtor than the terms of the Plan as described in this Disclosure Statement.

Any material delay in the confirmation of the Plan, the Chapter 11 Case, or the threat of rejection of the Plan by the Bankruptcy Court, would add substantial expense and uncertainty to the process.

b.   **Risks Related to Confirmation and Consummation of the Plan.**

**Conditions Precedent to Confirmation May Not Occur.**

As more fully set forth in Article X of the Plan, the occurrence of confirmation and the Effective Date are each subject to a number of conditions precedent. If each condition precedent to confirmation is not met or waived, the Plan will not be confirmed, and if each condition precedent to Consummation is not met or waived, the Effective Date will not take place. In the event that the Plan is not confirmed or is not consummated, the Chapter 11 Case will likely convert to a case under chapter 7 of the Bankruptcy Code.

**Parties in Interest May Object to the Plan's Classification of Claims and Interests.**

Section 1122 of the Bankruptcy Code provides that a plan may place a Claim or an Interest in a particular Class only if such Claim or Interest is substantially similar to the other Claims or Interests in such Class. The Debtor believes the classification of Claims and Interests under the Plan complies with the requirements of the Bankruptcy Code because the Debtor created Classes of Claims and Interests, each encompassing Claims or Interests, as applicable, that are substantially similar to the other Claims or Interests, as applicable, in each such Class. Nevertheless, there can be no assurance that the Bankruptcy Court will reach the same conclusion, and the Debtor may need to modify the Plan. Such modification could require a resolicitation of votes on the Plan. The Plan may not be confirmed if the Bankruptcy Court determines that the Plan's classifications of Claims and Interests is not appropriate.

**The Debtor May Not Be Able to Satisfy Vote Requirements.**

If votes are received in number and amount sufficient to enable the Bankruptcy Court to confirm the Plan, the Debtor intends to seek, as promptly as practicable thereafter, confirmation of the Plan. In the event that sufficient votes are not received, the Debtor may need to seek to confirm an alternative chapter 11 plan or transaction. There can be no assurance that the terms of any such alternative chapter 11 plan or other transaction would be similar or as favorable to the Holders of

D1-0019

Allowed Claims as those proposed in the Plan. The Debtor does not believe that any such transaction exists or is likely to exist that would be more beneficial than the Plan.

**The Debtor May Not Be Able to Secure Confirmation.**

Section 1129 of the Bankruptcy Code sets forth the requirements for confirmation of a chapter 11 plan, and requires, among other things, a finding by the bankruptcy court that: (i) the plan "does not unfairly discriminate" and is "fair and equitable" with respect to any non-accepting Classes; (ii) the plan is not likely to be followed by a liquidation or a need for further financial reorganization unless liquidation or reorganization is contemplated by the plan; and (iii) the value of distributions to non-accepting Holders of Claims and Interests within a particular Class under the plan will not be less than the value of distributions such Holders would receive if the debtor was liquidated under chapter 7 of the Bankruptcy Code.

There can be no assurance that the requisite acceptances to confirm the Plan will be received. Even if the requisite acceptances are received, there can be no assurance that the Bankruptcy Court will confirm the Plan. A non-accepting Holder of an Allowed Claim might challenge either the adequacy of this Disclosure Statement or whether the voting results satisfy the requirements of the Bankruptcy Code or Bankruptcy Rules. Even if the Bankruptcy Court determines that this Disclosure Statement and the voting results are appropriate, the Bankruptcy Court can decline to confirm the Plan if it finds that any of the statutory requirements for confirmation have not been met. If the Plan is not confirmed, it is unclear what distributions, if any, Holders of Allowed Claims would receive with respect to their Allowed Claims.

Subject to the limitations contained in the Plan, the Debtor reserves the right to modify the Plan and seek confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan. Any modifications could result in a less favorable treatment of any Class than the treatment currently provided in the Plan, such as a distribution of property to the Class affected by the modification of a lesser value than currently provided in the Plan or no distribution whatsoever under the Plan.

**Releases, Injunctions, and Exculpations Provisions May Not Be Approved.**

Article IX of the Plan provides for certain releases, injunctions, and exculpations, including third-party releases relating to claims and causes of action that may otherwise be asserted against the Debtor or the Released Parties, as applicable. The releases, injunctions, and exculpations provided in the Plan are subject to objection by parties in interest and, therefore, may not be approved. If the releases are not approved, certain Released Parties may withdraw their support for the Plan. The releases provided to the Released Parties and the exculpation provided to the Exculpated Parties are necessary to the success of the Plan because the Released Parties, the Debtor, and Exculpated Parties have made significant contributions to the Debtor's proposed exit from chapter 11 and have agreed to make further contributions, but only if they receive the full benefit of the Plan's release and exculpation provisions. The Plan's release and exculpation provisions are an inextricable component of Plan and the significant recovery it affords to Holders of Allowed Claims.

D1-0020

**The Debtor May Not Be Able to Pursue Nonconsensual Confirmation Over Certain Impaired Non-Accepting Classes.**

In the event that any impaired class of claims or interests does not accept a chapter 11 plan, a bankruptcy court may nevertheless confirm a plan at the proponent's request if at least one impaired class (as defined under section 1124 of the Bankruptcy Code) has accepted the plan (with such acceptance being determined without including the vote of any "insider" in such class), and, as to each impaired class that has not accepted the plan, the bankruptcy court determines that the plan "does not discriminate unfairly" and is "fair and equitable" with respect to the dissenting impaired class(es). The Debtor believes that the Plan satisfies these requirements, and the Debtor may request such nonconsensual confirmation in accordance with subsection 1129(b) of the Bankruptcy Code. Nevertheless, there can be no assurance that the Bankruptcy Court will reach this conclusion. In addition, the pursuit of nonconsensual confirmation or Consummation of the Plan may result in, among other things, increased expenses relating to professional compensation.

**The Chapter 11 Case May Be Converted to a Case under Chapter 7 of the Bankruptcy Code.**

If the Bankruptcy Court finds that it would be in the best interest of creditors and/or the debtor in a chapter 11 case, the Bankruptcy Court may convert a chapter 11 bankruptcy case to a case under chapter 7 of the Bankruptcy Code. In such event, a chapter 7 trustee would be appointed or elected to liquidate the debtor's assets for distribution in accordance with the priorities established by the Bankruptcy Code. The Debtor believes that liquidation under chapter 7 would result in significantly decreased distributions being made to creditors than those provided for in the Plan because: (a) it is unlikely that the Insurance Settlement would be consummated outside of the protections of the Plan, (b) significant additional administrative expenses would result from the appointment of a chapter 7 trustee, and (c) additional litigation that a chapter 7 trustee might institute could take years to advance and conclude before Holders of Allowed Claims would see any recovery.

**The Chapter 11 Case May Be Dismissed.**

If the Bankruptcy Court finds that the Debtor has incurred substantial or continuing loss or diminution to the Estate and lacks the ability to effectuate substantial consummation of a confirmed plan, or otherwise determines that cause exists, the Bankruptcy Court may dismiss the Chapter 11 Case. In such event, the Debtor would be unable to confirm the Plan, which may ultimately result in significantly decreased distributions to creditors than those provided for in the Plan.

**Risk of Non-Occurrence of the Plan Effective Date.**

Although the Debtor believe the Effective Date may occur quickly after the Confirmation Date, there can be no assurance as to such timing or as to whether the Effective Date will, in fact, occur. As more fully set forth in Article X of the Plan, the Effective Date is subject to a number of conditions precedent. If such conditions precedent are not satisfied or waived by the Debtor or Liquidating Trustee, the Effective Date will not take place.

**D1-0021**

2. Risks Related to Recoveries Under the Plan.

**Estimated Recoveries to Holders of Allowed Claims and Interests Are Based on Assumptions and May Vary from Actual Recoveries.**

Debtor estimates that the cash on hand at the time of confirmation will be sufficient to pay all priority, secured, and administrative expenses in full. The Plan also depends upon the Debtor being able to finalize a settlement with Federated Insurance to include the outstanding balance of the insurance policies. Therefore, the distributions available to Holders of Allowed Claims under the Plan can be affected by a variety of contingencies. The occurrence of any and all such contingencies will not affect the validity of the vote taken by the Impaired Classes to accept or reject the Plan or require any sort of revote by the Impaired Classes.

The estimated recoveries are based on numerous assumptions (the realization of many of which will be beyond the control of the Debtor), including: (a) the successful confirmation of the Plan; (b) an assumed date for the occurrence of the Effective Date; (c) the ability of Liquidating Trustee to successfully reduce the amount of Pool Claims; and (d) the ability of Holders to exhaust all remedies and obtain separate recovery against applicable third parties or insurance policies, if any.

The Debtor believes the Debtor's Estate is entitled to receive a substantial Employee Retention Tax Credit ("ERTC"), and the ERTC forms a portion of the recovery to be made available under the Plan. However, there can be no assurance when, or in what amount, the ERTC will actually be paid, and as of the date hereof it appears that the processing of ERTC applications may be subject to significant delay.

Allowed amounts of Claims may significantly differ from the estimates. Should one or more of the underlying assumptions ultimately prove to be incorrect, the actual amount of Allowed Claims may vary from the estimated Claims contained in this Disclosure Statement. Moreover, the Debtor cannot determine with any certainty at this time the number or amount of Claims that will ultimately be Allowed. Such differences may materially and adversely affect, among other things, the percentage recoveries to Holders of Allowed Claims under the Plan.

**Litigation Matters.**

The Debtor is party to certain lawsuits, legal proceedings, and claims arising out of its business operations. The Debtor cannot predict with certainty the outcome of these lawsuits, legal proceedings, and claims. With certain exceptions, the filing of the Chapter 11 Case operates as a stay with respect to the commencement or continuation of litigation against the Debtor that was or could have been commenced before the commencement of the Chapter 11 Case. In addition, the Debtor's liability with respect to litigation stayed by the commencement of the Chapter 11 Case generally is subject to settlement and release upon confirmation of a plan under chapter 11, with certain exceptions. Therefore, certain litigation Claims against the Debtor may be subject to settlement and release in connection with the Chapter 11 Case.

It is also possible that certain parties will commence litigation with respect to the treatment of their Claims under the Plan. It is not possible to predict the potential litigation that the

19

D1-0022

Liquidating Trustee may become party to, nor the final resolution of such litigation. The impact of any such litigation on recoveries could be material.

       3.      Miscellaneous Risk Factors and Disclaimers.

**The Financial Information Is Based on the Debtor's Books and Records and, Unless Otherwise Stated, No Audit Was Performed.**

In preparing this Disclosure Statement, the Debtor and Counsel relied on financial data derived from the Debtor's books and records that was available at the time of such preparation. While the Debtor believes that such financial information fairly reflects the Debtor's financial condition, the Debtor is unable to warrant or represent that the financial information contained in this Disclosure Statement (or any information in any of the exhibits to the Disclosure Statement) is without inaccuracies.

**No Legal or Tax Advice Is Provided by This Disclosure Statement.**

This Disclosure Statement is not legal advice to any person or Entity. The contents of this Disclosure Statement should not be construed as legal, business, or tax advice. Each reader should consult its own legal and financial advisor(s) with regard to any legal, tax, and other matters concerning its Claim. This Disclosure Statement may not be relied upon for any purpose other than to determine how to vote to accept or reject the Plan or whether to object to confirmation.

**No Admissions Made.**

The information and statements contained in this Disclosure Statement will neither (a) constitute an admission of any fact or liability by any Entity nor (b) be deemed evidence of the tax or other legal effects of the Plan on the Debtor, Holders of Allowed Claims or Interests, or any other parties in interest.

**Failure to Identify Litigation Claims or Projected Objections.**

No reliance should be placed on the fact that a particular litigation claim or projected objection to a particular Claim is, or is not, identified in this Disclosure Statement. Subject to the release provisions of the Plan, the Liquidating Trustee may seek to investigate, file, and prosecute Claims and may object to Claims after confirmation of the Plan, irrespective of whether this Disclosure Statement identifies such Claims or objections to Claims.

**Information Was Provided by the Debtor and Was Relied Upon by the Debtor's Advisors.**

The Debtor's counsel has relied upon information provided to them in connection with the preparation of this Disclosure Statement. Although counsel has performed certain due diligence in connection with the preparation of this Disclosure Statement and the exhibits to the Disclosure Statement, they have not independently verified the information contained in this Disclosure Statement or the information in the exhibits to the Disclosure Statement.

**D1-0023**

**No Representations Outside This Disclosure Statement Are Authorized.**

No representations concerning or relating to the Debtor, the Chapter 11 Case, or the Plan are authorized by the Bankruptcy Court or the Bankruptcy Code, other than as set forth in this Disclosure Statement. Any representations or inducements made to secure your acceptance or rejection of the Plan that are other than as contained in, or included with, this Disclosure Statement, should not be relied upon by you in arriving at your decision. Those who are entitled to vote to accept or reject the Plan should promptly report unauthorized representations or inducements to counsel to the Debtor and the Office of the United States Trustee for the Western District of Texas.

**No Duty to Update.**

The statements contained in this Disclosure Statement are made by the Debtor as of the date hereof, unless otherwise specified herein, and the delivery of this Disclosure Statement after that date does not imply that there has been no change in the information set forth herein since that date. The Debtor has no duty to update this Disclosure Statement unless otherwise ordered to do so by the Bankruptcy Court.

**L.      Claims Allowance Procedure**

Other than a claim of the United States Trustee, no Administrative Expense Claims shall be allowed except pursuant to Court Order. Any application for allowance of an Administrative Expense Claim shall be filed within 30 days after the Effective Date or shall be barred. Any claims for reimbursement of fees and expenses pursuant to 11 U.S.C. § 506(b) shall be filed within 60 days after the Effective Date or shall be barred.

The Liquidating Trustee may file an objection to a claim on or before the later of 90 days from the Effective Date under the Plan or 90 days after such claim is filed, whichever is later.

A claim to which an objection has been made shall at the request of the Creditor be estimated by the Court for the purposes of voting on the Plan.

**M.      Settlement, Release, Exculpation and Related Provisions**

Article IX of the Plan provides for certain releases, injunctions, and exculpations, including third-party releases of and for the Debtor, the Released Parties or the Exculpated Parties, as applicable.

The Debtor believe that the releases, and injunctions set forth in the Plan are appropriate and in accordance with applicable law because, among other things, the releases are narrowly tailored to the Debtor and the Chapter 11 Case, and the Released Parties have contributed value to the Debtor, which facilitated the Debtor's ability to propose and pursue confirmation of the Plan. The Debtor further believe that such releases, exculpations, and injunctions are a necessary part of the Plan. The Debtor will be prepared to meet is burden to establish the basis for the releases, exculpations, and injunctions for each of the Released Parties and each Exculpated Party as part of confirmation of the Plan.

**D1-0024**

1.      Released Parties and Exculpated Parties.

The Released Parties are, collectively, the following: in each case in its capacity as such with each being a "*Released Party*": (a) the Debtor; (b) Edgar Castro and Fausto Castro, the Debtor's Members; (c) the Liquidation Trustee; (d) Federated Insurance; and, (e) for each Entity listed in (a) through (d), each of their respective current and former officers, directors, and managers; (f) each of their respective current and former employees and agents; and (g) each of their respective attorneys and other professional advisors."

The Exculpated Parties are, collectively, (a) the Debtor, and (b) Edgar Castro, the Debtor's Managing Member.

2.      Estate Release

Article IX.C provides for the releases of certain claims and causes of action the Debtor may hold against Released Parties, including derivative claims.

**Pursuant to section 1123(b) of the Bankruptcy Code, upon payment in full of the Settlement Payment as provided in Article IV.C, and in exchange for other good and valuable consideration, the adequacy of which is hereby confirmed, the Debtor, its Estate, and the Post-Effective Date Debtor shall be deemed to have expressly, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged each and all of the Released Parties from any and all claims, causes of action, interests, damages, remedies, demands, rights, actions (including Avoidance Actions), suits, debts, sums of money, obligations, judgments, liabilities, accounts, defenses, offsets, counterclaims, crossclaims, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, now existing or hereafter arising, contingent or non-contingent, liquidated or unliquidated, choate or inchoate, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise that the Debtor, the Post-Effective Date Debtor, or the Estate has, have or may have against the Released Parties.**

**Notwithstanding anything contained herein to the contrary, the foregoing release does not release any obligations of any Released Party under the Plan or any document, instrument, or agreement executed to implement the Plan.**

3.      Other Releases.

Article IX.D provides for releases of certain Claims and Causes of Action Consenting Creditors may hold against the Released Parties.

"Consenting Creditors" are claimants who (a) all Holders of Claims or Interests that vote to accept or are deemed to accept the Plan and who do not check the box on the applicable form to affirmatively opt out of the releases contained in Article IX.D; (b) all Holders of Claims or Interests that abstain from voting on the Plan, vote to reject the Plan, or are deemed to reject the Plan and who do not (i) check the box on the applicable form to affirmatively opt out of the releases contained in Article IX.D or (ii) object to the Plan in respect of the releases; and (c) all Holders of

22

D1-0025

Claims who elect to receive an Expedited Distribution. No holder of an Opt-Out Claim shall be a Consenting Creditor.

**As of the Final Payment Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, including the actions of the Released Parties to facilitate the Estate Party Settlement, as an integral component of the Plan, to the maximum extent permitted under applicable law, all Consenting Creditors shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each Released Party of and from any and all Causes of Action based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, the Estate, their respective current or former assets and properties, the Chapter 11 Case, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between the Debtor and any Released Party, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan Documents or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation or implementation thereof, the pursuit of Plan confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing; *provided*, *however*, that the releases set forth in this Article IX.D shall not, and shall not be construed to: (a) release any post-Effective Date obligations under the Plan Documents or any document, instrument, or agreement executed to implement the Plan; (b) impair any recoveries that may be sought with respect to any Insurance Actions, or (c) modify, reduce, impair or otherwise affect the ability of any Consenting Creditors to recover from the Trusts in accordance with the Plan and the Trust Documents. If, following the Final Payment Date, any portion of the Settlement Payment is clawed back, the releases set forth this Article IX.D shall be void. If such releases become void, then the relevant Statute of Limitations applicable to any claim or Cause of Action that could then be asserted against the Released Parties shall be tolled and extended to the date that is ninety (90) days following the date that such releases become void and notice of the same is published by the Trusts. Any Released Party may enforce the Consensual Claimant Release before the Bankruptcy Court, which shall retain jurisdiction for such purpose, at its own cost and expense.**

Article IX.F provides for releases of Claims and Causes of Action the Released Parties and the Debtor are providing to Consenting Creditors pursuant to the Plan.

**As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, as an integral component of the Plan, to the maximum extent permitted under applicable law, Released Parties shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each of the Holders of Claims in Class 4 (Pool Claims) of and from any and all Causes of Action based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, the**

D1-0026

Estate, their respective current or former assets and properties, the Chapter 11 Case, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between the Debtor and any such Holder, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan Documents or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation or implementation thereof, the pursuit of Plan confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing; provided, however, that the releases set forth in this Article IX.F shall not, and shall not be construed to: (a) release any post-Effective Date obligations under the Plan Documents or any document, instrument, or agreement executed to implement the Plan; (b) impair any recoveries that may be sought with respect to any Insurance Actions, or (c) modify, reduce, impair or otherwise affect the ability of any Consenting Creditors to recover from the Trusts in accordance with the Plan and the Trust Documents.

4.      Exculpation

Article IX.E provides for the release and exculpation of the Exculpated Parties for certain acts or omissions taken in connection with the Chapter 11 Case. The Exculpation contains a carve-out for actual fraud, willful misconduct or gross negligence.

**Upon the Effective Date, to the fullest extent permissible under applicable law, no Exculpated Party shall have or incur, and each Exculpated Party is released and exculpated from, any liability to any Holder of a Claim or Interest, or any other party in interest, for any claim or cause of action arising from the Petition Date through the Effective Date, arising from, relating to, or connected with the administration of the Chapter 11 Case, the Disclosure Statement, the preparation of the Plan, the solicitation of acceptances of the Plan, the pursuit of confirmation of the Plan, the Consummation of the Plan, or the administration of the Plan or property to be distributed under the Plan, except for claims related to any act or omission that is determined in a Final Order of a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence. The Exculpated Parties shall be deemed to have, participated in good faith in connection with the above and entitled to the protection of section 1125(e) of the Bankruptcy Code. Each Exculpated Party shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan**.

5.      Channeling Injunction

Article IX.I outlines the Channeling Injunction that will be imposed pursuant to the Plan upon Channeled Claims. Channeled Claims are Claims as to which the Holder of the Claim has not opted-out, or, as to claims where the Holder has opted-out for the purpose of pursuing recovery from an insurance company, has opted out and has not returned to the Liquidating Trust in accordance with its procedures.

As outlined in Article IX.I, the Channeling Injunction will provide that the sole recourse for Holders of Channeled Claims that are eligible for compensation will be the applicable trust, and the Holders of Channeled Claims will have no right so assert those claims against the Debtor or any Released Party.

**D1-0027**

As of the Effective Date, to facilitate the liquidation of Channeled Claims by the Trust and the preserve and promote the settlement framework contemplated by and provided for in the Plan, including the Insurance Settlement, pursuant to the equitable jurisdiction and power of the Bankruptcy Court under the Bankruptcy Code, the Bankruptcy Court shall issue the channeling injunction set forth in this **Article IX.I** (the "**Channeling Injunction**").

       1.    **Protections Afforded to Released Parties**

Subject to the terms of **Article IX.I.5**, and while the Channeling Injunction is in full force and effect as to any Channeled Claim, the sole recourse of any Holder of a Channeled Pool Claim that is eligible for compensation under the Liquidating Trust Distribution Procedures on account of such Channeled Pool Claim shall be to and against the Liquidating Trust pursuant to the Liquidating Trust Documents, and such Holder shall have no right to assert such Channeled Pool Claim or any Claim against the Debtor against any Released Party. Accordingly, on or after the Effective Date, and subject to the terms of **Article IX.I.5**, all Persons that have held or asserted, currently hold or assert, or that may in the future hold or assert, any Channeled Claim shall be stayed, restrained, and enjoined from taking any action for the purpose of directly, indirectly, or derivatively collecting, recovering, or receiving payment, satisfaction, or recovery from any Released Party with respect to any such Channeled Claim, other than from the Trusts, including:

    *a.*    commencing, conducting, or continuing, in any manner, whether directly, indirectly, or derivatively, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum in any jurisdiction around the world against or affecting any Released Party, or any property or interest in property of any Released Party;

    *b.*    enforcing, levying, attaching (including any prejudgment attachment), collecting or otherwise recovering, by any manner or means, either directly or indirectly, any judgment, award, decree, or order against or affecting any Released Party, or any property or interest in property of any Released Party;

    *c.*    creating, perfecting or otherwise enforcing in any manner, whether directly or indirectly, any encumbrance of any kind against any Released Party, or any property or interest in property of any Released Party;

    *d.*    asserting, implementing, or effectuating any setoff, right of reimbursement, subrogation, indemnity, contribution, reimbursement, or recoupment of any kind, in any manner, directly or indirectly,

**D1-0028**

against any obligation due to any Released Party, or any property or interest in property of any Released Party; or

*e.*     taking any act in any manner, and in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents or with regard to any matter that is within the scope of the matters designated by the Plan to be subject to resolution by the Trusts, except in conformity and compliance with the Plan Documents with respect to any such Channeled Claim.

**O.     Retention of Jurisdiction**

After confirmation of the Plan, the Bankruptcy Court will retain jurisdiction to the extent provided by 28 U.S.C. §1334. This means that the Bankruptcy Court will retain jurisdiction over matters relating to the Plan and to rule on any matters which are pending in the case.

**P.     Post-Confirmation Procedure**

After confirmation of the Plan, the Bankruptcy Court will rule upon any objections to claims, applications for compensation of professionals, and any other outstanding issues. Once the Bankruptcy Court has ruled upon these matters, the Debtor will file an application for final decree. The Debtor will be required to pay U.S. Trustee fees and file quarterly post-confirmation reports until such time as a final decree is entered and the case is closed.

## V.     ALTERNATIVES TO THE DEBTORS' PLAN

The alternatives to the Debtors' Plan are liquidation via chapter 7 or outside of the bankruptcy process whereby the Lender would receive the bulk of the sale proceeds and unsecured creditors would, in all likelihood, receive nothing.

## VI.     TAX CONSEQUENCES

An analysis of federal income tax consequence of the Plan to creditors, interest holder, and the Debtor requires a review of the Internal Revenue Code ("IRS Code"), the Treasury regulations promulgated thereunder, judicial authority and current administrative rulings and practice. The Plan and its related tax consequences are complex. The Debtor has not requested a ruling from the Internal Revenue Service with respect to these matters. Accordingly, no assurance can be given as to the IRS's interpretation of this Plan.

The federal income tax consequences of the implementation of the Plan to a creditor will depend in part on whether, for federal income tax purposes, the obligation from which a creditor's claim arose constitutes a "security." The determination as to whether an obligation for which a creditor's claim arose constitutes a "security" for federal income tax purposes is complex. It depends on the facts and circumstances surrounding the origin and nature of the obligation. Generally, corporate debt obligations evidenced by written instruments with maturities, when issued five (5) years or less, or arising out of the extension of trade credit, do not constitute "securities," whereas corporate debt obligations evidenced by written instruments with original maturities over (10) years or more constitute "securities." Although it appears that most of the

26

**D1-0029**

creditors' claims do not constitute "securities," the Debtor and their professionals express no view with respect to whether the obligation for which a particular creditor's claim arose constitutes a "security" for federal income tax purposes. Creditors are urged to consult their own tax advisor in this regard.

Generally, creditors whose claims arise from obligations that do not constitute "securities" or whose claims are for wages or services, will be fully taxable exchanges for federal income tax purposes. Such creditors who receive solely cash in discharge of their claims will recognize gain or loss, as the case may be, equal to the difference between (i) the amount realized by the creditor in respect of its claim (other than any claim for accrued interest) and (ii) the creditor's tax basis in its claim (other than any claim for accrued interest). For federal income tax purposes, the "amount realized" by a creditor who receives solely cash in discharge of its claim will be the amount of cash received by such creditor. Where gain or loss is recognized by a creditor, the character of such gain or loss as a long-term or short-term capital gain or loss or as ordinary income or loss will be determined by a number of factors, including the tax status of the creditor, whether the obligation from which a claim arose has been held for more than six (6) months, and whether and to what extent the creditor has previously claimed a bad debt deduction. The capital gains deduction for individuals and the alternate tax for corporate net capital gains have been repealed and capital gain is currently taxed to individuals and corporations at their respective maximum tax rates. However, the definitions of long-term and short-term capital gain or loss have to be repealed.

Generally, to the extent any amount received (where cash or other property) by a creditor is received in discharge of interest accrued on its claim during its holding period, such amount will be taxable to the creditor as interest income (if not previously included in the creditor's gross income). Conversely, a creditor will recognize a deductible loss (or, possible, a write-off against a reserve for bad debts) to the extent any interest accrued on its claim was previously included in the creditor's gross income and is not paid in full.

**THE TRANSACTION CONTEMPLATED BY THE CONFIRMATION OF THE PLAN MAY HAVE AN IMPACT ON THE TAX TREATMENT OF ANY CREDITOR OR EQUITY INTEREST HOLDER. THAT IMPACT MAY BE ADVERSE TO THE CREDITOR OR EQUITY INTEREST HOLDER. NOTHING HEREIN IS INTENDED TO BE ADVICE OR OPINION AS TO THE TAX IMPACT OF THE PLAN ON ANY INDIVIDUAL CREDITOR OR EQUITY INTEREST HOLDER. EACH CREDITOR AND EQUITY INTEREST HOLDER IS CAUTIONED TO OBTAIN INDEPENDENT AND COMPETENT TAX ADVICE PRIOR TO VOTING ON THE PLAN.**

## VII.     PENDING AND POTENTIAL LITIGATION

### A.     Avoidance Actions

The Reorganized Debtors reserve all rights to pursue, in their sole discretion, any preferences or fraudulent transfers to the full extent allowed under the Bankruptcy Code and applicable state laws. ALL CREDITORS AND RECIPIENTS OF PAYMENTS OR TRANSFERS THAT MAY BE DEEMED PREFERENCES OR FRAUDULENT TRANSFERS, WITH ACTUAL OR CONSTRUCTIVE NOTICE OF THIS BANKRUPTCY CASE ARE HEREBY PUT ON NOTICE THAT THE REORGANIZED DEBTOR MAY PROSECUTE THESE

D1-0030

CLAIMS. THIS PLAN IS NOT INTENDED AND DOES NOT WAIVE ANY OF THE DEBTORS' CHAPTER 5 CAUSES OF ACTION, EXCEPT THOSE ACTIONS AND CLAIMS EXPRESSLY RELEASED IN THE PLAN, OR CONFIRMATION ORDER.

**B.     Other Litigation**

In addition to preferences and fraudulent transfer claims, the Debtors explicitly preserves the following claims and causes of action and may pursue such claims and causes of action after the Confirmation Date or may be enforced by way of setoff against Claims filed against the bankruptcy estate. The Reorganized Debtors have sole discretion to prosecute any such litigation and to object to any Claims as it sees fit.

## VIII.   <u>SOLICITATION OF VOTES</u>

The Debtors have devoted substantial effort to preparation of its Disclosure Statement and its Plan of Reorganization. The Debtors believe that the Plan represents a fair adjustment of its relationship with creditors. The Debtors believe that the Plan is superior to a liquidation of or foreclosure on its assets, which likely reduce the recovery for creditors. Therefore, the Debtors request that all creditors vote in favor of its Plan of Reorganization.

Dated: April 18, 2025          HOT CRETE, LLC.

By:     */s/ Edgar Castro*
          Edgard Castro
          Managing Member


DRAFTED and APPROVED:

*/s/ Todd Headden*
Todd Headden (TX 24096285)
HAYWARD PLLC
7600 Burnet Road, Ste. 530
Austin, Texas 78757
(737) 881-7100 (phone and fax)
Email: THeadden@HaywardFirm.com
ATTORNEYS FOR DEBTOR

**D1-0031**

Exhibit

**D-2**

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| HOT CRETE, LLC, | § | Case No. 24-10303-smr |
| | § | |
| Debtor. | § | Chapter 11 |
| | § | |

---

# HOT CRETE, LLC,
# LIQUIDATING PLAN

---

Date: April 18, 2025

Todd Headden
  State Bar No. 24096285
  THeadden@HaywardFirm.com
Ron Satija
  State Bar No. 24039158
  RSatija@HaywardFirm.com
HAYWARD PLLC

AUSTIN
7600 Burnet Rd.
Suite 530
Austin, TX 78757

D2-0001

# INTRODUCTION

Hot Crete, LLC, hereby proposes the following chapter 11 plan pursuant to section 1121(a) of the Bankruptcy Code.

## ARTICLE I.- DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW, AND OTHER REFERENCES

*A.* *Defined Terms*

1. "*Administrative Claim*" means any right to payment constituting a cost or expense of administration of the Chapter 11 Case pursuant to sections 503(b) or 507 of the Bankruptcy Code.

2. "*Administrative Claims Bar Date*" means the first Business Day that is 30 days following the Effective Date, unless otherwise specifically set forth in the Plan or a Final Order.

3. "*Administrative and Priority Claims Reserve*" means a reserve established by the Liquidation Trustee on the Effective Date to be used to pay Holders of all Allowed Priority Claims and Allowed Administrative Claims, to the extent the same have not been paid in full on or before the Effective Date.

4. "*Administrative Claims Objection Deadline*" means the first Business Day that is 21 days following the Administrative Claims Bar Date, unless otherwise specifically set forth in the Plan or a Final Order.

5. "*Allowed*" means, any Claim: (a) that is evidenced by a Proof of Claim Filed by the Claims Bar Date or to which no objection has been interposed on or before the Claims Objection Deadline or such other applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court; (b) that is listed in the Schedules and is not identified as contingent, unliquidated, or disputed, and for which no Proof of Claim has been timely Filed and as to which no objection has been interposed on or before the Claims Objection Deadline; (c) Allowed pursuant to the Plan or a Final Order of the Bankruptcy Court; or, (d) Specifically for Pool Claims, those with a claim not rejected by either of the insurance carriers, subject to an administrative appeal with the insurance provider, as of the Confirmation Date.

6. "*Avoidance Actions*" means any and all actual or potential avoidance, recovery, subordination or other claims, causes of action or remedies that may be brought by or on behalf of the Debtor or its Estate or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy law, including claims, causes of action, or remedies under sections 502, 510, 542, 544, 545, 547 through 553, and 724(a) of the Bankruptcy Code, or under similar or related local, state, federal, or foreign statutes or common law, including preference and fraudulent transfer and conveyance laws, in each case whether or not litigation to prosecute such claim(s), cause(s) of action or remedy(ies) were commenced prior to the Effective Date.

D2-0002

7. "*Ballot*" means the form of ballot approved by the Bankruptcy Court and provided to Holders of Claims to indicate their votes to accept or reject the Plan.

8. "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101 *et. seq.*, as now in effect and as may be hereafter amended.

9. "*Bankruptcy Court*" means the United States Bankruptcy Court for the Western District of Texas, Austin Division, or such other court of the United States having jurisdiction over the Chapter 11 Case.

10. "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under 28 U.S.C. § 2075, as now in effect or hereafter amended.

11. "*Bar Date*" means, as applicable, (i) the Claims Bar Date, (ii) any other date or dates established or to be established by this Plan or by a Final Order of the Bankruptcy Court setting a deadline by which Proofs of Claim must be Filed and (iii) the Administrative Claims Bar Date.

12. "*Business Day*" means any day, other than a Saturday, Sunday, or a "legal holiday," as defined in Bankruptcy Rule 9006(a).

13. "*Cash*" or "*$*" means legal tender of the United States of America.

14. "*Causes of Action*" means any claims, causes of action, interests, damages, remedies, demands, rights, actions (including Avoidance Actions), suits, debts, sums of money, obligations, judgments, liabilities, accounts, defenses, offsets, counterclaims, crossclaims, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, now existing or hereafter arising, contingent or non-contingent, liquidated or unliquidated, choate or inchoate, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise, owned by or otherwise accruing to the Debtor and its Estate, whether arising before, on, or after the Petition Date.

15. "*Chapter 11 Case*" means the above-captioned chapter 11 bankruptcy case of the Debtor.

16. "*Channeled Claims*" means the claims filed by holders of Class 4 Claims, also known as Pool Claims or Channeled Pool Claim. These claims include any claim or demand against the insurance policies issued by Federated Insurance.

17. "*Claim*" means any claim against the Debtor, as defined in section 101(5) of the Bankruptcy Code.

18. "*Claims Bar Date*" means the last date to file Proofs of Claim against the Debtor, which is October 31, 2024, for all creditors including Governmental Units.

19. "*Claims Objection Deadline*" means ninety days (90) days after the Effective Date unless extended by further order of the Bankruptcy Court.

20. "*Claims Register*" means the official register of Claims against and Interests in the Debtor maintained by the Court.

21. "*Class*" means any category of Holders of Claims or Interests classified by this Plan pursuant to sections 1122(a) and 1123(a)(1) of the Bankruptcy Code.

22. "*Confirmation Date*" means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Case.

23. "*Confirmation Hearing*" means the hearing conducted by the Bankruptcy Court, including any adjournments thereof, to consider confirmation of the Plan.

24. "*Confirmation Objection Deadline*" means the last date to file objections to the confirmation of the plan.

25. "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code and approving the Disclosure Statement as containing adequate information pursuant to sections 1125 and 1126 of the Bankruptcy Code.

26. "*Consenting Creditors*" means collectively the following, in its capacity as such with each being a "*Consenting Creditor*": (a) all Holders of Claims or Interests that vote to accept or are deemed to accept the Plan and who do not check the box on the applicable form to affirmatively opt out of the releases contained in Article IX.D; (b) all Holders of Claims or Interests that abstain from voting on the Plan, vote to reject the Plan, or are deemed to reject the Plan and who do not (i) check the box on the applicable form to affirmatively opt out of the releases contained in Article IX.D or (ii) object to the Plan in respect of the releases; and (c) all Holders of Claims who elect to receive an Expedited Distribution. No holder of an Opt-Out Claim shall be a consenting Creditor.

27. "*Consummation*" means the occurrence of the Effective Date.

28. "*Contingent Indemnification Claim*" means any Claim for indemnification against the Debtor of any kind or nature whatsoever, whether arising under or pursuant to any type of bylaws, organizational or formation documents, board resolutions, management or indemnification agreements, employment or other services contracts, at common law, in equity or otherwise, and whether pertaining or related to past and present directors, officers, employees, attorneys, accountants, investment bankers, clients, state agencies, or other professionals and agents of the Debtor related to services provided to, by or for the Debtor at any time prior to the Effective Date that is contingent as of the Effective Date; *provided* that Contingent Indemnification Claims shall not include any Claim for indemnification against the Debtor if, prior to the Effective Date, such Claim has been adjudicated as non-contingent by Final Order of a court of competent jurisdiction.

29. "*Convenience Claim*" means any General Unsecured Claim that is filed in an amount of $5,000 or less.

---

30. "*Debtor Release*" means the release given on behalf of the Debtor and its Estate to the Released Parties as set forth in Article IX.C.

31. "*Debtor*" means Hot Crete, LLC, a Texas LLC, in its capacity as a debtor and debtor in possession under sections 1107 and 1108 of the Bankruptcy Code.

32. "*Disallowed*" means any Claim or Interest or portion thereof that is not Allowed or Disputed.

33. "*Disclosure Statement*" means that certain disclosure statement relating to the Plan, as the same may be amended, supplemented, or modified from time to time, including all exhibits and schedules thereto, as approved by the Bankruptcy Court pursuant to sections 1125 and 1126 of the Bankruptcy Code.

34. "*Disputed*" means any Claim or Interest or portion thereof, (a) to the extent neither Allowed nor disallowed under the Plan or a Final Order nor deemed Allowed under sections 502, 503, or 1111 of the Bankruptcy Code, or (b) for which a Proof of Claim or Proof of Interest or a motion for payment has been timely Filed with the Bankruptcy Court, to the extent the Debtor or any other party in interest has interposed a timely objection or request for estimation in accordance with the Plan, the Bankruptcy Code, or the Bankruptcy Rules, which objection or request for estimation has not been withdrawn or determined by a Final Order.

35. "*Distribution*" means Cash, property, interests in property or other value distribution to Holders of Allowed Claims, or their designated agent, including the Liquidation Trust Beneficiaries, as applicable under this Plan, or any trust agreement governing a trust created under this Plan.

36. "*Distribution Date*" means the date on which the Liquidation Trustee first makes distributions from the Settlement Payment to Holders of Pool Claims as provided in the Plan.

37. "*Distribution Reserve Accounts*" means the Cash reserve accounts established pursuant to this Plan by the Liquidation Trustee, as may be applicable, including but not limited to the Administrative and Priority Claims Reserve and Pool Claimant Reserve.

38. "*Effective Date*" means the later of the first Business Day on which (a) no stay of the Confirmation Order is in effect and (b) all conditions precedent specified in the Confirmation Order have been satisfied or waived. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

39. "*Enjoined Parties*" means (i) all Entities that have held, hold, or may hold Claims against or Interests in the Debtor (whether or not Proofs of Claim or Proofs of Interest have been filed and whether or not such Entities vote in favor of, against, or abstain from voting on the Plan or are presumed to have accepted or deemed to have rejected the Plan), (ii) any Entity that has appeared and/or filed any motion, objection, or other pleading in this Chapter 11 Case regardless of the capacity in which such Entity appeared and any other party in interest, and (iii) for each Entity listed in (i) and (ii), such Entity's predecessors, successors, assigns (whether by operation of law or otherwise), and each of their respective present, future, or former officers, directors, employees,

D2-0005

managers, managing members, members, financial advisors, attorneys, accountants, investment bankers, consultants, professionals, advisors, shareholders, principals, partners, subsidiaries, divisions, management companies, heirs, agents, and other representatives, in each case solely in their capacity as such.

40. "*Entity*" has the meaning set forth in section 101(15) of the Bankruptcy Code.

41. "*ERC Fund*" means a segregated account to be funded by the proceeds of employee retention tax credits received by the Debtor or Liquidation Trustee, as applicable.

42. "*Estate*" means the estate of the Debtor as created under section 541 of the Bankruptcy Code upon the commencement of the Debtor's Chapter 11 Case.

43. "*Exculpated Party*" means, collectively (a) the Debtor, and (b) Edgar Castro, the Debtor's Managing Member.

44. "*File*" or "*Filed*" means file or filed with the Bankruptcy Court.

45. "*Final Decree*" means the decree contemplated in Bankruptcy Rule 3022.

46. "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter that has not been reversed, stayed, modified, or amended, and as to which (a) the time to appeal, petition for *certiorari*, or move for a stay, new trial, reargument, reconsideration, or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceedings for a stay, new trial, reargument, reconsideration, or rehearing shall then be pending, or (b) if an appeal, writ of *certiorari*, stay, new trial, reargument, reconsideration, or rehearing has been sought, (i) such order or judgment has been resolved by the highest court to which the order or judgment could be appealed, *certiorari* shall have been denied, or a stay, new trial, reargument, reconsideration, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice and (ii) the time to take any further appeal, petition for *certiorari*, or move for a stay, new trial, reargument, reconsideration or rehearing shall have expired; *provided*, *however* that no order or judgment shall fail to be a Final Order solely because of the possibility that a motion under rule 60 of the Federal Rules of Civil Procedure or any comparable rule of the Bankruptcy Rules or state or local rules has been or may be filed relating to such order or judgment.

47. "*General Unsecured Claim*" means any unsecured claim (including, for the avoidance of doubt, any Pool Claim and Non-Pool Claim) that is not an Administrative Claim, a Secured Claim, an Other Secured Claim, a Priority Tax Claim, an Other Priority Claim, or a Claim that is otherwise paid in full prior to the Effective Date pursuant to an order of the Bankruptcy Court.

48. "*Governmental Unit*" has the meaning set forth in section 101(27) of the Bankruptcy Code.

49. "*Holder*" means an Entity holding a Claim or an Interest.

D2-0006

50.     "*Impaired*" means, with respect to any Class of Claims or Interests, a Claim or an Interest that is not Unimpaired.

51.     "*Insurance Settlement Motion*" means the Debtor's *Motion Pursuant to 11 U.S.C. §§ 105(a) & 502 and Bankruptcy Rules 3007 & 9019(b) for Entry of an Order Establishing Procedures for Resolution of Pool Claims with Rights Under Certain Texas Insurance Policies Issued by Federated* ____ [Docket No. ___], which settles and compromises certain disputes related to insurance policies issued by Federated _____ under sections 363, 503(b), 507(a)(2), 1123 and 1141 of the Bankruptcy Code, as applicable, and Bankruptcy Rule 9019.

52.     "*Interest*" means any interest, equity, or share in the Debtor, including all options, warrants, or other rights to obtain such an interest or share in the Debtor, whether or not certificated, transferable, preferred, common, voting, or denominated "stock" or a similar security.

53.     "*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

54.     "*Liquidation Trust*" means that certain trust that will come into existence on the Effective Date, which shall be formed pursuant to, and governed by, the provisions of the Plan and the Liquidation Trust Agreement.

55.     "*Liquidation Trust Agreement*" means the agreement establishing and governing the Liquidation Trust dated as of the Effective Date, substantially in the form included in the Plan Supplement.

56.     "*Liquidation Trust Assets*" means all assets of the Debtor or its Estate existing on the Effective Date (including all Causes of Action) after giving effect to all distributions required to be made as of or prior to the Effective Date.

57.     "*Liquidation Trustee*" means the trustee of the Liquidation Trust, who shall be selected by the Committee, in consultation with the Debtor, and who shall be named in the Plan Supplement.

58.     "*Local Bankruptcy Rules*" means the Bankruptcy Local Rules of the United States Bankruptcy Court for the Western District of Texas as now in effect or hereafter amended.

59.     "*Non-Pool Unsecured Claim*" means any General Unsecured Claim that is not a Pool Claim.

60.     "*Other Priority Claim*" means any Claim other than an Administrative Claim or a Priority Tax Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code, to the extent such Claim has not already been paid during the Chapter 11 Case.

61.     "*Person*" has the meaning set forth in section 101(41) of the Bankruptcy Code.

62.     "*Petition Date*" means March 22, 2024, the date on which the Debtor commenced the Chapter 11 Case.

D2-0007

63.    "*Plan Supplement*" means the compilation of documents and forms of documents, agreements, schedules, and exhibits to the Plan to be filed in one or more parts of volumes by the Debtor, at least seven (7) calendar days prior to the Confirmation Objection Deadline, as the same may be amended, supplemented, or modified from time to time on the terms set forth herein, containing, without limitation:  (a) the form of Liquidation Trust Agreement; (b) the Assumed Executory Contract and Unexpired Lease List; (c) a schedule of Retained Causes of Action; (d) the identity and compensation of the Liquidation Trustee; (e) Insurance Settlement; and, (f) the Liquidation Analysis.

64.    "*Pool Claim*" means a claim filed by or on behalf of a homeowner, pool builder, or sub-contractor that hired, directly or indirectly, Hot Crete *and* has an allowed claim with an assertion of ASR present in the pool. Pool Claim does not include any portion of a claim that would not be compensable from Debtor's applicable insurance policy and, for the avoidance of doubt, does not include any portion of a claim asserting treble damages for violations of the Texas Deceptive Trade Practice Act, Chapter 17 of the Texas Business and Commerce Code, or other similar statue.

65.    "*Post-Effective Date Debtor*" means the Debtor, the Liquidation Trust, or any successor thereto after the Effective Date responsible for winding down the Debtor's Estate and implementing the terms of the Plan.

66.    "*Priority Claims*" means, collectively, Priority Tax Claims and Other Priority Claims.

67.    "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

68.    "*Pro Rata*" means the proportion that an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests in such Class.

69.    "*Professional*" means any Entity retained by and to be compensated from the Estate pursuant to sections 327, 328, 330, 331, 363, 503(b) or 1103 of the Bankruptcy Code.

70.    "*Professional Fee Claims*" means any Claim by a Professional under sections 330, 331 or 503 of the Bankruptcy Code for allowance of compensation and/or reimbursement of expenses in the Chapter 11 Case.

71.    "*Proof of Claim*" means a proof of Claim Filed against the Debtor in the Chapter 11 Case.

72.    "*Proof of Interest*" means a proof of Interest Filed in the Debtor's Chapter 11 Case.

73.    "*Released Parties*" means collectively the following, in each case in its capacity as such with each being a "*Released Party*": (a) the Debtor; (b) Edgar Castro and Fausto Castro, the Debtor's Members; (c) the Liquidation Trustee; (d) Federated Insurance; and, (e) for each Entity

D2-0008

listed in (a) through (d), each of their respective current and former officers, directors, and managers; (f) each of their respective current and former employees and agents; and (g) each of their respective attorneys and other professional advisors."

74.    "*Releasing Parties*" means collectively the following, in each case in its capacity as such with each being a "*Releasing Party*": (a) the Debtor; (b) the Liquidation Trustee; (c) the Settlement Parties, if any; and (d) Consenting Creditors.

75.    "*Retained Causes of Action*" means Causes of Action scheduled in the Plan Supplement as "retained" and transferred to the applicable Trust.

76.    "*Schedules*" means, collectively, the schedule of assets and liabilities, schedule of Executory Contracts and Unexpired Leases and statement of financial affairs Filed by the Debtor pursuant to section 521 of the Bankruptcy Code, if any, as such schedules may be amended, modified, or supplemented from time to time.

77.    "*Secured Claim*" means a Claim: (a) secured by a valid, perfected, and enforceable Lien on upon property in which the Debtor has an interest to the extent of the value, as of the Effective Date, of such interest or Lien or (b) subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code.

78.    "*Settlement Parties*" means the Debtor in one part as the policy holder and Federated Insurance, in the other part, as the company that issued the insurance policies subject to the anticipated Insurance Settlement.

79.    "*Settlement Payment*" means the payment to be received by the Liquidating Trust as a result of the anticipated settlement with Federated Insurance.

80.    "*Trust*" means the Liquidation Trust.

81.    "*Trust Agreement*" means the Liquidation Trust Agreement.

82.    "*Trustee*" means the Liquidation Trustee.

83.    "*Unexpired Lease*" means a lease of nonresidential real property to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

84.    "*Unimpaired*" means a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

85.    "*U.S. Trustee*" means the Office of the United States Trustee for Region 7 located in the Western District of Texas.

86.    "*U.S. Trustee Fees*" means fees arising under 28 U.S.C. § 1930(a)(6).

*B.*     *Rules of Interpretation*

For purposes of the Plan: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) unless otherwise specified, any reference in the Plan to an existing document, schedule, or exhibit, shall mean such document, schedule, or exhibit, as it may have been or may be amended, modified, or supplemented; (3) unless otherwise specified, all references in the Plan to "Articles" and "Sections" are references to Articles and Sections, respectively, hereof or hereto; (4) the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to any particular portion of the Plan; (5) any effectuating provisions may be interpreted by the Debtor or the Liquidation Trustee in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity; (6) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (7) unless otherwise specified in the Plan, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (8) any term used in capitalized form in the Plan that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable; (9) references to docket numbers of documents filed in the Chapter 11 Case are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (10) references to "Proofs of Claim," "Holders of Claims," "Disputed Claims," and the like shall include "Proofs of Interest," "Holders of Interests," "Disputed Interests," and the like as applicable; (11) references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company laws; (12) the terms "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation"; and (13) except as otherwise provided in the Plan, any reference to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter.

*C.*     *Computation of Time*

Unless otherwise specifically stated in the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed in the Plan. If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

*D.*     *Governing Law*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Texas, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control).

*E.*     *Reference to Monetary Figures*

All references in the Plan to monetary figures refer to currency of the United States of America, unless otherwise expressly provided herein.

F.     *Controlling Document*

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects. In the event of an inconsistency between the Plan and the documents contained in the Plan Supplement, the Plan shall control. In the event of any inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall control.

## ARTICLE II.
## ADMINISTRATIVE AND PRIORITY CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims, and Priority Claims have not been classified and shall be treated as follows:

A.     *Administrative Claims*

Except as otherwise provided by a Final Order entered by the Bankruptcy Court, requests for payment of Administrative Claims must be Filed and served on the Debtor, its counsel, counsel to the Committee and, if filed after the Effective Date, the Liquidating Trustee, no later than the Administrative Claims Bar Date. Each request for payment of an Administrative Claim must set forth, at a minimum, (a) the name of the Holder of the Administrative Claim, (b) the amount of the Administrative Claim and (c) a detailed basis for the Administrative Claim. A failure to file any such request by the Administrative Claims Bar Date shall result in the Administrative Claim in question being discharged and its Holder being forever barred, estopped, and enjoined from asserting such Administrative Claim against the Debtor, its Estate or any other Entity.

A request for payment of an Administrative Claim that has been properly and timely Filed and served shall become an Allowed Administrative Claim unless an objection is filed by the date that is thirty (30) days after such request has been Filed and served. If a timely objection is Filed, the Administrative Claim in question shall become Allowed only to the extent set forth in a Final Order of the Bankruptcy Court.

Unless otherwise agreed by a Holder of an Allowed Administrative Claim and the Debtor or the Liquidation Trustee, as applicable, each Holder of an Allowed Administrative Claim and Claims for U.S. Trustee Fees will receive, in full and final satisfaction of its Administrative Claim, Cash in an amount equal to the Allowed amount of such Administrative Claim in accordance with the following: (1) if an Administrative Claim is Allowed as of the Effective Date, on the Effective Date; (2) if such Administrative Claim is not Allowed as of the Effective Date, no later than ten (10) days after the date on which an order Allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; or (3) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court or as otherwise agreed to between the Holder of such Allowed Administrative Claim and the Liquidation Trustee.

If an Administrative Claim is Allowed after the Effective Date and there are insufficient funds to pay such Allowed Administrative Claim from the Administrative and Priority Claims Reserve, any unpaid portion of such Allowed Administrative Claim shall be paid by the Liquidation Trustee from the Liquidation Trust Assets.

B.    *Professional Fee Claims*

1.    Final Fee Applications and Payment of Professional Fee Claims

Every Professional holding a Professional Fee Claim that has not previously been the subject of a final fee application and accompanying Bankruptcy Court order approving the same shall File a final application for payment of such Professional Fee Claim no later than 30 calendar days after the Effective Date.  Any such final fee application shall conform to and comply with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules. The last date to object to such final fee application shall be the 21st day after such fee application has been Filed, and all final fee applications shall be set for hearing on the same day, as the Bankruptcy Court's calendar permits, after consultation with counsel to the Debtor. The Liquidation Trustee shall pay the full amount of each Professional Fee Claim no later than ten (10) days following entry of a Final Order by the Bankruptcy Court Allowing such Professional Fee Claim from the funds held in the Professional Fee Escrow Account.

2.    Professional Fee Escrow Account

As soon as is reasonably practicable after the Effective Date, the Debtor shall fund the Professional Fee Escrow Account (from Cash on hand and the Initial Settlement Amount) in an amount sufficient to pay all expected Allowed Professional Fee Claims in full. The Professional Fee Escrow Account shall be held for the sole benefit of Estate Professionals until all Allowed Professional Fee Claims been paid in full. No Liens, claims, or interests of any kind shall encumber the Professional Fee Escrow Account or the Cash contained therein in any way. Funds held in the Professional Fee Escrow Account shall not be considered property of the Debtor's Estate or of the Post-Effective Date Debtor. Funds held in the Professional Fee Escrow Account shall be considered property of the Liquidation Trust to be distributed by the Liquidation Trustee under the terms and conditions set forth in the Plan and the Liquidation Trust Agreement.

Upon Allowance of a Professional Fee Claim, the same shall be paid as soon as reasonably practicable in Cash by the Liquidation Trustee from the funds held in the Professional Fee Escrow Account; *provided* that the Debtor's and the Liquidation Trustee's obligations to pay Allowed Professional Fee Claims shall not be limited or be deemed limited to funds held in the Professional Fee Escrow Account. To the extent that there are insufficient funds in the Professional Fee Escrow Account to satisfy all Allowed Professional Fee Claims in full, any such Allowed Professional Fee Claims (or portions thereof that remain unpaid from the Professional Fee Escrow Account) shall be paid as an Allowed Administrative Claim in accordance with Article II.A.

When all Allowed Professional Fee Claims have been irrevocably paid in full pursuant to one or more Final Orders of the Bankruptcy Court (as and if such Final Orders may be required), any remaining funds held in the Professional Fee Escrow Account shall be paid to the Liquidation Trust.

D2-0012

### 3. Professional Fee Escrow Amount

Each Professional shall provide a reasonable and good-faith estimate of its fees and expenses incurred in rendering services to the Debtor before and as of the Effective Date that are projected to be outstanding as of the Effective Date, and shall deliver such estimate to the Debtor no later than five days before the anticipated Effective Date; *provided*, *however*, that such estimate shall not be, nor shall it be deemed to be, an admission or limitation with respect to the amount of any Professional Fee Claim. If a Professional does not provide an estimate of its Professional Fee Claim, the Debtor may estimate the amount of unpaid and unbilled fees and expenses of such Professional. The aggregate amount of Professional fee estimates as of the Effective Date shall be utilized by the Debtor to determine the amount to be funded to the Professional Fee Escrow Account.

### 4. Post-Effective Date Fees and Expenses

Except as otherwise specifically provided in the Plan, from and after the Effective Date, the Liquidation Trustee may, in the ordinary course of business and without the need for any further notice to or action, order, or approval of the Bankruptcy Court, pay the reasonable, actual, and documented legal, professional, or other fees and expenses incurred on or after the Effective Date in connection with administering the Liquidation Trust and in accordance with the Plan, Liquidation Trust Agreement. Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate.

### C. *Priority Tax Claims*

### 1. Priority Federal Tax Claims

Except to the extent that a federal Governmental Unit Holder of an Allowed Priority Tax Claim agrees to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each federal Governmental Unit Holder of such Allowed Priority Tax Claim will receive, at the sole option of the Debtor or Liquidation Trustee, as applicable, either: (1) an amount of Cash from the ERC Fund equal to the amount of such Allowed Priority Tax Claim by the later of (a) ninety (90) days after the date on which such Priority Tax Claim becomes Allowed, or as soon as reasonably practicable thereafter, or (b) ten (10) days after the date on which the ERC Fund is funded; or (2) regular installment payments in Cash of a total value, as of the Effective Date, equal to the Allowed amount of such Claim over a period ending not later than five years after the Petition Date. For the avoidance of doubt, federal Governmental Unit Holders of Allowed Priority Tax Claims will receive interest on such Allowed Priority Tax Claims after the Effective Date in accordance with sections 511 and 1129(a)(9)(C) of the Bankruptcy Code.

### 2. Priority State Tax Claims

Except to the extent that a state Governmental Unit Holder of an Allowed Priority Tax

D2-0013

Claim agrees to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each state Governmental Unit Holder of such Allowed Priority Tax Claim will receive an amount of Cash equal to the amount of such Allowed Priority Tax Claim no later than ninety (90) days after the date on which such Priority Tax Claim becomes Allowed, or as soon as reasonably practicable thereafter. For the avoidance of doubt, state Governmental Unit Holders of Allowed Priority Tax Claims will receive interest on such Allowed Priority State Tax Claims after the Effective Date in accordance with sections 511 and 1129(a)(9)(C) of the Bankruptcy Code.

## ARTICLE III.
## CLASSIFICATION, TREATMENT, AND VOTING OF CLAIMS AND INTERESTS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Priority Tax Claims, and Professional Fee Claims have not been classified and thus are excluded from the Classes of Claims and Interests set forth in this Article III.

A. *Classification of Claims and Interests*

All Claims and Interests, other than the Claims addressed in Article II, are classified as set forth below in accordance with sections 1122 and 1123(a)(1) of the Bankruptcy Code.

| Class | Claim or Interest | Status | Voting Rights |
|-------|-------------------|--------|---------------|
| 1 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 2 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 3 | Convenience Claims | Impaired | Entitled to Vote |
| 4 | Pool Claims | Impaired | Entitled to Vote |
| 5 | Non-Pool Claims | Impaired | Entitled to Vote |
| 6 | Contingent Indemnification Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |

**D2-0014**

| Class | Claim or Interest | Status | Voting Rights |
|-------|-------------------|--------|---------------|
| 7 | Interests in the Debtor | Impaired | Not Entitled to Vote (Deemed to Reject) |

**B. Treatment and Voting of Classes of Claims and Interests**

1. Class 1 — Other Priority Claims

   (a) *Treatment*: Except to the extent that a Holder of an Allowed Other Priority Claim agrees to less favorable treatment, each Holder of an Allowed Other Priority Claim shall receive, in full and final satisfaction of such Claim, payment in full in Cash from the Liquidation Trustee on (or as soon as reasonably practicable after) the later of (i) the Effective Date or (ii) thirty (30) days after such Other Priority Claim becomes Allowed, or (iii) a date on which the Holder of such Other Priority Claim and the Debtor or Liquidation Trustee, as applicable, shall otherwise agree in writing.

   (b) *Voting*: Class 1 is Unimpaired under the Plan. Holders of Allowed Other Priority Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

2. Class 2 — Other Secured Claims

   (a) *Treatment*: Except to the extent that a Holder of an Allowed Other Secured Claim agrees to a less favorable treatment, each Holder of an Allowed Other Secured Claim shall receive, in full and final satisfaction of such Claim, at the sole option of the Debtor or Liquidation Trustee, as applicable, either:

   (i) payment in full in Cash on the later of (w) the Effective Date (or as soon as reasonably practicable thereafter), (x) the date on which such Other Secured Claim becomes Allowed, (y) the date payment on account of such Other Secured Claim is due; or (z) the date on which the Holder of such Allowed Other Secured Claim and the Debtor or the Liquidation Trustee, as applicable, shall otherwise agree in writing;

   (ii) the Debtor's interest in the collateral securing such Allowed Other Secured Claim; or

   (iii) other treatment that renders such Allowed Other Secured Claim Unimpaired.

   (b) *Voting*: Class 2 is Unimpaired under the Plan. Holders of Allowed Other Secured Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code and are not entitled to vote to accept

**D2-0015**

or reject the Plan.

3. Class 3 — Convenience Claims

   (a) *Treatment*: On the first Business Day that is thirty (30) days following the Effective Date, each Holder of a Convenience Claim shall receive, in full and final satisfaction of such Claim, payment in full in Cash.

   (b) *Voting*: Class 3 is Impaired under the Plan. Holders of Allowed Convenience Claims are entitled to vote to accept or reject the Plan.

4. Class 4 — Pool Claims

   (a) *Treatment*:

       (i) Subject to first seeking a recovery from any applicable insurance or other third parties pursuant to Article VI.G, on the Effective Date (or as soon as reasonably practicable thereafter) except to the extent that a Holder of an Allowed Pool Claim agrees to less favorable treatment, each Holder of an Allowed Pool Claim shall receive, in full and final satisfaction of such Claim, a beneficial interest in the insurance proceeds held by the Liquidating Trustee.

       (ii) Distributions from the Liquidating Trust to Holders of Allowed Pool Claims shall be paid in accordance with the terms of the Liquidating Trust Agreement. After accounting for the insurance proceeds for Pool Claims, the remaining amount of the Pool Claims shall receive beneficial interests in the Liquidation Trust and will be treated pro-rata with the non-Pool claims. For the avoidance of doubt, any treatment provided to one or more Holders of Pool Claims pursuant to the provisions of the Confirmation Order approving the Insurance Settlement Motion shall take precedence over the treatment provided in this Article III.B.5.

   (b) *Voting*: Class 4 is Impaired under the Plan. Holders of Allowed Pool Claims are entitled to vote to accept or reject the Plan.

5. Class 5- Non-Pool Claims

   (a) *Treatment*:

       (i) Subject to first seeking a recovery from any applicable insurance or other third parties pursuant to Article VI.G, on the Effective Date (or as soon as reasonably practicable thereafter) except to the extent that a Holder of an Allowed Non-Pool Claim agrees to less favorable treatment, each Holder of an Allowed Non-Pool Claim shall receive, in full and final satisfaction of such Claim, a beneficial interest in the Liquidation Trust. Thereafter each such Holder shall receive

**D2-0016**

Cash distributions from the Liquidation Trust. Distributions from the Liquidation Trust to Holders of Allowed Non-Pool Claims shall be on a Pro Rata basis with all other holders of Liquidation Trust beneficial interests in accordance with the terms of the Liquidation Trust Agreement. For the avoidance of doubt, only Consenting Creditors will have the right to receive distributions from the excess ERC Funds, if any.

(b) *Voting*: Class 5 is Impaired under the Plan. Holders of Allowed Non-Pool Claims are entitled to vote to accept or reject the Plan.

6. Class 6 — Contingent Indemnification Claims

(a) *Treatment*: On the Effective Date, all Contingent Indemnification Claims shall be Disallowed pursuant to section 502(e)(1)(B) of the Bankruptcy Code. Holders of Contingent Indemnification Claims shall not receive any distribution on account of such Claims.

(b) *Voting*: Class 6 is Impaired under the Plan. Holders of Contingent Indemnification Claims are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

7. Class 7 — Interests in the Debtor

(a) *Treatment*: On the Effective Date, all Interests in the Debtor shall be cancelled, released, discharged, and extinguished. Holders of Interests in the Debtor shall not receive any distribution on account of such Interests.

(b) *Voting*: Class 7 is Impaired under the Plan. Holders of Interests in the Debtor are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

C. *Elimination of Vacant Classes*

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

D. *Voting Classes; Presumed Acceptance by Non-Voting Classes*

If a Class contains Claims or Interests eligible to vote and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Debtor shall request the

**D2-0017**

Bankruptcy Court to deem the Plan accepted by the Holders of such Claims or Interests in such Class.

### E.   *Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code*

To the extent any Class is impaired under the Plan and such Class fails to accept this Plan in accordance with section 1126(c) or (d) of the Bankruptcy Code, the Debtor hereby requests that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code. The Debtor reserves the right to modify the Plan in accordance with Article XI to the extent, if any, that Plan confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims to render such Class of Claims Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

## <u>ARTICLE IV.</u>
## <u>MEANS FOR IMPLEMENTATION OF THE PLAN</u>

A.   *Sources of Consideration for Plan Distributions*

Sources of consideration for Plan distributions shall be: (1) Cash on hand; (2) the Debtor's insurance policies including settlements with any insurance carrioer; (3) any cause of action against third parties, including ERTC Refund Claims; and, (4) the Liquidation Trust Assets.

B.   *General Settlement of Claims*

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, and controversies resolved pursuant to the Plan.

C.   *Insurance Settlements*

The Plan incorporates the Insurance Settlement, as provided in any Plan Supplement, as if set forth fully in the Plan. The Insurance Settlement Motion shall be approved as part of the Plan pursuant to the Confirmation Order.

**D2-0018**

D.    *Post-Effective Date Debtor and Liquidation Trust*

1.    <u>Post-Effective Date Debtor and the Liquidation Trust</u>

On the Effective Date, the Liquidation Trust will be formed pursuant to the Liquidation Trust Agreement to receive and liquidate the Liquidation Trust Assets and wind down the Debtor's Estate. In addition, the Liquidation Trustee shall serve as a successor to the Debtor pursuant to sections 1123(a)(5)(B) and (b)(3)(B) of the Bankruptcy Code to: (a) administer the terms of the Plan including making payments in accordance with Articles II and III to all Holders of Claims and interests; (b) make distributions pursuant to the Liquidation Trust Agreement; (c) assert any Cause of Action on behalf of the Debtor that constitutes a Liquidation Trust Asset; and (d) take such other action as may be authorized by the Liquidation Trust Agreement, including objecting to any and all Claims other than Professional Fee Claims.

Upon the transfer of the Liquidation Trust Assets, as more fully set forth in the Liquidation Trust Agreement, the Debtor will have no reversionary or further interest in or with respect to the Liquidation Trust Assets. For U.S. federal income tax purposes, the beneficiaries of the Liquidation Trust will be treated as grantors and owners thereof and it is intended that the Liquidation Trust be classified as a liquidating trust under Section 301.7701-4 of the Treasury Regulations. Accordingly, for U.S. federal income tax purposes, it is intended that the beneficiaries of the Liquidation Trust be treated as if they had received an interest in the Liquidation Trust Assets and then contributed such interests to the Liquidation Trust.

On the Effective Date, the authority, power, and incumbency of the persons acting as managers or officers of the Debtor shall be deemed to have resigned and the Liquidation Trustee shall be appointed as the sole manager, director, and officer of the Post-Effective Date Debtor and shall succeed to the powers of the Debtor's managers, directors, and officers. From and after the Effective Date, the Liquidation Trustee shall be the sole representative of, and shall act for, the Post-Effective Date Debtor. The Post-Effective Date Debtor or the Liquidation Trustee, as applicable, shall be deemed to be substituted in lieu of the Debtor as the proper party in interest in all matters, including (a) motions, contested matters, and adversary proceedings pending in the Bankruptcy Court, and (b) all matters pending in any courts, tribunals, forums, or administrative proceedings outside of the Bankruptcy Court, in each case without the need or requirement for the Post-Effective Date Debtor or the Liquidation Trustee to file motions or substitutions of parties or counsel in any such matter.

E.    *Corporate Action*

On or before the Effective Date, as applicable, all actions contemplated under the Plan or in any of the documents contained the Plan Supplement, if any (including any action to be undertaken by the Post-Effective Date Debtor or Trustee, as applicable), shall be deemed authorized and approved, and, to the extent taken by the Debtor prior to the Effective Date, ratified, confirmed and approved without any requirement for further action by Holders of Claims or Interests, the Debtor, or any other Entity in all respects. All matters provided for in the Plan involving the corporate structure of the Debtor or the Post-Effective Date Debtor, as applicable, and any corporate action required by the Debtor or the Post-Effective Date Debtor in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of

**D2-0019**

further action by the security holders, directors, managers, or officers of the Debtor or the Post-Effective Date Debtor, as applicable.

Upon the Effective Date or as soon as reasonably practicable thereafter, after making all distributions required to be made under the Plan, the Debtor shall be deemed to have been dissolved and terminated and the Liquidation Trustee shall be responsible for effectuating such dissolution. On or (as applicable) prior to the Effective Date, the appropriate officers of the Debtor or the Post-Effective Date Debtor or the Liquidation Trustee, as applicable, shall be authorized to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Debtor or Post-Effective Date Debtor. The authorizations and approvals contemplated by this Article IV.F. shall be effective notwithstanding any requirements under non-bankruptcy law.

F.      *Vesting of Assets*

Except as otherwise provided in the Plan or the Plan Supplement, or in any agreement, instrument, or other document incorporated in the Plan, on the Effective Date, all property of the Debtor's Estate, all Causes of Action, any property acquired by the Debtor under the Plan, and any proceeds of any of the foregoing shall automatically vest in the Liquidation Trust free and clear of all Liens, Claims, interests, charges, or other encumbrances. On and after the Effective Date, except as otherwise provided in the Plan, the Liquidation Trustee may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, except as otherwise provided in the Liquidation Trust Agreement.

G.      *Effectuating Documents; Further Transactions*

On and after the Effective Date, the Liquidation Trustee is authorized to and may issue, execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and the documents contained in the Plan Supplement, in the name of and on behalf of the Debtor, without the need for any approvals, authorizations, or consents except for those expressly required under the Plan.

H.      *Exemptions from Certain Taxes and Fees*

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, no transfers of property under the Plan shall be subject in any way to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, including but not limited to (1) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in either Trust; or (2) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instruments of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan. Each appropriate state or local government officials or agents shall forego collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing

**D2-0020**

instruments or other documents without the payment of any such tax or governmental assessment.

All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(c) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

I. *Preservation of Causes of Action*

Except as otherwise provided in this Plan, an agreement or document entered into in connection with the Plan, or in a Final Order of the Bankruptcy Court, pursuant to section 1123(b) of the Bankruptcy Code and as set forth more fully in the Disclosure Statement, the Debtor reserves and, as of the Effective Date, assigns to the applicable Trust the Causes of Action identified in the Plan Supplement as Retained Causes of Action. On and after the Effective Date, the Liquidation Trustee may pursue Retained Causes of Action on behalf of and for the benefit of the Trust beneficiaries.

No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Liquidation Trustee will not pursue any and all available Causes of Action against it. Unless any Cause of Action against an Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order of the Bankruptcy Court, the Liquidation Trustee expressly reserves all Causes of Action for later adjudication, and, therefore no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of Plan confirmation or Consummation.

The Debtor, the Liquidation Trustee reserves such Causes of Action notwithstanding the rejection of any Executory Contract or Unexpired Lease during the Chapter 11 Case or pursuant to the Plan. The Liquidation Trustee shall retain and shall have, including through their authorized agents or representatives, the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

For avoidance of doubt, the Debtor's Employee Retention Credit Claim is preserved as a claim of the Trust as though pursued by the Debtor under applicable provisions of Title 26.

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A. *Assumption or Rejection of Executory Contracts and Unexpired Leases*

On the Effective Date, except as otherwise provided in the Plan, all Executory Contracts and Unexpired Leases shall be deemed rejected as of the Effective Date pursuant to section 365 of the Bankruptcy Code, without the need for any further notice to or action, order, or approval of the Bankruptcy Court, unless an Executory Contract or Unexpired Lease: (1) was previously assumed

**D2-0021**

or rejected by the Debtor; (2) previously expired or terminated pursuant to its own terms; (3) is the subject of a pending motion to assume filed on or before the Effective Date; or (4) is identified on the Assumed Executory Contract and Unexpired Lease List.

Entry of the Confirmation Order shall constitute a Bankruptcy Court order pursuant to sections 365 and 1123(b) of the Bankruptcy Code approving the assumptions, assumptions and assignments, or rejections described above as of the Effective Date.

B. *Claims Based on Rejection of Executory Contracts or Unexpired Leases*

Unless otherwise provided by a Final Order of the Bankruptcy Court, all Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be the subject of a Proof of Claim Filed with the Bankruptcy Court and served on the Post-Effective Date Debtor no later than thirty (30) days after the later of (i) the Effective Date or (ii) the date of entry of a Bankruptcy Court order approving such rejection. Such Proof of Claim may be objected to in accordance with the provisions of Article VIII and the applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

Any Claim arising from the rejection of an Executory Contract or Unexpired Lease that is not the subject of a timely Filed Proof of Claim shall be Disallowed for all purposes in this Chapter 11 Case, discharged, and forever barred.

C. *Cure of Defaults and Objections to Cure and Assumption*

Any monetary defaults under each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash on the Effective Date, subject to the limitation described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.

The Debtor shall provide notices of proposed cure amounts to counterparties to Executory Contracts and Unexpired Leases as part of the Plan Supplement. Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption or related cure amount must be Filed, served, and actually received by counsel to the Debtor no later than the Confirmation Objection Deadline. Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or cure amount will be deemed to have assented to such assumption or cure amount.

Assumption, or assumption and assignment, of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption. **Any Proof of Claim filed with respect to an Executory Contract or Unexpired Lease that has been assumed shall be deemed Disallowed for all purposes in this Chapter 11 Case, discharged, forever barred, and expunged without further notice to or action, order, or approval of the Bankruptcy Court.**

**D2-0022**

D.    *Insurance Policies*

Notwithstanding anything to the contrary herein, each of the insurance policies and any agreements, documents, or instruments relating thereto issued to or entered into by the Debtor prior to the Petition Date shall not be considered Executory Contracts and shall neither be assumed nor rejected by the Debtor; *provided, however*, that to the extent any such insurance policy is determined by Final Order to be an Executory Contract, then, notwithstanding anything contained in the Plan to the contrary, the Plan will constitute a motion to assume such insurance policy and assign the same to the Liquidation Trust.  Subject to the occurrence of the Effective Date, the entry of the Confirmation Order will constitute approval of such assumption and assignment pursuant to section 365 of the Bankruptcy Code. Unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed by the parties thereto prior to the Effective Date, no payments are required to cure any defaults of the Debtor existing as of the Confirmation Date with respect to any insurance policy, and prior payments for premiums or other charges made prior to the Petition Date under or with respect to any insurance policy shall be indefeasible. Nothing in the Plan, the Plan Supplement, the Confirmation Order, or any other order of the Bankruptcy Court, (1) alters, modifies, or otherwise amends the terms and conditions of (or the coverage provided by) any of such insurance policies or (2) alters or modifies the duty, if any, that the insurers or third-party administrators pay claims covered by such insurance policies.

E.    *Modifications, Amendments, Supplements, Restatements, or Other Agreements*

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and Executory Contracts and Unexpired Leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Except as otherwise provided in a Final Order, modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtor during the Chapter 11 Case shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

F.    *Reservation of Rights*

Neither the exclusion nor inclusion of any contract or lease on Schedule G of the Debtor's Schedules, nor anything contained in the Plan or the Plan Supplement shall constitute an admission by the Debtor or any other party that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Post-Effective Date Debtor has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtor, the Liquidation Trustee, as applicable, shall have thirty (30) calendar days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease to assume or reject it, including by rejecting such contract or lease effective as of the Confirmation Date.

**D2-0023**

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

A.    *Rights and Powers of the Debtor, Post-Effective Date Debtor and the Liquidation Trustee*

On and after the Effective Date, the Liquidation Trustee and its designees or representatives shall have the right to object to, Allow, or otherwise resolve any Claim subject to the terms hereof and the Liquidation Trust Agreement.

The Post-Effective Date Debtor or the Liquidation Trustee, as applicable, shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court. Additionally, in the event that the Liquidation Trustee is so ordered after the Effective Date, all costs and expenses of procuring any such bond or surety shall be paid for with Cash from the Liquidation Trust Assets.

B.    *Delivery of Distributions and Undeliverable or Unclaimed Distributions*

1.    Delivery of Distributions in General

Except as otherwise provided in the Plan or the applicable Liquidating Trust Agreement, distributions to Holders of Allowed Claims shall be made to Holders of record as of the Effective Date by the Trustee or other third parties, as applicable: (a) to the party designated to receive payment on any Proof of Claim or Proof of Interest; or (b) at the addresses set forth in any written notices of address changes delivered to the Trustee after the Effective Date. Neither the Post-Effective Date Debtor nor the Trustee shall incur any liability whatsoever on account of any distributions under the Plan except for fraud, gross negligence, or willful misconduct.

2.    Minimum; De Minimis Distributions

No Cash payment of less than $50.00 shall be made to a Holder of an Allowed Claim on account of such Allowed Claim unless provided otherwise in one of the Trust Agreements, as applicable.

3.    Undeliverable Distributions and Unclaimed Property

In the event that any distribution to any Holder is returned as undeliverable, no distribution to such Holder shall be made unless and until the Liquidation Trustee has determined the then-current address of such Holder, at which time such distribution shall be made to such Holder without interest; *provided, however*, that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of 180 days from the later of (a) the Effective Date and (b) the date of the distribution. After such date, all unclaimed property or interests in property shall revert (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary) to the Liquidation Trust automatically and without need for a further order by the Bankruptcy Court, for distribution in accordance with the Plan and the Claim of any Holder to such property or interest in property shall be released, settled,

**D2-0024**

compromised, and forever barred.

Neither the Liquidation Trustee nor his respective agents and attorneys are under a duty to take any action to either (a) attempt to locate any Holder, or (b) obtain an executed Internal Revenue Service Form W-9 from any Holder; *provided* that in his sole discretion, the Liquidation Trustee may periodically publish notice of unclaimed distributions.

If, at the time the Trust terminates there remains unclaimed property in such Trust, such property shall be donated by the Trustee to the Santa Rosa de Lima Catholic Church of Florence, Texas, to assist in the provision of resources for research and education.

C.    *Manner of Payment*

At the option of the Trustee, any Cash payment to be made under the Plan may be made by check or wire transfer or as otherwise required or provided in applicable agreements.

D.    *Compliance Matters*

In connection with the Plan and all distributions hereunder, to the extent applicable, the Trustee is authorized to take any and all actions that may be necessary or appropriate to comply with all tax withholding and reporting requirements imposed on him by any Governmental Unit, and all distributions pursuant to the Plan or pursuant to the Liquidation Trust Agreement shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Trustee shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of a distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms he believes are reasonable and appropriate. The Trustee reserves the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens and encumbrances. All Persons holding Claims shall be required to provide any information necessary to effect information reporting and the withholding of such taxes. Notwithstanding any other provision of the Plan to the contrary, each Holder of an Allowed Claim shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding, and other tax obligations, on account of such distribution.

E.    *Allocation Between Principal and Accrued Interest*

Except as otherwise provided in the Plan, the aggregate consideration paid to Holders with respect to their Allowed Claims shall be treated pursuant to the Plan as allocated first to the principal amount of such Allowed Claims (to the extent thereof) and, thereafter, to the interest, if any, on such Allowed Claim accrued through the Petition Date.

F.    *Setoffs and Recoupment*

Unless otherwise provided in the Plan or the Confirmation Order, the Post-Effective Date

**D2-0025**

Debtor and the Trustee may, pursuant to the Bankruptcy Code, applicable non-bankruptcy law, or as may be agreed to by the Holder of a Claim, set off against or recoup any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim, any claims, rights, and Causes of Action of any nature that such Post-Effective Date Debtor or Trustee, as applicable, may hold against the Holder of such Allowed Claim. In no event shall any Claim Holder be entitled to set off or recoup any such Claim against any claim, right, or Cause of Action of the Post-Effective Date Debtor or either Trustee (as applicable), unless such Holder has filed a motion with the Bankruptcy Court requesting the authority to implement such setoff or recoupment on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of setoff or recoupment pursuant to section 553 of the Bankruptcy Code or otherwise.

G.    *Claims Paid or Payable by Third Parties*

    1.    <u>Claims Payable by Insurance</u>

With the exception of the proceeds the subject of the *Insurance Settlement* with Federated Insurance, no distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtor's insurance policies, surety agreements, other non-Debtor payment agreements, or collateral held by a third party until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy, surety agreement, other non-Debtor payment agreement, or collateral, as applicable. To the extent that one or more of the Debtor's insurers, sureties, or non-Debtor payors pays or satisfies a Claim in full or in part, or such collateral or proceeds from such collateral is used to satisfy such Claim, then immediately upon such payment, the applicable portion of such Claim shall be expunged and Disallowed without the need for a Claim objection to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

    2.    <u>Applicability of Insurance Policies</u>

Except as otherwise provided in the Plan, the Insurance Settlement Motion or any other order of the Bankruptcy Court, distributions to Holders of Allowed Claims shall be in accordance with the provisions of an applicable insurance policy. Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtor or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained in the Plan constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

    3.    <u>Claims Paid by Third Parties</u>

The Trustee shall be authorized to reduce in full, or in part, a Claim, and such Claim shall be Disallowed without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment on its Claim from a party that is not a Debtor, including on account of recourse to collateral held by third parties that secure such Claim. To the extent a Claim Holder receives a distribution on account of such Claim and also receives payment from a party that is not a Debtor on account of such Claim, such Holder shall, within fourteen (14) days of receipt thereof, repay or

**D2-0026**

return the distribution to the Trustee to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.

**ARTICLE VII.**
**RESERVES ADMINISTERED BY**
**THE LIQUIDATION TRUSTEE**

A.    *Establishment of Reserve Accounts*

The Liquidation Trustee shall establish each of the Distribution Reserve Accounts, which, notwithstanding anything to the contrary contained in this Plan, may be effectuated by either establishing a segregated account or establishing book entry accounts, in the sole discretion of the Liquidation Trustee.

B.    *Administrative and Priority Claims Reserve*

On the Effective Date, the Debtor shall fund and the Liquidation Trustee shall establish the Administrative and Priority Claims Reserve. The Administrative and Priority Claims Reserve shall be used to pay Allowed Administrative and Priority Claims. If all or any portion of an Administrative or Priority Claim shall become a Disallowed Claim, then the amount on deposit in the Administrative and Priority Claims Reserve attributable to such surplus or such Disallowed Claim, including the interest that has accrued on said amount while on deposit in such Reserve, shall remain in the Administrative and Priority Claims Reserve to the extent that the Liquidation Trustee determines necessary to ensure that the Cash remaining in the Administrative and Priority Claims Reserve is sufficient to ensure that all Allowed Administrative and Priority Claims will be paid in accordance with the Plan.

C.    *Pool Claimant Reserve*

On the Effective Date, the Liquidation Trustee shall establish the Pool Claimant Reserve. The Pool Claimant Reserve shall be used to pay Allowed Class 4 Pool Claims. If all or any portion of a Pool Claim shall become a Disallowed Claim, then the amount on deposit in the Pool Claimant Reserve attributable to such surplus or such Disallowed Claim, including any interest that has accrued on said amount while on deposit in such Reserve, shall remain in the Pool Claimant Reserve to the extent that the Trustee determines necessary to ensure that the Cash remaining in the Pool Claimant Reserve is sufficient to ensure that all Allowed Pool Claims will be paid in accordance with the Plan.

The Debtor shall not have any reversionary or other interest in or with respect to any of the Distribution Reserve Accounts.

**D2-0027**

# ARTICLE VIII.
## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS AND INTERESTS

A.      *Applicability.*

All Disputed Claims against the Debtor, other than Administrative Expense Claims, shall be subject to the provisions of this Article VIII. All Administrative Expense Claims shall be determined and, if Allowed, paid in accordance with Article II.

B.      *Allowance of Claims and Interests*

After the Effective Date, the Trustee shall have and retain any and all rights and defenses the Debtor had with respect to any Claim or Interest immediately prior to the Effective Date, except with respect to any Claim Allowed pursuant to the Plan or Final Order of the Bankruptcy Court entered before the Effective Date. Except as expressly provided in the Plan or in any Final Order of the Bankruptcy Court entered prior to the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan, the Bankruptcy Code, or the Bankruptcy Court has entered a Final Order (including the Confirmation Order) in the Chapter 11 Case allowing such Claim. All settled Claims approved prior to the Effective Date pursuant to a Final Order of the Court pursuant to Bankruptcy Rule 9019 or otherwise, if any, shall be binding on all parties.

C.      *Claims Administration Responsibilities.*

Except as otherwise specifically provided in the Plan, after the Effective Date the Liquidation Trustee shall have the sole authority to: (1) file, withdraw, or litigate to judgment objections to Claims or Interests, except for Professional Fee Claims; (2) settle or compromise any Disputed Claim or Interest without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) administer the Claims Register and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court. For the avoidance of doubt, except as otherwise provided in the Plan, from and after the Effective Date, the Liquidation Trustee shall have and retain any and all rights and defenses the Debtor had immediately prior to the Effective Date with respect to any Disputed Claim or Interest, including the Causes of Action retained pursuant to Article IV.I.

D.      *Estimation of Claims and Interests*

Before or after the Effective Date, the Debtor or the Liquidation Trustee, as applicable, may at any time request that the Bankruptcy Court estimate any Disputed Claim or Interest that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest, including during the litigation of any objection to any Claim or Interest or during the appeal relating to such objection. Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be

**D2-0028**

estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim or Interest, that estimated amount shall constitute a maximum limitation on such Claim or Interest for all purposes under the Plan (including for purposes of distributions), and the Liquidation Trustee may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim or Interest.

E.    *Adjustment to Claims Without Objection*

Any duplicate Claim or Interest or any Claim or Interest that has been paid, satisfied, amended, or superseded may be adjusted or expunged on the Claims Register by the Liquidation Trustee without the Liquidation Trustee having to file an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim or Interest and without any further notice to or action, order, or approval of the Bankruptcy Court.

F.    *No Distributions Pending Allowance*

Notwithstanding any other provision hereof, if any portion of a Claim or Interest is a Disputed Claim or Interest, as applicable, no payment or distribution provided hereunder shall be made on account of such Claim or Interest unless and until such Disputed Claim or Interest becomes Allowed.

G.    *Disallowance of Claims*

Any Claims held by Entities from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be deemed Disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Debtor by that Entity have been turned over or paid to the Debtor or the Liquidation Trustee.

H.    *Claim Amendment Deadline*

***ANY AMENDMENTS TO ANY CLAIM TIMELY FILED BY THE BAR DATE MUST BE MADE WITHIN THIRTY (30) DAYS FOLLOWING THE EFFECTIVE DATE. ANY AMENDMENTS FILED MORE THAN THIRTY (30) DAYS AFTER THE EFFECTIVE DATE SHALL BE DEEMED INEFFECTIVE WITHOUT ANY FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE COURT, AND HOLDERS OF SUCH CLAIMS MAY NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH AMENDED CLAIMS.***

I.    *Initial Distributions*

As provided for in the Liquidating Trust Agreement, the Trustee may make an initial distribution to the o allow prompt Distribution of Trust assets, as soon as practicable, the Trustee in his sole discretion,

**D2-0029**

may make an initial Distribution to the allowed Pool Claimants while reserving a portion of the Pool Claim Reserve for the Disputed Claims. To the extent that a Disputed Claim or Interest ultimately becomes an Allowed Claim or Interest, distributions (if any) shall be made to the Holder of such Allowed Claim or Interest in accordance with the provisions of the Plan. As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim or Interest becomes a Final Order, the Liquidation Trustee shall provide to the Holder of such Claim or Interest a partial distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, without any interest to be paid on account of such Claim or Interest. The Liquidating Trustee shall, after completing the claim objection process, make a final distribution to all allowed claims.

*J.*       *No Interest*

Unless otherwise specifically provided for by the Plan or the Confirmation Order, or unless otherwise required by applicable bankruptcy law, no postpetition interest shall accrue or be paid on any Claim or Interest and no Holder of any Claim or Interest shall be entitled to interest accruing on or after the Petition Date.

## ARTICLE IX.
## SETTLEMENT, RELEASE, EXCULPATION, AND RELATED PROVISIONS

*A.*       *Compromise and Settlement of Claims, Interests, and Controversies*

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, including specifically the Insurance Settlement, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtor, its Estate, and Holders of Claims and Interests and is fair, equitable, and reasonable.

*B.*       **Release of Liens**

**Except as otherwise provided in the Plan, the Plan Supplement, or any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estate shall be fully released, settled, compromised, and satisfied, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert automatically to the Debtor and its successors and assigns. Any Holder of such Secured Claim (and the applicable agents for such Holder) shall be authorized and directed to release any collateral or other property of the Debtor (including any cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder) and to take such actions as may be reasonably requested by the Debtor or the Liquidation Trustee to evidence the release of such Lien, including the execution, delivery, and filing or recording**

**D2-0030**

of such releases. The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

C.    *Release by the Debtor, its Estate, and the Post-Effective Date Debtor*

**Pursuant to section 1123(b) of the Bankruptcy Code, upon payment in full of the Settlement Payment as provided in Article IV.C, and in exchange for other good and valuable consideration, the adequacy of which is hereby confirmed, the Debtor, its Estate, and the Post-Effective Date Debtor shall be deemed to have expressly, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged each and all of the Released Parties from any and all claims, causes of action, interests, damages, remedies, demands, rights, actions (including Avoidance Actions), suits, debts, sums of money, obligations, judgments, liabilities, accounts, defenses, offsets, counterclaims, crossclaims, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, now existing or hereafter arising, contingent or non-contingent, liquidated or unliquidated, choate or inchoate, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise that the Debtor, the Post-Effective Date Debtor, or the Estate has, have or may have against the Released Parties.**

**Notwithstanding anything contained herein to the contrary, the foregoing release does not release any obligations of any Released Party under the Plan or any document, instrument, or agreement executed to implement the Plan.**

D.    *Consensual Claimant Release*

**As of the Final Payment Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed to the maximum extent permitted under applicable law, all Consenting Creditors shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each Released Party of and from any and all Causes of Action based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, the Estate, their respective current or former assets and properties, the Chapter 11 Case, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between the Debtor and any Released Party, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan Documents or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation or implementation thereof, the pursuit of Plan confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing; *provided*, *however*, that the releases set forth in this Article IX.D shall not, and shall not be construed to:  (a) release any post-Effective Date obligations under the Plan Documents or any document, instrument, or agreement executed to implement the Plan; (b) impair any recoveries**

**D2-0031**

that may be sought with respect to any Insurance Actions, or (c) modify, reduce, impair or otherwise affect the ability of any Consenting Creditors to recover from the Trusts in accordance with the Plan and the Trust Documents. If, following the Final Payment Date, any portion of the Settlement Payment is clawed back, the releases set forth this Article IX.D shall be void. If such releases become void, then the relevant Statute of Limitations applicable to any claim or Cause of Action that could then be asserted against the Released Parties shall be tolled and extended to the date that is ninety (90) days following the date that such releases become void and notice of the same is published by the Trusts. Any Released Party may enforce the Consensual Claimant Release before the Bankruptcy Court, which shall retain jurisdiction for such purpose, at its own cost and expense.

E.      *Exculpation*

Upon the Effective Date, to the fullest extent permissible under applicable law, no Exculpated Party shall have or incur, and each Exculpated Party is released and exculpated from, any liability to any Holder of a Claim or Interest, or any other party in interest, for any claim or cause of action arising from the Petition Date through the Effective Date, arising from, relating to, or connected with the administration of the Chapter 11 Case, the Disclosure Statement, the preparation of the Plan, the solicitation of acceptances of the Plan, the pursuit of confirmation of the Plan, the Consummation of the Plan, or the administration of the Plan or property to be distributed under the Plan, except for claims related to any act or omission that is determined in a Final Order of a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence. The Exculpated Parties shall be deemed to have, participated in good faith in connection with the above and entitled to the protection of section 1125(e) of the Bankruptcy Code. Each Exculpated Party shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.

F.      *Releases by the Debtor and the Settlement Parties of Holders of Claims in Class 4*

As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, as an integral component of the Plan, to the maximum extent permitted under applicable law, Released Parties shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each of the Holders of Claims in Class 4 (Pool Claims) of and from any and all Causes of Action based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, the Estate, their respective current or former assets and properties, the Chapter 11 Case, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between the Debtor and any such Holder, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan Documents or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation or implementation thereof, the pursuit of Plan confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing; provided, however, that the releases set forth in this Article IX.F shall not, and shall not be construed to: (a) release any post-Effective Date obligations under the Plan Documents or any document, instrument, or agreement executed to implement the Plan; (b) impair any recoveries that may be sought with respect to any Insurance Actions, or (c) modify, reduce, impair or otherwise affect the ability of any Consenting Creditors to recover from

**D2-0032**

**the Trusts in accordance with the Plan and the Trust Documents.**

G.    *Recoupment*

In no event shall any Holder of Claims or Interests be entitled to recoup any Claim or Interest against any claim, right, or Cause of Action of the Debtor or the Post-Effective Date Debtor, as applicable, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtor on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

H.    *Term of Injunctions or Stays*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Case (pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court) and existing on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

I.    **Channeling Injunction**
1.    <u>Purpose</u>
**As of the Effective Date, to facilitate the liquidation of Channeled Claims by the Liquidating Trust to preserve and promote the settlement framework contemplated by and provided for in the Plan, including the Insurance Settlement, pursuant to the equitable jurisdiction and power of the Bankruptcy Court under the Bankruptcy Code, the Bankruptcy Court shall issue the channeling injunction set forth in this <u>Article IX.I</u> (the "<u>Channeling Injunction</u>").**

2.    <u>Protections Afforded to Released Parties</u>
**Subject to the terms of <u>Article IX.I.5</u>, and while the Channeling Injunction is in full force and effect as to any Channeled Claim, the sole recourse of any Holder of a Channeled Pool Claim that is eligible for compensation under the Liquidating Trust Distribution Procedures, as defined in the Liquidating Trust Agreement, on account of such Channeled Pool Claim shall be to and against the Liquidating Trust pursuant to the Liquidating Trust Documents, and such Holder shall have no right to assert such Channeled Pool Claim or any Claim against the Debtor against any Released Party.  Accordingly, on or after the Effective Date, and subject to the terms of <u>Article IX.I.5</u>, all Persons that have held or asserted, currently hold or assert, or that may in the future hold or assert, any Channeled Claim shall be stayed, restrained, and enjoined from taking any action for the purpose of directly, indirectly, or derivatively collecting, recovering, or receiving payment, satisfaction, or recovery from any Released Party with respect to any such Channeled Claim, other than from the Trusts, including:**

**D2-0033**

    a.   commencing, conducting, or continuing, in any manner, whether directly, indirectly, or derivatively, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum in any jurisdiction around the world against or affecting any Released Party, or any property or interest in property of any Released Party;

    b.   enforcing, levying, attaching (including any prejudgment attachment), collecting or otherwise recovering, by any manner or means, either directly or indirectly, any judgment, award, decree, or order against or affecting any Released Party, or any property or interest in property of any Released Party;

    c.   creating, perfecting or otherwise enforcing in any manner, whether directly or indirectly, any encumbrance of any kind against any Released Party, or any property or interest in property of any Released Party;

    d.   asserting, implementing, or effectuating any setoff, right of reimbursement, subrogation, indemnity, contribution, reimbursement, or recoupment of any kind, in any manner, directly or indirectly, against any obligation due to any Released Party, or any property or interest in property of any Released Party; or

    e.   taking any act in any manner, and in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents or with regard to any matter that is within the scope of the matters designated by the Plan to be subject to resolution by the Trusts, except in conformity and compliance with the Plan Documents with respect to any such Channeled Claim.

**3.**    <u>Reservations</u>

Notwithstanding anything to the contrary in this <u>Article IX.I</u>, this Channeling Injunction shall not enjoin:

**D2-0034**

a. the rights of Holders of Channeled Pool Claims to assert such Claims against the Liquidating Trust in accordance with the Liquidating Trust Distribution Procedures;

b. the rights of holders of Channeled Claims to assert any claims that are not Channeled Claims against any Released Party;

c. the rights of holders of Channeled Claims to assert such Claims against any Released Party if the Channeling Injunction is terminated under **Article IX.I.5.**

d. the Trust from enforcing its rights under the Plan and the Confirmation Order;

e. the rights of the Trust to prosecute any action against an Insurance Company based on or arising from an Insurance Policy.

f. the rights of the Trust to prosecute any Retained Estate Causes of Action; and

g. the rights of holders of Channeled Claims to seeking recovery from any Person, Entity, or Governmental Unit that is not a Released Party on account of their Channeled Claims or any other claim or Cause of Action.

**4.** **Enforcement**

Any Released Party may enforce the Channeling Injunction before the Bankruptcy Court, which shall retain jurisdiction for such purpose, at its own cost and expense.

**5.** **Termination of Channeling Injunction**

The Channeling Injunction and all protections afforded to the Released Parties set forth in this **Article IX.I** shall terminate automatically (or not take effect) as to the Holder of any Channeled Claims if a Settlement Payment Default occurs and is not cured within Settlement Payment Cure Period or waived by the Liquidating Trustee in accord with **Article IV.B.2**, or if the Estate Release or the Consensual Claimant Release become void for any reason.

**6.** **Tolling of Statute of Limitations**

While the Channeling Injunction is in effect as to any Channeled Claim, and for ninety (90) days following the termination of the Channeling Injunction under **Article IX.I.5**, the running of any relevant Statute of Limitations shall be tolled as to any Channeled Claim.

## ARTICLE X.
## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

*A.* *Conditions Precedent to the Effective Date.*

It shall be a condition to the Effective Date that the following conditions shall have been satisfied or waived pursuant to Article X.B:

**D2-0035**

1. the Bankruptcy Court shall have entered the Confirmation Order;

2. the settlement shall have occurred with Federated Insurance;

3. the Liquidation Trust shall be established and funded and the Liquidation Trustee shall have been appointed in accordance with the provisions of the Plan and the terms of the Liquidation Trust Agreement;

4. the Debtor shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan;

5. substantially final version of the Plan Supplement and all of the schedules, documents, and exhibits contained therein, and all other schedules, documents, supplements and exhibits to the Plan, shall have been filed;

6. the Administrative and Priority Claims Reserve shall have been established and funded;

7. the Pool Claims Reserve shall have been established and funded; and

8. the Professional Fee Escrow shall have been established and funded.

B.    *Waiver of Conditions Precedent*

The Debtor may agree to waive any of the conditions to the Effective Date set forth above at any time without any notice to any other parties in interest and without any further notice to or action, order, or approval of the Bankruptcy Court, and without any formal action other than proceeding to confirm and consummate the Plan.

C.    *Substantial Consummation*

"Substantial Consummation" of the Plan, as defined in 11 U.S.C. § 1101(2), shall be deemed to occur on the Effective Date.

## ARTICLE XI.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

A.    *Modification of Plan*

Subject to section 1127 of the Bankruptcy Code and, to the extent applicable, sections 1122, 1123 and 1125 of the Bankruptcy Code, the Debtor may propose in writing to alter, amend, or modify materially the Plan prior to or after Confirmation. Holders of Claims and Interests that have accepted the Plan shall be deemed to have accepted the Plan as altered, amended, or modified; *provided, however*, that any Holders of Claims and Interests who were deemed to accept the Plan because such Claims or Interests were Unimpaired shall continue to be deemed to accept the Plan only if, after giving effect to such amendment or modifications, such Claims and Interests continue

**D2-0036**

to be Unimpaired. For purposes of this Article XI only, the Liquidation Trustee shall be deemed a Proponent entitled to seek amendment of the Plan under section 1127 of the Bankruptcy Code.

B.      *Revocation or Withdrawal of Plan*

The Debtor reserves the right to jointly revoke or withdraw the Plan before the Confirmation Date and to file subsequent chapter 11 plans. If the Debtor revokes or withdraws the Plan, or if the Confirmation Date or the Effective Date does not occur, then: (1) the Plan will be null and void in all respects; (2) any settlement or compromise embodied in the Plan, assumption of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant hereto will be null and void in all respects; and (3) nothing contained in the Plan shall (a) constitute a waiver or release of any Claims, Interests, or Causes of Action, (b) prejudice in any manner the rights of the Debtor or any other Entity, or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtor or any other Entity.

# ARTICLE XII.
# RETENTION OF JURISDICTION

A.      *Jurisdiction*

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Case and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code for, among other things, including jurisdiction to:

1.      allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Claim or Interest and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests, except as otherwise expressly provided in the Plan;

2.      hear and determine all matters relating to Professional Fee Claims;

3.      ensure that distributions to Holders of Allowed Claims and Interests (as applicable) are accomplished pursuant to the provisions of the Plan and adjudicate any and all disputes arising from or relating to distributions under the Plan;

4.      adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

5.      enter and implement such orders as may be necessary or appropriate to execute, implement, interpret, or consummate the provisions of (a) contracts, instruments, releases, indentures, and other agreements or documents approved by Final Order in the Chapter 11 Case and (b) the Plan, the Confirmation Order, the Trust Agreements, and contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan;

**D2-0037**

6.     enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

7.     adjudicate, decide, or resolve any and all matters related to the Plan;

8.     issue and enforce injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation, implementation or enforcement of the Plan, including all settlements, releases, exculpations and injunctions provided for under the Plan;

9.     resolve any cases, controversies, suits, disputes, Causes of Action, or any other matters that may arise in connection with the Consummation, implementation, interpretation, or enforcement of the Plan, the Disclosure Statement, the Confirmation Order, or any Entity's obligations incurred in connection with the foregoing, including disputes arising under agreements, documents, or instruments executed in connection with the Plan, the Disclosure Statement, the Confirmation Order;

10.    hear, determine, and resolve any cases, matters, controversies, suits, disputes, or Causes of Action in connection with or in any way related to the Chapter 11 Case, including: (a) with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or an Interest for amounts not timely repaid pursuant to Article VI.G.3; (b) with respect to the releases, injunctions, and other provisions contained in Article IX, including entry of such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions; (c) that may arise in connection with the Consummation, interpretation, implementation, or enforcement of the Plan, the Confirmation Order, and, subject to any applicable forum selection clauses, contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan; or (d) related to section 1141 of the Bankruptcy Code;

11.    enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

12.    consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any order, including the Confirmation Order;

13.    hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

14.    hear and determine all matters relating to the releases, injunctions, exculpations, and gatekeeping contained in Article IX;

15.    enforce all orders previously entered by the Bankruptcy Court;

16.    hear any other matter not inconsistent with the Bankruptcy Code; and

17.    enter an order or Final Decree concluding or closing the Chapter 11 Case.

# ARTICLE XIII. MISCELLANEOUS PROVISIONS

**A.**    *Additional Documents*

On or before the Effective Date, the Debtor may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtor or the Liquidation Trustee and all Holders of Claims and Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

**B.**    *Statutory Fees*

All fees payable pursuant to 28 U.S.C. § 1930(a), including fees and expenses payable to the U.S. Trustee, as determined by the Bankruptcy Court at a hearing pursuant to section 1128 of the Bankruptcy Code, will be paid by the applicable Trustee for each quarter (including any fraction thereof) until the Chapter 11 Case is converted, dismissed, or closed, whichever occurs first.

**C.**    *Reservation of Rights*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court has entered the Confirmation Order. None of the filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by the Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of either of the Debtor with respect to Holders of Claims or Interests prior to the Effective Date.

**D.**    *Successors and Assigns*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, affiliated investment funds or investment vehicles, managed accounts or funds, investment managers, advisors, and sub-advisors with discretionary authority, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

**E.**    *Service of Documents*

All notices, requests, and demands relating to the Plan shall be in writing to be effective and, unless otherwise expressly provided in the Plan, shall be deemed to have been duly given or made when actually delivered, addressed as follows:

**A.**    *If to the Debtor:*

**D2-0039**

Hot Crete, LLC
Attention: Edgar Castro, Managing Member and President
2010 Brushy Creed Rd., Unit A
Leander, TX 78613__
E-mail: info@hot-crete.com

with copies to:

Hayward PLLC
Attention: Todd Headden
7600 Burnet Rd, Suite 530
Austin, Texas 78757
E-mail:   theadden@haywardfirm.com

B.      *If to the Liquidation Trustee, to:*

[Address to be provided in the Plan Supplement]

After the Effective Date, the Liquidation Trustee shall have the authority to send a notice to Entities that continue to receive documents pursuant to Bankruptcy Rule 2002 requiring such Entity to file a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Liquidation Trustee is authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have filed such renewed requests.

F.      *Entire Agreement*

Except as otherwise indicated, the Plan (including, for the avoidance of doubt, the Plan Supplement) supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

G.      *Plan Supplement Exhibits*

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan. The Plan Supplement is available upon written request to Debtor's counsel at the address above for free or from the Bankruptcy Court's website for a fee at https://ecf.txwb.uscourts.gov/. The documents contained in the Plan Supplement are an integral part of the Plan and shall be deemed approved by the Bankruptcy Court pursuant to the Confirmation Order.

H.      *Non-Severability*

If, prior to Plan confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall not alter or interpret such term or provision to make it valid or enforceable, *provided* that at the request of the Debtor, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term

**D2-0040**

or provision held to be invalid, void or unenforceable, and such terms or provision shall then be applicable as altered or interpreted provided that any such alteration or interpretation shall be acceptable to the Debtor. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the consent of the Debtors; and (3) non-severable and mutually dependent.

I.    *Good Faith*

Upon entry of the Confirmation Order and pursuant to section 1125(e) of the Bankruptcy Code, the Debtor, the Exculpated Parties, and the Released Parties will be deemed to have solicited votes on the Plan, or otherwise participated in the Plan process, in good faith and in compliance with the Bankruptcy Code, and, therefore, no such parties, individuals, or the Trustee will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan or participation in the Plan process.

J.    *Waiver or Estoppel*

Each Holder of a Claim or Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured or not subordinated by virtue of an agreement made with the Debtor or its counsel or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers filed with the Bankruptcy Court prior to the Confirmation Date.

K.    *No Attorney's Fees*

Except for the fees of Professionals, no attorneys' fees shall be paid by the Debtor or the Trustee with respect to any Claim or Interest unless otherwise specified in the Plan or by a Final Order of the Bankruptcy Court.

L.    *Closing of Chapter 11 Case*

The Liquidation Trustee shall file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Case.

Dated: April 18, 2025

Respectfully submitted,

**Hot Crete, LLC**

By:  */s/ Edgar Castro*
Name: Edgar Castro
Title: Managing Member and President

**D2-0041**



**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **HOT CRETE, LLC,** | § | **CASE NO. 24-10303-smr** |
| | § | |
| *Debtor.* | § | **CHAPTER 11** |
| | § | |

## INSURER SETTLEMENT, RELEASE AND POLICY EXHAUSTION AGREEMENT

### Parties

The parties to this Insurer Settlement, Release and Policy Exhaustion Agreement ("Agreement") are Hot Crete, LLC ("Hot Crete") on the one hand, and Federated Mutual Insurance Company and Federated Reserve Insurance Company (collectively referred to herein as "Federated") on the other hand. Hot Crete and Federated may sometimes be referred to herein collectively as the "Parties" or singularly as a "Party."

### Recitals

WHEREAS, Federated Mutual Insurance Company issued primary liability insurance policy no. 9850923 (eff. 3/11/20 to 3/11/21, and renewed to 3/11/22) to Hot Crete and Federated Reserve Insurance Company issued primary liability insurance policy no. 9850923 (eff. 3/11/22 to 3/11/23, renewed to 3/11/24 and cancelled effective 10/2/23) and umbrella liability insurance policy no. 1827267 (eff. 3/11/22 to 3/11/23, renewed to 3/11/24 and cancelled effective 10/2/23) to Hot Crete (all of said primary and umbrella policies shall be referred to collectively herein as the "Policies"); and

---

WHEREAS, the combined aggregate limits of all the Policies as written total $10 million, of which $9,916,456.02 of said combined limits remains on the Policies; and

WHEREAS, numerous claims have been asserted and/or may be asserted against Hot Crete by various homeowners, pool builders, contractors, and/or subcontractors based primarily on Alkali-Silica Reaction ("ASR") in swimming pools installed by Hot Crete ("Pool Claims"), which have resulted in extensive property damage not only to portions of various swimming pools installed by Hot Crete, but have also resulted in damage to property outside the scope of Hot Crete's work or product, and have necessitated the tear out and/or repair and replacement of additional property outside the scope of Hot Crete's work or product; and

WHEREAS, Hot Crete filed for relief under Chapter 11 of Title 11 of the United States Bankruptcy Code (the "Bankruptcy Case"). Hot Crete continues to operate its business as a "Debtor in Possession" pursuant to Section 1107 and 1108 of the Bankruptcy Code.

WHEREAS, Hot Crete intends to pursue a liquidating plan with a trustee to administer a claims resolution process for the Pool Claims; and

WHEREAS, the number and value of the Pool Claims and the amount of damage resulting from ASR in swimming pools installed by Hot Crete vastly exceed the remaining available combined limits of the Policies and as such Hot Crete claims that the policy proceeds constitute the property of Hot Crete's bankruptcy estate; and

WHEREAS, both Federated and Hot Crete wish to avoid claimants racing to the courthouse to liquidate the Pool Claims, and wish to avoid coverage litigation between themselves and with claimants, as well as the time and expense of litigation of the Pool Claims; and

WHEREAS, Hot Crete and Federated wish to settle their disputes between themselves and to establish a process for addressing the Pool Claims that allows for neutral administration and

Insurer Settlement, Release and Policy Exhaustion Agreement
2

**D3-0002**

resolution of said claims, while providing finality and certainty with regard to Federated's exposure, and to have such claims resolution process be part of Hot Crete's bankruptcy plan approved by the Court, and to also secure injunctive relief that ensures the finality and comprehensiveness of the process to address the Pool Claims.

**Terms**

THE PARTIES HEREBY AGREE AS FOLLOWS:

1.      Upon the expiration of fifteen (15) days following the entry of an order confirming Hot Crete's bankruptcy plan and approval of this Agreement Federated will pay $9,916,456.02, the remaining limits of the Policies, to Eric J. Taube, in his capacity as the liquidating trustee (the "Liquidating Trustee") in the Bankruptcy Case. Said money will be used to fund a liquidating trust created under Hot Crete's bankruptcy plan to address all present and future Pool Claims, which will be resolved in connection with the captioned proceeding.

2.      In consideration of the payment described in the preceding paragraph and in paragraph 4, Hot Crete does hereby forever RELEASE, ACQUIT, and DISCHARGE Federated Mutual Insurance Company and Federated Reserve Insurance Company, and each of them, and each and all of their parent and affiliated companies, successors, assigns, insurers, reinsurers, officers, directors, shareholders, members, employees, adjusters, agents, servants, and attorneys, and all such persons' and entities' parent and affiliated companies, successors, assigns, insurers, reinsurers, officers, directors, shareholders, members, employees, adjusters, agents, servants, and attorneys, and each of them, whether named herein or not, all of whom are sometimes referred to herein as the "Released Parties," of and from any and all past, present, and future rights, claims, demands, actions, causes of action, losses, damages, lawsuits, awards, judgments and expenses,

whether based on tort, contract, statute or equity, known or unknown, foreseen or unforeseen, that arise out of or that are directly or indirectly related to any Pool Claims, as well as of and from all other rights, claims, demands, actions, causes of action, losses, damages, lawsuits, awards, judgments and expenses, whether based on tort, contract, statute or equity, known or unknown, foreseen or unforeseen, that are or that could be covered under all or any of the Policies.

3.      As to the matters expressed in the immediately preceding paragraph, and without limiting the scope of that paragraph in any manner, Hot Crete releases the Released Parties, and each of them, of and from any and all claims for insurance coverage under the Policies in connection with the Pool Claims or any other claims, all duties of defense or indemnity under the Policies in connection with any past, present or future claims and lawsuits of any kind, and all future attempts to collect on any claims, awards or judgments that are or that could be covered under all or any of the Policies. This release also includes, but is not limited to, all claims for unfair trade practices or tort damages, punitive or exemplary damages, enhanced or treble damages, quasi-contractual damages, damage under or for breach of the Texas Deceptive Trade Practices – Consumer Protection Act, damages under or for breach of any provision of Chapter 541 of the Texas Insurance Code, damages under or for breach of any provision of Chapter 542 of the Texas Insurance Code, damages under or for breach of any order, rule or regulation by the Commissioner of Insurance of the State of Texas or the State Board of Insurance of the State of Texas or the Texas Department of Insurance, violations of the Texas Administrative Code, damages under or for breach of any similar law, statute, order, rule, or regulation, whether under any other state's law or under federal law, breach of contract, breach of any common law duty of good faith and fair dealing, failure to settle, failure to investigate, failure to defend, failure to appeal, negligence,

Insurer Settlement, Release and Policy Exhaustion Agreement

4

D3-0004

misrepresentation, failure to disclose information, waiver, estoppel, personal and advertising

injury, bodily injury, property damage, economic loss, fraud, consequential damages, or any other

damages under state or federal statutes or common law, interest, costs, attorney fees, or any

declaratory, equitable, or other special relief, and including all claims based on Federated's

handling of the Pool Claims or any other claims.

4.      In addition to the payment referenced in paragraph 1 above, Federated hereby

agrees to pay to the Liquidating Trustee the total sum of $270,000. This payment will be used to

fund the administrative costs of the Liquidating Trust, including trustee and attorney fees, in

connection with the claims resolution process for the Pool Claims.

5.      This Agreement is conditioned upon: (1) the Bankruptcy Court issuing an order

confirming Hot Crete's bankruptcy plan which provides in part for a claims resolution process for

the Pool Claims administered through a Liquidating Trust, the administrative costs of which to be

paid with the funds paid by Federated as provided in paragraph 4 above; (2) the Court issuing an

order approving this Agreement as part of Hot Crete's confirmed bankruptcy plan, and (3) the

Court approving as part of the confirmed bankruptcy plan injunctive relief with regard to any

present or future Pool Claims and requiring the resolution of all such claims solely through the

claims resolution process established in Hot Crete's confirmed bankruptcy plan. If any of these

conditions are not met this Agreement shall be null and void and the Parties shall have no

obligations hereunder.

6.      Federated and Hot Crete agree that the Policies are completely exhausted upon the

making of the payment referenced in paragraph 1 above and that any duty on the part of Federated

to pay anything else pursuant to the Policies, whether by way of defense, indemnity, administrative

costs or otherwise, is extinguished upon said payments.

7.     It is the express intent of the Parties that Federated will never have to pay any additional funds to or on behalf of Hot Crete, or to third parties or claimants, whether under the Policies or otherwise, in connection with any present or future Pool Claims against Hot Crete, or in connection with any other present or future claims against Hot Crete, including claims that are not resolved through the Liquidating Trust, whether because claimants have opted out of said process or for any other reason.

8.     Hot Crete and its counsel believe and acknowledge that the consideration paid for this Agreement is a reasonable amount in light of all of the surrounding circumstances, including the time and expense associated with litigation of the Pool Claims and with litigation of coverage issues among Hot Crete, Federated, and present and future claimants.

9.     Hot Crete understands and agrees that this settlement is a compromise of a doubtful and disputed claim, and that the payment made is not to be construed as an admission of liability on the part of either Hot Crete or Federated (or any other Released Party), by whom liability is expressly denied, but on the contrary this Agreement is being entered into merely to avoid litigation and to buy peace.

10.     Hot Crete further understands and agrees that there may be a risk that, after the signing of this Release, Hot Crete may incur or suffer loss, damage or injuries that are in some way caused by or related to matters that are the subject of this Agreement, but which are unknown or unanticipated at the time of the signing of this Agreement. Further, there is a risk that the loss or damage presently known may be or become greater than Hot Crete expects or anticipates. Hot Crete assumes these risks, including the risk of mutual mistake, and the

releases given herein shall apply to all such unknown or unanticipated results, as well as those known and anticipated.

11.     Hot Crete agrees that it is signing this Agreement of its own free will and accord and that, except as expressly stated herein, Hot Crete has not relied upon any statements, promises, warranties, or representations made by any person representing or claiming to represent Federated or any other Released Party, and that Hot Crete is doing so upon its own knowledge of the facts and upon its own business judgment of the future development, progress, and result of injuries known and unknown, and after having consulted with legal counsel of its own choosing about this Agreement, Hot Crete realizing all the time that this Agreement is a final and complete settlement of a disputed matter.

12.     Each signatory to this Agreement warrants that he, she, or it is duly authorized to execute this Agreement and to bind the persons or entities on behalf of which he, she or it signs to act with respect to the rights and claims that are being altered or otherwise affected by this Agreement.

13.     It is understood and agreed that the consideration expressed herein is contractual and not a mere recital.

14.     This Agreement shall be construed and enforced in accordance with the laws of the State of Texas and shall be binding upon Hot Crete and the Released Parties' respective heirs, personal representatives, successors, and assigns.

15.     Any term defined in this Release stated in a singular form shall include the plural form, and any defined term stated in a plural form shall include the singular form.

16.     This Release is a compromise and settlement of disputed claims. It is the product

of arms-length negotiations. The language of this Release shall not be presumptively construed against either Hot Crete or any of the Released Parties.

17.     This Release constitutes the entire agreement by Hot Crete with any of the Released Parties with respect to the subject matter hereof and is entered into by Hot Crete of its own free will and accord. Any prior oral or written statements concerning the subject matter hereof are merged herein for all purposes and shall be of no further force and effect; provided, however, that this Release may be extended or modified by subsequent written agreement executed and signed by the Party(ies) intending to be bound thereby, or by their respective legal counsel as authorized by the represented party. Hot Crete agrees to execute and deliver such other and further documents as may be necessary to effectuate the intent and purposes of this Release.

18.     Nothing in this Release shall affect the rights of Federated as to reinsurance or retrocessional recoveries arising as a result of this settlement, nor shall it affect the rights that Federated may have to seek those reinsurance or retrocessional recoveries in any action or proceeding of its choosing.

IN WITNESS WHEREOF, Hot Crete, Federated Mutual Insurance Company and Federated Reserve Insurance Company have signed this Agreement on the dates indicated following the below signatures, which last date shall be the date of this Agreement, Hot Crete having consulted with an attorney of its own choosing about the meaning and effect of this Release.

Signature Page follows:

Hot Crete, LLC

By: _____

Its: _____

Date: _____

Federated Mutual Insurance Company

By: _____

Its: _____

Date: _____

Federated Reserve Insurance Company

By: _____

Its: _____

Date: _____

**D3-0009**

Exhibit

D-4

## THE HOT CRETE LLC LIQUIDATION TRUST AGREEMENT

This trust agreement (the "Trust Agreement") is made and entered into by and between Hot Crete, LLC (the "Debtor") and Eric J. Taube (the "Trustee") pursuant to the Chapter 11 Plan of Liquidation (together with any and all amendments, exhibits, and schedules, the "Plan") filed in the Debtor's chapter 11 bankruptcy case, case no. 24-10303-smr (the "Bankruptcy Case"), before the United States Bankruptcy Court for the Western District of Texas, Austin Division (the "Bankruptcy Court"). Unless otherwise stated in this Trust Agreement, capitalized terms used in this Trust Agreement shall have the meanings as ascribed to them in the Plan, Confirmation Order, and Bankruptcy Code.

## RECITALS

A.      On the Petition Date, the debtor filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code. The Debtor continues to operate its business as a debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

B.      It is anticipated that in 2025, the Bankruptcy Court will enter an order confirming the Plan (the "Confirmation Order").

C.      The Plan anticipates the existence of the Liquidation Trust and the transfer and assignment to the Liquidation Trust of the Liquidation Trust Assets.

D.      Pursuant to the Plan, the Liquidation Trust is to use the Liquidation Trust Assets to pay, if and only to the extent not otherwise paid under the Plan, the Administrative Claims, Priority Tax Claims, and Professional Fee Claims, Class 1, Class 2, Class 3, Class 4, and Class 5 Claims and carry out the purposes of the Plan, including payment of the expenses of the Liquidation Trust, including compensation to the Trustee and his professionals. .

E.      The Liquidation Trust is established for the benefit of the Beneficiaries of the Liquidation Trust, as defined in Section 1.6 of this Trust Agreement, and is intended to qualify as a "Designated" or "Qualified Settlement Fund" within the meaning of Section 468B of the Internal Revenue Code and the Treasury Regulations promulgated under the Internal Revenue Code and codified at 26 C.F.R. §§ 1.468B-1 to -5.

NOW, THEREFORE, pursuant to the Plan and the Confirmation Order, in consideration of the premises and provisions in the Plan, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, it is agreed as follows:

## DECLARATION OF TRUST

Subject to the occurrence of the Effective Date, the Debtor hereby absolutely assigns to the Liquidation Trust, and to its successors in trust and its successors and assigns, all rights, title, and interest of the Debtor in and to the Liquidation Trust Assets;

TO HAVE AND TO HOLD unto the Liquidation Trust and its successors in trust and its successors and assigns forever;

IN TRUST NEVERTHELESS upon the terms and subject to the conditions set forth in this Trust Agreement and for the benefit of the Beneficiaries, as defined below, as and to the extent provided in the Plan, and for the performance of, and compliance with, the terms of this Trust Agreement, the Plan, and the Confirmation Order;

PROVIDED, HOWEVER, that upon termination of the Trust in accordance with Article IV of this Trust Agreement, this Trust Agreement shall cease, terminate, and be of no further force and effect; and

IT IS HEREBY FURTHER COVENANTED AND DECLARED that the Trust Assets are to be held and applied by the Trustee upon the further covenants and terms and subject to the conditions set forth in this Trust Agreement.

I.

AGREEMENT OF TRUST

A.    Creation and Name. The Debtor hereby creates the Liquidation Trust known as "The Hot Crete, LLC, Liquidation Trust," which is the Liquidation Trust provided for in the Plan. In the event of any inconsistency between the Plan and this Trust Agreement, the terms of the Plan shall govern. All capitalized terms used herein, except to the extent otherwise defined herein, shall have the meaning given to them in the Plan.

B.    Purpose. The purpose of the Trust is to assume responsibility for preserving, managing, liquidating, and distributing Liquidation Trust Assets to Holders of the Administrative Claims, Priority Tax Claims, and Professional Fee Claims, Class 1, Class 2, Class 3, Class 4, and Class 5 Claims, in accordance with the Trust Agreement and the requirements of the Plan and Confirmation Order, to receive assignment of the Liquidation Trust Assets from the Debtor and to pursue recoveries against any parties other than the Released Parties under the Plan.

C.    Transfer of Liquidation Trust Assets. Pursuant to the Plan and upon the occurrence of the Effective Date, the Debtor  irrevocably transfers, absolutely grants, assigns, conveys, sets over and delivers to the Liquidation Trust at all times as set forth in the Plan, all of the Debtor's rights, titles, and interests in and to the Liquidation Trust Assets to be held in trust and for the uses and purposes stated in this Trust Agreement and in the Plan. The Trustee is hereby authorized to file with the proper governmental authorities any and all documents necessary or helpful to establish the Liquidation Trust and administer its assets as provided herein and the Plan.

D.    Irrevocability. The Liquidation Trust shall be irrevocable. The Debtor shall not alter, amend, revoke, or terminate the Liquidation Trust. The Debtor shall have no power or authority to direct the Trustee to return any of the Liquidation Trust Assets to the Debtor.

E.    Beneficiaries. The beneficiaries of the Liquidation Trust are Holders of Allowed Administrative Claims, Priority Tax Claims, and Professional Fee Claims, Class 1, Class 2, Class 3, Class 4, and Class 5 Claims under the Plan whose Claims are (i) Allowed by operation of the Bankruptcy Code,  Final Order of the Bankruptcy Court or written agreement between the Holder of such Claim and The Trustee, and (ii) not otherwise paid directly by the Reorganized Debtor under the Plan (the "Beneficiaries").

**D4-0002**

F.    Acceptance of Assets and Assumption of Liabilities.

1.    In furtherance of the purposes of the Liquidation Trust, the Trustee hereby accepts the role of trustee of the Liquidation Trust and accepts the grant, assignment, transfer, conveyance, and delivery of the Liquidation Trust Assets to the Liquidation Trust, subject to the terms and conditions set forth in this Trust Agreement, the Plan, and the Confirmation Order.

2.    In furtherance of the purposes of the Liquidation Trust, the Trustee, on behalf of the Liquidation Trust, hereby expressly assumes all responsibility for preserving, managing, liquidating, and distributing Liquidation Trust Assets to the Beneficiaries in accordance with the terms of this Trust Agreement, the Plan, and the Confirmation Order. The Claims of the Beneficiaries will be evaluated by the Trustee in accordance with the Trust Distribution Plan, attached as Exhibit 2 to this Trust Agreement.

3.    The Trustee shall have all of the rights, powers, and duties set forth in this Trust Agreement, the Trust Distribution Plan, and the Plan, and available under applicable law, for accomplishing the purposes of the Liquidation Trust. The Trustee's powers are exercisable solely in a fiduciary capacity consistent with, and in furtherance of, the applicable provisions of the Plan, the purpose of the Liquidation Trust, and applicable law. The Trustee shall have the authority to bind the Liquidation Trust within the limitations set forth in this Trust Agreement, but shall be acting in the capacity as Trustee, and not individually, for all purposes contained in this Trust Agreement.

4.    In furtherance of the purposes of the Liquidation Trust, the Trustee assumes responsibility for (a) making or directing payments to the Beneficiaries; (b) receiving, collecting, liquidating, maintaining, and distributing the Liquidation Trust Assets; and (c) fulfilling all other obligations of the Liquidation Trust under this Trust Agreement, the Plan, and the Confirmation Order. The Liquidation Trust will be administered consistent with the purpose of the Liquidation Trust and with no objective to continue or to engage in the conduct of a trade or business, except to the extent reasonably necessary to preserve the value of the Liquidation Trust Assets or as otherwise provided in the Plan or Confirmation Order.

5.    All Liquidation Trust expenses and all liabilities of the Liquidation Trust with respect to the Beneficiaries shall be payable solely by the Trustee out of the Liquidation Trust Assets.

II.

CORPUS OF THE TRUST

A.    Trust Composition. The Liquidation Trust Assets shall include all property transferred to the Liquidation Trust pursuant to the Plan, Confirmation Order, and any future orders of the Bankruptcy Court, including without limitation all rights of every kind, nature, and description transferred to the Trust pursuant the Plan.

B.      Transfer to Trust. As of the Effective Date, pursuant to the Plan and Confirmation Order, title to and all rights and interests in the Liquidation Trust Assets shall be transferred to the Liquidation Trust free and clear of all Liens, claims, encumbrances or Interests of any kind in the Liquidation Trust Assets of any other Person (including all Liens, claims, encumbrances or Interests of creditors of, or holders of claims against or Interests in the Debtor) in accordance with Sections 1123, 1141, and 1146(a) of the Bankruptcy Code, except as otherwise provided for in the Plan. The Trustee, on behalf of the Liquidation Trust, shall receive the Liquidation Trust Assets when they are transferred to the Liquidation Trust.

C.      Trustee's Right to and Title and Interest in Trust Assets. Upon the transfer of the Liquidation Trust Assets, the Trust succeeds to all of the Debtor's and the Estate's right to and title and Interest in the Liquidation Trust Assets, and the Debtor and the Estate shall have no further right to, or title or Interest in or with respect to, the Liquidation Trust Assets or this Liquidation Trust, except as provided in this Trust Agreement, the Plan, or the Confirmation Order.

D.      No Tax on Transfers to Trust. Pursuant to Section 1146(a) of the Bankruptcy Code, the delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with this Liquidation Trust, including any deeds, bills of sale, or assignments executed in connection with any transfer to the Liquidation Trust or receipt or disposition/sale of assets by the Liquidation Trust contemplated by the Plan, shall not be subject to any stamp tax, real estate transfer tax, excise tax, sales tax, use tax, or similar tax.

E.      Spendthrift Provision. To the fullest extent permitted by law, neither the principal nor income of the Liquidation Trust, in whole or in part, shall be subject to (a) any legal or equitable claims of creditors of any Beneficiary or others, (b) legal process, or (c) voluntary or involuntary transfer, assignment, anticipation, pledge, or other form of alienation or encumbrance except as may be ordered by the Bankruptcy Court.

F.      Trust Corpus. Subject to the terms of the Plan, the entirety of the Liquidation Trust's corpus shall be available to pay the Beneficiaries and authorized expenses. The Trust Corpus shall be allocated, administered, and distributed as provided in the Trust Distribution Plan, the Plan, and the Confirmation Order.

III.

POWERS AND DUTIES OF TRUSTEE

A.      Trustee's Bond. The Trustee shall not be required to post any bond, surety, or other security for the performance of the Trustee's duties unless otherwise ordered by the Bankruptcy Court and, in the event the Trustee is so otherwise ordered, all reasonable costs and expenses of procuring any bond or surety shall be borne by the Liquidation Trust and paid for from the Liquidation Trust Assets.

B.      Powers and Duties. The Trustee shall have, in addition to any other powers and duties conferred on the Trustee by applicable trust law (to the extent not inconsistent with applicable bankruptcy law, the Plan, and the Confirmation Order), the Plan, and the other provisions in this Trust Agreement, the following powers and duties:

1. To act as custodian of, and to receive, control, manage, liquidate, monetize, and dispose of, all Liquidation Trust Assets for the benefit of the Beneficiaries as the Trustee deems appropriate to accomplish the purpose of the Trust, in accordance with the terms contained in this Trust Agreement, the Plan, and the Confirmation Order.

2. To abandon any property which the Trustee determines in the Trustee's reasonable discretion to be of *de minimis* value or of more burden than value to the Liquidation Trust.

3. To protect and enforce the rights in and to the Liquidation Trust Assets by any method deemed appropriate, including without limitation by judicial and administrative proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium, or similar law and general principles of equity.

4. To enter into contracts in the course of administering the Liquidation Trust Assets for liquidation and in conjunction with their disposition under this Trust Agreement and the Plan.

5. To open and maintain bank accounts on behalf of the Liquidation Trust, deposit funds in the bank accounts, and draw checks on the bank accounts, as appropriate under this Trust Agreement, the Plan, and the Confirmation Order.

6. To obtain all reasonably necessary insurance coverage, if any, and in the Trustee's discretion with respect to any property that is, or may in the future become, a Liquidation Trust Asset.

7. To incur on behalf of the Liquidation Trust, and pay from the assets of the Liquidation Trust, all fees, costs, retainers and expenses of administering the Liquidation Trust as provided in this Trust Agreement and the Plan. These fees, costs, and expenses include: (a) the fees of bankruptcy claims and/or distribution agents, (b) the fees and costs of professionals employed by the Trustee (the "Professionals"), including without limitation claims reviewers, investment advisors, accountants, agents, managers, attorneys-at-law, actuaries, or auditors, (c) the premiums charged by insurers, including without limitation professional liability insurers, (d) reimbursement of any statutory fees and court costs incurred by the Debtor (i) in the event the Trustee opposes the closure of the Bankruptcy Case, from the date of the filing of any such opposition through the closure of the Bankruptcy Case or (ii) should the Trustee reopen the Bankruptcy Case in the future.

8. In accordance with the Trust Distribution Plan, to make distributions, in accordance with the Trust Distribution Plan and Plan to Beneficiaries who have provided signed copies of all required releases and forms.

9. In the Trustee's discretion, as a party in interest, to seek enforcement of any provision of the Plan pertaining to the Liquidation Trust.

10. To retain any attorney-at-law, consultant, expert, accountant, investment advisor, bankruptcy management company or such other agents and advisors as are necessary and appropriate in the Trustee's reasonable discretion to effectuate the purpose

**D4-0005**

of, and maintain and administer, the Liquidation Trust and shall be entitled to rely on advice given by such advisors within his, her, or its areas of competence. In no event, however, shall the Trustee incur fees from any professional, except the Trustee's primary legal counsel and accountants, in excess of $100,000.00 without prior approval of the Bankruptcy Court.

11.     To make, sign, execute, acknowledge, and deliver any documents that may be necessary or appropriate to effectuate the purpose of the Plan or the Liquidation Trust or to maintain and administer the Liquidation Trust.

12.     To seek the examination of any Person under, and subject to, the provisions of the Bankruptcy Rules, including without limitation Bankruptcy Rule 2004.

13.     To amend, modify, or alter the Trust Agreement by filing a motion with the Bankruptcy Court, with notice to the Beneficiaries, the Debtor, and any or all other parties in interest. For the avoidance of doubt, the amendments, modifications, or alterations may not be inconsistent with the terms of the Plan, the terms of the Confirmation Order, or the purpose of the Liquidation Trust, as identified in Section 1.2 of this Trust Agreement.

14.     Upon any event terminating the Liquidation Trust, to defer distribution of Liquidation Trust Assets for a reasonable time needed to wind up the affairs of the Liquidation Trust, including time needed to provide for payment of debts and expenses, although the Beneficiaries' rights to distributions shall vest immediately.

15.     To establish the accounts, funds, and reserves, as required by the Plan, for ease of administration. Nothing in this provision shall restrict the Trustee's authority to pool the accounts, funds, or reserves for investment purposes or require separate bank accounts for the accounts, funds, or reserves.

16.     To be responsible for only the Liquidation Trust Assets delivered to the Liquidation Trust and have no duty to make, nor incur any liability for failing to make, any search for unknown property or liabilities.

17.     The Liquidation Trust will assume all duties, obligations, and indemnification responsibilities outlined in the Plan to the extent of the Liquidation Trust Assets.

18.     To protect and enforce the rights in and to the Liquidation Trust Assets by any method deemed appropriate including, without limitation, by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium or similar law and general principles of equity, including prosecuting, compromising, settling and collecting on any litigation Assets.

19.     To terminate the Liquidation Trust upon liquidation and disbursement of the Liquidation Trust Assets.

C.     Limitations on the Trustee. Notwithstanding anything in this Trust Agreement to the contrary, the Trustee shall not do or undertake any of the following:

1.      Guaranty any debt other than as provided for in this Trust Agreement or as required by the Plan;

2.      Loan Trust Assets;

3.      Make any transfer or distribution of Liquidation Trust Assets other than those authorized in this Trust Agreement, the Plan, or the Confirmation Order;

4.      Engage in any trade or business on behalf of the Liquidation Trust; or

5.      Engage in any investments or activities inconsistent with the treatment of the Liquidation Trust as a "Designated" or "Qualified Settlement Trust."

IV.

TERMINATION OF THE TRUST

A.      Pre-Confirmation Termination. The Trustee shall terminate the Trust if (a) the Effective Date does not occur within one year from the date the Trust Agreement is executed by the Debtor and the Trustee or (b) the Bankruptcy Case is dismissed or converted to a case under Chapter 7 of the Bankruptcy Code prior to confirmation of the Plan (the "Pre-Confirmation Termination"). Upon the Pre-Confirmation Termination of the Liquidation Trust, the Trust Agreement shall be null and void and of no force and effect, with the Trustee and the Debtor both discharged from any and all duties and obligations provided for in this Trust Agreement.

B.      Post-Confirmation Termination. The Trustee shall terminate the Liquidation Trust after (a) the Trustee's liquidation, administration, and distribution of the Liquidation Trust Assets in accordance with this Trust Agreement and the Plan and (b) the Trustee's full performance of all other duties and functions set forth in this Trust Agreement and the Plan (the "Post-Confirmation Termination"). The Liquidation Trust shall terminate no later than the fifth anniversary of the Effective Date unless extended by the Trustee after giving the Beneficiaries reasonable prior written notice.

C.      Post-Confirmation Termination Procedures. After the Post-Confirmation Termination of the Liquidation Trust and solely for the purpose of liquidating and winding up its affairs, the Trustee shall continue to act as Trustee until the Trustee's duties in this Trust Agreement and Plan have been fully performed. The Trustee shall retain the books, records, documents, and files that shall have been delivered to, or created by, the Trustee until distribution of all the Liquidation Trust Assets. For purposes of this provision, the Liquidation Trust Assets will be deemed distributed when the total amount remaining in the Liquidation Trust is less than $20,000.00. At the Trustee's discretion, all of the books, records, documents, and files may be destroyed at any time following the later of: (a) the first anniversary of the final distribution of the Liquidation Trust Assets or (b) the date until which the Trustee is required by applicable law to retain the books, records, documents, and files; provided that, notwithstanding the foregoing, the Trustee shall not destroy or discard any books, records, documents, or files relating to the Liquidation Trust without giving the Beneficiaries reasonable prior written notice.

**D4-0007**

D. Post-Confirmation Termination Distribution. Upon Post-Confirmation Termination of the Liquidation Trust, provided that all fees and expenses of the Liquidation Trust have been paid or provided for in full, the Trustee will make a final distribution to the remaining Beneficiaries of the Liquidation Trust. All unclaimed or undeliverable funds, if any, shall be distributed to a charity supporting homelessness in Austin, Texas after 90 days from their attempted delivery or notice of availability of distributions

E. Discharge, Exculpation, and Exoneration. Upon Post-Confirmation Termination of the Liquidation Trust and accomplishment of all activities described in this Article, the Trustee and the Trustee's Professionals shall be fully discharged and exculpated from liability, and the Trustee's bond (if any), shall be exonerated except for acts or omissions resulting from the willful misconduct, knowing and material violation of law, or fraud of the Trustee or his designated agents or representatives. The Trustee may, at the expense of the Liquidation Trust, seek an order of the Bankruptcy Court confirming the discharges, exculpations, and exoneration referenced in this Section.

V.

IMMUNITY, LIABILITY, AND INDEMNIFICATION OF TRUSTEE

A. Limitations on Liability. Neither the Trustee nor any of the Trustee's duly designated agents, representatives, or Professionals shall be liable for any act or omission taken or omitted by the Trustee in good faith, other than acts or omissions resulting from the, willful misconduct, knowing and material violation of law, or fraud of the Trustee or the Trustee's designated agents, representatives, or Professionals. The Trustee may, in connection with the performance of the Trustee's functions, and in the Trustee's sole and absolute discretion, consult with the Trustee's Professionals and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with the advice or opinions rendered by the Trustee's Professionals. Notwithstanding this authority, the Trustee shall be under no obligation to consult with the Trustee's Professionals, and the Trustee's good faith determination not to consult with the Trustee's Professionals shall not result in the imposition of liability on the Trustee, unless the determination is based on the Trustee's willful misconduct, knowing and material violation of law, or fraud.

B. No Recourse Against the Trustee Personally. No recourse shall be had, directly or indirectly, against the Trustee personally, or against any employee, contractor, or Professional retained by the Trustee in accordance with the terms of this Trust Agreement, Plan, or Confirmation Order, by legal or equitable proceedings or by virtue of any statute or otherwise, nor upon any promise, contract, instrument, undertaking, obligation, covenant, or trust agreement executed by the Trustee in implementation of this Trust Agreement or the Plan or by reason of the creation of any indebtedness by the Trustee under the Plan for any purposes authorized by this Trust Agreement or the Plan, it being expressly understood and agreed that any promise, contract, instrument, undertaking, obligation, covenant, or trust agreement entered into by the Trustee, whether in writing or otherwise, shall be enforceable only against, and be satisfied only out of, the Liquidation Trust Assets and shall be evidence only of a right of payment out of the Liquidation Trust Assets. The Trustee may be held liable for the Trustee's willful misconduct, knowing and

material violation of law, or fraud; and if liability for these grounds is established, recourse may be had directly against the Trustee. The Liquidation Trust will not be covered by a bond.

C.     Indemnification. The Trustee, using Liquidation Trust Assets, shall defend, indemnify, and hold harmless the Trustee, the Trustee's officers, directors, agents, representatives, and employees to the fullest extent that a corporation or trust organized under the laws of the state of Texas is entitled to defend, indemnify, and hold harmless its trustees, officers, directors, agents, representatives, and employees against any and all costs (including attorneys' fees and costs), judgments, awards, amounts paid in settlement, liabilities, expenses, claims, damages, or losses incurred by them in the performance of their duties under this Trust Agreement; provided that neither the Trustee nor the Trustee's officers, directors, agents, representatives, or employees shall be defended, indemnified, or held harmless in any way for any liability, expense, claim, damage, or loss for which they are ultimately held liable under Article Vof this Trust Agreement.

## VI.

## COMPENSATION AND EXPENSE REIMBURSEMENT OF TRUSTEE AND ITS AGENTS

A.     Trustee Compensation. The Trustee shall be entitled to receive compensation from the Liquidation Trust Assets as detailed in Exhibit 1. The Trustee may periodically (but not more often than monthly) make interim payments from the Trust Assets to satisfy compensation due the Trustee and the Trustee's expenses.

B.     Compensation of the Trustee's Professionals. Any Professional retained by the Trustee pursuant to this Trust Agreement or the Plan will be entitled to reasonable compensation for services rendered paid by the Trustee from the Trust Assets.

C.     Reimbursement of Expenses. Any and all reasonably necessary costs and expenses incurred by the Trustee and any Professional retained by the Trustee, in performing their respective duties under this Trust Agreement and the Plan, will be reimbursed by the Trustee from the Trust Assets.

## VII.

## SUCCESSOR TRUSTEE

A.     Vacancy Caused by the Trustee's Resignation or Removal.

1.     In Trustee's sole and absolute discretion, the Trustee may resign at any time upon 30-days written notice to be filed with the Bankruptcy Court. The outgoing trustee (the "Outgoing Trustee") shall, within 30 days after the Outgoing Trustee's resignation takes effect, deliver to the successor trustee (the "Successor Trustee") all of the Liquidation Trust Assets which were in the possession of the Outgoing Trustee along with a complete list of Liquidation Trust Assets and a complete accounting of all transactions engaged by the Outgoing Trustee while serving as the Trustee.

2.      Any Beneficiary may petition the Bankruptcy Court to remove the Trustee for cause, which shall be limited to willful misconduct, knowing and material violation of law, or fraud.

3.      In the event of removal, the Trustee shall, within thirty (30) days after such removal takes effect, or at some earlier date as the Bankruptcy Court may specify, deliver to the Successor Trustee all of the Liquidation Trust Assets which were in the possession of the Trustee along with a complete list of Liquidation Trust Assets and a complete accounting of all transactions engaged in by the Trustee while serving as such.

B.      Outgoing Trustee Obligations. In the event of the resignation or the removal of the Trustee, the Outgoing Trustee, shall:

1.      Execute and deliver by the effective date of the resignation or removal the documents, instruments, records, and other writings as may be reasonably requested by the Successor Trustee to effect the resignation or removal of the Outgoing Trustee and the conveyance of the Liquidation Trust Assets to the Successor Trustee.

2.      Deliver to the Successor Trustee all documents, instruments, records, and other writings relating to the Liquidation Trust Assets as may be in the possession or under the control of the Outgoing Trustee.

3.      Otherwise reasonably assist and cooperate in effecting the assumption of the Outgoing Trustee's obligations and functions by the Successor Trustee.

The Outgoing Trustee hereby irrevocably appoints the Successor Trustee (and any interim trustee) as the Outgoing Trustee's attorney-in-fact and agent with respect to the Liquidating Trust and the Liquidation Trust Assets with full power of substitution for the Outgoing Trustee and in the Outgoing Trustee's name, place, and stead to do any and all acts that the Outgoing Trustee is obligated to perform under this Trust Agreement. The appointment of the Successor Trustee as the Outgoing Trustee's attorney-in-fact and agent shall not be affected by the subsequent disability or incompetence of the Outgoing Trustee. The Bankruptcy Court may also enter any order necessary to effect the termination of the appointment of the Outgoing Trustee and the subsequent appointment of the Successor Trustee.

C.      Appointment of Successor Trustee. Any vacancy in the office of the Trustee shall be filled by the nomination of the Office of the United States Trustee, subject to the approval of the Bankruptcy Court, after notice to Beneficiaries and a hearing. If the Office of the United States Trustee declines to participate in the nomination of the Successor Trustee within 10 days after the Outgoing Trustee resigns, is removed, or otherwise becomes unable to serve, the Bankruptcy Court shall designate a successor, after notice to Beneficiaries.

D.      Preservation of Record of Changes in Trustees. A copy of each instrument of resignation, removal, appointment, and acceptance of appointment shall be attached to an executed counterpart of this Trust Agreement.

VIII.

TRUSTEE REPORTING AND DISCHARGE

A.      Annual Accountings. The Trustee shall prepare, at least annually, a written accounting of the administration of the Liquidation Trust listing the current assets with fair market values and detailing all transactions that occurred during the period covered by the accounting. Each accounting may, but need not,  be filed with the Bankruptcy Court for as long as the Bankruptcy Case remains open and pending before the Bankruptcy Court. Copies of the accounting shall be available to the Beneficiaries upon request. However, the Trustee shall redact any and all confidential and personal identifying information from any and all accountings or reports filed with the Bankruptcy Court or provided to any Beneficiary.

B.      Approval of Accountings and Discharge of the Trustee. At any time when the Bankruptcy Case is open, the Trustee may file with the Bankruptcy Court a motion for approval of any accounting described of this Trust Agreement. Upon the entry of an order of the Bankruptcy Court approving the accounting, the Trustee shall be discharged from all liability to the Liquidation Trust, any Beneficiary, or any Person who has or may have a claim against the Trustee or Trust for acts or omissions in the Trustee's capacity as Trustee with respect to all assets listed and transactions detailed in the accounting.

IX.

SECTION 468B SETTLEMENT FUND

A.      Qualification. In accordance with the Plan, the Trustee shall take all reasonable steps to ensure that the Trust will qualify as, and remain, a "Designated" or "Qualified" settlement fund within the meaning of Section 468B of the Internal Revenue Code of 1986 (as amended, the "Tax Code") and the regulations promulgated pursuant the Tax Code (the "Treasury Regulations"). The Debtor shall be the "Transferor" within the meaning of Treasury Regulation Section 1.468B-1(d)(1). The Trustee shall be classified as the "Administrator" within the meaning of Treasury Regulation Section 1.468B-2(k)(3).

B.      All Events Test and Economic Performance Requirement. It is intended that the transfer of the Liquidation Trust Assets to the Liquidation Trust shall satisfy the "All Events Test" and the "Economic Performance" requirement of Section 461(h)(1) of the Tax Code and Treasury Regulation Section 1.461-1(a)(2).

C.      Employer Identification Number. Upon establishment of the Trust, the Trustee shall apply for an employer identification number for the Trust in accordance with Treasury Regulation Section 1.468B-2(k)(4).

D.      Filing Requirements. The Trustee shall cause to be filed, on behalf of the Liquidation Trust, all required federal, state, and local tax returns in accordance with the provisions of Treasury Regulation Section 1.468B-2(k)(1). The Debtor shall file an election statement satisfying the requirements of Treasury Regulation Section 1.468B-1(k)(2)(ii) so that the Liquidation Trust is treated as a grantor trust under Section 671 of the Tax Code and the Treasury

Regulations. The election statement shall be included with the Liquidation Trust's first timely filed trust income tax return. The Debtor shall supply to the Trustee and to the Internal Revenue Service the statement described in Treasury Regulation Section 1.468B-3(e)(2) no later than February 15 of the year following each calendar year in which the Debtor makes a transfer to the Liquidation Trust.

E.     Broad Powers of the Trustee. The Trustee is empowered to take all actions, including any action consistent with those expressly set forth in Article IX of this Trust Agreement, as the Trustee deems necessary to reasonably ensure that the Trust is treated as a "Designated" or "Qualified" settlement fund under Section 468B of the Tax Code and the Treasury Regulations. Further, the Trustee may, unilaterally and without order from the Bankruptcy Court, amend, either in whole or in part, any administrative provision of this Trust Agreement which causes unanticipated tax consequences or liabilities inconsistent with Article IX of this Trust Agreement, provided such amendment does not create any tax liabilities or administrative responsibilities for the Debtor.

X.

BENEFICIARIES

A.     Register. The Trustee shall keep a register (the "Register") in which the Trustee shall at all times maintain the (i) names and addresses of the Beneficiaries and the actual distributions made to the Beneficiaries pursuant to the Plan. The Trustee may rely upon the Register for the purposes of delivering distributions or notices. In preparing and maintaining this Register, the Trustee may rely on the name and address of each holder of a Claim as set forth in a proof of claim filed by the holder or schedules prepared by the Debtor, or proper notice of a name or address change, which has been delivered by the Beneficiary to the Trustee.

B.     Rights of Beneficiaries. The rights of a Beneficiary under this Trust Agreement shall, upon the death or incapacity of an individual Beneficiary, pass to the legal representative of the Beneficiary. A Beneficiary shall have no title to, right to, possession of, management of, or control of the Liquidation Trust Assets, or any right to call for a partition or division of the Liquidation Trust Assets. Title to all the Liquidation Trust Assets shall be vested in the Trustee, and the sole interest of the Beneficiaries shall be the rights and benefits given to the Beneficiaries under this Trust Agreement, the Plan, the Confirmation Order, and the Trust Distribution Plan.

C.     Tax Identification Numbers. The Trustee shall require any Beneficiary to furnish to the Trustee the Beneficiary's employer or taxpayer identification number or social security number as assigned by the IRS, and other records or documents necessary to satisfy the Trustee's tax reporting obligations (including, but not limited to, certificates of non-foreign status). The Trustee shall condition the payment of any distribution to any Beneficiary upon receipt of the number and records or documents.

XI.

MISCELLANEOUS PROVISIONS

D4-0012

A.      Plan Incorporation. The terms of the Plan and the Confirmation Order are incorporated into and made part of this Trust Agreement as if fully set forth herein. In the event of any conflict between the terms of this Trust Agreement and the Plan, the terms of the Plan shall govern.

B.      Notices. All notices or deliveries required or permitted under this Trust Agreement shall be given as directed in the Plan, to the following:

If to the Trust or Trustee:

Eric J. Taube, Trustee
2201 Four Oaks Lane (may want to set up a PO Box for this)
Austin, Texas 78704
E-mail: Ericjaytaube@gmail.com

If to a Beneficiary:

Counsel who signed the Beneficiary's Proof of Claim or, for an unrepresented Beneficiary, to the address for the Beneficiary provided in the Proof of Claim or the Bankruptcy Schedules if no Proof of Claim was filed.

If to the Debtor:

Hot Crete, LLC
2010 Brushy Creek Rd., Unit A
Cedar Park, Texas 78613

with a copy to:

Hayward PLLC
Attention: Todd Headden
7600 Burnet Rd, Suite 530
Austin, Texas 78757
E-mail: theadden@haywardfirm.com

C.      Waiver. No failure or delay of any party to exercise any right or remedy pursuant to this Trust Agreement shall affect the right or remedy or constitute a waiver by the party of any right or remedy pursuant to this Trust Agreement. Resort to one form of remedy shall not constitute a waiver of alternative remedies.

D.      Reimbursement of Costs. If the Trustee, the Liquidation Trust or the Debtor, as the case may be, is the prevailing party in a dispute regarding the provisions of this Trust Agreement or the enforcement of a provision of this Trust Agreement, the Trustee, the Liquidation Trust or the Debtor, as the case may be, shall be entitled to collect from the non-prevailing party any and all costs, reasonable and documented out-of-pocket expenses and fees, including attorneys' fees, incurred in connection with the dispute or enforcement action.

**D4-0013**

E. **Entirety of Trust Agreement.** Except with respect to the Plan and Confirmation Order, this Trust Agreement supersedes any and all prior oral discussions and agreements with respect to the subject matter in this Trust Agreement. This Trust Agreement, together with the Exhibits to the Trust Agreement, the Plan, and the Confirmation Order, contain the sole and entire Trust Agreement and understanding with respect to the matters addressed in the Trust Agreement. It is acknowledged that there are no communications or oral understandings that are contrary to, or that in any way restrict, this Trust Agreement and that all prior agreements or understandings within the scope of the subject matter of this Trust Agreement are, upon execution and delivery of this Trust Agreement, superseded, null, and void.

F. **Counterparts.** This Trust Agreement may be executed in two or more counterparts, with the same effect as if all signatures on the counterparts appeared on one document, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Facsimile signatures or signatures delivered by any other electronic means shall have the same force and effect as original signatures.

G. **Captions.** The captions of Articles and Sections are included for convenience only and are to be disregarded in interpreting this Trust Agreement.

H. **Representation.** It is acknowledged that each of the parties to this Trust Agreement has reviewed this Trust Agreement and has consulted counsel, or knowingly chose not to consult counsel, before executing this Trust Agreement. Each of the parties to this Trust Agreement relied upon its own judgment and that of its counsel in executing this Trust Agreement and has not relied on, or been induced by, any representation, statement, or act by any party that is not referred to in this instrument. It is specifically acknowledged and understood that this Trust Agreement has not been submitted to, nor reviewed or approved by, the Internal Revenue Service or the taxing authorities of any state or territory of the United States of America. Each of the parties entered into this Trust Agreement voluntarily, with full knowledge of its significance, and the Trust Agreement is, in all respects, complete and final.

I. **Interpretation.** This Trust Agreement has been reached through negotiations between the parties to this Trust Agreement. Each of the parties to this Trust Agreement acknowledges that the party has participated in the drafting of this Trust Agreement and reviewed the terms of the Trust Agreement and, as such, no rule of construction shall apply which might result in this Trust Agreement being construed in favor or against any of the parties, including without limitation, any rule of construction to the effect that ambiguities ought to be resolved against the drafting party. The parties to this Trust Agreement have used their own judgment in entering into this Agreement.

J. **Savings Clause.** If any clause or provision of this Trust Agreement shall for any reason be held invalid or unenforceable by the Bankruptcy Court or any other court with competent jurisdiction, such invalidity or unenforceability shall not affect any other clause or provision in this Trust Agreement, but this Trust Agreement shall be construed, insofar as reasonable to effectuate the purpose of this Trust Agreement, as if the invalid or unenforceable provision had never been contained in the Trust Agreement.

**D4-0014**

K.    Applicable Law. This Trust Agreement shall be administered under, governed by, and enforced according to the laws of the State of Texas applicable to contracts and trust agreements made and to be performed in this Trust Agreement, except that all matters of federal tax law and the Trust's compliance with Section 468B of the Tax Code and any Treasury Regulations shall be governed by federal tax law and all matters of federal bankruptcy law shall be governed by the Bankruptcy Code and federal bankruptcy law.

**[SIGNATURE PAGE TO FOLLOW]**

IN WITNESS WHEREOF, the Debtor and the Trustee execute this Trust Agreement as of the ___ of May, 2025.

**TRUSTEE:**

[                    ]

By: _____

Title: _____

**HOT CRETE, LLC,**
a Texas LLC, as Debtor

By: _____

Title: _____

**D4-0016**

**EXHIBIT 1**

**TRUSTEE COMPENSATION**

[To be submitted with Plan Supplement]



D4-0017

**EXHIBIT 2**

**TRUST DISTRIBUTION PLAN**

Below sets forth the proposed Trust Distribution Plan for the Liquidation Trust.  This Trust Distribution Plan may be amended or modified by amendment to the Trust Agreement, the Plan or the Confirmation Order, or as otherwise permitted in the Trust Agreement.  All capitalized, undefined terms shall have the meanings ascribed to them in the Plan and the Trust Agreement.

**I.      Liquidation Trust Assets**

The Liquidation Trust shall receive all assets of the Debtor's Estate, including, without limitation, the following:

A.      Cash allocated to the Liquidation Trust under the Plan and the Confirmation Order including, without limitation, the portion of Cash allocated to the Liquidation Trust from the Initial Settlement Payment.

B.      All right, title and interest of the Debtor in and to all tax credits and refunds including, without limitation, all employee retention credits.

C.      All rights under insurance policies.

D.      All Estate claims and causes of action.

For informational purposes only, after payment of all Administrative Claims and Professional Fee Claims, the Debtor anticipates that the Liquidation Trust Assets will have a value of over $9.5 million.

**II.     Beneficiaries Under Liquidation Trust**

The Beneficiaries of the Liquidation Trust are defined in the Trust Agreement, and are generally described as follows:

A.      Administrative Claims (if and only to the extent that the Allowed Administrative Claims are not satisfied in full by the Administrative and Priority Claims Reserve);

B.      Professional Fee Claims (if and only to the extent that the Allowed Professional Fee Claims are not satisfied in full by the Professional Fee Escrow Account and, after exhaustion of the Professional Fee Escrow Account, the Administrative and Priority Claims Reserve);

C.      Class 1 Other Priority Claims (if and only to the extent that the Allowed Priority Claims are not satisfied in full by the Administrative and Priority Claims Reserve);

D.      Class 2 Other Secured Claims;

E.      Class 3 Convenience Claims;

**D4-0018**

F.        Class 4 General Unsecured Claims (Pool Claims);

G.       Class 5 General Unsecured Claims (Non-Pool Claims)

The Classes of Claims described herein shall only be deemed Beneficiaries (i) if included within the definition of Beneficiaries under the Trust Agreement and (ii) if and only to the extent that you are a Holder of an Allowed Claim as defined in the Plan.

### III.      Initial Settlement Procedure

A.        Initial Settlement Payment and Election.

Pending an initial review and approval by the Trustee, the Liquidation Trust Beneficiaries holding Class 3 Convenience Claims will receive payment in full of such claims within thirty (30) days of the Effective Date.

B.        Claim Allowance, Mediation, and Objections:

1.        Objection Deadline: Within 90 days of the Effective Date, the Trustee shall file an objection to the allowance or amount of any claim. Claims not objected to are deemed allowed.

2.        Mediation: Claims that are objected to may be selected for mediation if the Trustee believes, in his sole discretion, that mediation will be a quicker or more cost-effective process to adjudicate the claim. Mediations pursuant to this section shall be conducted by a mediator selected by the Trustee.

3.        Mediation Disclosures: The mediation shall include an initial exchange of information in which the Beneficiary will provide relevant information about their claim and the Trustee will provide any information or documentation the mediator deems necessary. These initial disclosures will include the information required by Fed. R. Civ. P. 26(a)(1) as incorporated by Fed. R. Bankr. P. 7026. For the avoidance of doubt, the Confirmation Order shall provide that Fed. R. Civ. P. 26(a)(1) applies to claim objections under Fed. R. Bankr. P. 9014(c).

4.        Mediation Claim Summaries: Prior to mediation, the Trustee will provide to the mediator a statement of no more than five pages outlining the Liquidating Trust's position on the Claim and the Trust's view on settlement. The Beneficiary shall provide to the mediator a statement of no more than five pages outlining the Beneficiary's view as to the value of their claim and the basis for such view, unless the mediator deems such submittal unnecessary.

5.        Claim Settlement-Approvals: The Trustee shall have the authority to agree to a stipulated allowed claim of $250,000 or less as part of a mediation settlement or claim objection without order of the Court or any other further approval. If a mediation settlement includes a proposed allowed claim exceeding $250,000, such settlement must be approved by the Bankruptcy Court after notice and an opportunity for a hearing.

### IV.      Distribution of Liquidation Trust Assets to Beneficiaries

**D4-0019**

A.     All Beneficiaries holding Claims other than Class 3, 4, or 5 Claims shall receive distributions on the conditions and timelines set forth in the Plan and the Trust Agreement.

B.     All Beneficiaries holding Class 3 Claims shall receive distributions on the conditions and timelines set forth in Section III.A. of the Trust Distribution Plan.

C.     All Beneficiaries holding Class 4 Claims shall receive distributions from as follows:

1.     On or before sixty (60) days after the Claim Objection Deadline (the "Initial Distribution Date"), the Trustee shall make an initial distribution to all Beneficiaries of the Liquidation Trust who hold Allowed Class 4 Claims that are not the subject of an objection.

2.     Every one hundred twenty (120) days after the Initial Distribution Date, the Trustee shall make an interim distribution to Beneficiaries of the Liquidation Trust who hold Allowed Claims that are not the subject of an objection; provided, however, the Trustee may elect to delay a distribution in the Trustee's sole discretion.

3.     After the Trustee has liquidated all Liquidation Trust Assets and completed the Claim allowance process, the Trustee shall make a final distribution to the Beneficiaries of the Liquidation Trust (the "Final Distribution"), which shall include the proceeds from liquidation of Estate claims and causes of action after deducting the costs, expenses, and attorneys' fees incurred in liquidating such claims or causes of action (the "Net Claim Proceeds").

D.     Distributions shall be in an amount as determined by the Trustee to be reasonable and appropriate in the Trustee's discretion taking into account anticipated expenses of the Liquidating Trust and a reserve for Claims that are subject to dispute and future allowance. Distributions to Beneficiaries whose Claim(s) are subject to objection that has not been fully resolved shall be reserved until any objection has been fin

## V.     Distribution of Liquidation Trust Assets to Opt-Out Beneficiaries

Any Beneficiary who has opted out of the releases of the Released Parties set forth in the Plan (each an "Opt-Out Beneficiary") will have no right to any distribution from the Liquidation Trust Assets except solely from Estate claims and causes of action.  The Opt-Out Beneficiaries shall receive their pro rata share of the Net Claim Proceeds and shall receive their first and final distribution as part of the Final Distribution.

**D4-0020**

Exhibit

**D-5**

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| HOT CRETE, LLC, | § | Case No. 24-10303-smr |
| | § | |
| Debtor. | § | Chapter 11 |
| | § | |

---

**HOT CRETE, LLC's**
**AMENDED DISCLOSURE STATEMENT UNDER 11 U.S.C. §1125**

---

DATED: June 2, 2025

Todd Headden
Texas State Bar No. 24096285
HAYWARD, PLLC
7600 Burnet Rd., Ste. 530
Austin, TX 78757
(737) 881-7104 (phone and fax)
Email: THeadden@HaywardFirm.com
ATTORNEYS FOR DEBTORS

i

**D5-0001**

## TABLE OF CONTENTS

I.     INTRODUCTION..................................................................................2
    A.  Identity of the Debtors ................................................................2
    B.  General Information Concerning Disclosure Statement ..........................3
    C.  Definitions................................................................................3
    D.  Answers to Commonly Asked Questions ...........................................3
        1.  **WHO IS THE DEBTOR?** ................................................3
        2.  **HOW LONG HAS THE DEBTOR BEEN IN CHAPTER 11?** .4
        3.  **WHAT IS CHAPTER 11?**.................................................4
        4.  **WHAT IS THE DEBTOR ATTEMPTING TO DO IN CHAPTER 11?** ................................................................4
        5.  **IF THE LIQUIDATING PLAN GOVERNS HOW MY CLAIM IS TREATED, WHY AM I RECEIVING THIS DISCLOSURE STATEMENT?** ..............................................4
        6.  **HAS THIS DISCLOSURE STATEMENT BEEN APPROVED BY THE COURT?** ..............................................5
        7.  **WHY IS CONFIRMATION OF THE LIQUIDATING PLAN IMPORTANT?**.................................................5
        8.  **WHAT IS NECESSARY TO CONFIRM THE LIQUIDATING PLAN?**.................................................5
        9.  **ARE CREDITORS ENTITLED TO VOTE ON THE PLAN?** .6
        10.  **HOW WILL THIS PLAN TREAT MY CLAIM?**.....................6
        11.  **WHEN IS THE DEADLINE FOR RETURNING MY BALLOT?**...........................................................7
II.    INFORMATION CONCERNING THE DEBTOR.............................7
    A.  Overview of the Debtor ...............................................................7
    B.  Management of the Debtor ...........................................................7
    C.  Significant Transactions Prior to Bankruptcy .....................................7
    D.  Events Leading to Filing...............................................................8
    E.  Significant Events Since Filing Bankruptcy .......................................8
        a.  In General............................................................8
        b.  Legal Proceedings...................................................8
        c.  Employment of Professionals. ....................................9
        f.  Liquidation of Assets. ..............................................9
        g.  Insurance Settlement. ...............................................9
III.   ANALYSIS AND VALUATION OF ESTATE ASSETS.......................9
    A.  Liquidation Value/Analysis ..........................................................9
IV.   SUMMARY OF PLAN OF REORGANIZATION ...........................10
    A.  Analysis and Treatment of Claims................................................10
    B.  Unclassified Claims. ................................................................11
    C.  Administrative Expense Claims....................................................11
    D.  Class 1 – Allowed Priority Claims.................................................12
    E.  Class 2 – Other Secured Claim. ...................................................13
    F.  Class 3 – Convenience Claims.....................................................13
    G.  Class 4 – Pool Claims. ..............................................................14

**D5-0002**

H.    Class 5 – Non-Pool Claims ........................................................14
I.    Class 6- Contingent Indemnification Claims..............................15
J.    Class 7- Interests in the Debtor ................................................15
K.    Risk to Creditors ......................................................................15
      1.    **Bankruptcy Law Considerations** ...............................16
      **The Debtor May Not Be Able to Satisfy Vote Requirements** ...............17
      **The Debtor May Not Be Able to Secure Confirmation**........................17
      **Releases, Injunctions, and Exculpations Provisions May Not Be
            Approved** ...............................................................17
      **The Debtor May Not Be Able to Pursue Nonconsensual Confirmation
            Over Certain Impaired Non-Accepting Classes**........................18
      **The Chapter 11 Case May Be Converted to a Case under Chapter 7 of
            the Bankruptcy Code**...................................................18
      **The Chapter 11 Case May Be Dismissed** ............................................18
      **Risk of Non-Occurrence of the Plan Effective Date** ............................18
      2.    Risks Related to Recoveries Under the Plan...................................19
      3.Miscellaneous              Risk              Factors              and
            Disclaimers ..............................................................20
L.    Claims Allowance Procedure ....................................................21
M.    Settlement, Release, Exculpation and Related Provisions........................21
      1.    Released Parties and Exculpated Parties........................................22
      2.    Estate Release ...........................................................22
      3.    Other Releases. ..........................................................22
      4.    Exculpation ..............................................................24
      5.    Channeling Injunction...................................................24
O.    Retention of Jurisdiction ..........................................................26
P.    Post-Confirmation Procedure....................................................26
V.    **ALTERNATIVES TO THE DEBTORS' PLAN** ........................................**26**
VI.   **TAX CONSEQUENCES** ......................................................................**26**
VII.  **PENDING AND POTENTIAL LITIGATION** .............................................**27**
A.    Avoidance Actions ..................................................................27
B.    Other Litigation......................................................................28
VIII. **SOLICITATION OF VOTES**..............................................................**28**

D5-0003

## IMPORTANT NOTICE AND DISCLAIMER

THIS DISCLOSURE STATEMENT ("DISCLOSURE STATEMENT") HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND RULE 3016 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE, AND NOT NECESSARILY IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER NON-BANKRUPTCY LAW. THIS DISCLOSURE STATEMENT WAS PREPARED TO PROVIDE HOLDERS OF CLAIMS AGAINST THE DEBTORS WITH "ADEQUATE INFORMATION" (AS DEFINED IN THE BANKRUPTCY CODE) SO THAT THEY CAN MAKE AN INFORMED JUDGMENT ABOUT THE PLAN. THIS DISCLOSURE STATEMENT AND ALL EXHIBITS HERETO, INCLUDING THE PLAN, SHOULD BE READ. PLAN SUMMARIES AND STATEMENTS MADE IN THIS DISCLOSURE STATEMENT ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE PLAN AND THE EXHIBITS ANNEXED TO THE DISCLOSURE STATEMENT AND THE PLAN.

THERE HAS BEEN NO INDEPENDENT AUDIT OF THE FINANCIAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT EXCEPT AS EXPRESSLY INDICATED HEREIN. THIS DISCLOSURE STATEMENT WAS COMPILED FROM INFORMATION OBTAINED FROM NUMEROUS SOURCES BELIEVED TO BE ACCURATE TO THE BEST OF THE DEBTORS' KNOWLEDGE, INFORMATION AND BELIEF. NO GOVERNMENTAL AUTHORITY HAS PASSED ON, CONFIRMED OR DETERMINED THE ACCURACY OR ADEQUACY OF THE INFORMATION CONTAINED HEREIN.

NOTHING STATED HEREIN WILL BE DEEMED OR CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, OR BE ADMISSIBLE IN ANY OTHER PROCEEDING INVOLVING THE DEBTORS OR ANY OTHER PARTY, OR BE DEEMED CONCLUSIVE EVIDENCE OF THE TAX OR OTHER LEGAL EFFECTS OF THE PLAN ON THE DEBTOR OR HOLDERS OF CLAIMS OR EQUITY INTERESTS. CERTAIN STATEMENTS CONTAINED HEREIN, BY NATURE, ARE FORWARD-LOOKING AND CONTAIN ESTIMATES AND ASSUMPTIONS. THERE CAN BE NO ASSURANCE THAT SUCH STATEMENTS WILL REFLECT ACTUAL OUTCOMES.

THE STATEMENTS CONTAINED HEREIN ARE MADE AS OF THE DATE HEREOF, UNLESS ANOTHER TIME IS SPECIFIED. THE DELIVERY OF THIS DISCLOSURE STATEMENT WILL NOT BE DEEMED OR CONSTRUED TO CREATE ANY IMPLICATION THAT THE INFORMATION CONTAINED HEREIN IS CORRECT AT ANY TIME AFTER THE DATE HEREOF.

HOLDERS OF CLAIMS AND EQUITY INTERESTS SHOULD NOT CONSTRUE THE CONTENTS OF THIS DISCLOSURE STATEMENT OR THE PLAN AS PROVIDING ANY LEGAL, BUSINESS, FINANCIAL OR TAX ADVICE. THEREFORE, EACH SUCH HOLDER SHOULD CONSULT WITH ITS OWN LEGAL, BUSINESS, FINANCIAL AND TAX ADVISORS AS TO ANY SUCH MATTERS CONCERNING THIS DISCLOSURE

1

**D5-0004**

STATEMENT OR THE PLAN AND THE TRANSACTIONS CONTEMPLATED THEREBY.

NO SOLICITATION OF VOTES HAS BEEN OR MAY BE MADE EXCEPT PURSUANT TO THIS DISCLOSURE STATEMENT AND 11 U.S.C. § 1125 AND NO PERSON HAS BEEN AUTHORIZED TO USE ANY INFORMATION CONCERNING THE DEBTORS TO SOLICIT ACCEPTANCES OR REJECTIONS OF THE PLAN OTHER THAN THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT. CREDITORS SHOULD NOT RELY ON ANY INFORMATION RELATING TO THE DEBTORS OTHER THAN THAT CONTAINED IN THIS DISCLOSURE STATEMENT AND THE EXHIBITS ATTACHED HERETO OR SUBMITTED HEREWITH.

EXCEPT AS SET FORTH IN THIS DISCLOSURE STATEMENT AND THE EXHIBITS, NO REPRESENTATION CONCERNING THE DEBTORS, THEIR ASSETS, PAST OR FUTURE OPERATIONS, OR CONCERNING THE PLAN IS AUTHORIZED, NOR ARE ANY SUCH REPRESENTATIONS TO BE RELIED UPON IN ARRIVING AT A DECISION WITH RESPECT TO THE PLAN. ANY REPRESENTATIONS MADE TO SECURE ACCEPTANCE OR REJECTION OF THE PLAN OTHER THAN AS CONTAINED IN THIS DISCLOSURE STATEMENT SHOULD BE REPORTED TO COUNSEL FOR THE DEBTORS.

NEITHER DELIVERY OF THE DISCLOSURE STATEMENT NOR ANY EXCHANGE OF RIGHTS MADE IN CONNECTION WITH THE DISCLOSURE STATEMENT AND THE PLAN SHALL UNDER ANY CIRCUMSTANCES IMPLY THAT THERE HAS BEEN NO CHANGE IN THE FACTS SET FORTH HEREIN SINCE THE DATE THE DISCLOSURE STATEMENT AND THE MATERIALS RELIED UPON IN PREPARATION OF THE DISCLOSURE STATEMENT WERE COMPILED.

THE APPROVAL BY THE BANKRUPTCY COURT OF THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE AN ENDORSEMENT BY THE BANKRUPTCY COURT OF THE PLAN OR A GUARANTEE OF THE ACCURACY OR THE COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.

THIS DISCLOSURE STATEMENT AND THE PLAN ATTACHED HERETO SHOULD BE READ IN THEIR ENTIRETY PRIOR TO VOTING ON THE PLAN. FOR THE CONVENIENCE OF HOLDERS OF CLAIMS, THE TERMS OF THE PLAN ARE SUMMARIZED IN THIS DISCLOSURE STATEMENT, BUT ALL SUMMARIES ARE QUALIFIED IN THEIR ENTIRETY BY THE PLAN, WHICH CONTROLS IN THE EVENT OF ANY INCONSISTENCY WITH THIS DISCLOSURE STATEMENT.

## I.     INTRODUCTION

### A.     Identity of the Debtors

Hot Crete, LLC (the "Debtor"), filed its voluntary petition under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101, et seq. (the "Bankruptcy Code") on March 22, 2024, in the United States Bankruptcy Court for the Western District of Texas, Austin Division

**D5-0005**

("Bankruptcy Court"). The Debtor has been serving as debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108 since the bankruptcy filing.

**B.    General Information Concerning Disclosure Statement**

The Debtor has prepared and filed this Disclosure Statement consistent with the provisions of the Bankruptcy Code. The purpose of the Plan is to maximize recovery to the Creditors, including the numerous homeowners that were unintentionally harmed by pool cancer/ASR. The Debtor believes that the Plan achieves maximum recovery to all Creditors while facilitating the liquidation of the Debtor.

The Debtor submits this Disclosure Statement pursuant to 11 U.S.C. § 1125 and Rules 3016 and 3017 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") to all Creditors of the Debtor for the purpose of disclosing that information which the Court has determined is material, important, and necessary for creditors and the members of the Debtor in order to arrive at an intelligent, reasonably informed decision in exercising the right to vote for acceptance or rejection of the Debtor's Plan of Liquidation ("Plan"), including as it may later be amended. A copy of the Plan is attached hereto as **Exhibit 1** and incorporated herein by reference.

This Disclosure Statement describes the Liquidation of the Debtor including the specific treatment you, as a Creditor, will receive under the Plan. The disclosure of information contained here is submitted as an aid and supplement to your review of the Plan in an effort to explain the terms and implications of the Plan. If any questions arise, the Debtor urges you to consult with your own legal counsel, alternatively you may contact the Debtor's counsel and every effort will be made to address your questions.

**C.    Definitions**

Capitalized terms used herein are defined herein and in the Definitions section included in the Plan. If not defined, capitalized terms have the meanings assigned to in the Bankruptcy Code and Bankruptcy Rules.

**D.    Answers to Commonly Asked Questions**

As part of the Debtor's effort to inform Creditors regarding the Debtor's Plan and the Plan confirmation process, the following summary provides answers to various questions which are often asked by a party receiving a disclosure statement.

**THE FOLLOWING SUMMARIES ARE QUALIFIED IN THEIR ENTIRETY BY THE PLAN, WHICH CONTROLS IN THE EVENT OF ANY INCONSISTENCY.**

1.    **WHO IS THE DEBTOR?**

Hot Crete, LLC. ("Hot Crete").

D5-0006

2. **HOW LONG HAS THE DEBTOR BEEN IN CHAPTER 11?**

Hot Crete filed its bankruptcy petition on March 22, 2024.

3. **WHAT IS CHAPTER 11?**

Chapter 11 is the business reorganization provision of the Bankruptcy Code. Beyond reorganization, it permits a debtor to submit a Plan of Liquidation providing for the sale and distribution of its assets to be used for the repayment of their debts. In this instance, the Debtor will seek for the appointment of a liquidating trustee ("Liquidating Trustee") that will oversee the collection of assets and distribution of those proceeds to various creditors.

4. **WHAT IS THE DEBTOR ATTEMPTING TO DO IN CHAPTER 11?**

The principal objective of a Chapter 11 case is confirmation (approval) of a plan. In this instance, the Debtor does not intend to continue with operations after approval of the Plan and ceased operations before filing the bankruptcy petition. Here, a confirmed plan will enable a financially distressed debtor to liquidate its assets under Court supervision and to structure a settlement with its insurance company to provide structure to the insurance claim process for a more equitable distribution of policy proceeds than a proverbial race to the courthouse.

A plan sets forth the means for treating impaired and unimpaired claims against a debtor. A claim is impaired under a plan if the plan provides that such claim will not be repaid in full or that the legal, equitable, or contractual rights of the holder of such claim will be altered. A claim is unimpaired if it will be paid in full or the legal, equitable, or contractual rights of the holder of such claim are not altered by the plan. A holder of an impaired claim generally is entitled to vote on a plan if such claim has been allowed under Section 502 of the Bankruptcy Code.

In this instance, Hot Crete proposes to pay what it can to its creditors from the following primary categories of assets: First) the proceeds after liquidating its assets;, Second) the proceeds from applicable insurance policies and, specifically, the Settlement with Federated Insurance to be provided in the Plan Supplement, and, Third) all other assets of the Debtor, such as, but not limited to, retained causes of action.

5. **IF THE LIQUIDATING PLAN GOVERNS HOW MY CLAIM IS TREATED, WHY AM I RECEIVING THIS DISCLOSURE STATEMENT?**

The Bankruptcy Code requires that a debtor solicit acceptances and rejections of its proposed Plan before the Plan can be confirmed (approved) by the Bankruptcy Court. Before a debtor can solicit acceptance of its Plan, the Bankruptcy Court must approve the Disclosure Statement and determine that the Disclosure Statement contains information adequate to allow creditors to make informed judgments about the Plan. After Bankruptcy Court approval of the Disclosure Statement, then the Disclosure Statement, the proposed Plan and a ballot are sent to the holders of claims. The creditors then can vote on the Plan.

**D5-0007**

6. **HAS THIS DISCLOSURE STATEMENT BEEN APPROVED BY THE COURT?**

The Court has not approved this Disclosure Statement yet. Before a Plan can be confirmed, the Bankruptcy Court must find that a debtor's Disclosure Statement contains information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition for the debtor's books and records to enable a hypothetical, reasonable investor typical of holders of claims of the relevant classes to make an informed judgment whether to vote to accept or reject the Plan. The Bankruptcy Court's approval of the Disclosure Statement in this case does not constitute an endorsement of any of the information contained in either the Disclosure Statement or the Plan.

Likewise, although the Debtor has utilized information believed to be accurate in preparing this Disclosure Statement, neither the Debtor nor its counsel warrant the accuracy of the information contained in or relied upon in preparing this Disclosure Statement nor should the Disclosure Statement be construed to be any representation or warranty whatsoever, express, implied or otherwise, that the Plan is free from risk, that acceptance or confirmation of the Plan will result in a risk-free or assured restructuring of the debts of the Debtor, or that the projections or plans of the Debtor for payment will be realized.

7. **WHY IS CONFIRMATION OF THE LIQUIDATING PLAN IMPORTANT?**

Confirmation (approval) of the Plan by the Bankruptcy Court is necessary for the Debtor to provide the proposed payment to Creditors under the Plan. Unless the Plan is confirmed by the Bankruptcy Court, the Debtor is legally prohibited from paying you what has been proposed in the Plan.

8. **WHAT IS NECESSARY TO CONFIRM THE LIQUIDATING PLAN?**

The Bankruptcy Court will hold hearing before the Honorable Shad M. Robinson, United States Bankruptcy Judge in person at Austin Courtroom #1, Homer J. Thornberry Federal Judicial Building, 903 San Jacinto Blvd., 3rd Floor, Austin, Texas 78701. The hearing is scheduled on **[DATE]**, at **[TIME]** (CT). Prior court approval is required to appear virtually or phone for this hearing. The Bankruptcy Court will consider whether the Liquidating Plan should be confirmed. Section 1129 of the Bankruptcy Code contains the requirements for confirmation of a Plan.

YOUR VOTE IS IMPORTANT.

In order for the Plan to be accepted by creditors, at least two-thirds in amount and more than one-half in number of the voting creditors in each class must affirmatively vote for the Plan. Even if all classes of claims accept the Plan, the Bankruptcy Court may refuse to confirm the Plan. The Bankruptcy Court must also find that the Plan complies with the applicable provisions of the Bankruptcy Code and that the proponent of the Plan has also complied with the Bankruptcy Code. The Bankruptcy Court must also find that the Plan has been proposed in good faith and not by any means forbidden by law. The Bankruptcy Court must find that the proponent of the Plan (here, the Debtor) has disclosed the identity

**D5-0008**

and affiliation of the persons who will manage the Debtor after confirmation, that the appointment of such persons is consistent with the interest of creditors and equity security holders and with public policy, and that the identity and compensation of any insiders that will be employed or retained by the Debtor, or the successor, has been disclosed. The Bankruptcy Court must additionally find that each class of claims has either accepted the Plan or will receive at least as much as it would under a Chapter 7 liquidation. The Bankruptcy Code also provides for the treatment of certain priority claims. If any classes of claims are impaired under the Plan, the Court must find that at least one class of claims that is impaired has accepted the Plan without counting any votes by insiders. Additionally, the Plan must provide for payment of fees to the United States Trustee.

If the Plan is not accepted by all classes of claims or interest, the Debtor may attempt to obtain confirmation under what is known as "cramdown." To obtain confirmation by cramdown, in general, the Bankruptcy Court must find that the Plan does not discriminate unfairly and is fair and equitable with respect to each class of claims or interests that is impaired by the Plan and has not accepted the Plan. The Code provides several options for a Plan to be "fair and equitable" to a secured creditor, which includes the secured creditor retaining its lien and receiving deferred cash payments at a market interest rate totaling either the value of the property securing the claim or the amount of the allowed claim as found by the Bankruptcy Court, whichever is less. With respect to a class of unsecured claims, the requirement that a Plan be "fair and equitable" requires that the holder of an unsecured claim be paid the allowed amount of its claim or that no junior interest receive or retain any property on account of its prior claim. If the Plan is not accepted by all classes, notice is hereby given that the Debtors will seek to obtain confirmation of the Plan through "cramdown."

9.     **ARE CREDITORS ENTITLED TO VOTE ON THE PLAN?**

Impaired Creditors are entitled to vote on the Debtor's proposed Plan. If you are a Creditor, a ballot to be used for voting on the Plan has been distributed to you with this Disclosure Statement. If you lose your Ballot, you may request another one from Debtor's counsel. Instructions for completing and returning the Ballot are set forth on the Ballot and should be reviewed carefully. For purposes of clarification, the Debtor will identify on the Ballot the class of claim the Holder's Claim will be treated as.

10.     **HOW WILL THIS PLAN TREAT MY CLAIM?**

People who are owed money by the Debtor hold what is known as a "claim." The Plan organizes claims into classes based upon the type of claim and the treatment which it will receive under the Plan. To determine how the Plan treats your claim, you must first determine which class covers your claim. To find the treatment of your claim, look in the Table of Contents to find the category which best describes your claim. Many creditors will hold what are known as unsecured claims.

**D5-0009**

11.     **WHEN IS THE DEADLINE FOR RETURNING MY BALLOT?**

The Bankruptcy Court has directed that, in order to be counted for voting purposes, the Debtor must receive your ballot by **no later than 5:00 p.m.** (prevailing central time), on **[DATE]** ("Voting Deadline") via mail service, fax, or email, unless the Debtor agrees otherwise. If mailed, the ballot must be delivered timely to the following address:

**By Mail:**

PLAN BALLOTS
Hot Crete, LLC
c/o Hayward, PLLC
Attn: Todd Headden
7600 Burnet Road, Ste. 530
Austin, Texas 78757
Main/fax: (737) 881-7100
THeadden@HaywardFirm.com

**By Fax:** You may also vote and submit your ballot by fax by sending your ballot to PLAN BALLOTS Hot Crete, LLC. c/o Hayward, PLLC Attn: Todd Headden, fax number: (737) 881-7100 so that it is received by the Voting Deadline.

**By Email:** You may also vote and submit your ballot by email by sending a copy of your ballot attached to an email addressed to THeadden@HaywardFirm.com with the language "PLAN BALLOTS – Hot Crete, L.P." in the subject line.

**IT IS IMPORTANT THAT ALL CREDITORS VOTE ON THE PLAN. THE DEBTOR BELIEVES THAT THE PLAN PROVIDES THE BEST POSSIBLE RECOVERY TO CREDITORS. FOR THIS REASON, THE DEBTOR BELIEVES THAT ACCEPTANCE OF THE PLAN IS IN THE BEST INTERESTS OF THE CREDITORS AND RECOMMENDS THAT ALL CREDITORS VOTE TO ACCEPT THE PLAN.**

## II.     INFORMATION CONCERNING THE DEBTOR

**A.     Overview of the Debtor**

The Debtor is a Texas limited liability corporation that operated as a provider and installer for pool concrete or shotcrete.  The Debtor operates in the greater Austin, Texas metropolitan area.

**B.     Management of the Debtor**

The managing members for Hot Crete were Edgar and Fausto Castro. Additionally, Edgar served as the President of the company. The Debtor is no longer operating, hence Edgar has overseen the liquidation of the assets and the bankruptcy process. Confirmation of the Plan will result with the appointment of a liquidating trustee.

**C.     Significant Transactions Prior to Bankruptcy**

**D5-0010**

Other than the events leading to filing stated below, the Debtors are not aware of significant transactions to be disclosed.

**D.  Events Leading to Filing**

    a.  Hot Crete, LLC was opened in 2019 by Edgar and Fausto Castro. They obtained equipment and hired staff experienced in shooting shotcrete and gunite to form the shells/bowls of pools in Central Texas. Hot Crete operated out of Liberty Hill, Texas and served the greater Austin metro area.

    b.  Hot Crete was busy shooting pools for numerous pool builders, serving as a sub-contractor to many entities. Unbeknownst to Hot Crete, its directors, officers, owners, or employees, pool builders and contractors in Central Texas were provided with raw materials and aggregate that was defective causing many pools to be afflicted with a condition commonly referred to as Concrete Cancer.

    c.  Alkali-Silica Reaction ("ASR" or "Concrete Cancer") is a defect in the concrete mixtures that causes the shell of a pool to weaken and ultimately crack, causing severe damage to the pool. The concrete mixture lacked sufficient fly ash, causing the reaction due to excessive exposure to water, a key function of a swimming pool. Ultimately, a pool suffering from Concrete Cancer may not be able to hold water.

    d.  Starting in late 2022 or early 2023, Hot Crete began to learn about the rampant issue with pools in Central Texas experiencing Concrete Cancer.

    e.  Along with many other companies, Hot Crete contacted its insurance carrier, Federated Insurance, when claims started being made against its policies. Over time, many homeowners filed lawsuits against Hot Crete, in addition to pool builders, aggregate providers, and the like.

    f.  In 2023, Federated Insurance terminated the insurance policy with Hot Crete and Hot Crete found a new insurance provider, but that Commercial General Liability Policy contained a prior work exclusion. In early 2024, the automobile insurance for the company terminated and the Debtor ceased operations.

**E.  Significant Events Since Filing Bankruptcy**

    a.  <u>In General</u>. Debtor was no longer operating when it filed for bankruptcy protection. Instead, Debtor took steps to liquidate the significant assets it owned, ultimately obtaining Court Authority to sell the items via a broker.

    b.  <u>Legal Proceedings</u>. A creditors' meeting under §341 of the Bankruptcy Code was held on April 16, 2024 at 2:30 pm, at which the Debtors' representative appeared and testified. No official Committee of Unsecured Creditors has been appointed. The Bar Date for government agencies' Claims was September 18, 2024 and the Bar Date for all other Claims was October 31, 2024.

**D5-0011**

c.     <u>Employment of Professionals</u>. On April 19, 2024, Debtor filed its Application to Employ Hayward, PLLC ("HPLLC") as lead bankruptcy counsel to provide the following services: (i) provide legal advice with respect to the powers and duties as Debtor-in-Possession in the continued operation of its business and management of its property; (ii) advise the Debtor of its responsibilities under the Bankruptcy Code and to assist with such responsibilities; (iii) assist with the preparation and filing of the bankruptcy petition, schedules, statement of financial affairs, monthly operating reports and other documents required by the Bankruptcy Court and associated rules and procedures; (iv) represent the Debtor in adversary proceedings and other contested and uncontested matters; (v) represent the Debtor in the negotiation and documentation of any sales or refinancing of property of the estate and obtaining the necessary approvals of such sales or refinancing; and, (vi) assist the Debtor with the formulation of a plan of reorganization and disclosure statement, and obtaining Court approval of same. The Order approving the application to employ HPLLC was entered on May 16, 2024 and effective as of the Petition Date, March 22, 2024.

d.     On May 3, 2024, Debtor filed its application to employ Terra Point, LLC as its broker to sell the valuable assets of the business. On June 27, 2024, the Court entered the Order approving the application to employ TerraPoint.

e.     On June 7, 2024, Debtor filed its application to employ Royston, Rayzor, Vickery & Williams, LLP as Special Counsel to assist with the defense and analysis of the claims resulting from allegations of Concrete Cancer. The Order approving the application to employ special counsel was entered on July 25, 2024.

f.     <u>Liquidation of Assets</u>. Debtor hired TerraPoint to sell its assets. However, the market for the specialized vehicles was less than ideal and the items either did not sell before the secured lenders repossessed the vehicles or otherwise did not generate the proceeds anticipated.

g.     <u>Insurance Settlement</u>. The Debtor is in ongoing negotiations with Federated Insurance, which will, if agreed to and approved by the Court, provide for the remaining policy proceeds be deposited into a Liquidating Trust to be disbursed to the Pool Creditors. The estimated proceeds to be deposited in the Liquidating Trust will exceed $9 million.

### III.     ANALYSIS AND VALUATION OF ESTATE ASSETS

**A.    Liquidation Value/Analysis**

In this case, the Debtor is liquidating. Accordingly, the Debtor believes that the creditors will receive under the Plan at least what they would receive had the case converted to chapter 7. The Debtors' liquidation analysis will be attached as an exhibit in the Plan Supplement and all parties in interest are encouraged to review such liquidation analysis for more details regarding the Debtors' liquidation analysis. In summary, the liquidation analysis sets forth that the Debtors

**D5-0012**

believe the liquidation of all assets in chapter 7 would generate less net recovery to general unsecured creditors. Therefore, the Debtor believes that the Plan is in the best interest of creditors.

There are two likely consequences if the Plan is rejected, or the Bankruptcy Court denies confirmation of the Plan: (a) the Bankruptcy Court could dismiss the Debtor's Chapter 11 Bankruptcy Case or (b) the Debtor's Chapter 11 Bankruptcy Case could be converted to Chapter 7 liquidation under the Bankruptcy Code, possibly losing the benefit of the Insurance Settlement.

Dismissal. If the Debtor's bankruptcy case was to be dismissed, the Debtor would no longer have the protection of the Bankruptcy Court and the applicable provisions of the Bankruptcy Code and a run to the Courthouse would be expected. Dismissal would negatively impact the majority of the Pool Creditor in that a small number of creditors could, if they obtain a judgment on their claims, extinguish the applicable policy proceeds.

Chapter 7 Liquidation. If the Plan is not confirmed, it is possible that the Debtor's Chapter 11 case will be converted to a case under Chapter 7 of the Bankruptcy Code, in which a trustee would be elected or appointed to liquidate the assets of the Debtors for distribution to creditors in accordance with the priorities established by the Bankruptcy Code. Whether a bankruptcy case is one under Chapter 7 or Chapter 11, secured creditors, Administrative Claims, and Priority Claims are entitled to be paid in cash and in full before unsecured creditors receive any funds.

If the Debtor's Chapter 11 case were converted to Chapter 7, the present Priority Claims may have priority lower than priority claims generated by the Chapter 7 case, such as the Chapter 7 trustee's fees or the fees of attorneys, accountants, and other professionals engaged by the trustee.

As it stands, the main assets have been liquidated with the exception of Retained Causes of Action, including the Employee Retention Tax Credit. As such, the Debtor believes that liquidation under Chapter 7 would result in significantly lower distributions to the unsecured creditors and to Administrative and Priority Claimants.

The Liquidation Analysis will be included in the Plan Supplement and will include a breakdown of all of Debtors' unencumbered assets, estimated liquidated value if sold at fire sale or auction, and the amount by which the Debtors' Plan will result in a better financial outcome for unsecured creditors than if the Debtors' cases were converted to a Chapter 7.

## IV.     SUMMARY OF PLAN OF REORGANIZATION

This section of the Disclosure Statement is intended only to provide a summary of the key terms, structure, classification, treatment, and implementation of the Plan, and is qualified in its entirety by reference to the entire plan, a copy of which is attached hereto as **Exhibit 1**. To the extent there are any inconsistencies between this summary and the Plan, the Plan shall govern.

### A.     Analysis and Treatment of Claims.

The following chart depicts the classification of Claims and Interests for the Debtor pursuant to the Plan.

D5-0013

| Class | Claim or Interest | Status | Voting Rights | Projected Claim Amounts | Estimated Recovery |
|---|---|---|---|---|---|
| 1 | Priority Claims | Impaired | Entitled to Vote | $5,115.15 | 100% |
| 2 | Secured Claims | Impaired | Entitled to Vote | $43,663.77 | 100% |
| 3 | Convenience Claims | Impaired | Entitled to Vote | $4,730.40 | 100% |
| 4 | Pool Claims | Impaired | Entitled to Vote | Unknown (Over $125,510.078 In filed claims) | Unknown |
| 5 | Non-Pool Claims | Impaired | Entitled to Vote | $23,235,608 | 0% |
| 6 | Contingent Indemnification Claims | Impaired | Not Entitled to Vote | $Unknown | N/A |
| 7 | Allowed Equity Interests in the Debtor | Impaired | Not Entitled to Vote | N/A | N/A |

**B.      Unclassified Claims.**

The current known claimants in this category are as follows.

| Claimant | Amount Claimed | Basis | Treatment |
|---|---|---|---|
| United States Trustee | $500 | Quarterly Fee Estimate- Q1 + Q2 2025 | Subject to objection and allowance as set forth herein, this claim shall be paid in full on the Effective Date. |

**C.      Administrative Expense Claims.**

Administrative claims consist of expenses incurred during the Chapter 11 case, which are approved by the Bankruptcy Court and expenses incurred in operating the Debtor's business. Most administrative expense claims consist of claims by professionals employed by the Debtor in the bankruptcy case, which must be approved by the Bankruptcy Court. Other administrative claims are claims arising post-petition which ~~may~~ have not been paid. The Debtor has paid and intends to continue to pay normal post-petition operating expenses as they become due in the ordinary course of business. The Debtor is aware of the following Administrative Claims:

D5-0014

| | |
|---|---|
| Hayward LLC (estimated) | HPLLC's fees are currently at approximately $10~~9~~0,000.00 for the bankruptcy. HPLLC anticipates additional fees and expenses related to this matter as it relates to plan implementation, claim objections, and finalizing its fee application, which may bring the total fees for the bankruptcy up to $115~~0~~,000, but anticipates no higher than $125,000.00 in total.<br><br>Hayward PLLC has $8,191.50 in trust as security for the payment of these fees. |

The Debtor will pay each Allowed Administrative Expense against the Debtor in full, in from Cash on hand, on the later of (a) the Effective Date (or as soon as practicable thereafter), (b) the date on which the Bankruptcy Court enters an order allowing such Administrative Expense, or (c) such other date to which the Debtor and the Holder of the Allowed Administrative Expense agree; provided, however, that Allowed Administrative Expenses representing (a) obligations incurred in the ordinary course of business or assumed by the Debtor will be paid in full or performed by the Debtor in the ordinary course of business, consistent with past practice and (b) obligations incurred to Professionals for services provided through the Confirmation Date will be paid in accordance with the applicable Bankruptcy Court order approving the fees and expenses of each such Professional; provided, further, however, that Administrative Expense Claims filed after the Administrative Expense Claim Bar Date will be forever barred and disallowed without further order of the Bankruptcy Court.

<u>Final Application for Compensation and Reimbursement of Professionals' Fees and Expenses</u>. All applications for final allowance of compensation and reimbursement of Professionals' fees and expenses must be filed no later than 30 days following the Effective Date and will be subject to the authorization and approval of the Bankruptcy Court.

(a)  <u>Full Settlement</u>. As more specifically set forth in, and without in any way limiting, the Discharge pursuant to this Plan, the distributions provided for in and when paid pursuant to this section are in full settlement and release of all Administrative Expenses.

**D.  Class 1 – Allowed Priority Claims**

(a)  *Treatment*: Except to the extent that a Holder of an Allowed Other Priority Claim agrees to less favorable treatment, each Holder of an Allowed Other Priority Claim shall receive, in full and final satisfaction of such Claim, payment in full in Cash from the Liquidation Trustee on (or as soon as reasonably practicable after) the later of (i) the Effective Date or (ii) thirty (30) days after such Other Priority Claim becomes Allowed, or (iii) a date on which the Holder of such Other Priority Claim and the Debtor or Liquidation Trustee, as applicable, shall otherwise agree in writing.

D5-0015

(b)   *Voting*: Class 1 is Unimpaired under the Plan. Holders of Allowed Other Priority Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan

Class 1 is impaired and entitled to vote.

**E.      Class 2 – Other Secured Claim.**

(a)   *Treatment*: Except to the extent that a Holder of an Allowed Other Secured Claim agrees to a less favorable treatment, each Holder of an Allowed Other Secured Claim shall receive, in full and final satisfaction of such Claim, at the sole option of the Debtor or Liquidation Trustee, as applicable, either:

(i)    payment in full in Cash on the later of (w) the Effective Date (or as soon as reasonably practicable thereafter), (x) the date on which such Other Secured Claim becomes Allowed, (y) the date payment on account of such Other Secured Claim is due; or (z) the date on which the Holder of such Allowed Other Secured Claim and the Debtor or the Liquidation Trustee, as applicable, shall otherwise agree in writing;

(ii)   the Debtor's interest in the collateral securing such Allowed Other Secured Claim; or

(iii)  other treatment that renders such Allowed Other Secured Claim Unimpaired.

*Voting*: Class 2 is Impaired under the Plan. Holders of Allowed Other Secured Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

**F.      Class 3 – Convenience Claims.**

(a)   *Treatment*: On the first Business Day that is thirty (30) days following the Effective Date, each Holder of a Convenience Claim shall receive, in full and final satisfaction of such Claim, payment in full in Cash.

(b)   *Voting*: Class 3 is Impaired under the Plan. Holders of Allowed Convenience Claims are entitled to vote to accept or reject the Plan.

**D5-0016**

**G.      Class 4 – Pool Claims[1].**

(a)      *Treatment*:

1.  Subject to first seeking a recovery from any applicable insurance or other third parties pursuant to Article VI.G, on the Effective Date (or as soon as reasonably practicable thereafter) except to the extent that a Holder of an Allowed Pool Claim agrees to less favorable treatment, each Holder of an Allowed Pool Claim shall receive, in full and final satisfaction of such Claim, a beneficial interest in the insurance proceeds held by the Liquidating Trustee.

2.  Distributions from the Liquidating Trust to Holders of Allowed Pool Claims shall be paid in accordance with the terms of the Liquidating Trust Agreement. After accounting for the insurance proceeds for Pool Claims, the remaining amount of the Pool Claims shall receive beneficial interests in the Liquidation Trust and will be treated pro-rata with the non-Pool claims. For the avoidance of doubt, any treatment provided to one or more Holders of Pool Claims pursuant to the provisions of the Confirmation Order approving the Insurance Settlement Motion shall take precedence over the treatment provided in this Article III.B.5.

3.  For the avoidance of doubt, pursuant to the Insurance Settlement, upon approval by the Court, the insurance policies will be exhausted, and the sole recovery will be through the Channeling Injunction. Those parties that do not go through the Channeling Injunction will not receive a distribution from the bankruptcy estate.

(b)      *Voting*: Class 4 is Impaired under the Plan. Holders of Allowed Pool Claims are entitled to vote to accept or reject the Plan.

**H.      Class 5 – Non-Pool Claims**

(a)      *Treatment*:

(i)      Subject to first seeking a recovery from any applicable insurance or other third parties pursuant to Article VI.G, on the Effective Date (or as soon as reasonably practicable thereafter) except to the extent that a Holder of an Allowed Non-Pool Claim agrees to less favorable treatment, each Holder of an Allowed Non-Pool Claim

---

[1] For the avoidance of doubt, the subrogation claims of National Fire Insurance Company of Hartford, The Continental Insurance Company, and Amerisure Mutual Insurance Company shall be classified and treated as Class 4 - Pool Claims. This clarification is not to be a deemed allowance of such claims and does not prevent the Liquidation Trustee from objecting to the claims as and to the extent provided for herein, with each of National Fire Insurance Company of Hartford, The Continental Insurance Company, Amerisure Mutual Insurance Company, and the Liquidation Trustee reserving all of its rights, remedies, claims and defenses with respect thereto.

D5-0017

shall receive, in full and final satisfaction of such Claim, a beneficial interest in the Liquidation Trust. Thereafter each such Holder shall receive Cash distributions from the Liquidation Trust. Distributions from the Liquidation Trust to Holders of Allowed Non-Pool Claims shall be on a Pro Rata basis with all other holders of Liquidation Trust beneficial interests in accordance with the terms of the Liquidation Trust Agreement. For the avoidance of doubt, only Consenting Creditors will have the right to receive distributions from the excess ERC Funds, if any.

(b) *Voting*: Class 5 is Impaired under the Plan. Holders of Allowed Non-Pool Claims are entitled to vote to accept or reject the Plan.

I. **Class 6- Contingent Indemnification Claims**

(a) *Treatment*: On the Effective Date, all Contingent Indemnification Claims shall be Disallowed pursuant to section 502(e)(1)(B) of the Bankruptcy Code. Holders of Contingent Indemnification Claims shall not receive any distribution on account of such Claims.

(b) *Voting*: Class 6 is Impaired under the Plan. Holders of Contingent Indemnification Claims are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

J. **Class 7- Interests in the Debtor**

(a) *Treatment*: On the Effective Date, all Interests in the Debtor shall be cancelled, released, discharged, and extinguished. Holders of Interests in the Debtor shall not receive any distribution on account of such Interests.

(b) *Voting*: Class 7 is Impaired under the Plan. Holders of Interests in the Debtor are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

K. **Risk to Creditors**

BEFORE TAKING ANY ACTION WITH RESPECT TO THE PLAN, HOLDERS OF CLAIMS AGAINST THE DEBTOR WHO ARE ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN SHOULD READ AND CONSIDER CAREFULLY THE RISK FACTORS SET FORTH BELOW, AS WELL AS THE OTHER INFORMATION SET FORTH IN THIS DISCLOSURE STATEMENT, THE PLAN, AND THE PLAN

D5-0018

SUPPLEMENT AND THE OTHER DOCUMENTS REFERRED TO, OR INCORPORATED BY REFERENCE INTO THIS DISCLOSURE STATEMENT, INCLUDING OTHER DOCUMENTS FILED WITH THE BANKRUPTCY COURT IN THE CHAPTER 11 CASES.  THE RISK FACTORS SHOULD NOT BE REGARDED AS CONSTITUTING THE ONLY RISKS PRESENT IN CONNECTION WITH THE DEBTOR'S RESTRUCTURING AND CONSUMMATION OF THE PLAN.

1.      **Bankruptcy Law Considerations.**

a.      **The Debtor Will Consider All Available Alternatives if the Plan Transactions Are Not Implemented, and Such Alternatives May Result in Lower Recoveries for Holders of Claims Against and Interests in the Debtor.**

If the transactions contemplated by the Plan are not implemented, the Debtor will consider all available alternatives, including filing an alternative chapter 11 plan, converting to chapter 7, and any other transaction that would maximize the value of the Debtor's Estate.  The terms of any alternative restructuring proposal may be less favorable to Holders of Claims against and Interests in the Debtor than the terms of the Plan as described in this Disclosure Statement.

Any material delay in the confirmation of the Plan, the Chapter 11 Case, or the threat of rejection of the Plan by the Bankruptcy Court, would add substantial expense and uncertainty to the process.

b.      **Risks Related to Confirmation and Consummation of the Plan.**

**Conditions Precedent to Confirmation May Not Occur.**

As more fully set forth in Article X of the Plan, the occurrence of confirmation and the Effective Date are each subject to a number of conditions precedent.  If each condition precedent to confirmation is not met or waived, the Plan will not be confirmed, and if each condition precedent to Consummation is not met or waived, the Effective Date will not take place.  In the event that the Plan is not confirmed or is not consummated, the Chapter 11 Case will likely convert to a case under chapter 7 of the Bankruptcy Code.

**Parties in Interest May Object to the Plan's Classification of Claims and Interests.**

Section 1122 of the Bankruptcy Code provides that a plan may place a Claim or an Interest in a particular Class only if such Claim or Interest is substantially similar to the other Claims or Interests in such Class.  The Debtor believes the classification of Claims and Interests under the Plan complies with the requirements of the Bankruptcy Code because the Debtor created Classes of Claims and Interests, each encompassing Claims or Interests, as applicable, that are substantially similar to the other Claims or Interests, as applicable, in each such Class.  Nevertheless, there can be no assurance that the Bankruptcy Court will reach the same conclusion, and the Debtor may need to modify the Plan.  Such modification could require a re-solicitation of votes on the Plan.  The Plan may not be confirmed if the Bankruptcy Court determines that the Plan's classifications of Claims and Interests is not appropriate.

D5-0019

**The Debtor May Not Be Able to Satisfy Vote Requirements.**

If votes are received in number and amount sufficient to enable the Bankruptcy Court to confirm the Plan, the Debtor intends to seek, as promptly as practicable thereafter, confirmation of the Plan. In the event that sufficient votes are not received, the Debtor may need to seek to confirm an alternative chapter 11 plan or transaction. There can be no assurance that the terms of any such alternative chapter 11 plan or other transaction would be similar or as favorable to the Holders of Allowed Claims as those proposed in the Plan. The Debtor does not believe that any such transaction exists or is likely to exist that would be more beneficial than the Plan.

**The Debtor May Not Be Able to Secure Confirmation.**

Section 1129 of the Bankruptcy Code sets forth the requirements for confirmation of a chapter 11 plan, and requires, among other things, a finding by the bankruptcy court that: (i) the plan "does not unfairly discriminate" and is "fair and equitable" with respect to any non-accepting Classes; (ii) the plan is not likely to be followed by a liquidation or a need for further financial reorganization unless liquidation or reorganization is contemplated by the plan; and (iii) the value of distributions to non-accepting Holders of Claims and Interests within a particular Class under the plan will not be less than the value of distributions such Holders would receive if the debtor was liquidated under chapter 7 of the Bankruptcy Code.

There can be no assurance that the requisite acceptances to confirm the Plan will be received. Even if the requisite acceptances are received, there can be no assurance that the Bankruptcy Court will confirm the Plan. A non-accepting Holder of an Allowed Claim might challenge either the adequacy of this Disclosure Statement or whether the voting results satisfy the requirements of the Bankruptcy Code or Bankruptcy Rules. Even if the Bankruptcy Court determines that this Disclosure Statement and the voting results are appropriate, the Bankruptcy Court can decline to confirm the Plan if it finds that any of the statutory requirements for confirmation have not been met. If the Plan is not confirmed, it is unclear what distributions, if any, Holders of Allowed Claims would receive with respect to their Allowed Claims.

Subject to the limitations contained in the Plan, the Debtor reserves the right to modify the Plan and seek confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan. Any modifications could result in a less favorable treatment of any Class than the treatment currently provided in the Plan, such as a distribution of property to the Class affected by the modification of a lesser value than currently provided in the Plan or no distribution whatsoever under the Plan.

**Releases, Injunctions, and Exculpations Provisions May Not Be Approved.**

Article IX of the Plan provides for certain releases, injunctions, and exculpations, including third-party releases relating to claims and causes of action that may otherwise be asserted against the Debtor or the Released Parties, as applicable. The releases, injunctions, and exculpations provided in the Plan are subject to objection by parties in interest and, therefore, may not be approved. If the releases are not approved, certain Released Parties may withdraw their support for the Plan. The releases provided to the Released Parties and the exculpation provided to the Exculpated Parties are necessary to the success of the Plan because the Released Parties, the Debtor, and Exculpated Parties have made significant contributions to the Debtor's proposed exit

D5-0020

from chapter 11 and have agreed to make further contributions, but only if they receive the full benefit of the Plan's release and exculpation provisions.  The Plan's release and exculpation provisions are an inextricable component of Plan and the significant recovery it affords to Holders of Allowed Claims.

**The Debtor May Not Be Able to Pursue Nonconsensual Confirmation Over Certain Impaired Non-Accepting Classes.**

In the event that any impaired class of claims or interests does not accept a chapter 11 plan, a bankruptcy court may nevertheless confirm a plan at the proponent's request if at least one impaired class (as defined under section 1124 of the Bankruptcy Code) has accepted the plan (with such acceptance being determined without including the vote of any "insider" in such class), and, as to each impaired class that has not accepted the plan, the bankruptcy court determines that the plan "does not discriminate unfairly" and is "fair and equitable" with respect to the dissenting impaired class(es).  The Debtor believes that the Plan satisfies these requirements, and the Debtor may request such nonconsensual confirmation in accordance with subsection 1129(b) of the Bankruptcy Code.  Nevertheless, there can be no assurance that the Bankruptcy Court will reach this conclusion.  In addition, the pursuit of nonconsensual confirmation or Consummation of the Plan may result in, among other things, increased expenses relating to professional compensation.

**The Chapter 11 Case May Be Converted to a Case under Chapter 7 of the Bankruptcy Code.**

If the Bankruptcy Court finds that it would be in the best interest of creditors and/or the debtor in a chapter 11 case, the Bankruptcy Court may convert a chapter 11 bankruptcy case to a case under chapter 7 of the Bankruptcy Code.  In such event, a chapter 7 trustee would be appointed or elected to liquidate the debtor's assets for distribution in accordance with the priorities established by the Bankruptcy Code. The Debtor believes that liquidation under chapter 7 would result in significantly decreased distributions being made to creditors than those provided for in the Plan because: (a) it is unlikely that the Insurance Settlement would be consummated outside of the protections of the Plan, (b) significant additional administrative expenses would result from the appointment of a chapter 7 trustee, and (c) additional litigation that a chapter 7 trustee might institute could take years to advance and conclude before Holders of Allowed Claims would see any recovery.

**The Chapter 11 Case May Be Dismissed.**

If the Bankruptcy Court finds that the Debtor has incurred substantial or continuing loss or diminution to the Estate and lacks the ability to effectuate substantial consummation of a confirmed plan, or otherwise determines that cause exists, the Bankruptcy Court may dismiss the Chapter 11 Case.  In such event, the Debtor would be unable to confirm the Plan, which may ultimately result in significantly decreased distributions to creditors than those provided for in the Plan.

**Risk of Non-Occurrence of the Plan Effective Date.**

Although the Debtor believe the Effective Date may occur quickly after the Confirmation Date, there can be no assurance as to such timing or as to whether the Effective Date will, in fact, occur.  As more fully set forth in Article X of the Plan, the Effective Date is subject to a number

**D5-0021**

of conditions precedent.  If such conditions precedent are not satisfied or waived by the Debtor or
Liquidating Trustee, the Effective Date will not take place.

2.      Risks Related to Recoveries Under the Plan.

**Estimated Recoveries to Holders of Allowed Claims and Interests Are Based on Assumptions
and May Vary from Actual Recoveries.**

Debtor estimates that the cash on hand at the time of confirmation will be sufficient to pay
all priority, secured, and administrative expenses in full. The Plan also depends upon the Debtor
being able to finalize a settlement with Federated Insurance to include the outstanding balance of
the insurance policies. Therefore, the distributions available to Holders of Allowed Claims under
the Plan can be affected by a variety of contingencies.  The occurrence of any and all such
contingencies will not affect the validity of the vote taken by the Impaired Classes to accept or
reject the Plan or require any sort of revote by the Impaired Classes.

The estimated recoveries are based on numerous assumptions (the realization of many of
which will be beyond the control of the Debtor), including:  (a) the successful confirmation of the
Plan; (b) an assumed date for the occurrence of the Effective Date; (c) the ability of Liquidating
Trustee to successfully reduce the amount of Pool Claims; and (d) the ability of Holders to exhaust
all remedies and obtain separate recovery against applicable third parties or insurance policies, if
any.

The Debtor believes the Debtor's Estate is may be entitled to receive a substantial
Employee Retention Tax Credit ("ERTC"), and the ERTC forms a portion of the recovery to be
made available under the Plan.  However, there can be no assurance when, or in what amount, the
ERTC will actually be paid, and as of the date hereof it appears that the processing of ERTC
applications may be subject to significant delay.

Allowed amounts of Claims may significantly differ from the estimates.  Should one or
more of the underlying assumptions ultimately prove to be incorrect, the actual amount of Allowed
Claims may vary from the estimated Claims contained in this Disclosure Statement.  Moreover,
the Debtor cannot determine with any certainty at this time the number or amount of Claims that
will ultimately be Allowed.  Such differences may materially and adversely affect, among other
things, the percentage recoveries to Holders of Allowed Claims under the Plan.

**Litigation Matters.**

The Debtor is party to certain lawsuits, legal proceedings, and claims arising out of its
business operations. The Debtor cannot predict with certainty the outcome of these lawsuits, legal
proceedings, and claims.  With certain exceptions, the filing of the Chapter 11 Case operates as a
stay with respect to the commencement or continuation of litigation against the Debtor that was or
could have been commenced before the commencement of the Chapter 11 Case.  In addition, the
Debtor's liability with respect to litigation stayed by the commencement of the Chapter 11 Case
generally is subject to settlement and release upon confirmation of a plan under chapter 11, with
certain exceptions.  Therefore, certain litigation Claims against the Debtor may be subject to
settlement and release in connection with the Chapter 11 Case.

D5-0022

It is also possible that certain parties will commence litigation with respect to the treatment of their Claims under the Plan. It is not possible to predict the potential litigation that the Liquidating Trustee may become party to, nor the final resolution of such litigation. The impact of any such litigation on recoveries could be material.

3.      Miscellaneous Risk Factors and Disclaimers.

**The Financial Information Is Based on the Debtor's Books and Records and, Unless Otherwise Stated, No Audit Was Performed.**

In preparing this Disclosure Statement, the Debtor and Counsel relied on financial data derived from the Debtor's books and records that was available at the time of such preparation. While the Debtor believes that such financial information fairly reflects the Debtor's financial condition, the Debtor is unable to warrant or represent that the financial information contained in this Disclosure Statement (or any information in any of the exhibits to the Disclosure Statement) is without inaccuracies.

**No Legal or Tax Advice Is Provided by This Disclosure Statement.**

This Disclosure Statement is not legal advice to any person or Entity. The contents of this Disclosure Statement should not be construed as legal, business, or tax advice. Each reader should consult its own legal and financial advisor(s) with regard to any legal, tax, and other matters concerning its Claim. This Disclosure Statement may not be relied upon for any purpose other than to determine how to vote to accept or reject the Plan or whether to object to confirmation.

**No Admissions Made.**

The information and statements contained in this Disclosure Statement will neither (a) constitute an admission of any fact or liability by any Entity nor (b) be deemed evidence of the tax or other legal effects of the Plan on the Debtor, Holders of Allowed Claims or Interests, or any other parties in interest.

**Failure to Identify Litigation Claims or Projected Objections.**

No reliance should be placed on the fact that a particular litigation claim or projected objection to a particular Claim is, or is not, identified in this Disclosure Statement. Subject to the release provisions of the Plan, the Liquidating Trustee may seek to investigate, file, and prosecute Claims and may object to Claims after confirmation of the Plan, irrespective of whether this Disclosure Statement identifies such Claims or objections to Claims.

**Information Was Provided by the Debtor and Was Relied Upon by the Debtor's Advisors.**

The Debtor's counsel has relied upon information provided to them in connection with the preparation of this Disclosure Statement. Although counsel has performed certain due diligence in connection with the preparation of this Disclosure Statement and the exhibits to the Disclosure Statement, they have not independently verified the information contained in this Disclosure Statement or the information in the exhibits to the Disclosure Statement.

**D5-0023**

**No Representations Outside This Disclosure Statement Are Authorized.**

No representations concerning or relating to the Debtor, the Chapter 11 Case, or the Plan are authorized by the Bankruptcy Court or the Bankruptcy Code, other than as set forth in this Disclosure Statement. Any representations or inducements made to secure your acceptance or rejection of the Plan that are other than as contained in, or included with, this Disclosure Statement, should not be relied upon by you in arriving at your decision. Those who are entitled to vote to accept or reject the Plan should promptly report unauthorized representations or inducements to counsel to the Debtor and the Office of the United States Trustee for the Western District of Texas.

**No Duty to Update.**

The statements contained in this Disclosure Statement are made by the Debtor as of the date hereof, unless otherwise specified herein, and the delivery of this Disclosure Statement after that date does not imply that there has been no change in the information set forth herein since that date. The Debtor has no duty to update this Disclosure Statement unless otherwise ordered to do so by the Bankruptcy Court.

**L.      Claims Allowance Procedure**

Other than a claim of the United States Trustee, no Administrative Expense Claims shall be allowed except pursuant to Court Order. Any application for allowance of an Administrative Expense Claim shall be filed within 30 days after the Effective Date or shall be barred. Any claims for reimbursement of fees and expenses pursuant to 11 U.S.C. § 506(b) shall be filed within 60 days after the Effective Date or shall be barred.

The Liquidating Trustee may file an objection to a claim on or before the later of 90 days from the Effective Date under the Plan or 90 days after such claim is filed, whichever is later.

A claim to which an objection has been made shall at the request of the Creditor be estimated by the Court for the purposes of voting on the Plan.

**M.      Settlement, Release, Exculpation and Related Provisions**

Article IX of the Plan provides for certain releases, injunctions, and exculpations, including third-party releases of and for the Debtor, the Released Parties or the Exculpated Parties, as applicable.

The Debtor believe that the releases, and injunctions set forth in the Plan are appropriate and in accordance with applicable law because, among other things, the releases are narrowly tailored to the Debtor and the Chapter 11 Case, and the Released Parties have contributed value to the Debtor, which facilitated the Debtor's ability to propose and pursue confirmation of the Plan. The Debtor further believe that such releases, exculpations, and injunctions are a necessary part of the Plan. The Debtor will be prepared to meet is burden to establish the basis for the releases, exculpations, and injunctions for each of the Released Parties and each Exculpated Party as part of confirmation of the Plan.

D5-0024

1.      Released Parties and Exculpated Parties.

The Released Parties are, collectively, the following: in each case in its capacity as such with each being a "*Released Party*": (a) the Debtor; (b) Edgar Castro and Fausto Castro, the Debtor's Members; (c) the Liquidation Trustee; (d) Federated Insurance; and, (e) for each Entity listed in (a) through (d), each of their respective current and former officers, directors, and managers; (f) each of their respective current and former employees and agents; and (g) each of their respective attorneys and other professional advisors."

The Exculpated Parties are, collectively, (a) the Debtor, and (b) Edgar Castro, the Debtor's Managing Member.

2.      Estate Release

Article IX.C provides for the releases of certain claims and causes of action the Debtor may hold against Released Parties, including derivative claims.

**Pursuant to section 1123(b) of the Bankruptcy Code, upon payment in full of the Settlement Payment as provided in Article IV.C, and in exchange for other good and valuable consideration, the adequacy of which is hereby confirmed, the Debtor, its Estate, and the Post-Effective Date Debtor shall be deemed to have expressly, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged each and all of the Released Parties from any and all claims, causes of action, interests, damages, remedies, demands, rights, actions (including Avoidance Actions), suits, debts, sums of money, obligations, judgments, liabilities, accounts, defenses, offsets, counterclaims, crossclaims, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, now existing or hereafter arising, contingent or non-contingent, liquidated or unliquidated, choate or inchoate, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise that the Debtor, the Post-Effective Date Debtor, or the Estate has, have or may have against the Released Parties.**

**Notwithstanding anything contained herein to the contrary, the foregoing release does not release any obligations of any Released Party under the Plan or any document, instrument, or agreement executed to implement the Plan.**

3.      Other Releases.

Article IX.D provides for releases of certain Claims and Causes of Action Consenting Creditors may hold against the Released Parties.

"Consenting Creditors" are claimants who (a) all Holders of Claims or Interests that vote to accept or are deemed to accept the Plan and who do not check the box on the applicable form to affirmatively opt out of the releases contained in Article IX.D; (b) all Holders of Claims or Interests that abstain from voting on the Plan, vote to reject the Plan, or are deemed to reject the Plan and who do not (i) check the box on the applicable form to affirmatively opt out of the releases contained in Article IX.D or (ii) object to the Plan in respect of the releases; and (c) all Holders of

D5-0025

Claims who elect to receive an Expedited Distribution. No holder of an Opt-Out Claim shall be a Consenting Creditor.

**As of the Final Payment Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, including the actions of the Released Parties to facilitate the Estate Party Settlement, as an integral component of the Plan, to the maximum extent permitted under applicable law, all Consenting Creditors shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each Released Party of and from any and all Causes of Action based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, the Estate, their respective current or former assets and properties, the Chapter 11 Case, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between the Debtor and any Released Party, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan Documents or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation or implementation thereof, the pursuit of Plan confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing; *provided*, *however*, that the releases set forth in this Article IX.D shall not, and shall not be construed to:  (a) release any post-Effective Date obligations under the Plan Documents or any document, instrument, or agreement executed to implement the Plan;** ~~(b) impair any recoveries that may be sought with respect to any Insurance Actions,~~ **or (be) modify, reduce, impair or otherwise affect the ability of any Consenting Creditors to recover from the Trusts in accordance with the Plan and the Trust Documents.  If, following the Final Payment Date, any portion of the Settlement Payment is clawed back, the releases set forth this Article IX.D shall be void.  If such releases become void, then the relevant Statute of Limitations applicable to any claim or Cause of Action that could then be asserted against the Released Parties shall be tolled and extended to the date that is ninety (90) days following the date that such releases become void and notice of the same is published by the Trusts.  Any Released Party may enforce the Consensual Claimant Release before the Bankruptcy Court, which shall retain jurisdiction for such purpose, at its own cost and expense.**

Article IX.F provides for releases of Claims and Causes of Action the Released Parties and the Debtor are providing to Consenting Creditors pursuant to the Plan.

**As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, as an integral component of the Plan, to the maximum extent permitted under applicable law, Released Parties shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each of the Holders of Claims in Class 4 (Pool Claims) of and from any and all Causes of Action based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, the**

**D5-0026**

Estate, their respective current or former assets and properties, the Chapter 11 Case, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between the Debtor and any such Holder, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan Documents or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation or implementation thereof, the pursuit of Plan confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing; provided, however, that the releases set forth in this Article IX.F shall not, and shall not be construed to: (a) release any post-Effective Date obligations under the Plan Documents or any document, instrument, or agreement executed to implement the Plan; (b) impair any recoveries that may be sought with respect to any Insurance Actions, or (c) modify, reduce, impair or otherwise affect the ability of any Consenting Creditors to recover from the Trusts in accordance with the Plan and the Trust Documents.

4.      Exculpation

Article IX.E provides for the release and exculpation of the Exculpated Parties for certain acts or omissions taken in connection with the Chapter 11 Case. The Exculpation contains a carve-out for actual fraud, willful misconduct or gross negligence.

**Upon the Effective Date, to the fullest extent permissible under applicable law, no Exculpated Party shall have or incur, and each Exculpated Party is released and exculpated from, any liability to any Holder of a Claim or Interest, or any other party in interest, for any claim or cause of action arising from the Petition Date through the Effective Date, arising from, relating to, or connected with the administration of the Chapter 11 Case, the Disclosure Statement, the preparation of the Plan, the solicitation of acceptances of the Plan, the pursuit of confirmation of the Plan, the Consummation of the Plan, or the administration of the Plan or property to be distributed under the Plan, except for claims related to any act or omission that is determined in a Final Order of a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence. The Exculpated Parties shall be deemed to have, participated in good faith in connection with the above and entitled to the protection of section 1125(e) of the Bankruptcy Code. Each Exculpated Party shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.**

5.      Channeling Injunction- *Sole Source for Recovery for Pool Claims*

Article IX.I outlines the Channeling Injunction that will be imposed pursuant to the Plan upon Channeled Claims. Channeled Claims are Claims as to which the Holder of the Claim has not opted-out. **For the avoidance of doubt, creditors that would otherwise have a Pool Claim (Class #4) that opt out of** ~~the release and Channeling Injunction~~**Consensual Claimant Release and therefore are not Consenting Creditors will not participate in the distributions from the Liquidation Trustee.**~~, or, as to claims where the Holder has opted-out for the purpose of pursuing recovery from an insurance company, has opted out and has not returned to the Liquidating Trust in accordance with its procedures.~~

D5-0027

As outlined in Article IX.I, the Channeling Injunction will provide that the sole recourse for Holders of Channeled Claims that are eligible for compensation will be the applicable trust, and the Holders of Channeled Claims will have no right to assert those claims against the Debtor or any Released Party. **Pursuant to the Insurance Settlement, upon approval by the Court, the insurance policies of Federated will be exhausted.**

**As of the Effective Date, to facilitate the liquidation of Channeled Claims by the Trust and the preserve and promote the settlement framework contemplated by and provided for in the Plan, including the Insurance Settlement, pursuant to the equitable jurisdiction and power of the Bankruptcy Court under the Bankruptcy Code, the Bankruptcy Court shall issue the channeling injunction set forth in this __Article IX.I__ (the "__Channeling Injunction__").**

**1.  __Protections Afforded to Released Parties__**

**Subject to the terms of __Article IX.I.5__, and while the Channeling Injunction is in full force and effect as to any Channeled Claim, the sole recourse of any Holder of a Channeled Pool Claim that is eligible for compensation under the Liquidating Trust Distribution Procedures on account of such Channeled Pool Claim shall be to and against the Liquidating Trust pursuant to the Liquidating Trust Documents, and such Holder shall have no right to assert such Channeled Pool Claim or any Claim against the Debtor against any Released Party.  Accordingly, on or after the Effective Date, and subject to the terms of __Article IX.I.5__, all Persons that have held or asserted, currently hold or assert, or that may in the future hold or assert, any Channeled Claim shall be stayed, restrained, and enjoined from taking any action for the purpose of directly, indirectly, or derivatively collecting, recovering, or receiving payment, satisfaction, or recovery from any Released Party with respect to any such Channeled Claim, other than from the Trusts, including:**

*a.*  **commencing, conducting, or continuing, in any manner, whether directly, indirectly, or derivatively, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum in any jurisdiction around the world against or affecting any Released Party, or any property or interest in property of any Released Party;**

*b.*  **enforcing, levying, attaching (including any prejudgment attachment), collecting or otherwise recovering, by any manner or means, either directly or indirectly, any judgment, award, decree, or order against or affecting any Released Party, or any property or interest in property of any Released Party;**

*c.*  **creating, perfecting or otherwise enforcing in any manner, whether directly or indirectly, any encumbrance of any kind against any Released Party, or any property or interest in property of any Released Party;**

*d.*  **asserting, implementing, or effectuating any setoff, right of reimbursement, subrogation, indemnity, contribution, reimbursement,**

D5-0028

or recoupment of any kind, in any manner, directly or indirectly, against any obligation due to any Released Party, or any property or interest in property of any Released Party; or

*e.*     taking any act in any manner, and in any place whatsoever, that does not conform to, or comply with, the provisions of the **Plan Documents** or with regard to any matter that is within the scope of the matters designated by the **Plan** to be subject to resolution by the **Trusts**, except in conformity and compliance with the **Plan Documents** with respect to any such **Channeled Claim.**

## O.     Retention of Jurisdiction

After confirmation of the Plan, the Bankruptcy Court will retain jurisdiction to the extent provided by 28 U.S.C. §1334. This means that the Bankruptcy Court will retain jurisdiction over matters relating to the Plan and to rule on any matters which are pending in the case.

## P.     Post-Confirmation Procedure

After confirmation of the Plan, the Bankruptcy Court will rule upon any objections to claims, applications for compensation of professionals, and any other outstanding issues. Once the Bankruptcy Court has ruled upon these matters, the Debtor will file an application for final decree. The Debtor will be required to pay U.S. Trustee fees and file quarterly post-confirmation reports until such time as a final decree is entered and the case is closed.

## V.     ALTERNATIVES TO THE DEBTORS' PLAN

The alternatives to the Debtors' Plan are liquidation via chapter 7 or outside of the bankruptcy process whereby the Lender would receive the bulk of the sale proceeds and unsecured creditors would, in all likelihood, receive nothing.

## VI.     TAX CONSEQUENCES

An analysis of federal income tax consequence of the Plan to creditors, interest holder, and the Debtor requires a review of the Internal Revenue Code ("IRS Code"), the Treasury regulations promulgated thereunder, judicial authority and current administrative rulings and practice. The Plan and its related tax consequences are complex. The Debtor has not requested a ruling from the Internal Revenue Service with respect to these matters. Accordingly, no assurance can be given as to the IRS's interpretation of this Plan.

The federal income tax consequences of the implementation of the Plan to a creditor will depend in part on whether, for federal income tax purposes, the obligation from which a creditor's claim arose constitutes a "security." The determination as to whether an obligation for which a creditor's claim arose constitutes a "security" for federal income tax purposes is complex. It depends on the facts and circumstances surrounding the origin and nature of the obligation. Generally, corporate debt obligations evidenced by written instruments with maturities, when issued five (5) years or less, or arising out of the extension of trade credit, do not constitute "securities," whereas corporate debt obligations evidenced by written instruments with original

**D5-0029**

maturities over (10) years or more constitute "securities." Although it appears that most of the creditors' claims do not constitute "securities," the Debtor and their professionals express no view with respect to whether the obligation for which a particular creditor's claim arose constitutes a "security" for federal income tax purposes. Creditors are urged to consult their own tax advisor in this regard.

Generally, creditors whose claims arise from obligations that do not constitute "securities" or whose claims are for wages or services, will be fully taxable exchanges for federal income tax purposes. Such creditors who receive solely cash in discharge of their claims will recognize gain or loss, as the case may be, equal to the difference between (i) the amount realized by the creditor in respect of its claim (other than any claim for accrued interest) and (ii) the creditor's tax basis in its claim (other than any claim for accrued interest). For federal income tax purposes, the "amount realized" by a creditor who receives solely cash in discharge of its claim will be the amount of cash received by such creditor. Where gain or loss is recognized by a creditor, the character of such gain or loss as a long-term or short-term capital gain or loss or as ordinary income or loss will be determined by a number of factors, including the tax status of the creditor, whether the obligation from which a claim arose has been held for more than six (6) months, and whether and to what extent the creditor has previously claimed a bad debt deduction. The capital gains deduction for individuals and the alternate tax for corporate net capital gains have been repealed and capital gain is currently taxed to individuals and corporations at their respective maximum tax rates. However, the definitions of long-term and short-term capital gain or loss have to be repealed.

Generally, to the extent any amount received (where cash or other property) by a creditor is received in discharge of interest accrued on its claim during its holding period, such amount will be taxable to the creditor as interest income (if not previously included in the creditor's gross income). Conversely, a creditor will recognize a deductible loss (or, possible, a write-off against a reserve for bad debts) to the extent any interest accrued on its claim was previously included in the creditor's gross income and is not paid in full.

**THE TRANSACTION CONTEMPLATED BY THE CONFIRMATION OF THE PLAN MAY HAVE AN IMPACT ON THE TAX TREATMENT OF ANY CREDITOR OR EQUITY INTEREST HOLDER. THAT IMPACT MAY BE ADVERSE TO THE CREDITOR OR EQUITY INTEREST HOLDER. NOTHING HEREIN IS INTENDED TO BE ADVICE OR OPINION AS TO THE TAX IMPACT OF THE PLAN ON ANY INDIVIDUAL CREDITOR OR EQUITY INTEREST HOLDER. EACH CREDITOR AND EQUITY INTEREST HOLDER IS CAUTIONED TO OBTAIN INDEPENDENT AND COMPETENT TAX ADVICE PRIOR TO VOTING ON THE PLAN.**

## VII.    PENDING AND POTENTIAL LITIGATION

### A.    Avoidance Actions

The Reorganized Debtors reserve all rights to pursue, in their sole discretion, any preferences or fraudulent transfers to the full extent allowed under the Bankruptcy Code and applicable state laws. ALL CREDITORS AND RECIPIENTS OF PAYMENTS OR TRANSFERS THAT MAY BE DEEMED PREFERENCES OR FRAUDULENT TRANSFERS, WITH ACTUAL OR CONSTRUCTIVE NOTICE OF THIS BANKRUPTCY CASE ARE HEREBY

D5-0030

PUT ON NOTICE THAT THE REORGANIZED DEBTOR MAY PROSECUTE THESE CLAIMS. THIS PLAN IS NOT INTENDED AND DOES NOT WAIVE ANY OF THE DEBTORS' CHAPTER 5 CAUSES OF ACTION, EXCEPT THOSE ACTIONS AND CLAIMS EXPRESSLY RELEASED IN THE PLAN, OR CONFIRMATION ORDER.

**B.    Other Litigation**

In addition to preferences and fraudulent transfer claims, the Debtors explicitly preserves the following claims and causes of action and may pursue such claims and causes of action after the Confirmation Date or may be enforced by way of setoff against Claims filed against the bankruptcy estate. The Reorganized Debtors have sole discretion to prosecute any such litigation and to object to any Claims as it sees fit.

## VIII.   <u>SOLICITATION OF VOTES</u>

The Debtors have devoted substantial effort to preparation of its Disclosure Statement and its Plan of Reorganization. The Debtors believe that the Plan represents a fair adjustment of its relationship with creditors. The Debtors believe that the Plan is superior to a liquidation of or foreclosure on its assets, which likely reduce the recovery for creditors. Therefore, the Debtors request that all creditors vote in favor of its Plan of Reorganization.

Dated: June 2, 2025              HOT CRETE, LLC.

By:    */s/ Edgar Castro Draft*
Edgard Castro
Managing Member


DRAFTED and APPROVED:

*/s/ Todd Headden Draft*
Todd Headden (TX 24096285)
HAYWARD PLLC
7600 Burnet Road, Ste. 530
Austin, Texas 78757
(737) 881-7100 (phone and fax)
Email: THeadden@HaywardFirm.com
ATTORNEYS FOR DEBTOR

**D5-0031**

**Exhibit**

**D-6**

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| HOT CRETE, LLC, | § | Case No. 24-10303-smr |
| | § | |
| Debtor. | § | Chapter 11 |
| | § | |

---

**HOT CRETE, LLC,**
**LIQUIDATING PLAN**

---

Date: May 29, 2025

Todd Headden
  State Bar No. 24096285
  THeadden@HaywardFirm.com
Ron Satija
  State Bar No. 24039158
  RSatija@HaywardFirm.com
HAYWARD PLLC

AUSTIN
7600 Burnet Rd.
Suite 530
Austin, TX 78757

**D6-0001**

## INTRODUCTION

Hot Crete, LLC, hereby proposes the following chapter 11 plan pursuant to section 1121(a) of the Bankruptcy Code.

## ARTICLE I.-
### DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW, AND OTHER REFERENCES

A.   *Defined Terms*

1.     "*Administrative Claim*" means any right to payment constituting a cost or expense of administration of the Chapter 11 Case pursuant to sections 503(b) or 507 of the Bankruptcy Code.

2.     "*Administrative Claims Bar Date*" means the first Business Day that is 30 days following the Effective Date, unless otherwise specifically set forth in the Plan or a Final Order.

3.     "*Administrative and Priority Claims Reserve*" means a reserve established by the Liquidation Trustee on the Effective Date to be used to pay Holders of all Allowed Priority Claims and Allowed Administrative Claims, to the extent the same have not been paid in full on or before the Effective Date.

4.     "*Administrative Claims Objection Deadline*" means the first Business Day that is 21 days following the Administrative Claims Bar Date, unless otherwise specifically set forth in the Plan or a Final Order.

5.     "*Allowed*" means, any Claim: (a) that is evidenced by a Proof of Claim Filed by the Claims Bar Date or to which no objection has been interposed on or before the Claims Objection Deadline or such other applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court; (b) that is listed in the Schedules and is not identified as contingent, unliquidated, or disputed, and for which no Proof of Claim has been timely Filed and as to which no objection has been interposed on or before the Claims Objection Deadline; (c) Allowed pursuant to the Plan or a Final Order of the Bankruptcy Court; or, (d) Specifically for Pool Claims, those with a claim not rejected by either of the insurance carriers, subject to an administrative appeal with the insurance provider, as of the Confirmation Date.

6.     "*Avoidance Actions*" means any and all actual or potential avoidance, recovery, subordination or other claims, causes of action or remedies that may be brought by or on behalf of the Debtor or its Estate or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy law, including claims, causes of action, or remedies under sections 502, 510, 542, 544, 545, 547 through 553, and 724(a) of the Bankruptcy Code, or under similar or related local, state, federal, or foreign statutes or common law, including preference and fraudulent transfer and conveyance laws, in each case whether or not litigation to prosecute such claim(s), cause(s) of action or remedy(ies) were commenced prior to the Effective Date.

**D6-0002**

7.      "*Ballot*" means the form of ballot approved by the Bankruptcy Court and provided to Holders of Claims to indicate their votes to accept or reject the Plan.

8.      "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101 *et. seq.*, as now in effect and as may be hereafter amended.

9.      "*Bankruptcy Court*" means the United States Bankruptcy Court for the Western District of Texas, Austin Division, or such other court of the United States having jurisdiction over the Chapter 11 Case.

10.     "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under 28 U.S.C. § 2075, as now in effect or hereafter amended.

11.     "*Bar Date*" means, as applicable, (i) the Claims Bar Date, (ii) any other date or dates established or to be established by this Plan or by a Final Order of the Bankruptcy Court setting a deadline by which Proofs of Claim must be Filed and (iii) the Administrative Claims Bar Date.

12.     "*Business Day*" means any day, other than a Saturday, Sunday, or a "legal holiday," as defined in Bankruptcy Rule 9006(a).

13.     "*Cash*" or "*$*" means legal tender of the United States of America.

14.     "*Causes of Action*" means any claims, causes of action, interests, damages, remedies, demands, rights, actions (including Avoidance Actions), suits, debts, sums of money, obligations, judgments, liabilities, accounts, defenses, offsets, counterclaims, crossclaims, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, now existing or hereafter arising, contingent or non-contingent, liquidated or unliquidated, choate or inchoate, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise, owned by or otherwise accruing to the Debtor and its Estate, whether arising before, on, or after the Petition Date.

15.     "*Chapter 11 Case*" means the above-captioned chapter 11 bankruptcy case of the Debtor.

16.     "*Channeled Claims*" means the claims filed by holders of Class 4 Claims that have not opted out pursuant to Article IX, also known as Pool Claims or Channeled Pool Claim. These claims include any claim or demand against the insurance policies issued by Federated Insurance.

17.     "*Claim*" means any claim against the Debtor, as defined in section 101(5) of the Bankruptcy Code.

18.     "*Claims Bar Date*" means the last date to file Proofs of Claim against the Debtor, which is October 31, 2024, for all creditors including Governmental Units.

19.     "*Claims Objection Deadline*" means ninety days (90) days after the Effective Date unless extended by further order of the Bankruptcy Court.

**D6-0003**

20.     "*Claims Register*" means the official register of Claims against and Interests in the Debtor maintained by the Court.

21.     "*Class*" means any category of Holders of Claims or Interests classified by this Plan pursuant to sections 1122(a) and 1123(a)(1) of the Bankruptcy Code.

22.     "*Confirmation Date*" means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Case.

23.     "*Confirmation Hearing*" means the hearing conducted by the Bankruptcy Court, including any adjournments thereof, to consider confirmation of the Plan.

24.     "*Confirmation Objection Deadline*" means the last date to file objections to the confirmation of the plan.

25.     "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code and approving the Disclosure Statement as containing adequate information pursuant to sections 1125 and 1126 of the Bankruptcy Code.

26.     "*Consenting Creditors*" means collectively the following, in its capacity as such with each being a "*Consenting Creditor*": (a) all Holders of Claims or Interests that vote to accept or are deemed to accept the Plan and who do not check the box on the applicable form to affirmatively opt out of the releases contained in Article IX.D; (b) all Holders of Claims or Interests that abstain from voting on the Plan, vote to reject the Plan, or are deemed to reject the Plan and who do not (i) check the box on the applicable form to affirmatively opt out of the releases contained in Article IX.D or (ii) object to the Plan in respect of the releases; and (c) all Holders of Claims who elect to receive an Expedited Distribution. No holder of an Opt-Out Claim shall be a consenting Creditor.

27.     "*Consummation*" means the occurrence of the Effective Date.

28.     "*Contingent Indemnification Claim*" means any Claim for indemnification against the Debtor of any kind or nature whatsoever, whether arising under or pursuant to any type of bylaws, organizational or formation documents, board resolutions, management or indemnification agreements, employment or other services contracts, at common law, in equity or otherwise, and whether pertaining or related to past and present directors, officers, employees, attorneys, accountants, investment bankers, clients, state agencies, or other professionals and agents of the Debtor related to services provided to, by or for the Debtor at any time prior to the Effective Date that is contingent as of the Effective Date; *provided* that Contingent Indemnification Claims shall not include any Claim for indemnification against the Debtor if, prior to the Effective Date, such Claim has been adjudicated as non-contingent by Final Order of a court of competent jurisdiction.

29.     "*Convenience Claim*" means any General Unsecured Claim that is filed in an amount of $5,000 or less.

D6-0004

30.     "*Debtor Release*" means the release given on behalf of the Debtor and its Estate to the Released Parties as set forth in Article IX.C.

31.     "*Debtor*" means Hot Crete, LLC, a Texas LLC, in its capacity as a debtor and debtor in possession under sections 1107 and 1108 of the Bankruptcy Code.

32.     "*Disallowed*" means any Claim or Interest or portion thereof that is not Allowed or Disputed.

33.     "*Disclosure Statement*" means that certain disclosure statement relating to the Plan, as the same may be amended, supplemented, or modified from time to time, including all exhibits and schedules thereto, as approved by the Bankruptcy Court pursuant to sections 1125 and 1126 of the Bankruptcy Code.

34.     "*Disputed*" means any Claim or Interest or portion thereof, (a) to the extent neither Allowed nor disallowed under the Plan or a Final Order nor deemed Allowed under sections 502, 503, or 1111 of the Bankruptcy Code, or (b) for which a Proof of Claim or Proof of Interest or a motion for payment has been timely Filed with the Bankruptcy Court, to the extent the Debtor or any other party in interest has interposed a timely objection or request for estimation in accordance with the Plan, the Bankruptcy Code, or the Bankruptcy Rules, which objection or request for estimation has not been withdrawn or determined by a Final Order.

35.     "*Distribution*" means Cash, property, interests in property or other value distribution to Holders of Allowed Claims, or their designated agent, including the Liquidation Trust Beneficiaries, as applicable under this Plan, or any trust agreement governing a trust created under this Plan.

36.     "*Distribution Date*" means the date on which the Liquidation Trustee first makes distributions from the Settlement Payment to Holders of Pool Claims as provided in the Plan.

37.     "*Distribution Reserve Accounts*" means the Cash reserve accounts established pursuant to this Plan by the Liquidation Trustee, as may be applicable, including but not limited to the Administrative and Priority Claims Reserve and Pool Claimant Reserve.

38.     "*Effective Date*" means the later of the first Business Day on which (a) no stay of the Confirmation Order is in effect and (b) all conditions precedent specified in the Confirmation Order have been satisfied or waived. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

39.     "*Enjoined Parties*" means (i) all Entities that have held, hold, or may hold Claims against or Interests in the Debtor (whether or not Proofs of Claim or Proofs of Interest have been filed and whether or not such Entities vote in favor of, against, or abstain from voting on the Plan or are presumed to have accepted or deemed to have rejected the Plan), (ii) any Entity that has appeared and/or filed any motion, objection, or other pleading in this Chapter 11 Case regardless of the capacity in which such Entity appeared and any other party in interest, and (iii) for each Entity listed in (i) and (ii), such Entity's predecessors, successors, assigns (whether by operation of law or otherwise), and each of their respective present, future, or former officers, directors, employees,

**D6-0005**

managers, managing members, members, financial advisors, attorneys, accountants, investment bankers, consultants, professionals, advisors, shareholders, principals, partners, subsidiaries, divisions, management companies, heirs, agents, and other representatives, in each case solely in their capacity as such.

40.     "*Entity*" has the meaning set forth in section 101(15) of the Bankruptcy Code.

41.     "*ERC Fund*" means a segregated account to be funded by the proceeds of employee retention tax credits received by the Debtor or Liquidation Trustee, as applicable.

42.     "*Estate*" means the estate of the Debtor as created under section 541 of the Bankruptcy Code upon the commencement of the Debtor's Chapter 11 Case.

43.     "*Exculpated Party*" means, collectively (a) the Debtor, and (b) Edgar Castro, the Debtor's Managing Member, for conduct within the scope of his duties as the Managing Member.

44.     "*File*" or "*Filed*" means file or filed with the Bankruptcy Court.

45.     "*Final Decree*" means the decree contemplated in Bankruptcy Rule 3022.

46.     "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter that has not been reversed, stayed, modified, or amended, and as to which (a) the time to appeal, petition for *certiorari*, or move for a stay, new trial, reargument, reconsideration, or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceedings for a stay, new trial, reargument, reconsideration, or rehearing shall then be pending, or (b) if an appeal, writ of *certiorari*, stay, new trial, reargument, reconsideration, or rehearing has been sought, (i) such order or judgment has been resolved by the highest court to which the order or judgment could be appealed, *certiorari* shall have been denied, or a stay, new trial, reargument, reconsideration, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice and (ii) the time to take any further appeal, petition for *certiorari*, or move for a stay, new trial, reargument, reconsideration or rehearing shall have expired; *provided*, *however* that no order or judgment shall fail to be a Final Order solely because of the possibility that a motion under rule 60 of the Federal Rules of Civil Procedure or any comparable rule of the Bankruptcy Rules or state or local rules has been or may be filed relating to such order or judgment.

47.     "*General Unsecured Claim*" means any unsecured claim (including, for the avoidance of doubt, any Pool Claim and Non-Pool Claim) that is not an Administrative Claim, a Secured Claim, an Other Secured Claim, a Priority Tax Claim, an Other Priority Claim, or a Claim that is otherwise paid in full prior to the Effective Date pursuant to an order of the Bankruptcy Court.

48.     "*Governmental Unit*" has the meaning set forth in section 101(27) of the Bankruptcy Code.

49.     "*Holder*" means an Entity holding a Claim or an Interest.

D6-0006

50.    "*Impaired*" means, with respect to any Class of Claims or Interests, a Claim or an Interest that is not Unimpaired.

51.    "*Insurance Settlement ~~Motion~~*" means the settlement entered into between the Debtor~~'~~s and Federated Insurance, attached as a Plan Supplement and included by reference in the Plan.  ~~*Motion Pursuant to 11 U.S.C. §§ 105(a) & 502 and Bankruptcy Rules 3007 & 9019(b) for Entry of an Order Establishing Procedures for Resolution of Pool Claims with Rights Under Certain Texas Insurance Policies Issued by Federated*~~ ____ ~~[Docket No. ___]~~.  The Insurance Settlement ~~which settles and~~ compromises certain disputes related to insurance policies issued by Federated and, as a result of the settlement, have the remaining balance of the Debtor's insurance policy proceeds deposited in the Liquation Trust. _____ ~~under sections 363, 503(b), 507(a)(2), 1123 and 1141 of the Bankruptcy Code, as applicable, and Bankruptcy Rule 9019.~~

52.    "*Interest*" means any interest, equity, or share in the Debtor, including all options, warrants, or other rights to obtain such an interest or share in the Debtor, whether or not certificated, transferable, preferred, common, voting, or denominated "stock" or a similar security.

53.    "*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

54.    "*Liquidation Trust*" means that certain trust that will come into existence on the Effective Date, which shall be formed pursuant to, and governed by, the provisions of the Plan and the Liquidation Trust Agreement.

55.    "*Liquidation Trust Agreement*" means the agreement establishing and governing the Liquidation Trust dated as of the Effective Date, substantially in the form included in the Plan Supplement.

56.    "*Liquidation Trust Assets*" means all assets of the Debtor or its Estate existing on the Effective Date (including all Causes of Action) after giving effect to all distributions required to be made as of or prior to the Effective Date.

57.    "*Liquidation Trustee*" means the trustee of the Liquidation Trust, who shall be selected by the Committee, in consultation with the Debtor, and who shall be named in the Plan Supplement.

58.    "*Local Bankruptcy Rules*" means the Bankruptcy Local Rules of the United States Bankruptcy Court for the Western District of Texas as now in effect or hereafter amended.

59.    "*Non-Pool Unsecured Claim*" means any General Unsecured Claim that is not a Pool Claim.

~~59.~~60.  "Opt-Out Form" means the form included with the notice sent to (a) Holders of Claims or Interests that are deemed to accept or reject the Plan, or (b) Holders of Disputed Claims, which provides such Holders the opportunity to elect to opt out of the Third-Party Releases contained in Article XI.D.

~~60.~~61.  "*Other Priority Claim*" means any Claim other than an Administrative Claim or a

Priority Tax Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code, to the extent such Claim has not already been paid during the Chapter 11 Case.

61.62. "*Person*" has the meaning set forth in section 101(41) of the Bankruptcy Code.

62.63.          "*Petition Date*" means March 22, 2024, the date on which the Debtor commenced the Chapter 11 Case.

63.64. "*Plan Supplement*" means the compilation of documents and forms of documents, agreements, schedules, and exhibits to the Plan to be filed in one or more parts of volumes by the Debtor, at least seven (7) calendar days prior to the Confirmation Objection Deadline, as the same may be amended, supplemented, or modified from time to time on the terms set forth herein, containing, without limitation: (a) the form of Liquidation Trust Agreement; (b) the Assumed Executory Contract and Unexpired Lease List; (c) a schedule of Retained Causes of Action; (d) the identity and compensation of the Liquidation Trustee; (e) Insurance Settlement; and, (f) the Liquidation Analysis.

65.     "*Pool Claim*" means a claim filed by or on behalf of a homeowner, pool builder, or sub-contractor that hired, directly or indirectly, Hot Crete *and with*has an allowed claim with an assertion of ASR present in the pool. Pool Claim does not include any portion of a claim that would not be compensable from Debtor's applicable insurance policy and, fFor the avoidance of doubt, a Pool Claim does not include any portion of a claim asserting a monetary damages beyond the monetary damages resulting from ASR or the Debtor's services, regardless of whether the claimant contracted directly with Debtor. Specifically, a Pool Claim does not include any assertion for treble damages for violations of the Texas Deceptive Trade Practice Act, Chapter 17 of the Texas Business and Commerce Code, or other similar statue or cause of action.

For the avoidance of doubt, the subrogation claims of National Fire Insurance Company of Hartford, The Continental Insurance Company, and Amerisure Mutual Insurance Company shall be classified and treated as "Pool Claims."  This clarification is not to be a deemed allowance of such claims and does not prevent the Liquidation Trustee from objecting to the claims as and to the extent provided for herein, with each of National Fire Insurance Company of Hartford, The Continental Insurance Company, Amerisure Mutual Insurance Company, and the Liquidation Trustee reserving all of its rights, remedies, claims and defenses with respect thereto.

64.66. "*Post-Effective Date Debtor*" means the Debtor, the Liquidation Trust, or any successor thereto after the Effective Date responsible for winding down the Debtor's Estate and implementing the terms of the Plan.

65.67. "*Priority Claims*" means, collectively, Priority Tax Claims and Other Priority Claims.

66.68. "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

67.69. "*Pro Rata*" means the proportion that an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests in such

Class.

68. 70.  "*Professional*" means any Entity retained by and to be compensated from the Estate pursuant to sections 327, 328, 330, 331, 363, 503(b) or 1103 of the Bankruptcy Code.

69. 71.  "*Professional Fee Claims*" means any Claim by a Professional under sections 330, 331 or 503 of the Bankruptcy Code for allowance of compensation and/or reimbursement of expenses in the Chapter 11 Case.

70. 72. "*Proof of Claim*" means a proof of Claim Filed against the Debtor in the Chapter 11 Case.

71. 73.  "*Proof of Interest*" means a proof of Interest Filed in the Debtor's Chapter 11 Case.

72. 74.  "*Released Parties*" means collectively the following, in each case in its capacity as such with each being a "*Released Party*": (a) the Debtor; (b) Edgar Castro and Fausto Castro, the Debtor's Members; (c) the Liquidation Trustee; (d) Federated Insurance; and, (e) for each Entity listed in (a) through (d), each of their respective current and former officers, directors, and managers; (f) each of their respective current and former employees and agents; and (g) each of their respective attorneys and other professional advisors."

73. 75.  "*Releasing Parties*" means collectively the following, in each case in its capacity as such with each being a "*Releasing Party*": (a) the Debtor; (b) the Liquidation Trustee; (c) the Settlement Parties, if any; and (d) Consenting Creditors.

74. 76.  "*Retained Causes of Action*" means Causes of Action scheduled in the Plan Supplement as "retained" and transferred to the applicable Trust.

75. 77.  "*Schedules*" means, collectively, the schedule of assets and liabilities, schedule of Executory Contracts and Unexpired Leases and statement of financial affairs Filed by the Debtor pursuant to section 521 of the Bankruptcy Code, if any, as such schedules may be amended, modified, or supplemented from time to time.

76. 78.  "*Secured Claim*" means a Claim: (a) secured by a valid, perfected, and enforceable Lien on upon property in which the Debtor has an interest to the extent of the value, as of the Effective Date, of such interest or Lien or (b) subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code.

77. 79.  "*Settlement Parties*" means the Debtor in one part as the policy holder and Federated Insurance, in the other part, as the company that issued the insurance policies subject to the anticipated Insurance Settlement.

78. 80.  "*Settlement Payment*" means the payment to be received by the Liquidating Trust as a result of the anticipated settlement with Federated Insurance.

79. 81. "*Trust*" means the Liquidation Trust.

**D6-0009**

~~80.~~82. "*Trust Agreement*" means the Liquidation Trust Agreement.

~~81.~~83. "*Trustee*" means the Liquidation Trustee.

~~82.~~84. "*Unexpired Lease*" means a lease of nonresidential real property to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

~~83.~~85. "*Unimpaired*" means a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

~~84.~~86. "*U.S. Trustee*" means the Office of the United States Trustee for Region 7 located in the Western District of Texas.

~~85.~~87. "*U.S. Trustee Fees*" means fees arising under 28 U.S.C. § 1930(a)(6).

B.      *Rules of Interpretation*

For purposes of the Plan: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) unless otherwise specified, any reference in the Plan to an existing document, schedule, or exhibit, shall mean such document, schedule, or exhibit, as it may have been or may be amended, modified, or supplemented; (3) unless otherwise specified, all references in the Plan to "Articles" and "Sections" are references to Articles and Sections, respectively, hereof or hereto; (4) the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to any particular portion of the Plan; (5) any effectuating provisions may be interpreted by the Debtor or the Liquidation Trustee in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity; (6) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (7) unless otherwise specified in the Plan, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (8) any term used in capitalized form in the Plan that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable; (9) references to docket numbers of documents filed in the Chapter 11 Case are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (10) references to "Proofs of Claim," "Holders of Claims," "Disputed Claims," and the like shall include "Proofs of Interest," "Holders of Interests," "Disputed Interests," and the like as applicable; (11) references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company laws; (12) the terms "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation"; and (13) except as otherwise provided in the Plan, any reference to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter.

**D6-0010**

C.     *Computation of Time*

Unless otherwise specifically stated in the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed in the Plan. If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

D.     *Governing Law*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Texas, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control).

E.     *Reference to Monetary Figures*

All references in the Plan to monetary figures refer to currency of the United States of America, unless otherwise expressly provided herein.

F.     *Controlling Document*

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects. In the event of an inconsistency between the Plan and the documents contained in the Plan Supplement, the Plan shall control. In the event of any inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall control.

## ARTICLE II.
## ADMINISTRATIVE AND PRIORITY CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims, and Priority Claims have not been classified and shall be treated as follows:

A.     *Administrative Claims*

Except as otherwise provided by a Final Order entered by the Bankruptcy Court, requests for payment of Administrative Claims must be Filed and served on the Debtor, its counsel, counsel to the Committee and, if filed after the Effective Date, the Liquidating Trustee, no later than the Administrative Claims Bar Date. Each request for payment of an Administrative Claim must set forth, at a minimum, (a) the name of the Holder of the Administrative Claim, (b) the amount of the Administrative Claim and (c) a detailed basis for the Administrative Claim. A failure to file any such request by the Administrative Claims Bar Date shall result in the Administrative Claim in question being discharged and its Holder being forever barred, estopped, and enjoined from asserting such Administrative Claim against the Debtor, its Estate or any other Entity.

D6-0011

A request for payment of an Administrative Claim that has been properly and timely Filed and served shall become an Allowed Administrative Claim unless an objection is filed by the date that is thirty (30) days after such request has been Filed and served. If a timely objection is Filed, the Administrative Claim in question shall become Allowed only to the extent set forth in a Final Order of the Bankruptcy Court.

Unless otherwise agreed by a Holder of an Allowed Administrative Claim and the Debtor or the Liquidation Trustee, as applicable, each Holder of an Allowed Administrative Claim and Claims for U.S. Trustee Fees will receive, in full and final satisfaction of its Administrative Claim, Cash in an amount equal to the Allowed amount of such Administrative Claim in accordance with the following: (1) if an Administrative Claim is Allowed as of the Effective Date, on the Effective Date; (2) if such Administrative Claim is not Allowed as of the Effective Date, no later than ten (10) days after the date on which an order Allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; or (3) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court or as otherwise agreed to between the Holder of such Allowed Administrative Claim and the Liquidation Trustee.

If an Administrative Claim is Allowed after the Effective Date and there are insufficient funds to pay such Allowed Administrative Claim from the Administrative and Priority Claims Reserve, any unpaid portion of such Allowed Administrative Claim shall be paid by the Liquidation Trustee from the Liquidation Trust Assets.

B.    *Professional Fee Claims*

1.    Final Fee Applications and Payment of Professional Fee Claims

Every Professional holding a Professional Fee Claim that has not previously been the subject of a final fee application and accompanying Bankruptcy Court order approving the same shall File a final application for payment of such Professional Fee Claim no later than 30 calendar days after the Effective Date. Any such final fee application shall conform to and comply with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules. The last date to object to such final fee application shall be the 21st day after such fee application has been Filed, and all final fee applications shall be set for hearing on the same day, as the Bankruptcy Court's calendar permits, after consultation with counsel to the Debtor. The Liquidation Trustee shall pay the full amount of each Professional Fee Claim no later than ten (10) days following entry of a Final Order by the Bankruptcy Court Allowing such Professional Fee Claim from the funds held in the Professional Fee Escrow Account.

2.    Professional Fee Escrow Account

As soon as is reasonably practicable after the Effective Date, the Debtor shall fund the Professional Fee Escrow Account (from Cash on hand and the Initial Settlement Amount) in an amount sufficient to pay all expected Allowed Professional Fee Claims in full. The Professional Fee Escrow Account shall be held for the sole benefit of Estate Professionals until all Allowed Professional Fee Claims been paid in full. No Liens, claims, or interests of any kind shall encumber the Professional Fee Escrow Account or the Cash contained therein in any way. Funds held in the Professional Fee Escrow Account shall not be considered property of the Debtor's Estate or of the Post-Effective Date Debtor. Funds held in the Professional Fee Escrow Account shall be considered

D6-0012

property of the Liquidation Trust to be distributed by the Liquidation Trustee under the terms and conditions set forth in the Plan and the Liquidation Trust Agreement.

Upon Allowance of a Professional Fee Claim, the same shall be paid as soon as reasonably practicable in Cash by the Liquidation Trustee from the funds held in the Professional Fee Escrow Account; *provided* that the Debtor's and the Liquidation Trustee's obligations to pay Allowed Professional Fee Claims shall not be limited or be deemed limited to funds held in the Professional Fee Escrow Account. To the extent that there are insufficient funds in the Professional Fee Escrow Account to satisfy all Allowed Professional Fee Claims in full, any such Allowed Professional Fee Claims (or portions thereof that remain unpaid from the Professional Fee Escrow Account) shall be paid as an Allowed Administrative Claim in accordance with Article II.A.

When all Allowed Professional Fee Claims have been irrevocably paid in full pursuant to one or more Final Orders of the Bankruptcy Court (as and if such Final Orders may be required), any remaining funds held in the Professional Fee Escrow Account shall be paid to the Liquidation Trust.

   3.   Professional Fee Escrow Amount

Each Professional shall provide a reasonable and good-faith estimate of its fees and expenses incurred in rendering services to the Debtor before and as of the Effective Date that are projected to be outstanding as of the Effective Date, and shall deliver such estimate to the Debtor no later than five days before the anticipated Effective Date; *provided*, *however*, that such estimate shall not be, nor shall it be deemed to be, an admission or limitation with respect to the amount of any Professional Fee Claim.  If a Professional does not provide an estimate of its Professional Fee Claim, the Debtor may estimate the amount of unpaid and unbilled fees and expenses of such Professional. The aggregate amount of Professional fee estimates as of the Effective Date shall be utilized by the Debtor to determine the amount to be funded to the Professional Fee Escrow Account.

   4.   Post-Effective Date Fees and Expenses

Except as otherwise specifically provided in the Plan, from and after the Effective Date, the Liquidation Trustee may, in the ordinary course of business and without the need for any further notice to or action, order, or approval of the Bankruptcy Court, pay the reasonable, actual, and documented legal, professional, or other fees and expenses incurred on or after the Effective Date in connection with administering the Liquidation Trust and in accordance with the Plan, Liquidation Trust Agreement. Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate.

C.   *Priority Tax Claims*

   1.   Priority Federal Tax Claims

Except to the extent that a federal Governmental Unit Holder of an Allowed Priority Tax

D6-0013

Claim agrees to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each federal Governmental Unit Holder of such Allowed Priority Tax Claim will receive, at the sole option of the Debtor or Liquidation Trustee, as applicable, either: (1) an amount of Cash from the ERC Fund equal to the amount of such Allowed Priority Tax Claim by the later of (a) ninety (90) days after the date on which such Priority Tax Claim becomes Allowed, or as soon as reasonably practicable thereafter, or (b) ten (10) days after the date on which the ERC Fund is funded; or (2) regular installment payments in Cash of a total value, as of the Effective Date, equal to the Allowed amount of such Claim over a period ending not later than five years after the Petition Date. For the avoidance of doubt, federal Governmental Unit Holders of Allowed Priority Tax Claims will receive interest on such Allowed Priority Tax Claims after the Effective Date in accordance with sections 511 and 1129(a)(9)(C) of the Bankruptcy Code.

2. Priority State Tax Claims

Except to the extent that a state Governmental Unit Holder of an Allowed Priority Tax Claim agrees to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each state Governmental Unit Holder of such Allowed Priority Tax Claim will receive an amount of Cash equal to the amount of such Allowed Priority Tax Claim no later than ninety (90) days after the date on which such Priority Tax Claim becomes Allowed, or as soon as reasonably practicable thereafter. For the avoidance of doubt, state Governmental Unit Holders of Allowed Priority Tax Claims will receive interest on such Allowed Priority State Tax Claims after the Effective Date in accordance with sections 511 and 1129(a)(9)(C) of the Bankruptcy Code.

## ARTICLE III.
## CLASSIFICATION, TREATMENT, AND VOTING OF
## CLAIMS AND INTERESTS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Priority Tax Claims, and Professional Fee Claims have not been classified and thus are excluded from the Classes of Claims and Interests set forth in this Article III.

*A. Classification of Claims and Interests*

All Claims and Interests, other than the Claims addressed in Article II, are classified as set forth below in accordance with sections 1122 and 1123(a)(1) of the Bankruptcy Code.

| Class | Claim or Interest | Status | Voting Rights |
|-------|-------------------|--------|---------------|
| 1 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 2 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 3 | Convenience Claims | Impaired | Entitled to Vote |

D6-0014

| 4 | Pool Claims | Impaired | Entitled to Vote |
|---|---|---|---|
| 5 | Non-Pool Claims | Impaired | Entitled to Vote |
| 6 | Contingent Indemnification Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |



D6-0015

| Class | Claim or Interest | Status | Voting Rights |
|---|---|---|---|
| 7 | Interests in the Debtor | Impaired | Not Entitled to Vote (Deemed to Reject) |

B. *Treatment and Voting of Classes of Claims and Interests*

1.  Class 1 — Other Priority Claims

    (a)  *Treatment*: Except to the extent that a Holder of an Allowed Other Priority Claim agrees to less favorable treatment, each Holder of an Allowed Other Priority Claim shall receive, in full and final satisfaction of such Claim, payment in full in Cash from the Liquidation Trustee on (or as soon as reasonably practicable after) the later of (i) the Effective Date or (ii) thirty (30) days after such Other Priority Claim becomes Allowed, or (iii) a date on which the Holder of such Other Priority Claim and the Debtor or Liquidation Trustee, as applicable, shall otherwise agree in writing.

    (b)  *Voting*: Class 1 is Unimpaired under the Plan. Holders of Allowed Other Priority Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

2.  Class 2 — Other Secured Claims

    (a)  *Treatment*: Except to the extent that a Holder of an Allowed Other Secured Claim agrees to a less favorable treatment, each Holder of an Allowed Other Secured Claim shall receive, in full and final satisfaction of such Claim, at the sole option of the Debtor or Liquidation Trustee, as applicable, either:

        (i)  payment in full in Cash on the later of (w) the Effective Date (or as soon as reasonably practicable thereafter), (x) the date on which such Other Secured Claim becomes Allowed, (y) the date payment on account of such Other Secured Claim is due; or (z) the date on which the Holder of such Allowed Other Secured Claim and the Debtor or the Liquidation Trustee, as applicable, shall otherwise agree in writing;

        (ii)  the Debtor's interest in the collateral securing such Allowed Other Secured Claim; or

        (iii)  other treatment that renders such Allowed Other Secured Claim Unimpaired.

    (b)  *Voting*: Class 2 is Unimpaired under the Plan. Holders of Allowed Other Secured Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code and are not entitled to vote to accept

**D6-0016**

or reject the Plan.

3. Class 3 — Convenience Claims

(a) *Treatment*: On the first Business Day that is thirty (30) days following the Effective Date, each Holder of a Convenience Claim shall receive, in full and final satisfaction of such Claim, payment in full in Cash.

(b) *Voting*: Class 3 is Impaired under the Plan. Holders of Allowed Convenience Claims are entitled to vote to accept or reject the Plan.

4. Class 4 — Pool Claims

(a) *Treatment*:

(i) Subject to first seeking a recovery from any applicable insurance or other third parties pursuant to Article VI.G, if applicable, on the Effective Date (or as soon as reasonably practicable thereafter) except to the extent that a Holder of an Allowed Pool Claim agrees to less favorable treatment, each Holder of an Allowed Pool Claim shall receive, in full and final satisfaction of such Claim, a beneficial interest in the insurance proceeds held by the Liquidating Trustee.

(ii) Distributions from the Liquidating Trust to Holders of Allowed Pool Claims shall be paid in accordance with the terms of the Liquidating Trust Agreement. After accounting for the insurance proceeds for Pool Claims, the remaining amount of the Pool Claims shall receive beneficial interests in the Liquidation Trust and will be treated pro-rata with the non-Pool claims. For the avoidance of doubt, any treatment provided to one or more Holders of Pool Claims pursuant to the provisions of the Confirmation Order approving the Insurance Settlement Motion shall take precedence over the treatment provided in this Article III.B.45.

(ii)(iii) For the avoidance of doubt, pursuant to the Insurance Settlement, upon approval by the Court, the insurance policies of Federated will be exhausted, and the sole recovery will be through the Channeling Injunction. Those parties that do not go through the Channeling Injunction will not receive a distribution from the bankruptcy estate.

(b) *Voting*: Class 4 is Impaired under the Plan. Holders of Allowed Pool Claims are entitled to vote to accept or reject the Plan.

5. Class 5- Non-Pool Claims

(a) *Treatment*:

(i) Subject to first seeking a recovery from any applicable insurance or other third parties pursuant to Article VI.G, on the Effective Date

(or as soon as reasonably practicable thereafter) except to the extent that a Holder of an Allowed Non-Pool Claim agrees to less favorable treatment, each Holder of an Allowed Non-Pool Claim shall receive, in full and final satisfaction of such Claim, a beneficial interest in the Liquidation Trust. Thereafter each such Holder shall receive Cash distributions from the Liquidation Trust. Distributions from the Liquidation Trust to Holders of Allowed Non-Pool Claims shall be on a Pro Rata basis with all other holders of Liquidation Trust beneficial interests in accordance with the terms of the Liquidation Trust Agreement. ~~For the avoidance of doubt, only Consenting Creditors will have the right to receive distributions from the excess ERC Funds, if any.~~

(b)     *Voting*: Class 5 is Impaired under the Plan. Holders of Allowed Non-Pool Claims are entitled to vote to accept or reject the Plan.

6.     Class 6 — Contingent Indemnification Claims

(a)     *Treatment*: On the Effective Date, all Contingent Indemnification Claims shall be Disallowed pursuant to section 502(e)(1)(B) of the Bankruptcy Code. Holders of Contingent Indemnification Claims shall not receive any distribution on account of such Claims.

(b)     *Voting*: Class 6 is Impaired under the Plan. Holders of Contingent Indemnification Claims are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

7.     Class 7 — Interests in the Debtor

(a)     *Treatment*: On the Effective Date, all Interests in the Debtor shall be cancelled, released, discharged, and extinguished. Holders of Interests in the Debtor shall not receive any distribution on account of such Interests.

(b)     *Voting*: Class 7 is Impaired under the Plan. Holders of Interests in the Debtor are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

C.  *Elimination of Vacant Classes*

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

### D. Voting Classes; Presumed Acceptance by Non-Voting Classes

If a Class contains Claims or Interests eligible to vote and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Debtor shall request the Bankruptcy Court to deem the Plan accepted by the Holders of such Claims or Interests in such Class.

### E. Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code

To the extent any Class is impaired under the Plan and such Class fails to accept this Plan in accordance with section 1126(c) or (d) of the Bankruptcy Code, the Debtor hereby requests that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code. The Debtor reserves the right to modify the Plan in accordance with Article XI to the extent, if any, that Plan confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims to render such Class of Claims Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

### A. Sources of Consideration for Plan Distributions

Sources of consideration for Plan distributions shall be: (1) Cash on hand; (2) the Debtor's insurance policies including settlements with any insurance carrioer; (3) any cause of action against third parties, including ERTC Refund Claims; and, (4) the Liquidation Trust Assets.

### B. General Settlement of Claims

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, and controversies resolved pursuant to the Plan.

### C. Insurance Settlements

The Plan incorporates the Insurance Settlement, as provided in any Plan Supplement, as if set forth fully in the Plan. The Insurance Settlement Motion shall be approved as part of the Plan pursuant to the Confirmation Order.

D.     *Post-Effective Date Debtor and Liquidation Trust*

     1.    <u>Post-Effective Date Debtor and the Liquidation Trust</u>

On the Effective Date, the Liquidation Trust will be formed pursuant to the Liquidation Trust Agreement to receive and liquidate the Liquidation Trust Assets and wind down the Debtor's Estate. In addition, the Liquidation Trustee shall serve as a successor to the Debtor pursuant to sections 1123(a)(5)(B) and (b)(3)(B) of the Bankruptcy Code to: (a) administer the terms of the Plan including making payments in accordance with Articles II and III to all Holders of Claims and interests; (b) make distributions pursuant to the Liquidation Trust Agreement; (c) assert any Cause of Action on behalf of the Debtor that constitutes a Liquidation Trust Asset; and (d) take such other action as may be authorized by the Liquidation Trust Agreement, including objecting to any and all Claims other than Professional Fee Claims.

Upon the transfer of the Liquidation Trust Assets, as more fully set forth in the Liquidation Trust Agreement, the Debtor will have no reversionary or further interest in or with respect to the Liquidation Trust Assets. For U.S. federal income tax purposes, the beneficiaries of the Liquidation Trust will be treated as grantors and owners thereof and it is intended that the Liquidation Trust be classified as a liquidating trust under Section 301.7701-4 of the Treasury Regulations. Accordingly, for U.S. federal income tax purposes, it is intended that the beneficiaries of the Liquidation Trust be treated as if they had received an interest in the Liquidation Trust Assets and then contributed such interests to the Liquidation Trust.

On the Effective Date, the authority, power, and incumbency of the persons acting as managers or officers of the Debtor shall be deemed to have resigned and the Liquidation Trustee shall be appointed as the sole manager, director, and officer of the Post-Effective Date Debtor and shall succeed to the powers of the Debtor's managers, directors, and officers. From and after the Effective Date, the Liquidation Trustee shall be the sole representative of, and shall act for, the Post-Effective Date Debtor. The Post-Effective Date Debtor or the Liquidation Trustee, as applicable, shall be deemed to be substituted in lieu of the Debtor as the proper party in interest in all matters, including (a) motions, contested matters, and adversary proceedings pending in the Bankruptcy Court, and (b) all matters pending in any courts, tribunals, forums, or administrative proceedings outside of the Bankruptcy Court, in each case without the need or requirement for the Post-Effective Date Debtor or the Liquidation Trustee to file motions or substitutions of parties or counsel in any such matter.

E.     *Corporate Action*

On or before the Effective Date, as applicable, all actions contemplated under the Plan or in any of the documents contained the Plan Supplement, if any (including any action to be undertaken by the Post-Effective Date Debtor or Trustee, as applicable), shall be deemed authorized and approved, and, to the extent taken by the Debtor prior to the Effective Date, ratified, confirmed and approved without any requirement for further action by Holders of Claims or Interests, the Debtor, or any other Entity in all respects. All matters provided for in the Plan involving the corporate structure of the Debtor or the Post-Effective Date Debtor, as applicable, and any corporate action required by the Debtor or the Post-Effective Date Debtor in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of

further action by the security holders, directors, managers, or officers of the Debtor or the Post-Effective Date Debtor, as applicable.

Upon the Effective Date or as soon as reasonably practicable thereafter, after making all distributions required to be made under the Plan, the Debtor shall be deemed to have been dissolved and terminated and the Liquidation Trustee shall be responsible for effectuating such dissolution. On or (as applicable) prior to the Effective Date, the appropriate officers of the Debtor or the Post-Effective Date Debtor or the Liquidation Trustee, as applicable, shall be authorized to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Debtor or Post-Effective Date Debtor. The authorizations and approvals contemplated by this Article IV.F. shall be effective notwithstanding any requirements under non-bankruptcy law.

F.      *Vesting of Assets*

Except as otherwise provided in the Plan or the Plan Supplement, or in any agreement, instrument, or other document incorporated in the Plan, on the Effective Date, all property of the Debtor's Estate, all Causes of Action, any property acquired by the Debtor under the Plan, and any proceeds of any of the foregoing shall automatically vest in the Liquidation Trust free and clear of all Liens, Claims, interests, charges, or other encumbrances. On and after the Effective Date, except as otherwise provided in the Plan, the Liquidation Trustee may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, except as otherwise provided in the Liquidation Trust Agreement.

G.      *Effectuating Documents; Further Transactions*

On and after the Effective Date, the Liquidation Trustee is authorized to and may issue, execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and the documents contained in the Plan Supplement, in the name of and on behalf of the Debtor, without the need for any approvals, authorizations, or consents except for those expressly required under the Plan.

H.      *Exemptions from Certain Taxes and Fees*

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, no transfers of property under the Plan shall be subject in any way to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, including but not limited to (1) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in either Trust; or (2) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instruments of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan. Each appropriate state or local government officials or agents shall forego collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing

**D6-0021**

instruments or other documents without the payment of any such tax or governmental assessment.

All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(c) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

I.      *Preservation of Causes of Action*

Except as otherwise provided in this Plan, an agreement or document entered into in connection with the Plan, or in a Final Order of the Bankruptcy Court, pursuant to section 1123(b) of the Bankruptcy Code and as set forth more fully in the Disclosure Statement, the Debtor reserves and, as of the Effective Date, assigns to the applicable Trust the Causes of Action identified in the Plan Supplement as Retained Causes of Action. On and after the Effective Date, the Liquidation Trustee may pursue Retained Causes of Action on behalf of and for the benefit of the Trust beneficiaries.

No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Liquidation Trustee will not pursue any and all available Causes of Action against it. Unless any Cause of Action against an Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order of the Bankruptcy Court, the Liquidation Trustee expressly reserves all Causes of Action for later adjudication, and, therefore no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of Plan confirmation or Consummation.

The Debtor, the Liquidation Trustee reserves such Causes of Action notwithstanding the rejection of any Executory Contract or Unexpired Lease during the Chapter 11 Case or pursuant to the Plan. The Liquidation Trustee shall retain and shall have, including through their authorized agents or representatives, the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

For avoidance of doubt, the Debtor's Employee Retention Credit Claim is preserved as a claim of the Trust as though pursued by the Debtor under applicable provisions of Title 26.

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.      *Assumption or Rejection of Executory Contracts and Unexpired Leases*

On the Effective Date, except as otherwise provided in the Plan, all Executory Contracts and Unexpired Leases shall be deemed rejected as of the Effective Date pursuant to section 365 of the Bankruptcy Code, without the need for any further notice to or action, order, or approval of the Bankruptcy Court, unless an Executory Contract or Unexpired Lease: (1) was previously assumed

**D6-0022**

or rejected by the Debtor; (2) previously expired or terminated pursuant to its own terms; (3) is the subject of a pending motion to assume filed on or before the Effective Date; or (4) is identified on the Assumed Executory Contract and Unexpired Lease List.

Entry of the Confirmation Order shall constitute a Bankruptcy Court order pursuant to sections 365 and 1123(b) of the Bankruptcy Code approving the assumptions, assumptions and assignments, or rejections described above as of the Effective Date.

B.    *Claims Based on Rejection of Executory Contracts or Unexpired Leases*

Unless otherwise provided by a Final Order of the Bankruptcy Court, all Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be the subject of a Proof of Claim Filed with the Bankruptcy Court and served on the Post-Effective Date Debtor no later than thirty (30) days after the later of (i) the Effective Date or (ii) the date of entry of a Bankruptcy Court order approving such rejection. Such Proof of Claim may be objected to in accordance with the provisions of Article VIII and the applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

Any Claim arising from the rejection of an Executory Contract or Unexpired Lease that is not the subject of a timely Filed Proof of Claim shall be Disallowed for all purposes in this Chapter 11 Case, discharged, and forever barred.

C.    *Cure of Defaults and Objections to Cure and Assumption*

Any monetary defaults under each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash on the Effective Date, subject to the limitation described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.

The Debtor shall provide notices of proposed cure amounts to counterparties to Executory Contracts and Unexpired Leases as part of the Plan Supplement. Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption or related cure amount must be Filed, served, and actually received by counsel to the Debtor no later than the Confirmation Objection Deadline. Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or cure amount will be deemed to have assented to such assumption or cure amount.

Assumption, or assumption and assignment, of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption. **Any Proof of Claim filed with respect to an Executory Contract or Unexpired Lease that has been assumed shall be deemed Disallowed for all purposes in this Chapter 11 Case, discharged, forever barred, and expunged without further notice to or action, order, or approval of the Bankruptcy Court.**

**D6-0023**

D.      *Insurance Policies*

Notwithstanding anything to the contrary herein, each of the insurance policies and any agreements, documents, or instruments relating thereto issued to or entered into by the Debtor prior to the Petition Date shall not be considered Executory Contracts and shall neither be assumed nor rejected by the Debtor; *provided*, *however*, that to the extent any such insurance policy is determined by Final Order to be an Executory Contract, then, notwithstanding anything contained in the Plan to the contrary, the Plan will constitute a motion to assume such insurance policy and assign the same to the Liquidation Trust.  Subject to the occurrence of the Effective Date, the entry of the Confirmation Order will constitute approval of such assumption and assignment pursuant to section 365 of the Bankruptcy Code. Unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed by the parties thereto prior to the Effective Date, no payments are required to cure any defaults of the Debtor existing as of the Confirmation Date with respect to any insurance policy, and prior payments for premiums or other charges made prior to the Petition Date under or with respect to any insurance policy shall be indefeasible. Nothing in the Plan, the Plan Supplement, the Confirmation Order, or any other order of the Bankruptcy Court, (1) alters, modifies, or otherwise amends the terms and conditions of (or the coverage provided by) any of such insurance policies or (2) alters or modifies the duty, if any, that the insurers or third-party administrators pay claims covered by such insurance policies.

E.      *Modifications, Amendments, Supplements, Restatements, or Other Agreements*

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and Executory Contracts and Unexpired Leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Except as otherwise provided in a Final Order, modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtor during the Chapter 11 Case shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

F.      *Reservation of Rights*

Neither the exclusion nor inclusion of any contract or lease on Schedule G of the Debtor's Schedules, nor anything contained in the Plan or the Plan Supplement shall constitute an admission by the Debtor or any other party that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Post-Effective Date Debtor has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtor, the Liquidation Trustee, as applicable, shall have thirty (30) calendar days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease to assume or reject it, including by rejecting such contract or lease effective as of the Confirmation Date.

**D6-0024**

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

A.   *Rights and Powers of the Debtor, Post-Effective Date Debtor and the Liquidation Trustee*

On and after the Effective Date, the Liquidation Trustee and its designees or representatives shall have the right to object to, Allow, or otherwise resolve any Claim subject to the terms hereof and the Liquidation Trust Agreement.

The Post-Effective Date Debtor or the Liquidation Trustee, as applicable, shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court. Additionally, in the event that the Liquidation Trustee is so ordered after the Effective Date, all costs and expenses of procuring any such bond or surety shall be paid for with Cash from the Liquidation Trust Assets.

B.   *Delivery of Distributions and Undeliverable or Unclaimed Distributions*

1.   Delivery of Distributions in General

Except as otherwise provided in the Plan or the applicable Liquidating Trust Agreement, distributions to Holders of Allowed Claims shall be made to Holders of record as of the Effective Date by the Trustee or other third parties, as applicable: (a) to the party designated to receive payment on any Proof of Claim or Proof of Interest; or (b) at the addresses set forth in any written notices of address changes delivered to the Trustee after the Effective Date. Neither the Post-Effective Date Debtor nor the Trustee shall incur any liability whatsoever on account of any distributions under the Plan except for fraud, gross negligence, or willful misconduct.

2.   Minimum; De Minimis Distributions

No Cash payment of less than $50.00 shall be made to a Holder of an Allowed Claim on account of such Allowed Claim unless provided otherwise in one of the Trust Agreements, as applicable.

3.   Undeliverable Distributions and Unclaimed Property

In the event that any distribution to any Holder is returned as undeliverable, no distribution to such Holder shall be made unless and until the Liquidation Trustee has determined the then-current address of such Holder, at which time such distribution shall be made to such Holder without interest; *provided*, *however*, that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of 180 days from the later of (a) the Effective Date and (b) the date of the distribution. After such date, all unclaimed property or interests in property shall revert (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary) to the Liquidation Trust automatically and without need for a further order by the Bankruptcy Court, for distribution in accordance with the Plan and the Claim of any Holder to such property or interest in property shall be released, settled,

**D6-0025**

compromised, and forever barred.

Neither the Liquidation Trustee nor his respective agents and attorneys are under a duty to take any action to either (a) attempt to locate any Holder, or (b) obtain an executed Internal Revenue Service Form W-9 from any Holder; *provided* that in his sole discretion, the Liquidation Trustee may periodically publish notice of unclaimed distributions.

If, at the time the Trust terminates there remains unclaimed property in such Trust, such property shall be donated by the Trustee to the Santa Rosa de Lima Catholic Church of Florence, Texas, to assist in the provision of resources for research and education.

C.     *Manner of Payment*

At the option of the Trustee, any Cash payment to be made under the Plan may be made by check or wire transfer or as otherwise required or provided in applicable agreements.

D.     *Compliance Matters*

In connection with the Plan and all distributions hereunder, to the extent applicable, the Trustee is authorized to take any and all actions that may be necessary or appropriate to comply with all tax withholding and reporting requirements imposed on him by any Governmental Unit, and all distributions pursuant to the Plan or pursuant to the Liquidation Trust Agreement shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Trustee shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of a distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms he believes are reasonable and appropriate. The Trustee reserves the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens and encumbrances. All Persons holding Claims shall be required to provide any information necessary to effect information reporting and the withholding of such taxes. Notwithstanding any other provision of the Plan to the contrary, each Holder of an Allowed Claim shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding, and other tax obligations, on account of such distribution.

E.     *Allocation Between Principal and Accrued Interest*

Except as otherwise provided in the Plan, the aggregate consideration paid to Holders with respect to their Allowed Claims shall be treated pursuant to the Plan as allocated first to the principal amount of such Allowed Claims (to the extent thereof) and, thereafter, to the interest, if any, on such Allowed Claim accrued through the Petition Date.

F.     *Setoffs and Recoupment*

Unless otherwise provided in the Plan or the Confirmation Order, the Post-Effective Date

Debtor and the Trustee may, pursuant to the Bankruptcy Code, applicable non-bankruptcy law, or as may be agreed to by the Holder of a Claim, set off against or recoup any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim, any claims, rights, and Causes of Action of any nature that such Post-Effective Date Debtor or Trustee, as applicable, may hold against the Holder of such Allowed Claim. In no event shall any Claim Holder be entitled to set off or recoup any such Claim against any claim, right, or Cause of Action of the Post-Effective Date Debtor or either Trustee (as applicable), unless such Holder has filed a motion with the Bankruptcy Court requesting the authority to implement such setoff or recoupment on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of setoff or recoupment pursuant to section 553 of the Bankruptcy Code or otherwise.

G.     *Claims Paid or Payable by Third Parties*

1.     Claims Payable by Insurance

With the exception of the proceeds the subject of the *Insurance Settlement* with Federated Insurance, no distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtor's insurance policies, surety agreements, other non-Debtor payment agreements, or collateral held by a third party until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy, surety agreement, other non-Debtor payment agreement, or collateral, as applicable. To the extent that one or more of the Debtor's insurers, sureties, or non-Debtor payors pays or satisfies a Claim in full or in part, or such collateral or proceeds from such collateral is used to satisfy such Claim, then immediately upon such payment, the applicable portion of such Claim shall be expunged and Disallowed without the need for a Claim objection to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court. For the avoidance of doubt, this provision does not apply to any Pool Claim as identified above and would apply to work defects or other claims covered by Debtor's insurance policy with Concert Specialty Insurance Company from October 3, 2023 through the cessation of operations in early 2024.

2.     Applicability of Insurance Policies

Except as otherwise provided in the Plan, the Insurance Settlement Motion or any other order of the Bankruptcy Court, distributions to Holders of Allowed Claims shall be in accordance with the provisions of an applicable insurance policy. Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtor or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained in the Plan constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

3.     Claims Paid by Third Parties

The Trustee shall be authorized to reduce in full, or in part, a Claim, and such Claim shall be Disallowed without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment on its Claim from a party that is not a Debtor, including on account of recourse

to collateral held by third parties that secure such Claim. To the extent a Claim Holder receives a distribution on account of such Claim and also receives payment from a party that is not a Debtor on account of such Claim, such Holder shall, within fourteen (14) days of receipt thereof, repay or return the distribution to the Trustee to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.

## ARTICLE VII.
## RESERVES ADMINISTERED BY
## THE LIQUIDATION TRUSTEE

*A.*    *Establishment of Reserve Accounts*

The Liquidation Trustee shall establish each of the Distribution Reserve Accounts, which, notwithstanding anything to the contrary contained in this Plan, may be effectuated by either establishing a segregated account or establishing book entry accounts, in the sole discretion of the Liquidation Trustee.

*B.*    *Administrative and Priority Claims Reserve*

On the Effective Date, the Debtor shall fund and the Liquidation Trustee shall establish the Administrative and Priority Claims Reserve. The Administrative and Priority Claims Reserve shall be used to pay Allowed Administrative and Priority Claims. If all or any portion of an Administrative or Priority Claim shall become a Disallowed Claim, then the amount on deposit in the Administrative and Priority Claims Reserve attributable to such surplus or such Disallowed Claim, including the interest that has accrued on said amount while on deposit in such Reserve, shall remain in the Administrative and Priority Claims Reserve to the extent that the Liquidation Trustee determines necessary to ensure that the Cash remaining in the Administrative and Priority Claims Reserve is sufficient to ensure that all Allowed Administrative and Priority Claims will be paid in accordance with the Plan.

*C.*    *Pool Claimant Reserve*

On the Effective Date, the Liquidation Trustee shall establish the Pool Claimant Reserve. The Pool Claimant Reserve shall be used to pay Allowed Class 4 Pool Claims. If all or any portion of a Pool Claim shall become a Disallowed Claim, then the amount on deposit in the Pool Claimant Reserve attributable to such surplus or such Disallowed Claim, including any interest that has accrued on said amount while on deposit in such Reserve, shall remain in the Pool Claimant Reserve to the extent that the Trustee determines necessary to ensure that the Cash remaining in the Pool Claimant Reserve is sufficient to ensure that all Allowed Pool Claims will be paid in accordance with the Plan.

The Debtor shall not have any reversionary or other interest in or with respect to any of the Distribution Reserve Accounts.

## ARTICLE VIII.
### PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS AND INTERESTS

A.     *Applicability.*

All Disputed Claims against the Debtor, other than Administrative Expense Claims, shall be subject to the provisions of this Article VIII. All Administrative Expense Claims shall be determined and, if Allowed, paid in accordance with Article II.

B.     *Allowance of Claims and Interests*

After the Effective Date, the Trustee shall have and retain any and all rights and defenses the Debtor had with respect to any Claim or Interest immediately prior to the Effective Date, except with respect to any Claim Allowed pursuant to the Plan or Final Order of the Bankruptcy Court entered before the Effective Date. Except as expressly provided in the Plan or in any Final Order of the Bankruptcy Court entered prior to the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan, the Bankruptcy Code, or the Bankruptcy Court has entered a Final Order (including the Confirmation Order) in the Chapter 11 Case allowing such Claim. All settled Claims approved prior to the Effective Date pursuant to a Final Order of the Court pursuant to Bankruptcy Rule 9019 or otherwise, if any, shall be binding on all parties.

C.     *Claims Administration Responsibilities.*

Except as otherwise specifically provided in the Plan, after the Effective Date the Liquidation Trustee shall have the sole authority to: (1) file, withdraw, or litigate to judgment objections to Claims or Interests, except for Professional Fee Claims; (2) settle or compromise any Disputed Claim or Interest without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) administer the Claims Register and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court. For the avoidance of doubt, except as otherwise provided in the Plan, from and after the Effective Date, the Liquidation Trustee shall have and retain any and all rights and defenses the Debtor had immediately prior to the Effective Date with respect to any Disputed Claim or Interest, including the Causes of Action retained pursuant to Article IV.I.

D.     *Estimation of Claims and Interests*

Before or after the Effective Date, the Debtor or the Liquidation Trustee, as applicable, may at any time request that the Bankruptcy Court estimate any Disputed Claim or Interest that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain

**D6-0029**

jurisdiction to estimate any such Claim or Interest, including during the litigation of any objection to any Claim or Interest or during the appeal relating to such objection. Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim or Interest, that estimated amount shall constitute a maximum limitation on such Claim or Interest for all purposes under the Plan (including for purposes of distributions), and the Liquidation Trustee may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim or Interest.

E.      *Adjustment to Claims Without Objection*

Any duplicate Claim or Interest or any Claim or Interest that has been paid, satisfied, amended, or superseded may be adjusted or expunged on the Claims Register by the Liquidation Trustee without the Liquidation Trustee having to file an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim or Interest and without any further notice to or action, order, or approval of the Bankruptcy Court. The Liquidation Trustee shall provide affected claimants with 21-day notice of the intent to adjust or expunge their claim unless the claimant provides written acknowledgement of such adjustment or expungement in advance.

F.      *No Distributions Pending Allowance*

Notwithstanding any other provision hereof, if any portion of a Claim or Interest is a Disputed Claim or Interest, as applicable, no payment or distribution provided hereunder shall be made on account of such Claim or Interest unless and until such Disputed Claim or Interest becomes Allowed.

G.      *Disallowance of Claims*

Any Claims held by Entities from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be deemed Disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Debtor by that Entity have been turned over or paid to the Debtor or the Liquidation Trustee.

H.      *Claim Amendment Deadline*

***ANY AMENDMENTS TO ANY CLAIM TIMELY FILED BY THE BAR DATE MUST BE MADE WITHIN THIRTY (30) DAYS FOLLOWING THE EFFECTIVE DATE. ANY AMENDMENTS FILED MORE THAN THIRTY (30) DAYS AFTER THE EFFECTIVE DATE SHALL BE DEEMED INEFFECTIVE WITHOUT ANY FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE COURT, AND HOLDERS OF SUCH CLAIMS MAY NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH AMENDED***

*CLAIMS.*

I.       *Initial Distributions*

As provided for in the Liquidating Trust Agreement, the Trustee may make an initial distribution to the o allow prompt Distribution of Trust assets, as soon as practicable, the Trustee in his sole discretion, may make an initial Distribution to the allowed Pool Claimants while reserving a portion of the Pool Claim Reserve for the Disputed Claims. To the extent that a Disputed Claim or Interest ultimately becomes an Allowed Claim or Interest, distributions (if any) shall be made to the Holder of such Allowed Claim or Interest in accordance with the provisions of the Plan. As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim or Interest becomes a Final Order, the Liquidation Trustee shall provide to the Holder of such Claim or Interest a partial distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, without any interest to be paid on account of such Claim or Interest. The Liquidating Trustee shall, after completing the claim objection process, make a final distribution to all allowed claims.

J.       *No Interest*

Unless otherwise specifically provided for by the Plan or the Confirmation Order, or unless otherwise required by applicable bankruptcy law, no postpetition interest shall accrue or be paid on any Claim or Interest and no Holder of any Claim or Interest shall be entitled to interest accruing on or after the Petition Date.

## ARTICLE IX.
## SETTLEMENT, RELEASE, EXCULPATION, AND RELATED PROVISIONS

A.       *Compromise and Settlement of Claims, Interests, and Controversies*

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, including specifically the Insurance Settlement, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtor, its Estate, and Holders of Claims and Interests and is fair, equitable, and reasonable.

B.       **Release of Liens**

**Except as otherwise provided in the Plan, the Plan Supplement, or any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estate shall be fully released, settled, compromised, and satisfied, and all of the right, title,**

**D6-0031**

**and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert automatically to the Debtor and its successors and assigns. Any Holder of such Secured Claim (and the applicable agents for such Holder) shall be authorized and directed to release any collateral or other property of the Debtor (including any cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder) and to take such actions as may be reasonably requested by the Debtor or the Liquidation Trustee to evidence the release of such Lien, including the execution, delivery, and filing or recording of such releases. The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.**

C.    *Release by the Debtor, its Estate, and the Post-Effective Date Debtor*

**Pursuant to section 1123(b) of the Bankruptcy Code, upon payment in full of the Settlement Payment as provided in Article IV.C, and in exchange for other good and valuable consideration, the adequacy of which is hereby confirmed, the Debtor, its Estate, and the Post-Effective Date Debtor shall be deemed to have expressly, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged each and all of the Released Parties from any and all claims, causes of action, interests, damages, remedies, demands, rights, actions (including Avoidance Actions), suits, debts, sums of money, obligations, judgments, liabilities, accounts, defenses, offsets, counterclaims, crossclaims, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, now existing or hereafter arising, contingent or non-contingent, liquidated or unliquidated, choate or inchoate, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise that the Debtor, the Post-Effective Date Debtor, or the Estate has, have or may have against the Released Parties.**

**Notwithstanding anything contained herein to the contrary, the foregoing release does not release any obligations of any Released Party under the Plan or any document, instrument, or agreement executed to implement the Plan.**

D.    *Consensual Claimant Release*

**As of the Final Payment Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed to the maximum extent permitted under applicable law, all Consenting Creditors shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each Released Party of and from any and all Causes of Action based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, the Estate, their respective current or former assets and properties, the Chapter 11 Case, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between the Debtor and any Released Party, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan Documents or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation or**

**D6-0032**

implementation thereof, the pursuit of Plan confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing; *provided*, *however*, that the releases set forth in this Article IX.D shall not, and shall not be construed to:  (a) release any post-Effective Date obligations under the Plan Documents or any document, instrument, or agreement executed to implement the Plan or; ~~(b) impair any recoveries that may be sought with respect to any Insurance Actions, or (c)~~ (b) modify, reduce, impair or otherwise affect the ability of any Consenting Creditors to recover from the Trusts in accordance with the Plan and the Trust Documents.  If, following the Final Payment Date, any portion of the Settlement Payment is clawed back, the releases set forth this Article IX.D shall be void.  If such releases become void, then the relevant Statute of Limitations applicable to any claim or Cause of Action that could then be asserted against the Released Parties shall be tolled and extended to the date that is ninety (90) days following the date that such releases become void and notice of the same is published by the Trusts.  Any Released Party may enforce the Consensual Claimant Release before the Bankruptcy Court, which shall retain jurisdiction for such purpose, at its own cost and expense.

E.   *Exculpation*

Upon the Effective Date, to the fullest extent permissible under applicable law, no Exculpated Party shall have or incur, and each Exculpated Party is released and exculpated from, any liability to any Holder of a Claim or Interest, or any other party in interest, for any claim or cause of action arising from the Petition Date through the Effective Date, arising from, relating to, or connected with the administration of the Chapter 11 Case, the Disclosure Statement, the preparation of the Plan, the solicitation of acceptances of the Plan, the pursuit of confirmation of the Plan, the Consummation of the Plan, or the administration of the Plan or property to be distributed under the Plan, except for claims related to any act or omission that is determined in a Final Order of a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence. The Exculpated Parties shall be deemed to have, participated in good faith in connection with the above and entitled to the protection of section 1125(e) of the Bankruptcy Code. Each Exculpated Party shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.

F.   *Releases by the Debtor and the Settlement Parties of Holders of Claims in Class 4*

As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, as an integral component of the Plan, to the maximum extent permitted under applicable law, Released Parties shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each of the Holders of Claims in Class 4 (Pool Claims) of and from any and all Causes of Action based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, the Estate, their respective current or former assets and properties, the Chapter 11 Case, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between the Debtor and any such Holder, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan Documents or any related agreements, instruments, and other documents created or

**D6-0033**

**entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation or implementation thereof, the pursuit of Plan confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing; provided, however, that the releases set forth in this Article IX.F shall not, and shall not be construed to: (a) release any post-Effective Date obligations under the Plan Documents or any document, instrument, or agreement executed to implement the Plan; (b) impair any recoveries that may be sought with respect to any Insurance Actions, or (c) modify, reduce, impair or otherwise affect the ability of any Consenting Creditors to recover from the Trusts in accordance with the Plan and the Trust Documents.**

G.    *Recoupment*

In no event shall any Holder of Claims or Interests be entitled to recoup any Claim or Interest against any claim, right, or Cause of Action of the Debtor or the Post-Effective Date Debtor, as applicable, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtor on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

H.    *Term of Injunctions or Stays*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Case (pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court) and existing on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

I.    **Channeling Injunction**

    1.    **Purpose**
**As of the Effective Date, to facilitate the liquidation of Channeled Claims by the Liquidating Trust to preserve and promote the settlement framework contemplated by and provided for in the Plan, including the Insurance Settlement, pursuant to the equitable jurisdiction and power of the Bankruptcy Court under the Bankruptcy Code, the Bankruptcy Court shall issue the channeling injunction set forth in this <u>Article IX.I</u> (the "<u>Channeling Injunction</u>"). <span style="color:blue">Pursuant to the Insurance Settlement, upon approval by the Court, the insurance policies of Federated are exhausted.</span>**

    <span style="color:red">2.    **Source of Recovery for Pool Claims**
**For the avoidance of doubt, creditors that would otherwise have a Pool Claim (Class #4) that opt out of the** ~~release and Channeling Injunction~~**Consensual Claimant Release and therefore are not Consenting Creditors will not participate in the distributions from the Liquidation Trustee.**</span>

    <span style="color:purple">~~2.~~**3.**</span>   **Protections Afforded to Released Parties**
**Subject to the terms of <u>Article IX.I.5</u>, and while the Channeling Injunction is in full**

**D6-0034**

**force and effect as to any Channeled Claim, the sole recourse of any Holder of a Channeled Pool Claim that is eligible for compensation under the Liquidating Trust Distribution Procedures, as defined in the Liquidating Trust Agreement, on account of such Channeled Pool Claim shall be to and against the Liquidating Trust pursuant to the Liquidating Trust Documents, and such Holder shall have no right to assert such Channeled Pool Claim or any Claim against the Debtor against any Released Party. Accordingly, on or after the Effective Date, and subject to the terms of <u>Article IX.I.5</u>, all Persons that have held or asserted, currently hold or assert, or that may in the future hold or assert, any Channeled Claim shall be stayed, restrained, and enjoined from taking any action for the purpose of directly, indirectly, or derivatively collecting, recovering, or receiving payment, satisfaction, or recovery from any Released Party with respect to any such Channeled Claim, other than from the Trusts, including:**

    a. **commencing, conducting, or continuing, in any manner, whether directly, indirectly, or derivatively, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum in any jurisdiction around the world against or affecting any Released Party, or any property or interest in property of any Released Party;**

    b. **enforcing, levying, attaching (including any prejudgment attachment), collecting or otherwise recovering, by any manner or means, either directly or indirectly, any judgment, award, decree, or order against or affecting any Released Party, or any property or interest in property of any Released Party;**

    c. **creating, perfecting or otherwise enforcing in any manner, whether directly or indirectly, any encumbrance of any kind against any Released Party, or any property or interest in property of any Released Party;**

    d. **asserting, implementing, or effectuating any setoff, right of reimbursement, subrogation, indemnity, contribution, reimbursement, or recoupment of any kind, in any manner, directly or indirectly, against any obligation due to any Released Party, or any property or interest in property of any Released Party; or**

    e. **taking any act in any manner, and in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents or with regard to any matter that is within the scope of the matters designated by the Plan to be subject to resolution by the Trusts, except in conformity and compliance with the Plan Documents with respect to any such Channeled Claim.**

  ~~3.~~**4.**   **Reservations**

    **Notwithstanding anything to the contrary in this <u>Article IX.I</u>, this Channeling Injunction shall not enjoin:**

    a.   **the rights of Holders of Channeled Pool Claims to assert such Claims against the Liquidating Trust in accordance with the Liquidating Trust Distribution Procedures;**

    b.   **the rights of holders of Channeled Claims to assert any claims that are not Channeled Claims against any Released Party;**

    c.   **the rights of holders of Channeled Claims to assert such Claims against any Released Party if the Channeling Injunction is terminated under Article IX.I.5.**

    d.   **the Trust from enforcing its rights under the Plan and the Confirmation Order;**

    e.   **the rights of the Trust to prosecute any action against an Insurance Company based on or arising from an Insurance Policy.**

    f.   **the rights of the Trust to prosecute any Retained Estate Causes of Action; and**

    g.   **the rights of holders of Channeled Claims to seeking recovery from any Person, Entity, or Governmental Unit that is not a Released Party on account of their Channeled Claims or any other claim or Cause of Action.**

**4.5.   Enforcement**

**Any Released Party may enforce the Channeling Injunction before the Bankruptcy Court, which shall retain jurisdiction for such purpose, at its own cost and expense.**

**5.6.   Termination of Channeling Injunction**

**The Channeling Injunction and all protections afforded to the Released Parties set forth in this Article IX.I shall terminate automatically (or not take effect) as to the Holder of any Channeled Claims if a Settlement Payment Default occurs and is not cured within Settlement Payment Cure Period or waived by the Liquidating Trustee in accord with Article IV.B.2, or if the Estate Release or the Consensual Claimant Release become void for any reason.**

**6.7.   Tolling of Statute of Limitations**

**While the Channeling Injunction is in effect as to any Channeled Claim, and for ninety (90) days following the termination of the Channeling Injunction under Article IX.I.5, the running of any relevant Statute of Limitations shall be tolled as to any Channeled Claim.**

**ARTICLE X.**
**CONDITIONS PRECEDENT TO THE EFFECTIVE DATE**

   *A.   Conditions Precedent to the Effective Date.*

It shall be a condition to the Effective Date that the following conditions shall have been satisfied or waived pursuant to Article X.B:

1.    the Bankruptcy Court shall have entered the Confirmation Order;

2.    the settlement shall have occurred with Federated Insurance;

3.    the Liquidation Trust shall be established and funded and the Liquidation Trustee shall have been appointed in accordance with the provisions of the Plan and the terms of the Liquidation Trust Agreement;

4.    the Debtor shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan;

5.    substantially final version of the Plan Supplement and all of the schedules, documents, and exhibits contained therein, and all other schedules, documents, supplements and exhibits to the Plan, shall have been filed;

6.    the Administrative and Priority Claims Reserve shall have been established and funded;

7.    the Pool Claims Reserve shall have been established and funded; and

8.    the Professional Fee Escrow shall have been established and funded.

B.    *Waiver of Conditions Precedent*

The Debtor may agree to waive any of the conditions to the Effective Date set forth above at any time without any notice to any other parties in interest and without any further notice to or action, order, or approval of the Bankruptcy Court, and without any formal action other than proceeding to confirm and consummate the Plan.

C.    *Substantial Consummation*

"Substantial Consummation" of the Plan, as defined in 11 U.S.C. § 1101(2), shall be deemed to occur on the Effective Date.

## ARTICLE XI.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

A.    *Modification of Plan*

Subject to section 1127 of the Bankruptcy Code and, to the extent applicable, sections 1122, 1123 and 1125 of the Bankruptcy Code, the Debtor may propose in writing to alter, amend, or modify materially the Plan prior to or after Confirmation. Holders of Claims and Interests that have accepted the Plan shall be deemed to have accepted the Plan as altered, amended, or modified;

**D6-0037**

*provided, however*, that any Holders of Claims and Interests who were deemed to accept the Plan because such Claims or Interests were Unimpaired shall continue to be deemed to accept the Plan only if, after giving effect to such amendment or modifications, such Claims and Interests continue to be Unimpaired. For purposes of this Article XI only, the Liquidation Trustee shall be deemed a Proponent entitled to seek amendment of the Plan under section 1127 of the Bankruptcy Code.

B.      *Revocation or Withdrawal of Plan*

The Debtor reserves the right to jointly revoke or withdraw the Plan before the Confirmation Date and to file subsequent chapter 11 plans. If the Debtor revokes or withdraws the Plan, or if the Confirmation Date or the Effective Date does not occur, then: (1) the Plan will be null and void in all respects; (2) any settlement or compromise embodied in the Plan, assumption of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant hereto will be null and void in all respects; and (3) nothing contained in the Plan shall (a) constitute a waiver or release of any Claims, Interests, or Causes of Action, (b) prejudice in any manner the rights of the Debtor or any other Entity, or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtor or any other Entity.

## <u>ARTICLE XII.</u><br><u>RETENTION OF JURISDICTION</u>

A.      *Jurisdiction*

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Case and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code for, among other things, including jurisdiction to:

1.      allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Claim or Interest and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests, except as otherwise expressly provided in the Plan;

2.      hear and determine all matters relating to Professional Fee Claims;

3.      ensure that distributions to Holders of Allowed Claims and Interests (as applicable) are accomplished pursuant to the provisions of the Plan and adjudicate any and all disputes arising from or relating to distributions under the Plan;

4.      adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

5.      enter and implement such orders as may be necessary or appropriate to execute, implement, interpret, or consummate the provisions of (a) contracts, instruments, releases, indentures, and other agreements or documents approved by Final Order in the Chapter 11 Case

and (b) the Plan, the Confirmation Order, the Trust Agreements, and contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan;

6.      enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

7.      adjudicate, decide, or resolve any and all matters related to the Plan;

8.      issue and enforce injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation, implementation or enforcement of the Plan, including all settlements, releases, exculpations and injunctions provided for under the Plan;

9.      resolve any cases, controversies, suits, disputes, Causes of Action, or any other matters that may arise in connection with the Consummation, implementation, interpretation, or enforcement of the Plan, the Disclosure Statement, the Confirmation Order, or any Entity's obligations incurred in connection with the foregoing, including disputes arising under agreements, documents, or instruments executed in connection with the Plan, the Disclosure Statement, the Confirmation Order;

10.     hear, determine, and resolve any cases, matters, controversies, suits, disputes, or Causes of Action in connection with or in any way related to the Chapter 11 Case, including: (a) with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or an Interest for amounts not timely repaid pursuant to Article VI.G.3; (b) with respect to the releases, injunctions, and other provisions contained in Article IX, including entry of such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions; (c) that may arise in connection with the Consummation, interpretation, implementation, or enforcement of the Plan, the Confirmation Order, and, subject to any applicable forum selection clauses, contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan; or (d) related to section 1141 of the Bankruptcy Code;

11.     enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

12.     consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any order, including the Confirmation Order;

13.     hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

14.     hear and determine all matters relating to the releases, injunctions, exculpations, and gatekeeping contained in Article IX;

15.     enforce all orders previously entered by the Bankruptcy Court;

16.     hear any other matter not inconsistent with the Bankruptcy Code; and

**D6-0039**

17.     enter an order or Final Decree concluding or closing the Chapter 11 Case.

## ARTICLE XIII. MISCELLANEOUS PROVISIONS

A.     *Additional Documents*

On or before the Effective Date, the Debtor may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtor or the Liquidation Trustee and all Holders of Claims and Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

B.     *Statutory Fees*

All fees payable pursuant to 28 U.S.C. § 1930(a), including fees and expenses payable to the U.S. Trustee, as determined by the Bankruptcy Court at a hearing pursuant to section 1128 of the Bankruptcy Code, will be paid by the applicable Trustee for each quarter (including any fraction thereof) until the Chapter 11 Case is converted, dismissed, or closed, whichever occurs first.

C.     *Reservation of Rights*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court has entered the Confirmation Order. None of the filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by the Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of either of the Debtor with respect to Holders of Claims or Interests prior to the Effective Date.

D.     *Successors and Assigns*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, affiliated investment funds or investment vehicles, managed accounts or funds, investment managers, advisors, and sub-advisors with discretionary authority, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

E.     *Service of Documents*

All notices, requests, and demands relating to the Plan shall be in writing to be effective and, unless otherwise expressly provided in the Plan, shall be deemed to have been duly given or made when actually delivered, addressed as follows:

**D6-0040**

A.      *If to the Debtor:*

>   Hot Crete, LLC
>   Attention: Edgar Castro, Managing Member and President
>   2010 Brushy Creed Rd., Unit A
>   Leander, TX 78613___
>   E-mail: info@hot-crete.com
>
>   with copies to:
>
>   Hayward PLLC
>   Attention: Todd Headden
>   7600 Burnet Rd, Suite 530
>   Austin, Texas 78757
>   E-mail:   theadden@haywardfirm.com

B.      *If to the Liquidation Trustee, to:*

>   [Address to be provided in the Plan Supplement]

After the Effective Date, the Liquidation Trustee shall have the authority to send a notice to Entities that continue to receive documents pursuant to Bankruptcy Rule 2002 requiring such Entity to file a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Liquidation Trustee is authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have filed such renewed requests.

F.      *Entire Agreement*

Except as otherwise indicated, the Plan (including, for the avoidance of doubt, the Plan Supplement) supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

G.      *Plan Supplement Exhibits*

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan. The Plan Supplement is available upon written request to Debtor's counsel at the address above for free or from the Bankruptcy Court's website for a fee at https://ecf.txwb.uscourts.gov/. The documents contained in the Plan Supplement are an integral part of the Plan and shall be deemed approved by the Bankruptcy Court pursuant to the Confirmation Order.

H.      *Non-Severability*

If, prior to Plan confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall not alter or interpret such

**D6-0041**

term or provision to make it valid or enforceable, *provided* that at the request of the Debtor, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such terms or provision shall then be applicable as altered or interpreted provided that any such alteration or interpretation shall be acceptable to the Debtor. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the consent of the Debtors; and (3) non-severable and mutually dependent.

I.      *Good Faith*

Upon entry of the Confirmation Order and pursuant to section 1125(e) of the Bankruptcy Code, the Debtor, the Exculpated Parties, and the Released Parties will be deemed to have solicited votes on the Plan, or otherwise participated in the Plan process, in good faith and in compliance with the Bankruptcy Code, and, therefore, no such parties, individuals, or the Trustee will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan or participation in the Plan process.

J.      *Waiver or Estoppel*

Each Holder of a Claim or Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured or not subordinated by virtue of an agreement made with the Debtor or its counsel or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers filed with the Bankruptcy Court prior to the Confirmation Date.

K.      *No Attorney's Fees*

Except for the fees of Professionals, no attorneys' fees shall be paid by the Debtor or the Trustee with respect to any Claim or Interest unless otherwise specified in the Plan or by a Final Order of the Bankruptcy Court.

L.      *Closing of Chapter 11 Case*

The Liquidation Trustee shall file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Case.

Dated: ~~April~~ June 2~~1~~8, 2025

Respectfully submitted,

**Hot Crete, LLC**

By:  */s/* ~~*Edgar Castro*~~*Draft*
Name: Edgar Castro

**D6-0042**

Title: Managing Member and President

**D6-0043**