**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **HOT CRETE, LLC,** | § | **Case No. 24-10303-smr** |
| | § | |
| **Debtor.** | § | **Chapter 11** |
| | § | |

---

**HOT CRETE, LLC's**
**SECOND AMENDED DISCLOSURE STATEMENT UNDER 11 U.S.C. §1125**

---

DATED: November 14, 2025

Todd Headden
Texas State Bar No. 24096285
HAYWARD, PLLC
7600 Burnet Rd., Ste. 530
Austin, TX 78757
(737) 881-7104 (phone and fax)
Email: THeadden@HaywardFirm.com
ATTORNEYS FOR DEBTOR

## TABLE OF CONTENTS

I.  INTRODUCTION........................................................................................2
    A.  Identity of the Debtors ............................................................2
    B.  General Information Concerning Disclosure Statement ............................3
    C.  Definitions...................................................................................3
    D.  Answers to Commonly Asked Questions ..................................................3
        1.  WHO IS THE DEBTOR? ...................................................3
        2.  HOW LONG HAS THE DEBTOR BEEN IN CHAPTER 11? .4
        3.  WHAT IS CHAPTER 11?................................................4
        4.  WHAT IS THE DEBTOR ATTEMPTING TO DO IN CHAPTER 11? ................................................................4
        5.  IF THE LIQUIDATING PLAN GOVERNS HOW MY CLAIM IS TREATED, WHY AM I RECEIVING THIS DISCLOSURE STATEMENT? ................................................................5
        6.  HAS THIS DISCLOSURE STATEMENT BEEN APPROVED BY THE COURT? ................................................................5
        7.  WHY IS CONFIRMATION OF THE LIQUIDATING PLAN IMPORTANT?................................................................5
        8.  WHAT IS NECESSARY TO CONFIRM THE LIQUIDATING PLAN?................................................................5
        9.  ARE CREDITORS ENTITLED TO VOTE ON THE PLAN? .6
        10. HOW WILL THIS PLAN TREAT MY CLAIM?...................7
        11. WHEN IS THE DEADLINE FOR RETURNING MY BALLOT?................................................................7
II. INFORMATION CONCERNING THE DEBTOR............................................8
    A.  Overview of the Debtor ............................................................8
    B.  Management of the Debtor ............................................................8
    C.  Significant Transactions Prior to Bankruptcy............................................8
    D.  Events Leading to Filing ............................................................8
    E.  Significant Events Since Filing Bankruptcy ............................................9
        a.  In General....................................................................9
        b.  Legal Proceedings............................................................9
        c.  Employment of Professionals. ............................................9
        f.  Liquidation of Assets. ............................................................9
        g.  Insurance Settlement. ............................................................10
III. ANALYSIS AND VALUATION OF ESTATE ASSETS...............................11
    A.  Liquidation Value/Analysis ............................................................11
IV. SUMMARY OF PLAN OF REORGANIZATION ......................................12
    A.  Analysis and Treatment of Claims............................................12
    B.  Unclassified Claims. ............................................................12
    C.  Administrative Expense Claims............................................13
    D.  Class 1 – Allowed Priority Claims............................................14
    E.  Class 2 – Other Secured Claim. ............................................14
    F.  Class 3 – Convenience Claims. ............................................14
    G.  Class 4 – Pool Claims. ............................................................15

H.      Class 5 – Non-Pool Claims ........................................................16
I.      Class 6- Contingent Indemnification Claims ...............................17
J.      Class 7- Interests in the Debtor ..................................................17
K.      Risk to Creditors .......................................................................17
        1.      **Bankruptcy Law Considerations** ...............................18
        **The Debtor May Not Be Able to Satisfy Vote Requirements** ...............19
        **The Debtor May Not Be Able to Secure Confirmation** ........................19
        **Releases, Injunctions, and Exculpations Provisions May Not Be Approved** ...................................................................................19
        **The Debtor May Not Be Able to Pursue Nonconsensual Confirmation Over Certain Impaired Non-Accepting Classes** .......................20
        **The Chapter 11 Case May Be Converted to a Case under Chapter 7 of the Bankruptcy Code** ..................................................................20
        **The Chapter 11 Case May Be Dismissed** .............................................20
        **Risk of Non-Occurrence of the Plan Effective Date** ...........................20
        2.      Risks Related to Recoveries Under the Plan.................................21
        3.Miscellaneous             Risk             Factors             and Disclaimers ...............................................................................22
L.      Claims Allowance Procedure ...................................................23
M.      Settlement, Release, Exculpation and Related Provisions.......................23
        1.      Released Parties and Exculpated Parties.......................................24
        2.      Estate Release ...................................................................24
        3.      Other Releases. ..................................................................24
        4.      Exculpation ......................................................................26
        5.      Channeling Injunction...........................................................26
O.      Retention of Jurisdiction ..........................................................27
P.      Post-Confirmation Procedure....................................................27
V.      **ALTERNATIVES TO THE DEBTORS' PLAN** ...........................................**27**
VI.     **TAX CONSEQUENCES** ...........................................................................**27**
VII.    **PENDING AND POTENTIAL LITIGATION** ..............................................**28**
A.      Avoidance Actions....................................................................28
B.      Other Litigation.......................................................................29
VIII.   **SOLICITATION OF VOTES**.....................................................................**29**

## IMPORTANT NOTICE AND DISCLAIMER

THIS DISCLOSURE STATEMENT ("DISCLOSURE STATEMENT") HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND RULE 3016 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE, AND NOT NECESSARILY IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER NON-BANKRUPTCY LAW. THIS DISCLOSURE STATEMENT WAS PREPARED TO PROVIDE HOLDERS OF CLAIMS AGAINST THE DEBTOR WITH "ADEQUATE INFORMATION" (AS DEFINED IN THE BANKRUPTCY CODE) SO THAT THEY CAN MAKE AN INFORMED JUDGMENT ABOUT THE PLAN. THIS DISCLOSURE STATEMENT AND ALL EXHIBITS HERETO, INCLUDING THE PLAN, SHOULD BE READ. PLAN SUMMARIES AND STATEMENTS MADE IN THIS DISCLOSURE STATEMENT ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE PLAN AND THE EXHIBITS ANNEXED TO THE DISCLOSURE STATEMENT AND THE PLAN.

THERE HAS BEEN NO INDEPENDENT AUDIT OF THE FINANCIAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT EXCEPT AS EXPRESSLY INDICATED HEREIN. THIS DISCLOSURE STATEMENT WAS COMPILED FROM INFORMATION OBTAINED FROM NUMEROUS SOURCES BELIEVED TO BE ACCURATE TO THE BEST OF THE DEBTOR'S KNOWLEDGE, INFORMATION AND BELIEF. NO GOVERNMENTAL AUTHORITY HAS PASSED ON, CONFIRMED OR DETERMINED THE ACCURACY OR ADEQUACY OF THE INFORMATION CONTAINED HEREIN.

NOTHING STATED HEREIN WILL BE DEEMED OR CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, OR BE ADMISSIBLE IN ANY OTHER PROCEEDING INVOLVING THE DEBTOR'SOR ANY OTHER PARTY, OR BE DEEMED CONCLUSIVE EVIDENCE OF THE TAX OR OTHER LEGAL EFFECTS OF THE PLAN ON THE DEBTOR OR HOLDERS OF CLAIMS OR EQUITY INTERESTS. CERTAIN STATEMENTS CONTAINED HEREIN, BY NATURE, ARE FORWARD-LOOKING AND CONTAIN ESTIMATES AND ASSUMPTIONS. THERE CAN BE NO ASSURANCE THAT SUCH STATEMENTS WILL REFLECT ACTUAL OUTCOMES.

THE STATEMENTS CONTAINED HEREIN ARE MADE AS OF THE DATE HEREOF, UNLESS ANOTHER TIME IS SPECIFIED. THE DELIVERY OF THIS DISCLOSURE STATEMENT WILL NOT BE DEEMED OR CONSTRUED TO CREATE ANY IMPLICATION THAT THE INFORMATION CONTAINED HEREIN IS CORRECT AT ANY TIME AFTER THE DATE HEREOF.

HOLDERS OF CLAIMS AND EQUITY INTERESTS SHOULD NOT CONSTRUE THE CONTENTS OF THIS DISCLOSURE STATEMENT OR THE PLAN AS PROVIDING ANY LEGAL, BUSINESS, FINANCIAL OR TAX ADVICE. THEREFORE, EACH SUCH HOLDER SHOULD CONSULT WITH ITS OWN LEGAL, BUSINESS, FINANCIAL AND TAX ADVISORS AS TO ANY SUCH MATTERS CONCERNING THIS DISCLOSURE

**STATEMENT OR THE PLAN AND THE TRANSACTIONS CONTEMPLATED THEREBY.**

**NO SOLICITATION OF VOTES HAS BEEN OR MAY BE MADE EXCEPT PURSUANT TO THIS DISCLOSURE STATEMENT AND 11 U.S.C. § 1125 AND NO PERSON HAS BEEN AUTHORIZED TO USE ANY INFORMATION CONCERNING THE DEBTOR TO SOLICIT ACCEPTANCES OR REJECTIONS OF THE PLAN OTHER THAN THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT. CREDITORS SHOULD NOT RELY ON ANY INFORMATION RELATING TO THE DEBTOR OTHER THAN THAT CONTAINED IN THIS DISCLOSURE STATEMENT AND THE EXHIBITS ATTACHED HERETO OR SUBMITTED HEREWITH.**

**EXCEPT AS SET FORTH IN THIS DISCLOSURE STATEMENT AND THE EXHIBITS, NO REPRESENTATION CONCERNING THE DEBTOR, THEIR ASSETS, PAST OR FUTURE OPERATIONS, OR CONCERNING THE PLAN IS AUTHORIZED, NOR ARE ANY SUCH REPRESENTATIONS TO BE RELIED UPON IN ARRIVING AT A DECISION WITH RESPECT TO THE PLAN. ANY REPRESENTATIONS MADE TO SECURE ACCEPTANCE OR REJECTION OF THE PLAN OTHER THAN AS CONTAINED IN THIS DISCLOSURE STATEMENT SHOULD BE REPORTED TO COUNSEL FOR THE DEBTOR.**

**NEITHER DELIVERY OF THE DISCLOSURE STATEMENT NOR ANY EXCHANGE OF RIGHTS MADE IN CONNECTION WITH THE DISCLOSURE STATEMENT AND THE PLAN SHALL UNDER ANY CIRCUMSTANCES IMPLY THAT THERE HAS BEEN NO CHANGE IN THE FACTS SET FORTH HEREIN SINCE THE DATE THE DISCLOSURE STATEMENT AND THE MATERIALS RELIED UPON IN PREPARATION OF THE DISCLOSURE STATEMENT WERE COMPILED.**

**THE APPROVAL BY THE BANKRUPTCY COURT OF THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE AN ENDORSEMENT BY THE BANKRUPTCY COURT OF THE PLAN OR A GUARANTEE OF THE ACCURACY OR THE COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.**

**THIS DISCLOSURE STATEMENT AND THE PLAN ATTACHED HERETO SHOULD BE READ IN THEIR ENTIRETY PRIOR TO VOTING ON THE PLAN. FOR THE CONVENIENCE OF HOLDERS OF CLAIMS, THE TERMS OF THE PLAN ARE SUMMARIZED IN THIS DISCLOSURE STATEMENT, BUT ALL SUMMARIES ARE QUALIFIED IN THEIR ENTIRETY BY THE PLAN, WHICH CONTROLS IN THE EVENT OF ANY INCONSISTENCY WITH THIS DISCLOSURE STATEMENT.**

## I.     INTRODUCTION

**A.     Identity of the Debtor**

Hot Crete, LLC (the "Debtor"), filed its voluntary petition under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101, et seq. (the "Bankruptcy Code") on March 22, 2024, in the United States Bankruptcy Court for the Western District of Texas, Austin Division

("Bankruptcy Court"). The Debtor has been serving as debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108 since the bankruptcy filing.

## B.    General Information Concerning Disclosure Statement

The Debtor has prepared and filed this Disclosure Statement consistent with the provisions of the Bankruptcy Code. The purpose of the Plan is to maximize recovery to the Creditors, including the numerous homeowners that were unintentionally harmed by pool cancer/ASR. The Debtor believes that the Plan achieves maximum recovery to all Creditors while facilitating the liquidation of the Debtor.

The Debtor submits this Disclosure Statement pursuant to 11 U.S.C. § 1125 and Rules 3016 and 3017 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") to all Creditors of the Debtor for the purpose of disclosing that information which the Court has determined is material, important, and necessary for creditors and the members of the Debtor in order to arrive at an intelligent, reasonably informed decision in exercising the right to vote for acceptance or rejection of the Debtor's Plan of Liquidation ("Plan"), including as it may later be amended. A copy of the Plan is attached hereto as **Exhibit 1** and incorporated herein by reference.

This Disclosure Statement describes the Liquidation of the Debtor including the specific treatment you, as a Creditor, will receive under the Plan. The disclosure of information contained here is submitted as an aid and supplement to your review of the Plan in an effort to explain the terms and implications of the Plan. If any questions arise, the Debtor urges you to consult with your own legal counsel, alternatively you may contact the Debtor's counsel and every effort will be made to address your questions.

## C.    Definitions

Capitalized terms used herein are defined herein and in the Definitions section included in the Plan. If not defined, capitalized terms have the meanings assigned to in the Bankruptcy Code and Bankruptcy Rules.

## D.    Answers to Commonly Asked Questions

As part of the Debtor's effort to inform Creditors regarding the Debtor's Plan and the Plan confirmation process, the following summary provides answers to various questions which are often asked by a party receiving a disclosure statement.

**THE FOLLOWING SUMMARIES ARE QUALIFIED IN THEIR ENTIRETY BY THE PLAN, WHICH CONTROLS IN THE EVENT OF ANY INCONSISTENCY.**

1.    **WHO IS THE DEBTOR?**

Hot Crete, LLC. ("Hot Crete").

2. **HOW LONG HAS THE DEBTOR BEEN IN CHAPTER 11?**

Hot Crete filed its bankruptcy petition on March 22, 2024.

3. **WHAT IS CHAPTER 11?**

Chapter 11 is the business reorganization provision of the Bankruptcy Code. Beyond reorganization, it permits a debtor to submit a Plan of Liquidation providing for the sale and distribution of its assets to be used for the repayment of their debts. In this instance, the Debtor will seek for the appointment of a liquidation trustee ("Liquidation Trustee") that will oversee the collection of assets and distribution of those proceeds to various creditors.

4. **WHAT IS THE DEBTOR ATTEMPTING TO DO IN CHAPTER 11?**

Hot Crete is liquidating its assets to pay its creditors. Due to the issues caused by faulty shotcrete, Hot Crete reached a settlement with its insurance company which will benefit those with Pool Claims. Debtor is proposing a process that will allow the Pool Builders and other interested parties time to negotiate a settlement between themselves and for an assignment of any claim.

The principal objective of a Chapter 11 case is confirmation (approval) of a plan. Debtor previously stopped operations, has liquidated its assets, and reached a settlement with its insurance company. Here, a confirmed plan will allow for an equitable distribution of policy proceeds to the effected parties such as Home Owners, Pool Builders, and insurance companies with subrogation rights. The process proposed by the Debtor will provide a partial recovery for all allowed Pool Claims as opposed to the proverbial race to the courthouse which may result in only some claimants recovering money.

Generally, a plan sets forth the means for treating impaired and unimpaired claims against a debtor. A claim is impaired under a plan if the plan provides that such claim will not be repaid in full or that the legal, equitable, or contractual rights of the holder of such claim will be altered. A claim is unimpaired if it will be paid in full or the legal, equitable, or contractual rights of the holder of such claim are not altered by the plan. A holder of an impaired claim generally is entitled to vote on a plan if such claim has been allowed under Section 502 of the Bankruptcy Code.

In this instance, Hot Crete proposes to pay what it can to its creditors from the following primary categories of assets: First) the proceeds generated by liquidating its physical assets; Second) the proceeds from applicable insurance policies and, specifically, the Settlement with Federated Insurance to be provided in the Plan Supplement, and, Third) all other assets of the Debtor, such as, but not limited to, retained causes of action.

IMPORTANT- Creditors that do not opt-in to the Plan will not receive any proceeds from the bankruptcy. The Debtor is no longer operating, has liquidated its assets, and has reached a settlement with Federated for the full amount of the insurance policies, which will fund the recovery for the Allowed Pool Claims.

5.     **IF THE LIQUIDATING PLAN GOVERNS HOW MY CLAIM IS TREATED, WHY AM I RECEIVING THIS DISCLOSURE STATEMENT?**

The Bankruptcy Code requires that a debtor solicit acceptances and rejections of its proposed Plan before the Plan can be confirmed (approved) by the Bankruptcy Court. Before a debtor can solicit acceptance of its Plan, the Bankruptcy Court must approve the Disclosure Statement and determine that the Disclosure Statement contains information adequate to allow creditors to make informed judgments about the Plan. After Bankruptcy Court approval of the Disclosure Statement, then the Disclosure Statement, the proposed Plan and a ballot are sent to the holders of claims. The creditors then can vote on the Plan.

6.     **HAS THIS DISCLOSURE STATEMENT BEEN APPROVED BY THE COURT?**

The Court has not approved this Disclosure Statement. Before a Plan can be confirmed, the Bankruptcy Court must find that a debtor's Disclosure Statement contains information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition for the debtor's books and records to enable a hypothetical, reasonable investor typical of holders of claims of the relevant classes to make an informed judgment whether to vote to accept or reject the Plan. The Bankruptcy Court's approval of the Disclosure Statement, if granted, does not constitute an endorsement of any of the information contained in either the Disclosure Statement or the Plan.

Likewise, although the Debtor has utilized information believed to be accurate in preparing this Disclosure Statement, neither the Debtor nor its counsel warrant the accuracy of the information contained in or relied upon in preparing this Disclosure Statement nor should the Disclosure Statement be construed to be any representation or warranty whatsoever, express, implied or otherwise, that the Plan is free from risk, that acceptance or confirmation of the Plan will result in a risk-free or assured restructuring of the debts of the Debtor, or that the projections or plans of the Debtor for payment will be realized.

7.     **WHY IS CONFIRMATION OF THE LIQUIDATING PLAN IMPORTANT?**

Confirmation (approval) of the Plan by the Bankruptcy Court is necessary for the Debtor to provide the proposed payment to Creditors under the Plan. Unless the Plan is confirmed by the Bankruptcy Court, the Debtor is legally prohibited from paying you what has been proposed in the Plan.

8.     **WHAT IS NECESSARY TO CONFIRM THE LIQUIDATING PLAN?**

The Bankruptcy Court will hold hearing before the Honorable Shad M. Robinson, United States Bankruptcy Judge in person at Austin Courtroom #1, Homer J. Thornberry Federal Judicial Building, 903 San Jacinto Blvd., 3rd Floor, Austin, Texas 78701. The hearing is scheduled on **[DATE]**, at **[TIME]** (CT). Prior court approval is required to appear virtually or phone for this hearing. The Bankruptcy Court will consider whether the Liquidating Plan should be confirmed. Section 1129 of the Bankruptcy Code contains the requirements for confirmation of a Plan.

YOUR VOTE IS IMPORTANT.

In order for the Plan to be accepted by creditors, at least two-thirds in amount and more than one-half in number of the voting creditors in each class must affirmatively vote for the Plan. Even if all classes of claims accept the Plan, the Bankruptcy Court may refuse to confirm the Plan. The Bankruptcy Court must also find that the Plan complies with the applicable provisions of the Bankruptcy Code and that the proponent of the Plan has also complied with the Bankruptcy Code. The Bankruptcy Court must also find that the Plan has been proposed in good faith and not by any means forbidden by law. The Bankruptcy Court must find that the proponent of the Plan (here, the Debtor) has disclosed the identity and affiliation of the persons who will manage the Debtor after confirmation, that the appointment of such persons is consistent with the interest of creditors and equity security holders and with public policy, and that the identity and compensation of any insiders that will be employed or retained by the Debtor, or the successor, has been disclosed. The Bankruptcy Court must additionally find that each class of claims has either accepted the Plan or will receive at least as much as it would under a Chapter 7 liquidation. The Bankruptcy Code also provides for the treatment of certain priority claims. If any classes of claims are impaired under the Plan, the Court must find that at least one class of claims that is impaired has accepted the Plan without counting any votes by insiders. Additionally, the Plan must provide for payment of fees to the United States Trustee.

If the Plan is not accepted by all classes of claims or interest, the Debtor may attempt to obtain confirmation under what is known as "cramdown." To obtain confirmation by cramdown, in general, the Bankruptcy Court must find that the Plan does not discriminate unfairly and is fair and equitable with respect to each class of claims or interests that is impaired by the Plan and has not accepted the Plan. The Code provides several options for a Plan to be "fair and equitable" to a secured creditor, which includes the secured creditor retaining its lien and receiving deferred cash payments at a market interest rate totaling either the value of the property securing the claim or the amount of the allowed claim as found by the Bankruptcy Court, whichever is less. With respect to a class of unsecured claims, the requirement that a Plan be "fair and equitable" requires that the holder of an unsecured claim be paid the allowed amount of its claim or that no junior interest receive or retain any property on account of its prior claim. If the Plan is not accepted by all classes, notice is hereby given that the Debtor will seek to obtain confirmation of the Plan through "cramdown."

9.      **ARE CREDITORS ENTITLED TO VOTE ON THE PLAN?**

Impaired Creditors are entitled to vote on the Debtor's proposed Plan. If you are a Creditor, a ballot to be used for voting on the Plan has been distributed to you with this Disclosure Statement. If you lose your Ballot, you may request another one from Debtor's counsel. Instructions for completing and returning the Ballot are set forth on the Ballot and should be reviewed carefully. For purposes of clarification, the Debtor will identify on the Ballot the class of claim the Holder's Claim will be treated as.

10.   **HOW WILL THIS PLAN TREAT MY CLAIM?**

People who are owed money by the Debtor hold what is known as a "claim." The Plan organizes claims into classes based upon the type of claim and the treatment which it will receive under the Plan. To determine how the Plan treats your claim, you must first determine which class covers your claim. To find the treatment of your claim, look in the Table of Contents to find the category which best describes your claim. Many creditors will hold what are known as unsecured claims.

In this case, the vast majority of creditors will have "Pool Claims" due to a product or service defect. Generally, creditors with Allowed Pool Claims will be able to either: 1) vote for the Plan and opt-in to a release of certain parties in order participate in the proceeds from the Insurance Settlement or, 2) vote against the Plan and not opt-in to the Channeling Injunction and not participate in the proceeds from the Insurance Settlement.

11.   **WHEN IS THE DEADLINE FOR RETURNING MY BALLOT?**

The Bankruptcy Court has directed that, in order to be counted for voting purposes, the Debtor must receive your ballot by **no later than 5:00 p.m**. (prevailing central time), on **[DATE]** ("Voting Deadline") via mail service, fax, or email, unless the Debtor agrees otherwise. If mailed, the ballot must be delivered timely to the following address:

    **By Mail:**

    PLAN BALLOTS
    Hot Crete, LLC
    c/o Hayward, PLLC
    Attn: Todd Headden
    7600 Burnet Road, Ste. 530
    Austin, Texas 78757
    Main/fax: (737) 881-7100
    THeadden@HaywardFirm.com

**By Fax:** You may also vote and submit your ballot by fax by sending your ballot to PLAN BALLOTS Hot Crete, LLC. c/o Hayward, PLLC Attn: Todd Headden, fax number: (737) 881-7100 so that it is received by the Voting Deadline.

**By Email:** You may also vote and submit your ballot by email by sending a copy of your ballot attached to an email addressed to THeadden@HaywardFirm.com with the language "PLAN BALLOTS – Hot Crete, L.P." in the subject line.

**IT IS IMPORTANT THAT ALL CREDITORS VOTE ON THE PLAN. THE DEBTOR BELIEVES THAT THE PLAN PROVIDES THE BEST POSSIBLE RECOVERY TO CREDITORS. FOR THIS REASON, THE DEBTOR BELIEVES THAT ACCEPTANCE OF THE PLAN IS IN THE BEST INTERESTS OF THE CREDITORS AND RECOMMENDS THAT ALL CREDITORS VOTE TO ACCEPT THE PLAN AND, IF APPLICABLE, OPT-IN TO THE THIRD-PARTY RELEASE.**

## II.    INFORMATION CONCERNING THE DEBTOR

**A.    Overview of the Debtor**

The Debtor is a Texas limited liability corporation that operated as a provider and installer for pool concrete or shotcrete.  The Debtor operates in the greater Austin, Texas metropolitan area.

**B.    Management of the Debtor**

The managing members for Hot Crete were Edgar and Fausto Castro. Additionally, Edgar served as the President of the company. The Debtor is no longer operating, hence Edgar has overseen the liquidation of the assets and the bankruptcy process. Confirmation of the Plan will result with the appointment of a liquidation trustee.

**C.    Significant Transactions Prior to Bankruptcy**

Other than the events leading to filing stated below, the Debtor are not aware of significant transactions to be disclosed.

**D.    Events Leading to Filing**

a.    Hot Crete, LLC was opened in 2019 by Edgar and Fausto Castro. They obtained equipment and hired staff experienced in shooting shotcrete and gunite to form the shells/bowls of pools in Central Texas. Hot Crete operated out of Liberty Hill, Texas and served the greater Austin metro area.

b.    Hot Crete was busy shooting pools for numerous pool builders, serving as a sub-contractor to many entities. Unbeknownst to Hot Crete, its directors, officers, owners, or employees, pool builders and contractors in Central Texas were provided with raw materials and aggregate that was defective causing many pools to be afflicted with a condition commonly referred to as Concrete Cancer.

c.    Alkali-Silica Reaction ("ASR" or "Concrete Cancer") is a defect in the concrete mixtures that causes the shell of a pool to weaken and ultimately crack or crumble, causing severe damage to the pool. The concrete mixture lacked sufficient fly ash, causing the reaction due to excessive exposure to water, a key function of a swimming pool. Ultimately, a pool suffering from Concrete Cancer may not be able to hold water.

d.    Starting in late 2022, Hot Crete became aware of the rampant issue with pools in Central Texas experiencing Concrete Cancer.

e.    Along with many other companies, Hot Crete contacted its insurance carrier, Federated Insurance, when claims started being made against its policies. Over time, many homeowners filed lawsuits against Hot Crete, in addition to pool builders, aggregate providers, and the like.

f.      In 2023, Federated Insurance terminated the insurance policy with Hot Crete and Hot Crete found a new insurance provider, but that Commercial General Liability Policy contained a prior work exclusion. In early 2024, the automobile insurance for the company terminated and the Debtor ceased operations.

**E.      Significant Events Since Filing Bankruptcy**

a.      <u>In General</u>. Debtor was no longer operating when it filed for bankruptcy protection. Accordingly, Debtor took steps to liquidate the significant assets it owned, ultimately obtaining Court Authority to sell the items via a broker.

b.      <u>Legal Proceedings</u>. A creditors' meeting under §341 of the Bankruptcy Code was held on April 16, 2024 at 2:30 pm, at which the Debtor's representative appeared and testified. No official Committee of Unsecured Creditors has been appointed. The Bar Date for government agencies' Claims was September 18, 2024 and the Bar Date for all other Claims was October 31, 2024.

c.      <u>Employment of Professionals</u>. On April 19, 2024, Debtor filed its Application to Employ Hayward, PLLC ("<u>HPLLC</u>") as lead bankruptcy counsel to provide the following services: (i) provide legal advice with respect to the powers and duties as Debtor-in-Possession in the continued operation of its business and management of its property; (ii) advise the Debtor of its responsibilities under the Bankruptcy Code and to assist with such responsibilities; (iii) assist with the preparation and filing of the bankruptcy petition, schedules, statement of financial affairs, monthly operating reports and other documents required by the Bankruptcy Court and associated rules and procedures; (iv) represent the Debtor in adversary proceedings and other contested and uncontested matters; (v) represent the Debtor in the negotiation and documentation of any sales or refinancing of property of the estate and obtaining the necessary approvals of such sales or refinancing; and, (vi) assist the Debtor with the formulation of a plan of liquidation and disclosure statement, and obtaining Court approval of same. The Order approving the application to employ HPLLC was entered on May 16, 2024 and effective as of the Petition Date, March 22, 2024.

d.      On May 3, 2024, Debtor filed its application to employ Terra Point, LLC as its broker to sell the valuable assets of the business. On June 27, 2024, the Court entered the Order approving the application to employ TerraPoint.

e.      On June 7, 2024, Debtor filed its application to employ Royston, Rayzor, Vickery & Williams, LLP as Special Counsel to assist with the defense and analysis of the claims resulting from allegations of Concrete Cancer. The Order approving the application to employ special counsel was entered on July 25, 2024.

f.      <u>Liquidation of Assets</u>. Debtor hired TerraPoint to sell its assets. However, the market for the specialized vehicles was less than ideal and the items either did not sell before the secured lenders repossessed the vehicles or otherwise did not generate the proceeds anticipated.

g.    <u>Insurance Settlement</u>. On the Effective Date, following the entry of an order confirming Hot Crete's Plan and approval of the Insurance Settlement by the Bankruptcy Court, Federated will pay $9,916,456.02, the remaining limits of the Policies, to the Liquidation Trustee. The money will be used to fund the Liquidation Trust created under the Plan to address all present and future Pool Claims and any additional administrative claims and administrative expenses of the Liquidation Trust. In addition, Federated will pay to the Liquidation Trustee the ADDITIONAL sum of $270,000 to be used to fund the administrative costs of the Liquidation Trust, including trustee and attorney fees, in connection with the claims resolution process for the Pool Claims. THE $9,916,456.02 AND $270,000 ARE REFERRED TO AS THE SETTLEMENT PAYMENT.

Under the settlement Federated and Hot Crete agree that the Policies are completely exhausted upon the making of the Settlement Payment and that any duty on the part of Federated to pay anything else pursuant to the Policies, whether by way of defense, indemnity, administrative costs or otherwise, is extinguished upon payment of the Settlement Payment. Upon the payment of the Settlement Payment, it is the express intent of the Parties that Federated will never have to pay any additional funds to third parties or claimants, whether under the Policies or otherwise, in connection with any present or future Pool Claims or in connection with any other present or future claims against Hot Crete, including claims that are not resolved through the Liquidation Trust, whether because claimants have not opted in to said process or for any other reason. Under the settlement Hot Crete and Federated agree to the mutual release of all claims against each other.

The Liquidation Trustee is not charged with assessing all of the various coverage issues that Federated Insurance would have analyzed with respect to any Pool Claim as that would require a lot of time and legal resources. The Debtor has not conducted an analysis of the specific proofs of claims filed by homeowners, and whether those claims were previously denied coverage by Federated Insurance but is generally aware that some claims initially were denied for reasons such as the "date of loss" being identified as outside the effective dates of the Policies.

Absent the bankruptcy, Homeowners would typically seek to file a claim against the Debtor's applicable insurance policy or file a lawsuit against the Debtor. For insurance claims, the applicable insurance company would assess the claim and may deny the insurance claim for a variety of reasons, such as the date of loss being outside the policy period. For the accepted insurance claims, the insurance company may then attempt to settle the claim for a certain amount. Any payments made would be deducted from the remaining coverage amount for the applicable insurance policy year. For Homeowners that come later in the process, there would be less policy proceeds for the applicable insurance company to offer as coverage for the new insurance claims. Alternatively, Homeowners could elect to sue the pool builder and the Debtor in court. In the instance that a lawsuit were to go to verdict and a judgment was awarded, the Debtor's insurance company may be

obliged to pay the judgment in full or in part. Such a verdict or award would greatly diminish the amount of outstanding insurance policy proceeds, thereby reducing the potential recovery for other homeowners. Litigation over some coverage issues would also likely be ensured with judgment creditors. The Insurance Settlement and the Liquidation Plan are designed to avoid such an inequitable outcome.

## III.     ANALYSIS AND VALUATION OF ESTATE ASSETS

### A.     Liquidation Value/Analysis

In this case, the Debtor is liquidating. Accordingly, the Debtor believes that the creditors will receive under the Plan at least what they would receive had the case converted to chapter 7. The Debtor's liquidation analysis will be attached as an exhibit in the Plan Supplement and all parties in interest are encouraged to review such liquidation analysis for more details regarding the Debtor's liquidation analysis. In summary, the liquidation analysis sets forth that the Debtor believes the liquidation of all assets in chapter 7 would generate less net recovery to general unsecured creditors. Therefore, the Debtor believes that the Plan is in the best interest of creditors.

There are two likely consequences if the Plan is rejected, or the Bankruptcy Court denies confirmation of the Plan: (a) the Bankruptcy Court could dismiss the Debtor's Chapter 11 Bankruptcy Case or (b) the Debtor's Chapter 11 Bankruptcy Case could convert to Chapter 7 under the Bankruptcy Code, probably losing the benefit of the Insurance Settlement.

Dismissal. If the Debtor's bankruptcy case was to be dismissed, the Debtor would no longer have the protection of the Bankruptcy Court and the applicable provisions of the Bankruptcy Code, therefore a race to the Courthouse would be expected. Dismissal would negatively impact the majority of the Pool Creditors in that a small number of creditors could, if they obtain a judgment on their claims, extinguish the applicable policy proceeds.

Chapter 7 Liquidation. If the Plan is not confirmed, it is possible that the Debtor's Chapter 11 case will be converted to a case under Chapter 7 of the Bankruptcy Code. A chapter 7 trustee would be elected or appointed to liquidate the assets of the Debtor for distribution to creditors in accordance with the priorities established by the Bankruptcy Code. Whether a bankruptcy case is one under Chapter 7 or Chapter 11, secured creditors, Administrative Claims, and Priority Claims are entitled to be paid in cash and in full before unsecured creditors receive any funds.

If the Debtor's Chapter 11 case converts to Chapter 7, the present Priority Claims may have priority lower than priority claims generated by the Chapter 7 case, such as the Chapter 7 trustee's fees or the fees of attorneys, accountants, and other professionals engaged by the trustee.

As it stands, the main assets have been liquidated with the exception of Retained Causes of Action, including the Employee Retention Tax Credit, if any is to be recovered. As such, the Debtor believes that liquidation under Chapter 7 would result in significantly lower distributions to the unsecured creditors and to Administrative and Priority Claimants.

The Liquidation Analysis will be included in the Plan Supplement and will include a breakdown of all of Debtor's unencumbered assets, estimated liquidated value if sold at fire sale

or auction, and the amount by which the Debtor's Plan will result in a better financial outcome for unsecured creditors than if the Debtor's cases were converted to a Chapter 7.

## IV.    SUMMARY OF PLAN OF LIQUIDATION

This section of the Disclosure Statement is intended only to provide a summary of the key terms, structure, classification, treatment, and implementation of the Plan, and is qualified in its entirety by reference to the entire plan, a copy of which is attached hereto as **Exhibit 1**. To the extent there are any inconsistencies between this summary and the Plan, the Plan shall govern.

### A.    Analysis and Treatment of Claims.

The following chart depicts the classification of Claims and Interests for the Debtor pursuant to the Plan.

| Class | Claim or Interest | Status | Voting Rights | Projected Claim Amounts | Estimated Recovery |
|---|---|---|---|---|---|
| 1 | Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) | $5,115.15 | 100% |
| 2 | Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) | $43,663.77 | 100% |
| 3 | Convenience Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) | $4,730.40 | 100% |
| 4 | Pool Claims | Impaired | Entitled to Vote | Unknown (Over $150 million in filed claims) | Unknown |
| 5 | Non-Pool Claims | Impaired | Entitled to Vote | $1,000,000 (approx.) | 0% |
| 6 | Contingent Indemnification Claims | Impaired | Not Entitled to Vote (Deemed to Reject) | Unknown | N/A |
| 7 | Allowed Equity Interests in the Debtor | Impaired | Not Entitled to Vote (Deemed to Reject) | N/A | N/A |

### B.    Unclassified Claims.

The current known claimants in this category are as follows.

| Claimant | Amount Claimed | Basis | Treatment |
|---|---|---|---|
| United States Trustee | $500 | Quarterly Fee Estimate- Q4 2025 | Subject to objection and allowance as set forth herein, this claim shall be paid in full on the Effective Date. |

## C.    Administrative Expense Claims.

Administrative claims consist of expenses incurred during the Chapter 11 case, which are approved by the Bankruptcy Court and expenses incurred in operating the Debtor's business. Most administrative expense claims consist of claims by professionals employed by the Debtor in the bankruptcy case, which must be approved by the Bankruptcy Court. Other administrative claims are claims arising post-petition which have not been paid. The Debtor has paid and intends to continue to pay normal post-petition operating expenses as they become due in the ordinary course of business. The Debtor is aware of the following Administrative Claims:

| Hayward LLC (estimated) | HPLLC's fees are currently at approximately $137,000.00 for the bankruptcy. HPLLC anticipates additional fees and expenses related to this matter as it relates to plan implementation, claim objections, and finalizing its fee application, which may bring the total fees for the bankruptcy up to $155,000, but anticipates no higher than $165,000.00 in total.<br><br>Hayward PLLC has $8,191.50 in trust as security for the payment of these fees. |
|---|---|

The Debtor will pay each Allowed Administrative Expense against the Debtor in full, in from Cash on hand, on the later of (a) the Effective Date (or as soon as practicable thereafter), (b) the date on which the Bankruptcy Court enters an order allowing such Administrative Expense, or (c) such other date to which the Debtor and the Holder of the Allowed Administrative Expense agree; provided, however, that Allowed Administrative Expenses representing (a) obligations incurred in the ordinary course of business or assumed by the Debtor will be paid in full or performed by the Debtor in the ordinary course of business, consistent with past practice and (b) obligations incurred to Professionals for services provided through the Confirmation Date will be paid in accordance with the applicable Bankruptcy Court order approving the fees and expenses of each such Professional; provided, further, however, that Administrative Expense Claims filed after the Administrative Expense Claim Bar Date will be forever barred and disallowed without further order of the Bankruptcy Court.

Final Application for Compensation and Reimbursement of Professionals' Fees and Expenses. All applications for final allowance of compensation and reimbursement of Professionals' fees and expenses must be filed no later than 30 days following the Effective Date and will be subject to the authorization and approval of the Bankruptcy Court.

(a)    <u>Full Settlement</u>. As more specifically set forth in, and without in any way limiting, the Discharge pursuant to this Plan, the distributions provided for in and when paid pursuant to this section are in full settlement and release of all Administrative Expenses.

## D.    Class 1 – Allowed Priority Claims

*(a)*    *Definition*: "Priority Claims" means, collectively, Priority Tax Claims and Other Claims identified in 11 U.S.C. § 507

*(b)*    *Treatment*: The Plan proposes to pay Allowed Priority Claim in full either on the Effective Date, within 30 days of the allowance of a Priority Claim, or as agreed to in writing.

*(c)*    *Voting*: Class 1 is Unimpaired under the Plan. Holders of Allowed Other Priority Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan

## E.    Class 2 –Secured Claim.

(a)    *Definition*: *Secured Claim* means a Claim: (a) secured by a valid, perfected, and enforceable Lien on upon property in which the Debtor has an interest to the extent of the value, as of the Effective Date, of such interest or Lien or (b) subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code.

(b)    *Treatment*: The Plan proposes to pay the secured claimholders in full either on the Effective Date, within 30 days of the allowance of a Secured Claim, the "due date" of the debt, or as agreed to in writing.

(c)    *Voting*: Class 2 is Unimpaired under the Plan. Holders of Allowed Other Secured Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

## F.    Class 3 – Convenience Claims.

(a)    *Definition*: "Convenience Claim" means any General Unsecured Claim that is filed in an amount of $5,000 or less.

(b)    *Treatment*: On the first Business Day that is thirty (30) days following the Effective Date, each Holder of a Convenience Claim shall receive, in full

and final satisfaction of such Claim, payment in full in Cash.

(c)     *Voting*: Class 3 is Unimpaired under the Plan. Holders of Allowed Convenience Claims are not entitled to vote to accept or reject the Plan.

## G.     Class 4 – Pool Claims.

(a)     Definition: "*Pool Claim*" means a claim filed by or on behalf of a homeowner, Pool Builder, or other contractor that hired, directly or indirectly, the Debtor to build a pool and asserts that the Debtor's product or services damaged the project. "Pool Claims" include, without limitation, claims of homeowners who assert that there is concrete cancer or Alkali-Silica Reaction ("ASR") present in their pool from work or product provided by the Debtor.

The class of Pool Claims includes all parties affected by the faulty product or services provided by the Debtor.

For the avoidance of doubt, a Pool Claim *does not* include any portion of a claim that is not compensatory damages for the product or services of the Debtor. Treble Damages for a claim of a "Deceptive Trade Practices Act" and other related causes of action or punitive damages do not constitute a "Pool Claim" and would thus be treated as a "Non-Pool Unsecured Claim".

For the avoidance of doubt, the subrogation claims of Pool Builders or their insurers, including those held by National Fire Insurance Company of Hartford, The Continental Insurance Company, and Amerisure Mutual Insurance Company shall be classified and treated as "Pool Claims." This clarification is not to be a deemed allowance of such claims and does not prevent the Liquidation Trustee from objecting to the claims as and to the extent provided for herein, with each of National Fire Insurance Company of Hartford, The Continental Insurance Company, Amerisure Mutual Insurance Company, and the Liquidation Trustee reserving all of its rights, remedies, claims and defenses with respect thereto.

(b)     *Treatment*:

1. Insurance Proceeds- Debtor's Plan proposes to pay proceeds from the insurance settlement with Federated Insurance, which will exhaust the potential recovery of the insurance policies with Federated Insurance.
2. Liquidation Trustee- This process will be overseen and managed by a fiduciary (the "Liquidation Trustee") as more fully explained in Article IV of the Plan and the Liquidation Trust Agreement. The objective is to provide a pro-rata recovery to all affected Pool Claimants for their actual costs and expenses due to the faulty

15

product provided by Hot Crete. The proceeds will be paid on a pro-rata basis to Pool Claimants.

3. *Channeling Injunction*- *As explained in more detail in Article IX of the Plan, Pool Claimants that accept the Channeling Injunction in the Plan and opt-in to the release provided to Federated Insurance as part of the voting process will receive a pro-rata payment on their claims under the Plan. There is no other anticipated source of recovery as the Debtor has liquidated its assets, and the Insurance Settlement is not sufficient to pay all Pool Claims in full.*

4. Pool Builder's Negotiation Process- Debtor's Plan includes a process for Pool Builders to work with their clients, the homeowners, to resolve disputes between and amongst themselves. This process, explained in Article VI.H of the Plan, will allow up to 12 months for the applicable Pool Builders to work with the homeowners to resolve their dispute and allocate their respective proceeds from the Insurance Settlement. If the homeowner does not reach a settlement with the Pool Builder, such homeowner's Allowed Claim will remain and that portion will be removed from the Pool Builder's Allowed Claim.

(c)  *Voting*: Class 4 is Impaired under the Plan. Holders of Allowed Pool Claims are entitled to vote to accept or reject the Plan.

## H.  Class 5 – Non-Pool Unsecured Claims

(a)  Definition: "Non-Pool Unsecured Claim" means any General Unsecured Claim that is not a Pool Claim, or the portion of a claim that is not a direct cost to reimburse, replace, or fix the work product of Hot Crete. Treble Damages for a claim of a "Deceptive Trade Practices Act" and other related causes of action are not intended to be a "Pool Claim" and would thus be counted as a "Non-Pool Unsecured Claim".

(b)  *Treatment*:

(i)  The Plan provides for the Non-Pool Unsecured Claims to receive a beneficial interest in the Liquidation Trust subject to the payment of the Pool Claims. As the Pool Claims are anticipated to exceed the amount of the settlement with the insurance company, there are no anticipated payments to the Non-Pool Unsecured Claims.

(c)  *Voting*: Class 5 is Impaired under the Plan. Holders of Allowed Non-Pool Claims are entitled to vote to accept or reject the Plan.

I. **Class 6- Contingent Indemnification Claims**

    (a)    *Definition*: "Contingent Indemnification Claim" means any Claim for indemnification against the Debtor of any kind or nature whatsoever, whether arising under or pursuant to any type of bylaws, organizational or formation documents, board resolutions, management or indemnification agreements, employment or other services contracts, at common law, in equity or otherwise, and whether pertaining or related to past and present directors, officers, employees, attorneys, accountants, investment bankers, clients, state agencies, or other professionals and agents of the Debtor related to services provided to, by or for the Debtor at any time prior to the Effective Date that is contingent as of the Effective Date; *provided* that Contingent Indemnification Claims shall not include any Claim for indemnification against the Debtor if, prior to the Effective Date, such Claim has been adjudicated as non-contingent by Final Order of a court of competent jurisdiction.

    (b)    *Treatment*: On the Effective Date, all Contingent Indemnification Claims shall be Disallowed pursuant to section 502(e)(1)(B) of the Bankruptcy Code. Holders of Contingent Indemnification Claims shall not receive any distribution on account of such Claims. Apart from the indemnification claims already included in Class 4, the Debtor is not aware of any Contingent Indemnification Claims.

    (c)    *Voting*: Class 6 is Impaired under the Plan. Holders of Contingent Indemnification Claims are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

J. **Class 7- Interests in the Debtor**

    (a)    *Treatment*: On the Effective Date, all Interests in the Debtor shall be cancelled, released, discharged, and extinguished. Holders of Interests in the Debtor shall not receive any distribution on account of such Interests.

    (b)    *Voting*: Class 7 is Impaired under the Plan. Holders of Interests in the Debtor are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

K. **Risk to Creditors**

    **BEFORE TAKING ANY ACTION WITH RESPECT TO THE PLAN, HOLDERS OF CLAIMS AGAINST THE DEBTOR WHO ARE ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN SHOULD READ AND CONSIDER CAREFULLY THE RISK FACTORS SET FORTH BELOW, AS WELL AS THE OTHER INFORMATION SET FORTH IN THIS DISCLOSURE STATEMENT, THE PLAN, AND THE PLAN**

SUPPLEMENT AND THE OTHER DOCUMENTS REFERRED TO, OR INCORPORATED BY REFERENCE INTO THIS DISCLOSURE STATEMENT, INCLUDING OTHER DOCUMENTS FILED WITH THE BANKRUPTCY COURT IN THE CHAPTER 11 CASES.  THE RISK FACTORS SHOULD NOT BE REGARDED AS CONSTITUTING THE ONLY RISKS PRESENT IN CONNECTION WITH THE DEBTOR'S RESTRUCTURING AND CONSUMMATION OF THE PLAN.

1.      **Bankruptcy Law Considerations.**

a.      **The Debtor Will Consider All Available Alternatives if the Plan Transactions Are Not Implemented, and Such Alternatives May Result in Lower Recoveries for Holders of Claims Against and Interests in the Debtor.**

If the transactions contemplated by the Plan are not implemented, the Debtor will consider all available alternatives, including filing an alternative chapter 11 plan, converting to chapter 7, and any other transaction that would maximize the value of the Debtor's Estate.  The terms of any alternative restructuring proposal may be less favorable to Holders of Claims against and Interests in the Debtor than the terms of the Plan as described in this Disclosure Statement.

Any material delay in the confirmation of the Plan, the Chapter 11 Case, or the threat of rejection of the Plan by the Bankruptcy Court, would add substantial expense and uncertainty to the process.

b.      **Risks Related to Confirmation and Consummation of the Plan.**

**Conditions Precedent to Confirmation May Not Occur.**

As more fully set forth in Article X of the Plan, the occurrence of confirmation and Substantial Consummation are each subject to a number of conditions precedent.  If each condition precedent to confirmation is not met or waived, the Plan will not be confirmed, and if each condition precedent to Consummation is not met or waived, the Substantial Consummation will not take place.  In the event that the Plan is not confirmed or is not Substantially Consummated, the Chapter 11 Case will likely convert to a case under chapter 7 of the Bankruptcy Code.

**Parties in Interest May Object to the Plan's Classification of Claims and Interests.**

Section 1122 of the Bankruptcy Code provides that a plan may place a Claim or an Interest in a particular Class only if such Claim or Interest is substantially similar to the other Claims or Interests in such Class.  The Debtor believes the classification of Claims and Interests under the Plan complies with the requirements of the Bankruptcy Code because the Debtor created Classes of Claims and Interests, each encompassing Claims or Interests, as applicable, that are substantially similar to the other Claims or Interests, as applicable, in each such Class.  Nevertheless, there can be no assurance that the Bankruptcy Court will reach the same conclusion, and the Debtor may need to modify the Plan.  Such modification could require a re-solicitation of votes on the Plan. The Plan may not be confirmed if the Bankruptcy Court determines that the Plan's classifications of Claims and Interests is not appropriate.

**The Debtor May Not Be Able to Satisfy Vote Requirements.**

If votes are received in number and amount sufficient to enable the Bankruptcy Court to confirm the Plan, the Debtor intends to seek, as promptly as practicable thereafter, confirmation of the Plan. In the event that sufficient votes are not received, the Debtor may need to seek to confirm an alternative chapter 11 plan or transaction. There can be no assurance that the terms of any such alternative chapter 11 plan or other transaction would be similar or as favorable to the Holders of Allowed Claims as those proposed in the Plan. The Debtor does not believe that any such transaction exists or is likely to exist that would be more beneficial than the Plan.

**The Debtor May Not Be Able to Secure Confirmation.**

Section 1129 of the Bankruptcy Code sets forth the requirements for confirmation of a chapter 11 plan, and requires, among other things, a finding by the bankruptcy court that: (i) the plan "does not unfairly discriminate" and is "fair and equitable" with respect to any non-accepting Classes; (ii) the plan is not likely to be followed by a liquidation or a need for further financial reorganization unless liquidation or reorganization is contemplated by the plan; and (iii) the value of distributions to non-accepting Holders of Claims and Interests within a particular Class under the plan will not be less than the value of distributions such Holders would receive if the debtor was liquidated under chapter 7 of the Bankruptcy Code.

There can be no assurance that the requisite acceptances to confirm the Plan will be received. Even if the requisite acceptances are received, there can be no assurance that the Bankruptcy Court will confirm the Plan. A non-accepting Holder of an Allowed Claim might challenge either the adequacy of this Disclosure Statement or whether the voting results satisfy the requirements of the Bankruptcy Code or Bankruptcy Rules. Even if the Bankruptcy Court determines that this Disclosure Statement and the voting results are appropriate, the Bankruptcy Court can decline to confirm the Plan if it finds that any of the statutory requirements for confirmation have not been met. If the Plan is not confirmed, it is unclear what distributions, if any, Holders of Allowed Claims would receive with respect to their Allowed Claims.

Subject to the limitations contained in the Plan, the Debtor reserves the right to modify the Plan and seek confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan. Any modifications could result in a less favorable treatment of any Class than the treatment currently provided in the Plan, such as a distribution of property to the Class affected by the modification of a lesser value than currently provided in the Plan or no distribution whatsoever under the Plan.

**Releases, Injunctions, and Exculpations Provisions May Not Be Approved.**

Article IX of the Plan provides for certain releases, injunctions, and exculpations, including third-party releases relating to claims and causes of action that may otherwise be asserted against the Debtor or the Released Parties, as applicable. The releases, injunctions, and exculpations provided in the Plan are subject to objection by parties in interest and, therefore, may not be approved. If the releases are not approved, certain Released Parties may withdraw their support for the Plan. The releases provided to the Released Parties and the exculpation provided to the Exculpated Parties are necessary to the success of the Plan because the Released Parties, the Debtor, and Exculpated Parties have made significant contributions to the Debtor's proposed exit

19

from chapter 11 and have agreed to make further contributions, but only if they receive the full benefit of the Plan's release and exculpation provisions. The Plan's release and exculpation provisions are an inextricable component of Plan and the significant recovery it affords to Holders of Allowed Claims.

**The Debtor May Not Be Able to Pursue Nonconsensual Confirmation Over Certain Impaired Non-Accepting Classes.**

In the event that any impaired class of claims or interests does not accept a chapter 11 plan, a bankruptcy court may nevertheless confirm a plan at the proponent's request if at least one impaired class (as defined under section 1124 of the Bankruptcy Code) has accepted the plan (with such acceptance being determined without including the vote of any "insider" in such class), and, as to each impaired class that has not accepted the plan, the bankruptcy court determines that the plan "does not discriminate unfairly" and is "fair and equitable" with respect to the dissenting impaired class(es). The Debtor believes that the Plan satisfies these requirements, and the Debtor may request such nonconsensual confirmation in accordance with subsection 1129(b) of the Bankruptcy Code. Nevertheless, there can be no assurance that the Bankruptcy Court will reach this conclusion. In addition, the pursuit of nonconsensual confirmation or Consummation of the Plan may result in, among other things, increased expenses relating to professional compensation.

**The Chapter 11 Case May Be Converted to a Case under Chapter 7 of the Bankruptcy Code.**

If the Bankruptcy Court finds that it would be in the best interest of creditors and/or the debtor in a chapter 11 case, the Bankruptcy Court may convert a chapter 11 bankruptcy case to a case under chapter 7 of the Bankruptcy Code. In such event, a chapter 7 trustee would be appointed or elected to liquidate the debtor's assets for distribution in accordance with the priorities established by the Bankruptcy Code. The Debtor believes that liquidation under chapter 7 would result in significantly decreased distributions being made to creditors than those provided for in the Plan because: (a) it is unlikely that the Insurance Settlement would be consummated outside of the protections of the Plan, (b) significant additional administrative expenses would result from the appointment of a chapter 7 trustee, and (c) additional litigation that a chapter 7 trustee might institute could take years to advance and conclude before Holders of Allowed Claims would see any recovery.

**The Chapter 11 Case May Be Dismissed.**

If the Bankruptcy Court finds that the Debtor has incurred substantial or continuing loss or diminution to the Estate and lacks the ability to effectuate substantial consummation of a confirmed plan, or otherwise determines that cause exists, the Bankruptcy Court may dismiss the Chapter 11 Case. In such event, the Debtor would be unable to confirm the Plan, which may ultimately result in significantly decreased distributions to creditors than those provided for in the Plan.

**Risk of Non-Occurrence of the Plan Effective Date.**

Although the Debtor believes the Effective Date may occur quickly after the Confirmation Date, there can be no assurance as to such timing or as to whether the Effective Date will, in fact, occur. As more fully set forth in Article X of the Plan, the Effective Date is subject to a number

of conditions precedent.  If such conditions precedent are not satisfied or waived by the Debtor or Liquidation Trustee, the Effective Date will not take place.

2.  **Risks Related to Recoveries Under the Plan.**

**Estimated Recoveries to Holders of Allowed Claims and Interests Are Based on Assumptions and May Vary from Actual Recoveries.**

Debtor estimates that the cash on hand at the time of confirmation will be sufficient to pay all priority, secured, and some some, but not all, administrative expenses. The Plan also depends upon the settlement with Federated Insurance to include the outstanding balance of the insurance policies. Therefore, the distributions available to Holders of Allowed Claims under the Plan can be affected by a variety of contingencies.  The occurrence of any and all such contingencies will not affect the validity of the vote taken by the Impaired Classes to accept or reject the Plan or require any sort of revote by the Impaired Classes.

The estimated recoveries are based on numerous assumptions (the realization of many of which will be beyond the control of the Debtor), including:  (a) the successful confirmation of the Plan; (b) an assumed date for the occurrence of the Effective Date; (c) the ability of Liquidation Trustee to successfully reduce the amount of Pool Claims; and (d) the ability of Holders to exhaust all remedies and obtain separate recovery against applicable third parties or insurance policies, if any.

The Debtor believes the Debtor's Estate may be entitled to receive a substantial Employee Retention Tax Credit ("ERTC"), and the ERTC forms a portion of the recovery to be made available under the Plan.  However, there can be no assurance when, or in what amount, the ERTC will actually be paid, and as of the date hereof it appears that the processing of ERTC applications may be subject to significant delay.

Allowed amounts of Claims may significantly differ from the estimates.  Should one or more of the underlying assumptions ultimately prove to be incorrect, the actual amount of Allowed Claims may vary from the estimated Claims contained in this Disclosure Statement.  Moreover, the Debtor cannot determine with any certainty at this time the number or amounts of Claims that will ultimately be Allowed. Such differences may materially and adversely affect, among other things, the percentage recoveries to Holders of Allowed Claims under the Plan.

**Litigation Matters.**

The Debtor is party to certain lawsuits, legal proceedings, and claims arising out of its business operations. The Debtor cannot predict with certainty the outcome of these lawsuits, legal proceedings, and claims. With certain exceptions, the filing of the Chapter 11 Case operates as a stay with respect to the commencement or continuation of litigation against the Debtor that was or could have been commenced before the commencement of the Chapter 11 Case.  In addition, the Debtor's liability with respect to litigation stayed by the commencement of the Chapter 11 Case generally is subject to settlement and release upon confirmation of a plan under chapter 11, with certain exceptions. Therefore, certain litigation Claims against the Debtor may be subject to settlement and release in connection with the Chapter 11 Case.

It is also possible that certain parties will commence litigation with respect to the treatment of their Claims under the Plan. It is not possible to predict the potential litigation that the Liquidation Trustee may become party to, nor the final resolution of such litigation. The impact of any such litigation on recoveries could be material.

3. **Miscellaneous Risk Factors and Disclaimers.**

**The Financial Information Is Based on the Debtor's Books and Records and, Unless Otherwise Stated, No Audit Was Performed.**

In preparing this Disclosure Statement, the Debtor and Counsel relied on financial data derived from the Debtor's books and records that was available at the time of such preparation. While the Debtor believes that such financial information fairly reflects the Debtor's financial condition, the Debtor is unable to warrant or represent that the financial information contained in this Disclosure Statement (or any information in any of the exhibits to the Disclosure Statement) is without inaccuracies.

**No Legal or Tax Advice Is Provided by This Disclosure Statement.**

This Disclosure Statement is not legal advice to any person or Entity. The contents of this Disclosure Statement should not be construed as legal, business, or tax advice. Each reader should consult its own legal and financial advisor(s) regarding any legal, tax, and other matters concerning its Claim. This Disclosure Statement may not be relied upon for any purpose other than to determine how to vote to accept or reject the Plan or whether to object to confirmation.

**No Admissions Made.**

The information and statements contained in this Disclosure Statement will neither (a) constitute an admission of any fact or liability by any Entity nor (b) be deemed evidence of the tax or other legal effects of the Plan on the Debtor, Holders of Allowed Claims or Interests, or any other parties in interest.

**Failure to Identify Litigation Claims or Projected Objections.**

No reliance should be placed on the fact that a particular litigation claim or projected objection to a particular Claim is, or is not, identified in this Disclosure Statement. Subject to the release provisions of the Plan, the Liquidation Trustee may seek to investigate, file, and prosecute Claims and may object to Claims after confirmation of the Plan, irrespective of whether this Disclosure Statement identifies such Claims or objections to Claims.

**Information Was Provided by the Debtor and Was Relied Upon by the Debtor's Advisors.**

The Debtor's counsel has relied upon information provided to them in connection with the preparation of this Disclosure Statement. Although counsel has performed certain due diligence in connection with the preparation of this Disclosure Statement and the exhibits to the Disclosure Statement, they have not independently verified the information contained in this Disclosure Statement or the information in the exhibits to the Disclosure Statement.

**No Representations Outside This Disclosure Statement Are Authorized.**

No representations concerning or relating to the Debtor, the Chapter 11 Case, or the Plan are authorized by the Bankruptcy Court or the Bankruptcy Code, other than as set forth in this Disclosure Statement.  Any representations or inducements made to secure your acceptance or rejection of the Plan that are other than as contained in, or included with, this Disclosure Statement, should not be relied upon by you in arriving at your decision.  Those who are entitled to vote to accept or reject the Plan should promptly report unauthorized representations or inducements to counsel to the Debtor and the Office of the United States Trustee for the Western District of Texas.

**No Duty to Update.**

The statements contained in this Disclosure Statement are made by the Debtor as of the date hereof, unless otherwise specified herein, and the delivery of this Disclosure Statement after that date does not imply that there has been no change in the information set forth herein since that date. The Debtor has no duty to update this Disclosure Statement unless otherwise ordered to do so by the Bankruptcy Court.

**L.      Claims Allowance Procedure**

Other than a claim of the United States Trustee, no Administrative Expense Claims shall be allowed except pursuant to Court Order. Any application for allowance of an Administrative Expense Claim shall be filed within 30 days after the Effective Date or shall be barred. Any claims for reimbursement of fees and expenses pursuant to 11 U.S.C. § 506(b) shall be filed within 60 days after the Effective Date or shall be barred.

With the exception of the claims negotiated by the Pool Builders under Article VI.H of the Plan, the Liquidation Trustee may file an objection to a claim on or before the later of 180 days from the Effective Date under the Plan or 180 days after such claim is filed, whichever is later.

A claim to which an objection has been made shall at the request of the Creditor be estimated by the Court for the purposes of voting on the Plan.

**M.      Settlement, Releases, Exculpation, and Related Provisions**

Article IX of the Plan provides for certain releases, injunctions, and exculpations, including third-party releases of and for the Debtor, the Released Parties or the Exculpated Parties, as applicable.

The Debtor believe that the releases, and injunctions set forth in the Plan are appropriate and in accordance with applicable law because, among other things, the releases are narrowly tailored to the Debtor and the Chapter 11 Case, and the Released Parties have contributed value to the Debtor, which facilitated the Debtor's ability to propose and pursue confirmation of the Plan. The Debtor further believe that such releases, exculpations, and injunctions are a necessary part of the Plan. The Debtor will be prepared to meet is burden to establish the basis for the releases, exculpations, and injunctions for each of the Released Parties and each Exculpated Party as part of confirmation of the Plan.

1.      Released Parties and Exculpated Parties.

The Released Parties are, collectively, the following: in each case in its capacity as such with each being a "*Released Party*": (a) the Debtor; (b) Edgar Castro and Fausto Castro, the Debtor's Members; (c) the Liquidation Trustee; (d) Federated Insurance; and, (e) for each Entity listed in (a) through (d), each of their respective current and former officers, directors, and managers; (f) each of their respective current and former employees and agents; and (g) each of their respective attorneys and other professional advisors."

The Exculpated Parties are, collectively, (a) the Debtor, and (b) Edgar Castro, the Debtor's Managing Member.

2.      Estate Release

Article IX.C provides for the releases of certain claims and causes of action the Debtor may hold against Released Parties, including derivative claims.

**Pursuant to section 1123(b) of the Bankruptcy Code, upon payment in full of the Settlement Payment as provided in Article IV.C, and in exchange for other good and valuable consideration, the adequacy of which is hereby confirmed, the Debtor, its Estate, and the Post-Effective Date Debtor shall be deemed to have expressly, conclusively, absolutely, unconditionally, irrevocably, and forever released each and all of the Released Parties from any and all claims, causes of action, interests, damages, remedies, demands, rights, actions (including Avoidance Actions), suits, debts, sums of money, obligations, judgments, liabilities, accounts, defenses, offsets, counterclaims, crossclaims, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, now existing or hereafter arising, contingent or non-contingent, liquidated or unliquidated, choate or inchoate, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise that the Debtor, the Post-Effective Date Debtor, or the Estate has, have or may have against the Released Parties.**

**Notwithstanding anything contained herein to the contrary, the foregoing release does not release any obligations of any Released Party under the Plan or any document, instrument, or agreement executed to implement the Plan.**

3.      Other Releases.

Article IX.D provides for releases of certain Claims and Causes of Action Consenting Creditors may hold against the Released Parties. This provision requires that creditors who want to receive any funds from the Liquidation Trust must consent to the release of claims against the identified Released Parties.

"Consenting Creditors" are claimants who (a) all Holders of Claims or Interests that vote to accept or are deemed to accept the Plan <u>and</u> who check the box on the applicable form to affirmatively opt in to the releases contained in Article IX.D; (b)  all Holders of Claims or Interests that vote to accept the Plan and who affirmatively opt in to the releases provided for in the Plan; and (c) all

Holders of Claims or Interests that vote to reject this Plan or are deemed to reject this Plan and who affirmatively op in to the releases provided by the Plan; provided that, in each case, an Entity shall not be a Consenting Creditor if it (1) does not elect to opt in to the Third Party Release or (2) timely objects to the Third-Party Release through a formal objection filed on the docket of the Bankruptcy Case that is not resolved before Confirmation.

**As of the Final Payment Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, including the actions of the Released Parties to facilitate the Insurance Settlement, as an integral component of the Plan, to the maximum extent permitted under applicable law, all Consenting Creditors shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each Released Party of and from any and all Causes of Action based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, the Estate, their respective current or former assets and properties, the Chapter 11 Case, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between the Debtor and any Released Party, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan Documents or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation or implementation thereof, the pursuit of Plan confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing; *provided*, *however*, that the releases set forth in this Article IX.D shall not, and shall not be construed to: (a) release any post-Effective Date obligations under the Plan Documents or any document, instrument, or agreement executed to implement the Plan; or (b) modify, reduce, impair or otherwise affect the ability of any Consenting Creditors to recover from the Trust in accordance with the Plan and the Trust Documents. If, following the Final Payment Date, any portion of the Insurance Settlement Payment is clawed back, the releases set forth this Article IX.D shall be void. If such releases become void, then the relevant Statute of Limitations applicable to any claim or Cause of Action that could then be asserted against the Released Parties shall be tolled and extended to the date that is ninety (90) days following the date that such releases become void and notice of the same is published by the Trust. Any Released Party may enforce the Consensual Claimant Release before the Bankruptcy Court, which shall retain jurisdiction for such purpose, at its own cost and expense.**

Mutual Release from the Released Parties- Article IX.F provides for releases of Claims and Causes of Action the Released Parties and the Debtor are providing to Consenting Creditors pursuant to the Plan.

**As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, as an integral component of the Plan, to the maximum extent permitted under applicable law, Released Parties shall, and shall be deemed to, expressly, conclusively,**

**absolutely, unconditionally, irrevocably, and forever release and discharge each of the Holders of Claims in Class 4 (Pool Claims) of and from any and all Causes of Action based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, the Estate, their respective current or former assets and properties, the Chapter 11 Case, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between the Debtor and any such Holder, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan Documents or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation or implementation thereof, the pursuit of Plan confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing; provided, however, that the releases set forth in this Article IX.F shall not, and shall not be construed to: (a) release any post-Effective Date obligations under the Plan Documents or any document, instrument, or agreement executed to implement the Plan; (b) impair any recoveries that may be sought with respect to any Insurance Settlement, or (c) modify, reduce, impair or otherwise affect the ability of any Consenting Creditors to recover from the Trust in accordance with the Plan and the Trust Documents.**

4.      Exculpation

Article IX.E provides for the release and exculpation of the Exculpated Parties for certain acts or omissions taken in connection with the Chapter 11 Case.  The Exculpation contains a carve-out for actual fraud, willful misconduct or gross negligence.

**Upon the Effective Date, to the fullest extent permissible under applicable law, no Exculpated Party shall have or incur, and each Exculpated Party is released and exculpated from, any liability to any Holder of a Claim or Interest, or any other party in interest, for any claim or cause of action arising from the Petition Date through the Effective Date, arising from, relating to, or connected with the administration of the Chapter 11 Case, the Disclosure Statement, the preparation of the Plan, the solicitation of acceptances of the Plan, the pursuit of confirmation of the Plan, the Consummation of the Plan, or the administration of the Plan or property to be distributed under the Plan, except for claims related to any act or omission that is determined in a Final Order of a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence. The Exculpated Parties shall be deemed to have, participated in good faith in connection with the above and entitled to the protection of section 1125(e) of the Bankruptcy Code. Each Exculpated Party shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan**.

5.      Channeling Injunction- *Sole Source for Recovery for Pool Claims*

Article IX.I outlines the Channeling Injunction that will be imposed pursuant to the Plan upon Channeled Claims. Channeled Claims are Claims as to which the Holder of the Claim has

opted-in to receive a payment from the Liquidation Trustee. **For the avoidance of doubt, creditors that would otherwise have a Pool Claim (Class #4) that do not opt in to the Consensual Claimant Release are not Consenting Creditors and will not participate in the distributions from the Liquidation Trustee.**

As outlined in Article IX.I, the Channeling Injunction will provide that the sole recourse for Holders of Channeled Claims that are eligible for compensation will be the applicable trust, and the Holders of Channeled Claims will have no right to assert those claims against the Debtor or any Released Party. **Pursuant to the Insurance Settlement, upon approval by the Court, the insurance policies of Federated will be exhausted. The outstanding amount of the insurance policies is $9,916,456.02, which along with an additional $270,000 for administrative expenses, will be turned over to the Liquidation Trustee.**

**O.     Retention of Jurisdiction**

After confirmation of the Plan, the Bankruptcy Court will retain jurisdiction to the extent provided by 28 U.S.C. §1334. This means that the Bankruptcy Court will retain jurisdiction over matters relating to the Plan and to rule on any matters which are pending in the case.

**P.     Post-Confirmation Procedure**

After confirmation of the Plan, the Bankruptcy Court will rule upon any objections to claims, applications for compensation of professionals, and any other outstanding issues. Once the Bankruptcy Court has ruled upon these matters, the Debtor will file an application for final decree. The Debtor will be required to pay U.S. Trustee fees and file quarterly post-confirmation reports until such time as a final decree is entered and the case is closed.

## V.     ALTERNATIVES TO THE DEBTOR'S PLAN

The alternatives to the Debtor's Plan are liquidation via chapter 7 or outside of the bankruptcy process whereby the secured, priority, and administrative creditors would receive the bulk of the sale proceeds and unsecured creditors would, in all likelihood, receive nothing.

## VI.     TAX CONSEQUENCES

An analysis of federal income tax consequence of the Plan to creditors, interest holder, and the Debtor requires a review of the Internal Revenue Code ("IRS Code"), the Treasury regulations promulgated thereunder, judicial authority and current administrative rulings and practice. The Plan and its related tax consequences are complex. The Debtor has not requested a ruling from the Internal Revenue Service with respect to these matters. Accordingly, no assurance can be given as to the IRS's interpretation of this Plan.

The federal income tax consequences of the implementation of the Plan to a creditor will depend in part on whether, for federal income tax purposes, the obligation from which a creditor's claim arose constitutes a "security." The determination as to whether an obligation for which a creditor's claim arose constitutes a "security" for federal income tax purposes is complex. It depends on the facts and circumstances surrounding the origin and nature of the obligation. Generally, corporate debt obligations evidenced by written instruments with maturities, when issued five (5) years or less, or arising out of the extension of trade credit, do not constitute

"securities," whereas corporate debt obligations evidenced by written instruments with original maturities over (10) years or more constitute "securities." Although it appears that most of the creditors' claims do not constitute "securities," the Debtor and their professionals express no view with respect to whether the obligation for which a particular creditor's claim arose constitutes a "security" for federal income tax purposes. Creditors are urged to consult their own tax advisor in this regard.

Generally, creditors whose claims arise from obligations that do not constitute "securities" or whose claims are for wages or services, will be fully taxable exchanges for federal income tax purposes. Such creditors who receive solely cash in discharge of their claims will recognize gain or loss, as the case may be, equal to the difference between (i) the amount realized by the creditor in respect of its claim (other than any claim for accrued interest) and (ii) the creditor's tax basis in its claim (other than any claim for accrued interest). For federal income tax purposes, the "amount realized" by a creditor who receives solely cash in discharge of its claim will be the amount of cash received by such creditor. Where gain or loss is recognized by a creditor, the character of such gain or loss as a long-term or short-term capital gain or loss or as ordinary income or loss will be determined by a number of factors, including the tax status of the creditor, whether the obligation from which a claim arose has been held for more than six (6) months, and whether and to what extent the creditor has previously claimed a bad debt deduction. The capital gains deduction for individuals and the alternate tax for corporate net capital gains have been repealed and capital gain is currently taxed to individuals and corporations at their respective maximum tax rates. However, the definitions of long-term and short-term capital gain or loss have to be repealed.

Generally, to the extent any amount received (where cash or other property) by a creditor is received in discharge of interest accrued on its claim during its holding period, such amount will be taxable to the creditor as interest income (if not previously included in the creditor's gross income). Conversely, a creditor will recognize a deductible loss (or, possible, a write-off against a reserve for bad debts) to the extent any interest accrued on its claim was previously included in the creditor's gross income and is not paid in full.

**THE TRANSACTION CONTEMPLATED BY THE CONFIRMATION OF THE PLAN MAY HAVE AN IMPACT ON THE TAX TREATMENT OF ANY CREDITOR OR EQUITY INTEREST HOLDER. THAT IMPACT MAY BE ADVERSE TO THE CREDITOR OR EQUITY INTEREST HOLDER. NOTHING HEREIN IS INTENDED TO BE ADVICE OR OPINION AS TO THE TAX IMPACT OF THE PLAN ON ANY INDIVIDUAL CREDITOR OR EQUITY INTEREST HOLDER. EACH CREDITOR AND EQUITY INTEREST HOLDER IS CAUTIONED TO OBTAIN INDEPENDENT AND COMPETENT TAX ADVICE PRIOR TO VOTING ON THE PLAN.**

## VII.    PENDING AND POTENTIAL LITIGATION

### A.    Avoidance Actions

The Liquidation Trustee shall retain all rights to pursue, in his sole discretion, any preferences or fraudulent transfers to the full extent allowed under the Bankruptcy Code and applicable state laws. ALL CREDITORS AND RECIPIENTS OF PAYMENTS OR TRANSFERS THAT MAY BE DEEMED PREFERENCES OR FRAUDULENT TRANSFERS, WITH

ACTUAL OR CONSTRUCTIVE NOTICE OF THIS BANKRUPTCY CASE ARE HEREBY PUT ON NOTICE THAT THE REORGANIZED DEBTOR MAY PROSECUTE THESE CLAIMS. THIS PLAN IS NOT INTENDED AND DOES NOT WAIVE ANY OF THE DEBTOR'S CHAPTER 5 CAUSES OF ACTION, EXCEPT THOSE ACTIONS AND CLAIMS EXPRESSLY RELEASED IN THE PLAN, OR CONFIRMATION ORDER.

## B.      Other Litigation

In addition to preferences and fraudulent transfer claims, the Estate explicitly preserves the following claims and causes of action and may pursue such claims and causes of action after the Confirmation Date or may be enforced by way of setoff against Claims filed against the bankruptcy estate. The Liquidation Trustee shall have sole discretion to prosecute any such litigation and to object to any Claims as he sees fit.

## VIII.   SOLICITATION OF VOTES

The Debtor has devoted substantial effort to preparation of its Disclosure Statement and its Plan of Liquidation. The Debtor believes that the Plan represents a fair adjustment of its relationship with creditors. The Debtor believes that the Plan offers the best result for all creditors in comparison to an unstructured liquidation of the assets and claims against the insurance policies, which would result in an uneven recovery for the Pool Claimants.

**Therefore, the Debtor requests that all creditors vote in favor of its Plan of Liquidation.**

Dated: November 14, 2025                     HOT CRETE, LLC.

By:      */s/ Edgar Castro*
         Edgard Castro
         Managing Member


DRAFTED and APPROVED:

*/s/ Todd Headden*
Todd Headden (TX 24096285)
HAYWARD PLLC
7600 Burnet Road, Ste. 530
Austin, Texas 78757
(737) 881-7100 (phone and fax)
Email: THeadden@HaywardFirm.com
ATTORNEYS FOR DEBTOR