**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **HOT CRETE, LLC,** | § | **Case No. 24-10303-smr** |
| | § | |
| **Debtor.** | § | **Chapter 11** |
| | § | |

---

**HOT CRETE, LLC,**
**SECOND AMENDED LIQUIDATING PLAN**

---

Date: November 14, 2025

Todd Headden
   State Bar No. 24096285
   THeadden@HaywardFirm.com
Ron Satija
   State Bar No. 24039158
   RSatija@HaywardFirm.com
HAYWARD PLLC

AUSTIN
7600 Burnet Rd.
Suite 530
Austin, TX 78757

## INTRODUCTION

Hot Crete, LLC, hereby proposes the following chapter 11 plan pursuant to section 1121(a) of the Bankruptcy Code.

## ARTICLE I.- DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW, AND OTHER REFERENCES

*A.* *Defined Terms*

1. "*Administrative Claim*" means any right to payment constituting a cost or expense of administration of the Chapter 11 Case pursuant to sections 503(b) or 507 of the Bankruptcy Code.

2. "*Administrative Claims Bar Date*" means the first Business Day that is 30 days following the Effective Date, unless otherwise specifically set forth in the Plan or a Final Order.

3. "*Administrative and Priority Claims Reserve*" means a reserve established by the Liquidation Trustee on the Effective Date to be used to pay Holders of all Allowed Priority Claims and Allowed Administrative Claims, to the extent the same have not been paid in full on or before the Effective Date.

4. "*Administrative Claims Objection Deadline*" means the first Business Day that is 21 days following the Administrative Claims Bar Date, unless otherwise specifically set forth in the Plan or a Final Order.

5. "*Allowed*" means, any Claim: (a) that is evidenced by a Proof of Claim Filed by the Claims Bar Date or to which no objection has been interposed on or before the Claims Objection Deadline or such other applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court; (b) that is listed in the Schedules and is not identified as contingent, unliquidated, or disputed, and for which no Proof of Claim has been timely Filed and as to which no objection has been interposed on or before the Claims Objection Deadline; (c) Allowed pursuant to the Plan or a Final Order of the Bankruptcy Court; or, (d) Specifically for Pool Claims, those allowed pursuant to Article VI.H hereof.

6. "*Avoidance Actions*" means any and all actual or potential avoidance, recovery, subordination or other claims, causes of action or remedies that may be brought by or on behalf of the Debtor or its Estate or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy law, including claims, causes of action, or remedies under sections 502, 510, 542, 544, 545, 547 through 553, and 724(a) of the Bankruptcy Code, or under similar or related local, state, federal, or foreign statutes or common law, including preference and fraudulent transfer and conveyance laws, in each case whether or not litigation to prosecute such claim(s), cause(s) of action or remedy(ies) were commenced prior to the Effective Date.

7.      "*Ballot*" means the form of ballot approved by the Bankruptcy Court and provided to Holders of Claims to indicate their votes to accept or reject the Plan.

8.      "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101 *et. seq.*, as now in effect and as may be hereafter amended.

9.      "*Bankruptcy Court*" means the United States Bankruptcy Court for the Western District of Texas, Austin Division, or such other court of the United States having jurisdiction over the Chapter 11 Case.

10.     "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under 28 U.S.C. § 2075, as now in effect or hereafter amended.

11.     "*Bar Date*" means, as applicable, (i) the Claims Bar Date, (ii) any other date or dates established or to be established by this Plan or by a Final Order of the Bankruptcy Court setting a deadline by which Proofs of Claim must be Filed and (iii) the Administrative Claims Bar Date.

12.     "*Business Day*" means any day, other than a Saturday, Sunday, or a "legal holiday," as defined in Bankruptcy Rule 9006(a).

13.     "*Cash*" or "*$*" means legal tender of the United States of America.

14.     "*Causes of Action*" means any claims, causes of action, interests, damages, remedies, demands, rights, actions (including Avoidance Actions), suits, debts, sums of money, obligations, judgments, liabilities, accounts, defenses, offsets, counterclaims, crossclaims, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, now existing or hereafter arising, contingent or non-contingent, liquidated or unliquidated, choate or inchoate, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise, owned by or otherwise accruing to the Debtor and its Estate, whether arising before, on, or after the Petition Date.

15.     "*Chapter 11 Case*" means the above-captioned chapter 11 bankruptcy case of the Debtor.

16.     "*Channeled Claims*" means the claims filed by holders of Class 4 Claims that have opted in pursuant to Article IX, also known as Channeled Pool Claim. These claims include any claim or demand against the insurance policies issued by Federated Insurance.

17.     "*Claim*" means any claim against the Debtor, as defined in section 101(5) of the Bankruptcy Code.

18.     "*Claims Bar Date*" means the last date to file Proofs of Claim against the Debtor, which is October 31, 2024, for all creditors including Governmental Units.

19.     "*Claims Objection Deadline*" means one hundred and eighty (180) days after the Effective Date unless extended by further order of the Bankruptcy Court and does not apply to Class 4 Pool Claims, which is controlled by Article VI. H.

20.     "*Claims Register*" means the official register of Claims against and Interests in the Debtor maintained by the Court.

21.     "*Class*" means any category of Holders of Claims or Interests classified by this Plan pursuant to sections 1122(a) and 1123(a)(1) of the Bankruptcy Code.

22.     "*Confirmation Date*" means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Case.

23.     "*Confirmation Hearing*" means the hearing conducted by the Bankruptcy Court, including any adjournments thereof, to consider confirmation of the Plan.

24.     "*Confirmation Objection Deadline*" means the last date to file objections to the confirmation of the plan.

25.     "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code and approving the Disclosure Statement as containing adequate information pursuant to sections 1125 and 1126 of the Bankruptcy Code.

26.     "*Consensual Claimant Release*" means the releases granted by the Consenting Creditors under this Plan.

27.     "*Consenting Creditors*" means collectively the following, in its capacity as such with each being a "*Consenting Creditor*": (a) all Holders of Claims or Interests that vote to accept or are deemed to accept the Plan <u>and</u> who check the box on the applicable form to affirmatively opt in to the releases contained in Article IX.D; (b) all Holders of Claims or Interests that vote to accept the Plan and who affirmatively opt in to the releases provided in this Plan; and (c) all Holders of Claims or Interests that vote to reject this Plan or are deemed to reject this Plan and who affirmatively op in to the releases provided by the Plan; provided that, in each case, an Entity shall not be a Consenting Creditor if it (1) does not elect to opt in to the Third Party Release or (2) timely objects to the Third-Party Release through a formal objection filed on the docket of the Bankruptcy Case that is not resolved before Confirmation.

28.     "*Consummation*" means the occurrence of the Effective Date.

29.     "*Contingent Indemnification Claim*" means, excluding the Allowed Claims of Pool Builders pursuant to Article VI.H hereof, any Claim for indemnification against the Debtor of any kind or nature whatsoever, whether arising under or pursuant to any type of bylaws, organizational or formation documents, board resolutions, management or indemnification agreements, employment or other services contracts, at common law, in equity or otherwise, and whether

pertaining or related to past and present directors, officers, employees, attorneys, accountants, investment bankers, clients, state agencies, or other professionals and agents of the Debtor related to services provided to, by or for the Debtor at any time prior to the Effective Date that is contingent as of the Effective Date; *provided* that Contingent Indemnification Claims shall not include any Claim for indemnification against the Debtor if, prior to the Effective Date, such Claim has been adjudicated as non-contingent by Final Order of a court of competent jurisdiction.

30.    "*Convenience Claim*" means any General Unsecured Claim that is filed in an amount of $5,000 or less.

31.    "*Debtor Release*" means the release given on behalf of the Debtor and its Estate to the Released Parties as set forth in Article IX.C.

32.    "*Debtor*" means Hot Crete, LLC, a Texas LLC, in its capacity as a debtor and debtor in possession under sections 1107 and 1108 of the Bankruptcy Code.

33.    "*Disallowed*" means any Claim or Interest or portion thereof that is not Allowed or Disputed.

34.    "*Disclosure Statement*" means that certain disclosure statement relating to the Plan, as the same may be amended, supplemented, or modified from time to time, including all exhibits and schedules thereto, as approved by the Bankruptcy Court pursuant to sections 1125 and 1126 of the Bankruptcy Code.

35.    "*Disputed*" means any Claim or Interest or portion thereof, (a) to the extent neither Allowed nor disallowed under the Plan or a Final Order nor deemed Allowed under sections 502, 503, or 1111 of the Bankruptcy Code, or (b) for which a Proof of Claim or Proof of Interest or a motion for payment has been timely Filed with the Bankruptcy Court, to the extent the Debtor or any other party in interest has interposed a timely objection or request for estimation in accordance with the Plan, the Bankruptcy Code, or the Bankruptcy Rules, which objection or request for estimation has not been withdrawn or determined by a Final Order.

36.    "*Distribution*" means Cash, property, interests in property or other value distribution to Holders of Allowed Claims, or their designated agent, including the Liquidation Trust Beneficiaries, as applicable under this Plan, or any trust agreement governing a trust created under this Plan.

37.    "*Distribution Date*" means the date on which the Liquidation Trustee first makes distributions from the Settlement Payment to Holders of Pool Claims as provided in the Plan.

38.    "*Distribution Reserve Accounts*" means the Cash reserve accounts established pursuant to this Plan by the Liquidation Trustee, as may be applicable, including but not limited to the Administrative and Priority Claims Reserve.

39.    "*Effective Date*" means the later of the first Business Day on which (a) no stay of

the Confirmation Order is in effect and (b) all conditions precedent specified in the Confirmation Order have been satisfied or waived. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

40. "*Enjoined Parties*" means (i) all Entities that have held, hold, or may hold Claims against or Interests in the Debtor (whether or not Proofs of Claim or Proofs of Interest have been filed and whether or not such Entities vote in favor of, against, or abstain from voting on the Plan or are presumed to have accepted or deemed to have rejected the Plan), (ii) any Entity that has appeared and/or filed any motion, objection, or other pleading in this Chapter 11 Case regardless of the capacity in which such Entity appeared and any other party in interest, and (iii) for each Entity listed in (i) and (ii), such Entity's predecessors, successors, assigns (whether by operation of law or otherwise), and each of their respective present, future, or former officers, directors, employees, managers, managing members, members, financial advisors, attorneys, accountants, investment bankers, consultants, professionals, advisors, shareholders, principals, partners, subsidiaries, divisions, management companies, heirs, agents, and other representatives, in each case solely in their capacity as such.

41. "*Entity*" has the meaning set forth in section 101(15) of the Bankruptcy Code.

42. "*ERC Fund*" means a segregated account to be funded by the proceeds of employee retention tax credits received by the Debtor or Liquidation Trustee, as applicable.

43. "*Estate*" means the estate of the Debtor as created under section 541 of the Bankruptcy Code upon the commencement of the Debtor's Chapter 11 Case.

44. "*Exculpated Party*" means, collectively (a) the Debtor, and (b) Edgar Castro, the Debtor's Managing Member, for conduct within the scope of his duties as the Managing Member.

45. "*File*" or "*Filed*" means file or filed with the Bankruptcy Court.

46. "*Final Decree*" means the decree contemplated in Bankruptcy Rule 3022.

47. "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter that has not been reversed, stayed, modified, or amended, and as to which (a) the time to appeal, petition for *certiorari*, or move for a stay, new trial, reargument, reconsideration, or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceedings for a stay, new trial, reargument, reconsideration, or rehearing shall then be pending, or (b) if an appeal, writ of *certiorari*, stay, new trial, reargument, reconsideration, or rehearing has been sought: (i) such order or judgment has been resolved by the highest court to which the order or judgment could be appealed, *certiorari* shall have been denied, or a stay, new trial, reargument, reconsideration, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice and (ii) the time to take any further appeal, petition for *certiorari*, or move for a stay, new trial, reargument, reconsideration or rehearing shall have expired; *provided, however* that no order or judgment shall fail to be a Final Order solely because of the possibility that a motion under rule 60

of the Federal Rules of Civil Procedure or any comparable rule of the Bankruptcy Rules or state or local rules has been or may be filed relating to such order or judgment.

48.     "*General Unsecured Claim*" means any unsecured claim (including, for the avoidance of doubt, any Pool Claim and Non-Pool Claim) that is not an Administrative Claim, a Secured Claim, an Other Secured Claim, a Priority Tax Claim, an Other Priority Claim, or a Claim that is otherwise paid in full prior to the Effective Date pursuant to an order of the Bankruptcy Court.

49.     "*Governmental Unit*" has the meaning set forth in section 101(27) of the Bankruptcy Code.

50.     "*Holder*" means an Entity holding a Claim or an Interest.

51.     "*Impaired*" means, with respect to any Class of Claims or Interests, a Claim or an Interest that is not Unimpaired.

52.     "*Insurance Settlement*" means the settlement entered into between the Debtor and Federated Insurance, attached as a Plan Supplement and included by reference in the Plan.   The Insurance Settlement compromises certain disputes related to insurance policies issued by Federated and, as a result of the settlement, have the remaining balance of the Debtor's insurance policy proceeds deposited in the Liquation Trust.

53.     "*Interest*" means any interest, equity, or share in the Debtor, including all options, warrants, or other rights to obtain such an interest or share in the Debtor, whether or not certificated, transferable, preferred, common, voting, or denominated "stock" or a similar security.

54.     "*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

55.     "*Liquidation Trust*" means that certain trust that will come into existence on the Effective Date, which shall be formed pursuant to, and governed by, the provisions of the Plan and the Liquidation Trust Agreement.

56.     "*Liquidation Trust Agreement*" means the agreement establishing and governing the Liquidation Trust dated as of the Effective Date, substantially in the form included in the Plan Supplement.

57.     "*Liquidation Trust Assets*" means all assets of the Debtor or its Estate existing on the Effective Date (including all Causes of Action) after giving effect to all distributions required to be made as of or prior to the Effective Date.

58.     "*Liquidation Trustee*" means the trustee of the Liquidation Trust, who shall be selected by the Debtor, and who shall be named in the Plan Supplement.

59.     "*Local Bankruptcy Rules*" means the Bankruptcy Local Rules of the United States

Bankruptcy Court for the Western District of Texas as now in effect or hereafter amended.

60.    "*Non-Pool Unsecured Claim*" means any General Unsecured Claim that is not a Pool Claim, or the portion of a claim that is not compensatory damages for the faulty product or services of the Debtor. Treble Damages for a claim of a "Deceptive Trade Practices Act" and other related causes of action or punitive damages do not constitute a "Pool Claim" and would thus be treated as a "Non-Pool Unsecured Claim".

61.    "Opt-In Form" means the form included with the notice sent to (a) Holders of Claims or Interests that are deemed to accept or reject the Plan, or (b) Holders of Disputed Claims, which provides such Holders the opportunity to elect to opt in to the Third-Party Releases contained in Article XI.D.

62.    "*Other Priority Claim*" means any Claim other than an Administrative Claim or a Priority Tax Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code, to the extent such Claim has not already been paid during the Chapter 11 Case.

63.    "*Person*" has the meaning set forth in section 101(41) of the Bankruptcy Code.

64.    "*Petition Date*" means March 22, 2024, the date on which the Debtor commenced the Chapter 11 Case.

65.    "*Plan Supplement*" means the compilation of documents and forms of documents, agreements, schedules, and exhibits to the Plan to be filed in one or more parts of volumes by the Debtor, at least seven (7) calendar days prior to the Confirmation Objection Deadline, as the same may be amended, supplemented, or modified from time to time on the terms set forth herein, containing, without limitation:  (a) the form of Liquidation Trust Agreement; (b) the Assumed Executory Contract and Unexpired Lease List; (c) a schedule of Retained Causes of Action; (d) the identity and compensation of the Liquidation Trustee; (e) Insurance Settlement; and, (f) the Liquidation Analysis.

66.    "*Pool Builder*" means any contractor, builder, or subcontractor (other than a homeowner) that hired, directly or indirectly, the Debtor to build a pool and asserts that the Debtor's product or services damaged the project.  Pool Builders include, without limitation, Cody Pools, Inc., Pools by Blue Haven, Inc., and Stag Pools.

67.    "*Pool Claim*" means a claim filed by or on behalf of a homeowner, Pool Builder, or other contractor that hired, directly or indirectly, the Debtor to build a pool and asserts that the Debtor's product or services damaged the project. "Pool Claims" include, without limitation, claims of homeowners who assert that there is concrete cancer or Alkali- Silica Reaction ("ASR") present in their pool from work or product provided by the Debtor. Debtor commenced using fly ash in the aggregate mix beginning in October 2022, which mitigates or prevents the occurrence of ASR.

The class of Pool Claims includes all parties affected by the faulty product or services provided by

the Debtor.

For the avoidance of doubt, a Pool Claim *does not* include the portion of a claim that is not compensatory damages for the product or services of the Debtor. Treble Damages for a claim of a "Deceptive Trade Practices Act" and other related causes of action or punitive damages do not constitute a "Pool Claim" and would thus be treated as a "Non-Pool Unsecured Claim"

For the avoidance of doubt, the subrogation claims of Pool Builders or their insurers, including those held by National Fire Insurance Company of Hartford, The Continental Insurance Company, and Amerisure Mutual Insurance Company shall be classified and treated as "Pool Claims." This clarification is not a deemed allowance of such claims and does not prevent the Liquidation Trustee from objecting to such claims as and to the extent provided for herein, with each of National Fire Insurance Company of Hartford, The Continental Insurance Company, Amerisure Mutual Insurance Company, and the Liquidation Trustee reserving all of its rights, remedies, claims and defenses with respect thereto.

68.     "*Pool Claim Objection Deadline*" means the deadline established in Article VI.H. and begins to run on the Negotiation Period End Date (as defined in Article VI.H below).

69.     "*Post-Effective Date Debtor*" means the Debtor, the Liquidation Trust, or any successor thereto after the Effective Date responsible for winding down the Debtor's Estate and implementing the terms of the Plan.

70.     "*Priority Claims*" means, collectively, Priority Tax Claims and Other Claims identified in 11 U.S.C. § 507.

71.     "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

72.     "*Pro Rata*" means the proportion that an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests in such Class.

73.     "*Professional*" means any Entity retained by and to be compensated from the Estate pursuant to sections 327, 328, 330, 331, 363, 503(b) or 1103 of the Bankruptcy Code.

74.     "*Professional Fee Claims*" means any Claim by a Professional under sections 330, 331 or 503 of the Bankruptcy Code for allowance of compensation and/or reimbursement of expenses in the Chapter 11 Case.

75.     "*Proof of Claim*" means a proof of Claim Filed against the Debtor in the Chapter 11 Case.

76.     "*Proof of Interest*" means a proof of Interest Filed in the Debtor's Chapter 11 Case.

77. "*Released Parties*" means collectively the following, in each case in its capacity as such with each being a "*Released Party*": (a) the Debtor; (b) Edgar Castro and Fausto Castro, the Debtor's Members; (c) the Liquidation Trustee; (d) Federated Insurance; and, (e) for each Entity listed in (a) through (d), each of their respective current and former officers, directors, and managers; (f) each of their respective current and former employees and agents; and (g) each of their respective attorneys and other professional advisors."

78. "*Releasing Parties*" means collectively the following, in each case in its capacity as such with each being a "*Releasing Party*": (a) the Debtor; (b) the Liquidation Trustee; (c) the Settlement Parties, if any; and (d) the Consenting Creditors.

79. "*Retained Causes of Action*" means all Causes of Action of the Debtor, except those released by the Plan or the Insurance Settlement.

80. "*Schedules*" means, collectively, the schedule of assets and liabilities, schedule of Executory Contracts and Unexpired Leases and statement of financial affairs Filed by the Debtor pursuant to section 521 of the Bankruptcy Code, if any, as such schedules may be amended, modified, or supplemented from time to time.

81. "*Secured Claim*" means a Claim: (a) secured by a valid, perfected, and enforceable Lien on upon property in which the Debtor has an interest to the extent of the value, as of the Effective Date, of such interest or Lien or (b) subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code.

82. "*Settlement Parties*" means the Debtor in one part as the policy holder and Federated Insurance, in the other part, as the company that issued the insurance policies subject to the anticipated Insurance Settlement.

83. "*Settlement Payment*" means the payment to be received by the Liquidation Trust as a result of the anticipated settlement with Federated Insurance.

84. "*Trust*" means the Liquidation Trust.

85. "*Trust Agreement*" means the Liquidation Trust Agreement.

86. "*Trustee*" means the Liquidation Trustee.

87. "*Unexpired Lease*" means a lease of nonresidential real property to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

88. "*Unimpaired*" means a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

89. "*U.S. Trustee*" means the Office of the United States Trustee for Region 7 located in

the Western District of Texas.

90.    "*U.S. Trustee Fees*" means fees arising under 28 U.S.C. § 1930(a)(6).

*B.*    *Rules of Interpretation*

For purposes of the Plan: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) unless otherwise specified, any reference in the Plan to an existing document, schedule, or exhibit, shall mean such document, schedule, or exhibit, as it may have been or may be amended, modified, or supplemented; (3) unless otherwise specified, all references in the Plan to "Articles" and "Sections" are references to Articles and Sections, respectively, hereof or hereto; (4) the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to any particular portion of the Plan; (5) any effectuating provisions may be interpreted by the Debtor or the Liquidation Trustee in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity; (6) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (7) unless otherwise specified in the Plan, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (8) any term used in capitalized form in the Plan that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable; (9) references to docket numbers of documents filed in the Chapter 11 Case are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (10) references to "Proofs of Claim," "Holders of Claims," "Disputed Claims," and the like shall include "Proofs of Interest," "Holders of Interests," "Disputed Interests," and the like as applicable; (11) references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company laws; (12) the terms "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation"; and (13) except as otherwise provided in the Plan, any reference to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter.

*C.*    *Computation of Time*

Unless otherwise specifically stated in the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed in the Plan.  If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

*D.*    *Governing Law*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code

and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Texas, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control).

E.    *Reference to Monetary Figures*

All references in the Plan to monetary figures refer to currency of the United States of America, unless otherwise expressly provided herein.

F.    *Controlling Document*

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects. In the event of an inconsistency between the Plan and the documents contained in the Plan Supplement, the Plan shall control. In the event of any inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall control.

## ARTICLE II.
## ADMINISTRATIVE AND PRIORITY CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims, and Priority Claims have not been classified and shall be treated as follows:

A.    *Administrative Claims*

Except as otherwise provided by a Final Order entered by the Bankruptcy Court, requests for payment of Administrative Claims must be Filed and served on the Debtor, its counsel, counsel to the Committee and, if filed after the Effective Date, the Liquidation Trustee, no later than the Administrative Claims Bar Date. Each request for payment of an Administrative Claim must set forth, at a minimum, (a) the name of the Holder of the Administrative Claim, (b) the amount of the Administrative Claim and (c) a detailed basis for the Administrative Claim. A failure to file any such request by the Administrative Claims Bar Date shall result in the Administrative Claim in question being discharged and its Holder being forever barred, estopped, and enjoined from asserting such Administrative Claim against the Debtor, its Estate or any other Entity.

A request for payment of an Administrative Claim that has been properly and timely Filed and served shall become an Allowed Administrative Claim unless an objection is filed by the date that is thirty (30) days after such request has been Filed and served. If a timely objection is Filed, the Administrative Claim in question shall become Allowed only to the extent set forth in a Final Order of the Bankruptcy Court.

Unless otherwise agreed by a Holder of an Allowed Administrative Claim and the Debtor or the Liquidation Trustee, as applicable, each Holder of an Allowed Administrative Claim and

Claims for U.S. Trustee Fees will receive, in full and final satisfaction of its Administrative Claim, Cash in an amount equal to the Allowed amount of such Administrative Claim in accordance with the following: (1) if an Administrative Claim is Allowed as of the Effective Date, on the Effective Date; (2) if such Administrative Claim is not Allowed as of the Effective Date, no later than ten (10) days after the date on which an order Allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; or (3) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court or as otherwise agreed to between the Holder of such Allowed Administrative Claim and the Liquidation Trustee.

If an Administrative Claim is Allowed after the Effective Date and there are insufficient funds to pay such Allowed Administrative Claim from the Administrative and Priority Claims Reserve, any unpaid portion of such Allowed Administrative Claim shall be paid by the Liquidation Trustee from the Liquidation Trust Assets.

B.    *Professional Fee Claims*

1.    Final Fee Applications and Payment of Professional Fee Claims

Every Professional holding a Professional Fee Claim that has not previously been the subject of a final fee application and accompanying Bankruptcy Court order approving the same shall File a final application for payment of such Professional Fee Claim no later than 30 calendar days after the Effective Date. Any such final fee application shall conform to and comply with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules. The last date to object to such final fee application shall be the 21st day after such fee application has been Filed, and all final fee applications shall be set for hearing on the same day, as the Bankruptcy Court's calendar permits, after consultation with counsel to the Debtor. The Liquidation Trustee shall pay the full amount of each Professional Fee Claim no later than ten (10) days following entry of a Final Order by the Bankruptcy Court Allowing such Professional Fee Claim from the funds held in the specifically created account for the administrative fees identified below (the "Professional Fee Escrow Account").

2.    Professional Fee Escrow Account

As soon as is reasonably practicable after the Effective Date, the Debtor or the Liquidation Trustee shall fund the Professional Fee Escrow Account (from Cash on hand and the Initial Settlement Amount) in an amount sufficient to pay all expected Allowed Professional Fee Claims in full. The Professional Fee Escrow Account shall be held for the sole benefit of Estate Professionals until all Allowed Professional Fee Claims been paid in full. No Liens, claims, or interests of any kind shall encumber the Professional Fee Escrow Account or the Cash contained therein in any way. Funds held in the Professional Fee Escrow Account shall not be considered property of the Debtor's Estate or of the Post-Effective Date Debtor. Funds held in the Professional Fee Escrow Account shall be considered property of the Liquidation Trust to be distributed by the Liquidation Trustee under the terms and conditions set forth in the Plan and the Liquidation Trust Agreement.

---

Upon Allowance of a Professional Fee Claim, the same shall be paid as soon as reasonably practicable in Cash by the Liquidation Trustee from the funds held in the Professional Fee Escrow Account; *provided* that the Debtor's and the Liquidation Trustee's obligations to pay Allowed Professional Fee Claims shall not be limited or be deemed limited to funds held in the Professional Fee Escrow Account. To the extent that there are insufficient funds in the Professional Fee Escrow Account to satisfy all Allowed Professional Fee Claims in full, any such Allowed Professional Fee Claims (or portions thereof that remain unpaid from the Professional Fee Escrow Account) shall be paid as an Allowed Administrative Claim in accordance with Article II.A.

When all Allowed Professional Fee Claims have been irrevocably paid in full pursuant to one or more Final Orders of the Bankruptcy Court (as and if such Final Orders may be required), any remaining funds held in the Professional Fee Escrow Account shall be paid to the Liquidation Trust.

3.   Professional Fee Escrow Amount

Each Professional shall provide a reasonable and good-faith estimate of its fees and expenses incurred in rendering services to the Debtor before and as of the Effective Date that are projected to be outstanding as of the Effective Date, and shall deliver such estimate to the Debtor no later than five days before the anticipated Effective Date; *provided*, *however*, that such estimate shall not be, nor shall it be deemed to be, an admission or limitation with respect to the amount of any Professional Fee Claim. If a Professional does not provide an estimate of its Professional Fee Claim, the Debtor may estimate the amount of unpaid and unbilled fees and expenses of such Professional. The aggregate amount of Professional fee estimates as of the Effective Date shall be utilized by the Debtor to determine the amount to be funded to the Professional Fee Escrow Account.

4.   Post-Effective Date Fees and Expenses

Except as otherwise specifically provided in the Plan, from and after the Effective Date, the Liquidation Trustee may, in the ordinary course of business and without the need for any further notice to or action, order, or approval of the Bankruptcy Court, pay the reasonable, actual, and documented legal, professional, or other fees and expenses incurred on or after the Effective Date in connection with administering the Liquidation Trust and in accordance with the Plan, Liquidation Trust Agreement. Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate.

*C.*   *Priority Tax Claims*

1.   Priority Federal Tax Claims

Except to the extent that a federal Governmental Unit Holder of an Allowed Priority Tax

Claim agrees to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each federal Governmental Unit Holder of such Allowed Priority Tax Claim will receive, at the sole option of the Debtor or Liquidation Trustee, as applicable, either: (1) an amount of Cash from the ERC Fund equal to the amount of such Allowed Priority Tax Claim by the later of (a) ninety (90) days after the date on which such Priority Tax Claim becomes Allowed, or as soon as reasonably practicable thereafter, or (b) ten (10) days after the date on which the ERC Fund is funded; or (2) regular installment payments in Cash of a total value, as of the Effective Date, equal to the Allowed amount of such Claim over a period ending not later than five years after the Petition Date to be paid out of the cash on hand as of the Effective Date. For the avoidance of doubt, federal Governmental Unit Holders of Allowed Priority Tax Claims will receive interest on such Allowed Priority Tax Claims after the Effective Date in accordance with sections 511 and 1129(a)(9)(C) of the Bankruptcy Code.

2. <u>Priority State Tax Claims</u>

Except to the extent that a state Governmental Unit Holder of an Allowed Priority Tax Claim agrees to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each state Governmental Unit Holder of such Allowed Priority Tax Claim will receive an amount of Cash, from the cash on hand, equal to the amount of such Allowed Priority Tax Claim no later than ninety (90) days after the date on which such Priority Tax Claim becomes Allowed, or as soon as reasonably practicable thereafter. For the avoidance of doubt, state Governmental Unit Holders of Allowed Priority Tax Claims will receive interest on such Allowed Priority State Tax Claims after the Effective Date in accordance with sections 511 and 1129(a)(9)(C) of the Bankruptcy Code.

**ARTICLE III.**
**CLASSIFICATION, TREATMENT, AND VOTING OF**
**CLAIMS AND INTERESTS**

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Priority Tax Claims, and Professional Fee Claims have not been classified and thus are excluded from the Classes of Claims and Interests set forth in this Article III.

*A. Classification of Claims and Interests*

All Claims and Interests, other than the Claims addressed in Article II, are classified as set forth below in accordance with sections 1122 and 1123(a)(1) of the Bankruptcy Code.

| Class | Claim or Interest | Status | Voting Rights |
|-------|-------------------|--------|---------------|
| 1 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 2 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |

| 3 | Convenience Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
|---|---|---|---|
| 4 | Pool Claims | Impaired | Entitled to Vote |
| 5 | Non-Pool Claims | Impaired | Entitled to Vote |
| 6 | Contingent Indemnification Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 7 | Interests in the Debtor | Impaired | Not Entitled to Vote (Deemed to Reject) |

B. *Treatment and Voting of Classes of Claims and Interests*

1. Class 1 — Other Priority Claims

   (a) *Treatment*: Except to the extent that a Holder of an Allowed Other Priority Claim agrees to less favorable treatment, each Holder of an Allowed Other Priority Claim shall receive, in full and final satisfaction of such Claim, payment in full in Cash from the Liquidation Trustee, from the Cash on Hand, on (or as soon as reasonably practicable after) the later of (i) the Effective Date or (ii) thirty (30) days after such Other Priority Claim becomes Allowed, or (iii) a date on which the Holder of such Other Priority Claim and the Debtor or Liquidation Trustee, as applicable, shall otherwise agree in writing.

   (b) *Voting*: Class 1 is Unimpaired under the Plan. Holders of Allowed Other Priority Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

2. Class 2 — Other Secured Claims

   (a) *Treatment*: Except to the extent that a Holder of an Allowed Other Secured Claim agrees to a less favorable treatment, each Holder of an Allowed Other Secured Claim shall receive, in full and final satisfaction of such Claim, at the sole option of the Debtor or Liquidation Trustee, as applicable, either:

      (i) payment in full in Cash on the later of (w) the Effective Date (or as soon as reasonably practicable thereafter), (x) the date on which such Other Secured Claim becomes Allowed, (y) the date payment on account of such Other Secured Claim is due; or (z) the date on which the Holder of such Allowed Other Secured Claim and the

Debtor or the Liquidation Trustee, as applicable, shall otherwise agree in writing;

(ii)    the Debtor's interest in the collateral securing such Allowed Other Secured Claim; or

(iii)    other treatment that renders such Allowed Other Secured Claim Unimpaired.

(b)    *Voting*: Class 2 is Unimpaired under the Plan. Holders of Allowed Other Secured Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

3.    Class 3 — Convenience Claims

(a)    *Treatment*: On the first Business Day that is thirty (30) days following the Effective Date, each Holder of a Convenience Claim shall receive, in full and final satisfaction of such Claim, payment in full in Cash.

(b)    *Voting*: Class 3 is Unimpaired under the Plan. Holders of Allowed Convenience Claims are not entitled to vote to accept or reject the Plan.

4.    Class 4 — Pool Claims

(a)    *Treatment*:

(i)    Following the Effective Date, except to the extent that a Holder of an Allowed Pool Claim agrees to less favorable treatment or is not a Consenting Creditor, each Holder of an Allowed Pool Claim shall receive, in full and final satisfaction of such Claim against the Debtor, from the Liquidation Trust: (a) a beneficial interest in, and pro-rata share of, the proceeds of the Insurance Settlement, after payment of Administrative Claims and(b) the remaining amount of the Allowed Pool Claims shall receive beneficial interests in the Liquidation Trust and will be treated pro-rata with Allowed Class 5 Non-Pool Claims. Aside from Class 4 Pool Claims, no other Classes of Claims under the Plan shall share in any proceeds of the Insurance Settlement.

(ii)    Distributions from the Liquidation Trust to Holders of Allowed Pool Claims shall be paid in accordance with the terms of the Liquidation Trust Agreement and this Plan.

(iii)    For the avoidance of doubt, pursuant to the Insurance Settlement,

upon approval by the Court, the insurance policies of Federated will be exhausted, and any recovery by Class 4 Pools Claims will be pursuant to the terms of the Plan, including the Channeling Injunction. **Further, creditors that otherwise would have a Pool Claim (Class 4) that do not opt in to the Consensual Claimant Release and therefore are not Consenting Creditors will not participate in the proceeds of the Insurance Settlement or any other distributions by the Liquidation Trustee or Federated.**

(b)     *Voting*: Class 4 is Impaired under the Plan. Holders of Allowed Pool Claims are entitled to vote to accept or reject the Plan.

5.     Class 5- Non-Pool Claims

(a)     *Treatment*:

(i)     On the Effective Date (or as soon as reasonably practicable thereafter) except to the extent that a Holder of an Allowed Non-Pool Claim agrees to less favorable treatment, each Holder of an Allowed Class 5 Non-Pool Claim shall receive, in full and final satisfaction of such Claim, a beneficial interest in the Liquidation Trust pro-rata with all other Allowed Class 5 Non-Pool Claims and, to the extent set forth above, Allowed Class 4 Pool Claims. Each such Holder shall receive Cash distributions from the Liquidation Trust to the extent of available funds (excluding the proceeds of the Insurance Settlement), after the payment of Administrative Claims and the expenses of the Liquidation Trust. Distributions from the Liquidation Trust will be in accordance with the terms of the Liquidation Trust Agreement and this Plan.

(b)     *Voting*: Class 5 is Impaired under the Plan. Holders of Allowed Non-Pool Claims are entitled to vote to accept or reject the Plan.

6.     Class 6 — Contingent Indemnification Claims

(a)     *Treatment*: On the Effective Date, all Contingent Indemnification Claims shall be Disallowed pursuant to section 502(e)(1)(B) of the Bankruptcy Code. Holders of Contingent Indemnification Claims shall not receive any distribution on account of such Claims.

(b)     *Voting*: Class 6 is Impaired under the Plan. Holders of Contingent Indemnification Claims are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

7. Class 7 — Interests in the Debtor

(a) *Treatment*: On the Effective Date, all Interests in the Debtor shall be cancelled, released, discharged, and extinguished. Holders of Interests in the Debtor shall not receive any distribution on account of such Interests.

(b) *Voting*: Class 7 is Impaired under the Plan. Holders of Interests in the Debtor are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

C. *Elimination of Vacant Classes*

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

D. *Voting Classes; Presumed Acceptance by Non-Voting Classes*

If a Class contains Claims or Interests eligible to vote and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Debtor shall request the Bankruptcy Court to deem the Plan accepted by the Holders of such Claims or Interests in such Class.

E. *Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code*

To the extent any Class is impaired under the Plan and such Class fails to accept this Plan in accordance with section 1126(c) or (d) of the Bankruptcy Code, the Debtor hereby requests that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code. The Debtor reserves the right to modify the Plan in accordance with Article XI to the extent, if any, that Plan confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims to render such Class of Claims Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

A. *Sources of Consideration for Plan Distributions*

Sources of consideration for Plan distributions shall be: (1) Cash on hand; (2) the Debtor's insurance policies including the Insurance Settlement; (3) any cause of action against third parties, including the ERC Fund; and, (4) the Liquidation Trust Assets.

B.      *General Settlement of Claims*

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, and controversies resolved pursuant to the Plan.

C.      *Insurance Settlements*

On the Effective Date, following the entry of an order confirming Hot Crete's Plan and approval of the Insurance Settlement by the Bankruptcy Court, Federated will pay $9,916,456.02, the remaining limits of the Policies, to the Liquidation Trustee.  The money will be used to fund the Liquidation Trust created under the Plan to address all present and future Pool Claims. In addition, Federated will pay to the Liquidation Trustee the ADDITIONAL sum of $270,000 to be used to fund the administrative costs of the Liquidation Trust, including trustee and attorney fees, in connection with the claims resolution process for the Pool Claims. THE $9,916,456.02 AND $270,000 ARE REFERRED TO AS THE SETTLEMENT PAYMENT.

Under the settlement Federated and Hot Crete agree that the Policies are completely exhausted upon the making of the Settlement Payment and that any duty on the part of Federated to pay anything else pursuant to the Policies, whether by way of defense, indemnity, administrative costs or otherwise, is extinguished upon payment of the Settlement Payment. Upon the payment of the Settlement Payment, it is the express intent of the Parties that Federated will never have to pay any additional funds to third parties or claimants, whether under the Policies or otherwise, in connection with any present or future Pool Claims or in connection with any other present or future claims against Hot Crete, including claims that are not resolved through the Liquidation Trust, whether because claimants have not opted in to said process or for any other reason.  Under the settlement Hot Crete and Federated agree to the mutual release of all claims against each other.

D.      *Post-Effective Date Debtor and Liquidation Trust*

1.      Post-Effective Date Debtor and the Liquidation Trust

On the Effective Date, the Liquidation Trust will be formed pursuant to the Liquidation Trust Agreement to receive and liquidate the Liquidation Trust Assets and wind down the Debtor's Estate. In addition, the Liquidation Trustee shall serve as a successor to the Debtor pursuant to sections 1123(a)(5)(B) and (b)(3)(B) of the Bankruptcy Code to: (a) administer the terms of the Plan including making payments in accordance with Articles II and III to all Holders of Claims and interests; (b) make distributions pursuant to the Liquidation Trust Agreement; (c) assert any Cause of Action on behalf of the Debtor that constitutes a Liquidation Trust Asset; and (d) take such other action as may be authorized by the Liquidation Trust Agreement, including objecting to any and all Claims other than Professional Fee Claims.

Upon the transfer of the Liquidation Trust Assets, as more fully set forth in the Liquidation Trust Agreement, the Debtor will have no reversionary or further interest in or with respect to the

Liquidation Trust Assets. For U.S. federal income tax purposes, the beneficiaries of the Liquidation Trust will be treated as grantors and owners thereof and it is intended that the Liquidation Trust be classified as a liquidating trust under Section 301.7701-4 of the Treasury Regulations. Accordingly, for U.S. federal income tax purposes, it is intended that the beneficiaries of the Liquidation Trust be treated as if they had received an interest in the Liquidation Trust Assets and then contributed such interests to the Liquidation Trust.

On the Effective Date, the authority, power, and incumbency of the persons acting as managers or officers of the Debtor shall be deemed to have resigned and the Liquidation Trustee shall be appointed as the sole manager, director, and officer of the Post-Effective Date Debtor and shall succeed to the powers of the Debtor's managers, directors, and officers. From and after the Effective Date, the Liquidation Trustee shall be the sole representative of, and shall act for, the Post-Effective Date Debtor. The Post-Effective Date Debtor or the Liquidation Trustee, as applicable, shall be deemed to be substituted in lieu of the Debtor as the proper party in interest in all matters, including (a) motions, contested matters, and adversary proceedings pending in the Bankruptcy Court, and (b) all matters pending in any courts, tribunals, forums, or administrative proceedings outside of the Bankruptcy Court, in each case without the need or requirement for the Post-Effective Date Debtor or the Liquidation Trustee to file motions or substitutions of parties or counsel in any such matter.

E.      *Corporate Action*

On or before the Effective Date, as applicable, all actions contemplated under the Plan or in any of the documents contained the Plan Supplement, if any (including any action to be undertaken by the Post-Effective Date Debtor or Trustee, as applicable), shall be deemed authorized and approved, and, to the extent taken by the Debtor prior to the Effective Date, ratified, confirmed and approved without any requirement for further action by Holders of Claims or Interests, the Debtor, or any other Entity in all respects. All matters provided for in the Plan involving the corporate structure of the Debtor or the Post-Effective Date Debtor, as applicable, and any corporate action required by the Debtor or the Post-Effective Date Debtor in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders, directors, managers, or officers of the Debtor or the Post-Effective Date Debtor, as applicable.

Upon the Effective Date or as soon as reasonably practicable thereafter, after making all distributions required to be made under the Plan, the Debtor shall be deemed to have been dissolved and terminated and the Liquidation Trustee shall be responsible for effectuating such dissolution. On or (as applicable) prior to the Effective Date, the appropriate officers of the Debtor or the Post-Effective Date Debtor or the Liquidation Trustee, as applicable, shall be authorized to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Debtor or Post-Effective Date Debtor. The authorizations and approvals contemplated by this Article IV.F. shall be effective notwithstanding any requirements under non-bankruptcy law.

*F.*     *Vesting of Assets*

Except as otherwise provided in the Plan or the Plan Supplement, or in any agreement, instrument, or other document incorporated in the Plan, on the Effective Date, all property of the Debtor's Estate, all Causes of Action, any property acquired by the Debtor under the Plan, and any proceeds of any of the foregoing shall automatically vest in the Liquidation Trust free and clear of all Liens, Claims, interests, charges, or other encumbrances. On and after the Effective Date, except as otherwise provided in the Plan, the Liquidation Trustee may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, except as otherwise provided in the Liquidation Trust Agreement.

*G.*     *Effectuating Documents; Further Transactions*

On and after the Effective Date, the Liquidation Trustee is authorized to and may issue, execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and the documents contained in the Plan Supplement, in the name of and on behalf of the Debtor, without the need for any approvals, authorizations, or consents except for those expressly required under the Plan.

*H.*     *Exemptions from Certain Taxes and Fees*

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, no transfers of property under the Plan shall be subject in any way to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, including but not limited to (1) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in either Trust; or (2) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instruments of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan. Each appropriate state or local government officials or agents shall forego collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(c) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

*I.*     *Preservation of Causes of Action*

Except as otherwise provided in this Plan, an agreement or document entered into in

connection with the Plan, or in a Final Order of the Bankruptcy Court, pursuant to section 1123(b) of the Bankruptcy Code and as set forth more fully in the Disclosure Statement, the Debtor reserves and, as of the Effective Date, assigns to the Liquidation Trust the Retained Causes of Action. On and after the Effective Date, the Liquidation Trustee may pursue Retained Causes of Action on behalf of and for the benefit of the Liquidation Trust beneficiaries.

No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Liquidation Trustee will not pursue any and all available Causes of Action against it. Unless any Cause of Action against an Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order of the Bankruptcy Court, the Liquidation Trustee expressly reserves all Causes of Action for later adjudication, and, therefore no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of Plan confirmation or Consummation.

The Debtor, the Liquidation Trustee reserves such Causes of Action notwithstanding the rejection of any Executory Contract or Unexpired Lease during the Chapter 11 Case or pursuant to the Plan. The Liquidation Trustee shall retain and shall have, including through their authorized agents or representatives, the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

For avoidance of doubt, the Debtor's Employee Retention Credit Claim is preserved as a claim of the Liquidation Trust as though pursued by the Debtor under applicable provisions of Title 26.

## <u>ARTICLE V.</u>
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.      *Assumption or Rejection of Executory Contracts and Unexpired Leases*

On the Effective Date, except as otherwise provided in the Plan, all Executory Contracts and Unexpired Leases shall be deemed rejected as of the Effective Date pursuant to section 365 of the Bankruptcy Code, without the need for any further notice to or action, order, or approval of the Bankruptcy Court, unless an Executory Contract or Unexpired Lease: (1) was previously assumed or rejected by the Debtor; (2) previously expired or terminated pursuant to its own terms; (3) is the subject of a pending motion to assume filed on or before the Effective Date; or (4) is identified on the Assumed Executory Contract and Unexpired Lease List.

Entry of the Confirmation Order shall constitute a Bankruptcy Court order pursuant to sections 365 and 1123(b) of the Bankruptcy Code approving the assumptions, assumptions and assignments, or rejections described above as of the Effective Date.

B.    *Claims Based on Rejection of Executory Contracts or Unexpired Leases*

Unless otherwise provided by a Final Order of the Bankruptcy Court, all Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be the subject of a Proof of Claim Filed with the Bankruptcy Court and served on the Post-Effective Date Debtor no later than thirty (30) days after the later of (i) the Effective Date or (ii) the date of entry of a Bankruptcy Court order approving such rejection. Such Proof of Claim may be objected to in accordance with the provisions of Article VIII and the applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

Any Claim arising from the rejection of an Executory Contract or Unexpired Lease that is not the subject of a timely Filed Proof of Claim shall be Disallowed for all purposes in this Chapter 11 Case, discharged, and forever barred.

C.    *Cure of Defaults and Objections to Cure and Assumption*

Any monetary defaults under each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash on the Effective Date, subject to the limitation described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.

The Debtor shall provide notices of proposed cure amounts to counterparties to Executory Contracts and Unexpired Leases as part of the Plan Supplement. Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption or related cure amount must be Filed, served, and actually received by counsel to the Debtor no later than the Confirmation Objection Deadline. Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or cure amount will be deemed to have assented to such assumption or cure amount.

Assumption, or assumption and assignment, of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption. **Any Proof of Claim filed with respect to an Executory Contract or Unexpired Lease that has been assumed shall be deemed Disallowed for all purposes in this Chapter 11 Case, discharged, forever barred, and expunged without further notice to or action, order, or approval of the Bankruptcy Court.**

D.    *Insurance Policies*

Notwithstanding anything to the contrary herein, except as addressed by the Insurance Settlement, each of the insurance policies and any agreements, documents, or instruments relating thereto issued to or entered into by the Debtor prior to the Petition Date shall not be considered

Executory Contracts and shall neither be assumed nor rejected by the Debtor; *provided*, *however*, that to the extent any such insurance policy is determined by Final Order to be an Executory Contract, then, notwithstanding anything contained in the Plan to the contrary, the Plan will constitute a motion to assume such insurance policy and assign the same to the Liquidation Trust. Subject to the occurrence of the Effective Date, the entry of the Confirmation Order will constitute approval of such assumption and assignment pursuant to section 365 of the Bankruptcy Code. Unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed by the parties thereto prior to the Effective Date, no payments are required to cure any defaults of the Debtor existing as of the Confirmation Date with respect to any insurance policy, and prior payments for premiums or other charges made prior to the Petition Date under or with respect to any insurance policy shall be indefeasible. Nothing in the Plan, the Plan Supplement, the Confirmation Order, or any other order of the Bankruptcy Court, except the Insurance Settlement (1) alters, modifies, or otherwise amends the terms and conditions of (or the coverage provided by) any of such insurance policies or (2) alters or modifies the duty, if any, that the insurers or third-party administrators pay claims covered by such insurance policies.

E.      *Modifications, Amendments, Supplements, Restatements, or Other Agreements*

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and Executory Contracts and Unexpired Leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Except as otherwise provided in a Final Order, modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtor during the Chapter 11 Case shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

F.      *Reservation of Rights*

Neither the exclusion nor inclusion of any contract or lease on Schedule G of the Debtor's Schedules, nor anything contained in the Plan or the Plan Supplement shall constitute an admission by the Debtor or any other party that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Post-Effective Date Debtor has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtor, the Liquidation Trustee, as applicable, shall have thirty (30) calendar days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease to assume or reject it, including by rejecting such contract or lease effective as of the Confirmation Date.

**ARTICLE VI.**

## PROVISIONS GOVERNING DISTRIBUTIONS

A.   *Rights and Powers of the Debtor, Post-Effective Date Debtor and the Liquidation Trustee*

On and after the Effective Date, the Liquidation Trustee and its designees or representatives shall have the right to object to, Allow, or otherwise resolve any Claim subject to the terms hereof and the Liquidation Trust Agreement.

The Post-Effective Date Debtor or the Liquidation Trustee, as applicable, shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court. Additionally, in the event that the Liquidation Trustee is so ordered after the Effective Date, all costs and expenses of procuring any such bond or surety shall be paid for with Cash from the Liquidation Trust Assets.

B.   *Delivery of Distributions and Undeliverable or Unclaimed Distributions*

1.   Delivery of Distributions in General

Except as otherwise provided in the Plan or the Liquidation Trust Agreement, distributions to Holders of Allowed Claims shall be made to Holders of record as of the Effective Date by the Liquidation Trustee or other third parties, as applicable: (a) to the party designated to receive payment on any Proof of Claim or Proof of Interest; or (b) at the addresses set forth in any written notices of address changes delivered to the Liquidation Trustee after the Effective Date. Neither the Post-Effective Date Debtor nor the Liquidation Trustee shall incur any liability whatsoever on account of any distributions under the Plan except for fraud, gross negligence, or willful misconduct.

2.   Minimum; De Minimis Distributions

No Cash payment of less than $50.00 shall be made to a Holder of an Allowed Claim on account of such Allowed Claim unless provided otherwise in the Liquidation Trust Agreements.

3.   Undeliverable Distributions and Unclaimed Property

In the event that any distribution to any Holder is returned as undeliverable, no distribution to such Holder shall be made unless and until the Liquidation Trustee has determined the then-current address of such Holder, at which time such distribution shall be made to such Holder without interest; *provided*, *however*, that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of 180 days from the later of (a) the Effective Date and (b) the date of the distribution. After such date, all unclaimed property or interests in property shall revert (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary) to the Liquidation Trust automatically and without need for a further order by the Bankruptcy Court, for distribution in accordance with the Plan and the Claim of any Holder to such property or interest in property shall be released, settled,

compromised, and forever barred.

Neither the Liquidation Trustee nor his respective agents and attorneys are under a duty to take any action to either (a) attempt to locate any Holder, or (b) obtain an executed Internal Revenue Service Form W-9 from any Holder; *provided* that in his sole discretion, the Liquidation Trustee may periodically publish notice of unclaimed distributions.

If, at the time the Liquidation Trust terminates there remains unclaimed property in such Liquidation Trust, such property shall be donated by the Trustee to the Santa Rosa de Lima Catholic Church of Florence, Texas, to assist in the provision of resources for research and education.

C.      *Manner of Payment*

At the option of the Liquidation Trustee, any Cash payment to be made under the Plan may be made by check or wire transfer or as otherwise required or provided in applicable agreements.

D.      *Compliance Matters*

In connection with the Plan and all distributions hereunder, to the extent applicable, the Liquidation Trustee is authorized to take any and all actions that may be necessary or appropriate to comply with all tax withholding and reporting requirements imposed on him by any Governmental Unit, and all distributions pursuant to the Plan or pursuant to the Liquidation Trust Agreement shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Liquidation Trustee shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of a distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms he believes are reasonable and appropriate. The Liquidation Trustee reserves the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens and encumbrances. All Persons holding Claims shall be required to provide any information necessary to effect information reporting and the withholding of such taxes. Notwithstanding any other provision of the Plan to the contrary, each Holder of an Allowed Claim shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding, and other tax obligations, on account of such distribution.

E.      *Allocation Between Principal and Accrued Interest*

Except as otherwise provided in the Plan, the aggregate consideration paid to Holders with respect to their Allowed Claims shall be treated pursuant to the Plan as allocated first to the principal amount of such Allowed Claims (to the extent thereof) and, thereafter, to the interest, if any, on such Allowed Claim accrued through the Petition Date.

*F.*     *Setoffs and Recoupment*

Unless otherwise provided in the Plan or the Confirmation Order, the Post-Effective Date Debtor and the Liquidation Trustee may, pursuant to the Bankruptcy Code, applicable non-bankruptcy law, or as may be agreed to by the Holder of a Claim, set off against or recoup any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim, any claims, rights, and Causes of Action of any nature that such Post-Effective Date Debtor or Trustee, as applicable, may hold against the Holder of such Allowed Claim. In no event shall any Claim Holder be entitled to set off or recoup any such Claim against any claim, right, or Cause of Action of the Post-Effective Date Debtor or either Trustee (as applicable), unless such Holder has filed a motion with the Bankruptcy Court requesting the authority to implement such setoff or recoupment on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of setoff or recoupment pursuant to section 553 of the Bankruptcy Code or otherwise.

*G.*     *Claims Paid or Payable by Third Parties*

1.     Applicability of Insurance Policies

Except as otherwise provided in the Plan, the Confirmation Order, the Insurance Settlement or any other order of the Bankruptcy Court: (a) distributions to Holders of Allowed Claims shall be subject to any subrogation rights of the insurers and shall be in accordance with the provisions of any insurance policies; (b) nothing contained in the Plan, the Confirmation Order, the Insurance Settlement, or any other order of the Bankruptcy Court shall constitute or be deemed a waiver of any Cause of Action that the Debtor or any Entity may hold against any other Entity, including insurers under any insurance policies; and (c)nothing contained in the Plan, the Confirmation Order, the Insurance Settlement, or any other order of the Bankruptcy Court shall constitute or be deemed a waiver by any insurer of any rights, claims, or defenses, including subrogation rights and coverage defenses, held by any insurer under any insurance policy, any agreement relating to any insurance policy, or applicable law.

2.     Claims Paid by Third Parties

By filing an objection with the Court and serving such objection on any affected Holders of Claims, the Liquidation Trustee shall be authorized to seek to reduce in full, or in part, a Claim, to the extent that the Holder of such Claim receives payment on its Claim from a party that is not a Debtor. Within twenty-one days, plus three days if received via postal mail, from the service of such Notice, the Claim Holder may dispute the Liquidation Trustee's objection, and failure to timely contest the objection will authorize the resolution of the Claim paid by a third party as provided by the Liquidation Trustee.

*H.*     Pool Builders' Claim Resolution Process

To allow Pool Builders an opportunity to resolve potential claims by homeowners against

them and to minimize the impact of duplication of Pool Claims, the proofs of claims filed by Pool Builders shall be Allowed and treated under the Plan subject to the terms set forth below:

1.    <u>Pool Builder Negotiation Period</u>- Pool Builders will continue to negotiate, in their sole and exclusive discretion, with anyone, whether they are the Holders of filed Class 4 Pool Claims or otherwise, who asserts claims against any Pool Builder relating to work performed by the Debtor (the "<u>Affected Pool Owners</u>") until 12 months after the Effective Date of the Plan or a shorter period as may be determined in the applicable Pool Builders sole and exclusive discretion by written notice (which may be by email) to the Liquidation Trustee (the "<u>Negotiation End Date</u>").  Notwithstanding any other provision of this Plan, until the Negotiation End Date, the applicable proofs of claims of Pool Builders will be deemed amended and Allowed through the procedures set forth below.

2.    <u>Pool Builders' Claims</u> – Subject to the provisions contained herein, each Pool Builder will be deemed to have an Allowed Class 4 Pool Claim for (a) insurance deductibles paid by each Pool Builder, (b) any settlement payments made by a Pool Builder to any Affected Pool Owner or anyone else on account of an Affected Pool Owner's claim against such Pool Builder, and (c) the actual costs and expenses  of any repairs performed or agreed to be performed by such Pool Builder for the benefit of the Affected Pool Owners (together, "<u>Pool Builder's Costs</u>").  For the avoidance of doubt, Pool Builder's Costs will not include improvements or enhancements to the original project.

3.    <u>Notice of Transfer of Claims/Assignment of Affected Pool Owners' Claims</u>- Consistent with Federal Rules of Bankruptcy Procedure ("FRBP") 3001, each Pool Builder shall file a notice of transfer or assignment of a claim after reaching a settlement with the Affected Pool Owners who have either filed proofs of claim against the Debtor or have claims scheduled by the Debtor that have been assigned to a Pool Builder. Each Pool Builder is permitted to file an omnibus notice of transfer of claims for any such Pool Claims that have been assigned.

4.    <u>Rejection of Negotiation</u>- Both the Pool Builders and Affected Pool Owners shall have, in their sole discretion, the ability to cease negotiations. In this instance, the Affected Pool Owner retains their claim and such claim will not be assigned to the Pool Builder.

5.    <u>Responding to Requests from the Liquidation Trustee</u>- The Pool Builders shall timely comply with requests from the Liquidation Trustee regarding updates for negotiated settlements with Affected Pool Owners. At the Liquidation Trustee's request, the Pool Builder shall provide copies of the negotiated settlements in addition to a copy of the original pool contract.

6.    <u>Unfiled or Late Filed Pool Claims</u>- If no proof of claim has been timely filed by, or scheduled by the Debtor in favor of, an Affected Pool Owner, the applicable Pool Builder nonetheless will have an Allowed Class 4 Pool Claim for such Pool Builder's Costs with respect to such Affected Pool Owner subject to the procedures set forth herein. Each Pool Builder's Allowed Class 4 Pool Claim shall not be subject to disallowance or subordination pursuant to Bankruptcy Code sections 502 or 509, nor shall any Plan Distribution on account

of such Pool Builder's Allowed Class 4 Pool Claim be subject to any duty to exhaust remedies or pursue third parties, notwithstanding any other provision of this Plan.

7.      Resolution and Notice to the Liquidation Trustee; Final Aggregate Claim- As Pool Builders resolve claims with Affected Pool Owners through the Negotiation End Date, such Pool Builder or Pool Owner may provide written notice to the Liquidation Trust (which may be by email) of such resolutions (which may be aggregated in the Pool Builder's sole discretion such that more than one resolution may be noticed at any given time) and a reasonable accounting of the Pool Builder's Costs for each such claims, including the original pool contract and Settlement Agreement. Such accounting may also include invoices for subcontractors on remediating construction.

8.      Partial Settlements- A Pool Owner may retain an Allowed Claim in a partial amount if: (1) the Pool Owner negotiates and settles with a Pool Builder; (2) the settlement amount does not cover the entire amount of the Pool Owners Claim; and (3) the Pool Owner does not assign their entire claim to the Pool Builder. The Pool Owner shall amend their claim and to the extent that the Pool Owner does not amend their claim, the Liquidation Trustee may either: a) object to the claim amount or b) identify the remaining claim amount in the Liquidation Trustee's Notice of Distribution. For the avoidance of doubt, this provision applies to settlements reached between Affected Pool Owners and Pool Builders at any time before the Negotiation End Date, regardless of the Effective Date of this Plan and does not limit the Pool Builder's ability to include the portion of the settlement in their Pool Builder's Costs.

9.      Pool Builder's Aggregate Claim- Within thirty (30) days after the Negotiation End Date (the "Final Pool Builder Claim Date"), each Pool Builder must file an amended Claim disclosing the aggregate amount of the Pool Builder's Claim.

10.     Objection by the Liquidation Trustee- The Liquidation Trust will have until the 1st business day that is 60 days after the Final Pool Builder Claim Date to challenge, by written notice (which may be by email) to the applicable Pool Builder, any of the asserted Pool Builder Costs. If challenged and the Pool Builder and Liquidation Trustee reach an agreement to the amount of the Pool Builder's Claim, the agreed to amount will be reflected in the Liquidation Trustee's Notice of Distribution. If, however, any such challenge cannot be resolved consensually within 30 days of the written challenge, the applicable Pool Builder or Liquidation Trustee may bring the matter to the Bankruptcy Court for adjudication. Any such Pool Builder's Costs that are not subject to a timely challenge by the Liquidation Trust shall be deemed Allowed and added to the total of the applicable Pool Builder's Allowed Class 4 Pool Claims. By agreeing to the assignment of their claim, the Affected Pool Owner's claim will be deemed withdrawn and shall be included in the Pool Builder's Claim.

11.     Waiver of Claim at Negotiation End Date- At the Negotiation End Date, each Pool Builder will be deemed to have waived and withdrawn its Proof of Claim for any amount in excess of the assigned Allowed Class 4 Pool Claim determined by the foregoing procedures. For the avoidance of doubt, a Pool Builder's claim shall not include the Allowed Pool Claim of any Affected Pool Owner unless the Pool Builder files the Notice of Transfer of Claim, per the above procedures. Any unassigned Pool Owner's Claim will, if allowed, receive its pro-

rata distribution from the Liquidation Trustee.

I.      Trustee Notice of Distribution.

Before making any distribution on account of any Pool Claim, the Liquidation Trustee shall file a notice thereof on the docket in the Chapter 11 Case (a "<u>Distribution Notice</u>"), which shall include the name and address of the associated homeowner and identify the proposed recipients and distribution amounts on account of such Pool Claim. Any party in interest that opposes the Liquidation Trustee's proposed distribution on account of any Pool Claim shall file an objection on the docket in the Chapter 11 Case (a "<u>Distribution Notice Objection</u>") and serve said objection on the Liquidation Trustee and the proposed recipients not later than thirty (30) days after date the Distribution Notice is filed (the "<u>Distribution Notice Objection Deadline</u>"). If a timely Distribution Notice Objection is filed with respect to any Distribution Notice, the Liquidation Trustee shall not make the distribution proposed therein unless and until the Bankruptcy Court enters an order authorizing and directing him to do so or the affected parties file a stipulation and agreed order resolving the Distribution Notice Objection. If a timely Distribution Notice Objection is not filed with respect to any Distribution Notice, the Liquidation Trustee may make the distribution proposed therein without further order of the Bankruptcy Court.

## ARTICLE VII.
### RESERVES ADMINISTERED BY
### THE LIQUIDATION TRUSTEE

A.      *Establishment of Reserve Accounts*

The Liquidation Trustee shall establish each of the Distribution Reserve Accounts, which, notwithstanding anything to the contrary contained in this Plan, may be effectuated by either establishing a segregated account or establishing book entry accounts, in the sole discretion of the Liquidation Trustee.

B.      *Administrative and Priority Claims Reserve*

On the Effective Date, the Debtor shall fund and the Liquidation Trustee shall establish the Administrative and Priority Claims Reserve. The Administrative and Priority Claims Reserve shall be used to pay Allowed Administrative and Priority Claims. If all or any portion of an Administrative or Priority Claim shall become a Disallowed Claim, then the amount on deposit in the Administrative and Priority Claims Reserve attributable to such surplus or such Disallowed Claim, including the interest that has accrued on said amount while on deposit in such Reserve, shall remain in the Administrative and Priority Claims Reserve to the extent that the Liquidation Trustee determines necessary to ensure that the Cash remaining in the Administrative and Priority Claims Reserve is sufficient to ensure that all Allowed Administrative and Priority Claims will be paid in accordance with the Plan.

## ARTICLE VIII.
## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS AND INTERESTS

*A.*      *Applicability.*

All Disputed Claims against the Debtor, other than Administrative Expense Claims, shall be subject to the provisions of this Article VIII. All Administrative Expense Claims shall be determined and, if Allowed, paid in accordance with Article II.

*B.*      *Allowance of Claims and Interests*

After the Effective Date, the Liquidation Trustee shall have and retain any and all rights and defenses the Debtor had with respect to any Claim or Interest immediately prior to the Effective Date, except with respect to any Claim Allowed pursuant to the Plan or Final Order of the Bankruptcy Court entered before the Effective Date. Except as expressly provided in the Plan or in any Final Order of the Bankruptcy Court entered prior to the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan, the Bankruptcy Code, the Bankruptcy Court has entered a Final Order (including the Confirmation Order) in the Chapter 11 Case allowing such Claim, or the Claim Objection Deadline has passed. All settled Claims approved prior to the Effective Date pursuant to a Final Order of the Court pursuant to Bankruptcy Rule 9019 or otherwise, if any, shall be binding on all parties.

For the avoidance of doubt, the Claim Objection Deadline does not apply to the Liquidation Trustee's right to challenge costs asserted as part of the Pool Builders' Claim Resolution Process identified above in Article VI.H.

*C.*      *Claims Administration Responsibilities.*

Except as otherwise specifically provided in the Plan, after the Effective Date the Liquidation Trustee shall have the sole authority to: (1) file, withdraw, or litigate to judgment objections to Claims or Interests, except for Professional Fee Claims; (2) settle or compromise any Disputed Claim or Interest without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) administer the Claims Register and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court. For the avoidance of doubt, except as otherwise provided in the Plan, from and after the Effective Date, the Liquidation Trustee shall have and retain any and all rights and defenses the Debtor had immediately prior to the Effective Date with respect to any Disputed Claim or Interest, including the Causes of Action retained pursuant to Article IV.I.

*D.*      *Estimation of Claims and Interests*

Before or after the Effective Date, the Debtor or the Liquidation Trustee, as applicable,

may at any time request that the Bankruptcy Court estimate any Disputed Claim or Interest that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest, including during the litigation of any objection to any Claim or Interest or during the appeal relating to such objection. Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim or Interest, that estimated amount shall constitute a maximum limitation on such Claim or Interest for all purposes under the Plan (including for purposes of distributions), and the Liquidation Trustee may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim or Interest.

E.      *Adjustment to Claims Without Objection*

Any duplicate Claim or Interest or any Claim or Interest that has been paid, satisfied, amended, or superseded may be adjusted or expunged on the Claims Register by the Liquidation Trustee without the Liquidation Trustee having to file an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim or Interest and without any further notice to or action, order, or approval of the Bankruptcy Court. The Liquidation Trustee shall provide affected claimants with 21-day notice of the intent to adjust or expunge their claim unless the claimant provides written acknowledgement of such adjustment or expungement in advance.

F.      *No Distributions Pending Allowance*

Notwithstanding any other provision hereof, if any portion of a Claim or Interest is a Disputed Claim or Interest, as applicable, no payment or distribution provided hereunder shall be made on account of such Claim or Interest unless and until such Disputed Claim or Interest becomes Allowed.

G.      *Disallowance of Claims*

Any Claims held by Entities from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be deemed Disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Debtor by that Entity have been turned over or paid to the Debtor or the Liquidation Trustee.

H.      *Non-Pool Claim Amendment Deadline*

***ANY AMENDMENTS TO ANY NON-POOL CLAIM TIMELY FILED BY THE BAR DATE MUST BE MADE WITHIN THIRTY (30) DAYS FOLLOWING THE EFFECTIVE DATE. ANY AMENDMENTS FILED MORE THAN THIRTY (30) DAYS AFTER THE EFFECTIVE DATE SHALL BE DEEMED INEFFECTIVE WITHOUT ANY FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE COURT, AND HOLDERS OF SUCH CLAIMS MAY NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH AMENDED CLAIMS.***

I.      *Initial Distributions*

As provided for in the Liquidation Trust Agreement, the Liquidation Trustee may make an initial distribution as soon as practicable. The Liquidation Trustee, in his sole discretion, may make an initial Distribution to the holders of Allowed Class 4 Pool Claim provided that there is an adequate reserve for all potential Allowed Class 4 Pool Claims as agreed by the holders of Pool Claims or estimated by the Court. To the extent that a Disputed Claim or Interest ultimately becomes an Allowed Claim or Interest, distributions (if any) shall be made to the Holder of such Allowed Claim or Interest in accordance with the provisions of the Plan. As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim or Interest becomes a Final Order, the Liquidation Trustee shall provide to the Holder of such Claim or Interest a partial distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, without any interest to be paid on account of such Claim or Interest. The Liquidation Trustee shall, after completing the claim objection process, make a final distribution to all allowed claims.

J.      *No Interest*

Unless otherwise specifically provided for by the Plan or the Confirmation Order, or unless otherwise required by applicable bankruptcy law, no post-petition interest shall accrue or be paid on any Claim or Interest and no Holder of any Claim or Interest shall be entitled to interest accruing on or after the Petition Date.

## ARTICLE IX.
## SETTLEMENT, RELEASE, EXCULPATION, AND RELATED PROVISIONS

A.      *Compromise and Settlement of Claims, Interests, and Controversies*

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, including specifically the Insurance Settlement, as well as a finding by the

Bankruptcy Court that such compromise or settlement is in the best interests of the Debtor, its Estate, and Holders of Claims and Interests and is fair, equitable, and reasonable.

### B. *Release of Liens*

**Except as otherwise provided in the Plan, the Plan Supplement, or any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estate shall be fully released, settled, compromised, and satisfied, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert automatically to the Debtor and its successors and assigns. Any Holder of such Secured Claim (and the applicable agents for such Holder) shall be authorized and directed to release any collateral or other property of the Debtor (including any cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder) and to take such actions as may be reasonably requested by the Debtor or the Liquidation Trustee to evidence the release of such Lien, including the execution, delivery, and filing or recording of such releases. The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.**

### C. *Release by the Debtor, its Estate, and the Post-Effective Date Debtor*

**Pursuant to section 1123(b) of the Bankruptcy Code, upon payment in full of the Settlement Payment as provided in Article IV.C, and in exchange for other good and valuable consideration, the adequacy of which is hereby confirmed, the Debtor, its Estate, and the Post-Effective Date Debtor shall be deemed to have expressly, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged each and all of the Released Parties from any and all claims, causes of action, interests, damages, remedies, demands, rights, actions (including Avoidance Actions), suits, debts, sums of money, obligations, judgments, liabilities, accounts, defenses, offsets, counterclaims, crossclaims, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, now existing or hereafter arising, contingent or non-contingent, liquidated or unliquidated, choate or inchoate, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise that the Debtor, the Post-Effective Date Debtor, or the Estate has, have or may have against the Released Parties as of the Effective Date, except for claims related to any act or omission that is determined in a Final Order of a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence.**

**Notwithstanding anything contained herein to the contrary, the foregoing release does not release any obligations of any Released Party under the Plan or any document, instrument, or agreement executed to implement the Plan.**

### D. *Consenting Creditor Release*

**Upon payment in full of the Settlement Payment as provided in Article IV.C, except for**

**the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed to the maximum extent permitted under applicable law, all Consenting Creditors shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each Released Party of and from any and all Causes of Action based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, the Estate, their respective current or former assets and properties, the Chapter 11 Case, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between the Debtor and any Released Party, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan Documents or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation or implementation thereof, the pursuit of Plan confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing, except for claims related to any act or omission that is determined in a Final Order of a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence; *provided*, *however*, that the releases set forth in this Article IX.D shall not, and shall not be construed to:  (a) release any post-Effective Date obligations under the Plan Documents or any document, instrument, or agreement executed to implement the Plan or  (b)modify, reduce, impair or otherwise affect the ability of any Consenting Creditors to recover from the Liquidation Trust in accordance with the Plan and the Liquidation Trust Agreement.**

E.    *Exculpation*

Upon the Effective Date, to the fullest extent permissible under applicable law, no Exculpated Party shall have or incur, and each Exculpated Party is released and exculpated from, any liability to any Holder of a Claim or Interest, or any other party in interest, for any claim or cause of action arising from the Petition Date through the Effective Date, arising from, relating to, or connected with the administration of the Chapter 11 Case, the Disclosure Statement, the preparation of the Plan, the solicitation of acceptances of the Plan, the pursuit of confirmation of the Plan, the Consummation of the Plan, or the administration of the Plan or property to be distributed under the Plan, except for claims related to any act or omission that is determined in a Final Order of a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence. The Exculpated Parties shall be deemed to have, participated in good faith in connection with the above and entitled to the protection of section 1125(e) of the Bankruptcy Code. Each Exculpated Party shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.

F.    *Releases by the Debtor and the Settlement Parties of Holders of Claims in Class 4*

**As of the Effective Date, for good and valuable consideration, the adequacy of which is**

**hereby confirmed, as an integral component of the Plan, to the maximum extent permitted under applicable law, the Released Parties shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each of the Holders of Claims in Class 4 (Pool Claims) of and from any and all Causes of Action based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, the Estate, their respective current or former assets and properties, the Chapter 11 Case, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between the Debtor and any such Holder, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan Documents or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation or implementation thereof, the pursuit of Plan confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing; provided, however, that the releases set forth in this Article IX.F shall not, and shall not be construed to: (a) release any post-Effective Date obligations under the Plan Documents or any document, instrument, or agreement executed to implement the Plan; (b) impair any recoveries that may be sought with respect to any Insurance Actions, or (c) modify, reduce, impair or otherwise affect the ability of any Consenting Creditors to recover from the Liquidation Trust in accordance with the Plan and the Liquidation Trust Agreement.**

G.    *Recoupment*

In no event shall any Holder of Claims or Interests be entitled to recoup any Claim or Interest against any claim, right, or Cause of Action of the Debtor or the Post-Effective Date Debtor, as applicable, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtor on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

H.    *Term of Injunctions or Stays*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Case (pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court) and existing on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

I.    **Channeling Injunction**
    1.    <u>Purpose</u>
**As of the Effective Date, to facilitate the liquidation of Channeled Claims by the Liquidation Trust to preserve and promote the settlement framework contemplated by and**

---

provided for in the Plan, including the Insurance Settlement, pursuant to the equitable jurisdiction and power of the Bankruptcy Court under the Bankruptcy Code, the Bankruptcy Court shall issue the channeling injunction set forth in this <u>Article IX.I</u> (the "<u>Channeling Injunction</u>"). Pursuant to the Insurance Settlement, upon approval by the Court, the insurance policies of Federated are exhausted.

2.    <u>Source of Recovery for Pool Claims</u>

<u>For the avoidance of doubt, creditors that would otherwise have a Pool Claim (Class 4) that do not opt in to the Consensual Claimant Release and therefore are not Consenting Creditors will not participate in the proceeds of the Insurance Settlement or any other distributions the Liquidation Trustee.</u>

3.    <u>Protections Afforded to Released Parties</u>

Subject to the terms of <u>Article IX.I.5</u>, and while the Channeling Injunction is in full force and effect as to any Channeled Claim, the sole recourse of any Holder of a Channeled Pool Claim that is eligible for compensation under the Liquidation Trust Distribution Procedures, as defined in the Liquidation Trust Agreement, on account of such Channeled Pool Claim shall be to and against the Liquidation Trust pursuant to the Liquidation Trust Agreement, and such Holder shall have no right to assert such Channeled Pool Claim or any Claim against the Debtor against any Released Party. Accordingly, on or after the Effective Date, and subject to the terms of <u>Article IX.I.5</u>, all Persons that have held or asserted, currently hold or assert, or that may in the future hold or assert, any Channeled Claim shall be stayed, restrained, and enjoined from taking any action for the purpose of directly, indirectly, or derivatively collecting, recovering, or receiving payment, satisfaction, or recovery from any Released Party with respect to any such Channeled Claim, other than from the Liquidation Trusts, including:

a. commencing, conducting, or continuing, in any manner, whether directly, indirectly, or derivatively, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum in any jurisdiction around the world against or affecting any Released Party, or any property or interest in property of any Released Party;

b. enforcing, levying, attaching (including any prejudgment attachment), collecting or otherwise recovering, by any manner or means, either directly or indirectly, any judgment, award, decree, or order against or affecting any Released Party, or any property or interest in property of any Released Party;

c. creating, perfecting or otherwise enforcing in any manner, whether directly or indirectly, any encumbrance of any kind against any Released Party, or any property or interest in property of any Released Party;

d. asserting, implementing, or effectuating any setoff, right of reimbursement, subrogation, indemnity, contribution, reimbursement, or recoupment of any kind, in any manner, directly or indirectly, against any obligation due to any Released Party, or any property or interest in property of any Released Party; or

e. taking any act in any manner, and in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents or with regard to any matter that is within the scope of the matters designated by the Plan to be subject to resolution by the Liquidation Trust, except in conformity and compliance with the Plan Documents with respect to any such Channeled Claim.

4. **Reservations**

Notwithstanding anything to the contrary in this **Article IX.I**, this Channeling Injunction shall not enjoin:

a. the rights of Holders of Channeled Pool Claims to assert such Claims against the Liquidation Trust in accordance with the Liquidation Trust Distribution Procedures;

b. the rights of holders of Channeled Claims to assert any claims that are not Channeled Claims against any Released Party;

c. the rights of holders of Channeled Claims to assert such Claims against any Released Party if the Channeling Injunction is terminated under **Article IX.I.5**.

d. **the Liquidation Trust from enforcing its rights under the Plan and the Confirmation Order;**

e. **the rights of the Liquidation Trust to prosecute any action against an Insurance Company based on or arising from an Insurance Policy.**

f. **the rights of the Liquidation Trust to prosecute any Retained Estate Causes of Action; and**

g. **the rights of holders of Channeled Claims to seek recovery from any Person, Entity, or Governmental Unit that is not a Released Party on account of their Channeled Claims or any other claim or Cause of Action.**

5. <u>**Enforcement**</u>

**Any Released Party may enforce the Channeling Injunction before the Bankruptcy Court, which shall retain jurisdiction for such purpose, at its own cost and expense.**

# <u>ARTICLE X.</u>
## CONDITIONS PRECEDENT TO THE SUBSTANTIAL CONSUMMATION

A. *Conditions Precedent to the Substantial Consummation of the Plan.*

It shall be a condition to the Substantial Consummation that the following conditions shall have been satisfied or waived pursuant to Article X.B:

1. the Bankruptcy Court shall have entered the Confirmation Order;

2. the Confirmation Order shall become final and non-appealable;

3. the Insurance Settlement shall have occurred with Federated Insurance and the proceeds of such settlement shall have been received by the Debtor or Liquidation Trustee;

4. the Liquidation Trust shall be established and funded and the Liquidation Trustee shall have been appointed in accordance with the provisions of the Plan and the terms of the Liquidation Trust Agreement;

5. the Debtor shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan;

6. substantially final version of the Plan Supplement and all of the schedules, documents, and exhibits contained therein, and all other schedules, documents, supplements and exhibits to the Plan, shall have been filed;

7.      the Administrative and Priority Claims Reserve shall have been established and funded; and

8.      the Professional Fee Escrow Account shall have been established and funded.

## B.      *Waiver of Conditions Precedent*

The Debtor may agree to waive any of the conditions to the Substantial Consummation of the Plan set forth above at any time without any notice to any other parties in interest and without any further notice to or action, order, or approval of the Bankruptcy Court, and without any formal action other than proceeding to confirm and consummate the Plan.

## C.      *Substantial Consummation*

"Substantial Consummation" of the Plan, as defined in 11 U.S.C. § 1101(2), shall be deemed to occur upon the completion of the above requirements unless otherwise waived.

## ARTICLE XI.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

### A.      *Modification of Plan*

Subject to section 1127 of the Bankruptcy Code and, to the extent applicable, sections 1122, 1123 and 1125 of the Bankruptcy Code, the Debtor may propose in writing to alter, amend, or modify materially the Plan prior to or after Confirmation. Holders of Claims and Interests that have accepted the Plan shall be deemed to have accepted the Plan as altered, amended, or modified; *provided, however*, that any Holders of Claims and Interests who were deemed to accept the Plan because such Claims or Interests were Unimpaired shall continue to be deemed to accept the Plan only if, after giving effect to such amendment or modifications, such Claims and Interests continue to be Unimpaired. For purposes of this Article XI only, the Liquidation Trustee shall be deemed a Proponent entitled to seek amendment of the Plan under section 1127 of the Bankruptcy Code.

### B.      *Revocation or Withdrawal of Plan*

The Debtor reserves the right to jointly revoke or withdraw the Plan before the Confirmation Date and to file subsequent chapter 11 plans. If the Debtor revokes or withdraws the Plan, or if the Confirmation Date or the Effective Date does not occur, then: (1) the Plan will be null and void in all respects; (2) any settlement or compromise embodied in the Plan, assumption of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant hereto will be null and void in all respects; and (3) nothing contained in the Plan shall (a) constitute a waiver or release of any Claims, Interests, or Causes of Action, (b) prejudice in any manner the rights of the Debtor or any other Entity, or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtor or any other Entity.

## ARTICLE XII.

---

## RETENTION OF JURISDICTION

*A.    Jurisdiction*

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Case and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code for, among other things, including jurisdiction to:

1.    allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Claim or Interest and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests, except as otherwise expressly provided in the Plan;

2.    hear and determine all matters relating to Professional Fee Claims;

3.    ensure that distributions to Holders of Allowed Claims and Interests (as applicable) are accomplished pursuant to the provisions of the Plan and adjudicate any and all disputes arising from or relating to distributions under the Plan;

4.    adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

5.    enter and implement such orders as may be necessary or appropriate to execute, implement, interpret, or consummate the provisions of (a) contracts, instruments, releases, indentures, and other agreements or documents approved by Final Order in the Chapter 11 Case and (b) the Plan, the Confirmation Order, the Liquidation Trust Agreements, and contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan;

6.    enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

7.    adjudicate, decide, or resolve any and all matters related to the Plan;

8.    issue and enforce injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation, implementation or enforcement of the Plan, including all settlements, releases, exculpations and injunctions provided for under the Plan;

9.    resolve any cases, controversies, suits, disputes, Causes of Action, or any other matters that may arise in connection with the Consummation, implementation, interpretation, or enforcement of the Plan, the Disclosure Statement, the Confirmation Order, or any Entity's

obligations incurred in connection with the foregoing, including disputes arising under agreements, documents, or instruments executed in connection with the Plan, the Disclosure Statement, the Confirmation Order;

10. hear, determine, and resolve any cases, matters, controversies, suits, disputes, or Causes of Action in connection with or in any way related to the Chapter 11 Case, including: (a) with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or an Interest for amounts not timely repaid pursuant to Article VI.G.2; (b) with respect to the releases, injunctions, and other provisions contained in Article IX, including entry of such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions; (c) that may arise in connection with the Consummation, interpretation, implementation, or enforcement of the Plan, the Confirmation Order, and, subject to any applicable forum selection clauses, contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan; or (d) related to section 1141 of the Bankruptcy Code;

11. enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

12. consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any order, including the Confirmation Order;

13. hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

14. hear and determine all matters relating to the releases, injunctions, exculpations, and gatekeeping contained in Article IX;

15. enforce all orders previously entered by the Bankruptcy Court;

16. hear any other matter not inconsistent with the Bankruptcy Code; and

17. enter an order or Final Decree concluding or closing the Chapter 11 Case.

## ARTICLE XIII. MISCELLANEOUS PROVISIONS

A. *Additional Documents*

On or before the Effective Date, the Debtor may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtor or the Liquidation Trustee and all Holders of Claims and Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of

the Plan.

B.      *Statutory Fees*

All fees payable pursuant to 28 U.S.C. § 1930(a), including fees and expenses payable to the U.S. Trustee, as determined by the Bankruptcy Court at a hearing pursuant to section 1128 of the Bankruptcy Code, will be paid by the Liquidation Trustee for each quarter (including any fraction thereof) until the Chapter 11 Case is converted, dismissed, or closed, whichever occurs first.

C.      *Reservation of Rights*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court has entered the Confirmation Order. None of the filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by the Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of either of the Debtor with respect to Holders of Claims or Interests prior to the Effective Date.

D.      *Successors and Assigns*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, affiliated investment funds or investment vehicles, managed accounts or funds, investment managers, advisors, and sub-advisors with discretionary authority, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

E.      *Service of Documents*

All notices, requests, and demands relating to the Plan shall be in writing to be effective and, unless otherwise expressly provided in the Plan, shall be deemed to have been duly given or made when actually delivered, addressed as follows:

A.      *If to the Debtor:*

> Hot Crete, LLC
> Attention: Edgar Castro, Managing Member and President
> 2010 Brushy Creed Rd., Unit A
> Leander, TX 78613
> E-mail: info@hot-crete.com

> with copies to:

> Hayward PLLC

> Attention: Todd Headden
> 7600 Burnet Rd, Suite 530
> Austin, Texas 78757
> E-mail:   theadden@haywardfirm.com

*B.*      *If to the Liquidation Trustee, to:*

> [Address to be provided in the Plan Supplement]

After the Effective Date, the Liquidation Trustee shall have the authority to send a notice to Entities that continue to receive documents pursuant to Bankruptcy Rule 2002 requiring such Entity to file a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Liquidation Trustee is authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have filed such renewed requests.

**F.**      **Entire Agreement**

Except as otherwise indicated, the Plan (including, for the avoidance of doubt, the Plan Supplement) supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

**G.**      **Plan Supplement Exhibits**

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan. The Plan Supplement is available upon written request to Debtor's counsel at the address above for free or from the Bankruptcy Court's website for a fee at https://ecf.txwb.uscourts.gov/. The documents contained in the Plan Supplement are an integral part of the Plan and shall be deemed approved by the Bankruptcy Court pursuant to the Confirmation Order.

**H.**      **Non-Severability**

If, prior to Plan confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall not alter or interpret such term or provision to make it valid or enforceable, *provided* that at the request of the Debtor, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such terms or provision shall then be applicable as altered or interpreted provided that any such alteration or interpretation shall be acceptable to the Debtor. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the consent of the Debtors; and (3) non-severable and mutually dependent.

I.      *Good Faith*

Upon entry of the Confirmation Order and pursuant to section 1125(e) of the Bankruptcy Code, the Debtor, the Exculpated Parties, and the Released Parties will be deemed to have solicited votes on the Plan, or otherwise participated in the Plan process, in good faith and in compliance with the Bankruptcy Code, and, therefore, no such parties, individuals, or the Trustee will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan or participation in the Plan process.

J.      *Waiver or Estoppel*

Each Holder of a Claim or Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured or not subordinated by virtue of an agreement made with the Debtor or its counsel or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers filed with the Bankruptcy Court prior to the Confirmation Date.

K.      *No Attorney's Fees*

Except for the fees of Professionals, no attorneys' fees shall be paid by the Debtor or the Liquidation Trustee with respect to any Claim or Interest unless otherwise specified in the Plan or by a Final Order of the Bankruptcy Court.

L.      *Closing of Chapter 11 Case*

The Liquidation Trustee shall file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Case.

Dated: November 14, 2025

Respectfully submitted,

**Hot Crete, LLC**

By: /s/ Edgar Castro
Name: Edgar Castro
Title: Managing Member and President