

**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: April 08, 2026.**

_____
**SHAD M. ROBINSON**
**UNITED STATES BANKRUPTCY JUDGE**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **In Re:** | § | |
| | § | |
| **HOT CRETE, LLC,** | § | **Case No. 24-10303** |
| | § | |
| **Debtor.** | § | **Chapter 11** |
| | § | |
| | § | |

### ORDER CONFIRMING DEBTOR'S SECOND AMENDED LIQUIDATING PLAN
### UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

Pursuant to the Bankruptcy Court's Order entered December 23, 2025 (the "Disclosure Statement Order")(Docket No. 305) approving the Debtor's Second Amended Disclosure Statement (the "Disclosure Statement")(Docket No. 291), approving, among other things, the transmission of the Solicitation Package, and fixing deadlines for voting on and objecting to the Plan (as defined below), and the *Order Approving Motion to Continue and Setting Hearing on Confirmation of the Second Amended Plan and Related Deadlines, with Notice Thereof* (the "Continuation Notice")(Docket No. 337), the Bankruptcy Court conducted a hearing on April 2,

2026 (the "Confirmation Hearing") to consider approval of the *Hot Crete, LLC Second Amended Liquidating Plan* (the "Plan")(Docket No. 292),[1] filed by Hot Crete, LLC, as debtor and debtor-in-possession in this case (the "Debtor").  The Bankruptcy Court has considered:

(i)     the sworn testimony of the principal of the Debtor as proffered and/or called at the Confirmation Hearing;

(ii)    the exhibits of the Debtor admitted into evidence at the Confirmation Hearing;

(iii)   the evidence in respect of the transmittal and service of the solicitation packages and the tabulation of the votes on the Plan, which was filed with the Bankruptcy Court at Docket Nos. 636, 649, 655 & 661 and admitted into evidence at the Confirmation Hearing;

(iv)    the Declaration of Todd Headden Regarding the Solicitation and Tabulation of Votes Cast on the Plan which was filed with the Bankruptcy Court at Docket No. 369, 370, & 376, the proof of service of the service of the same filed at the same and admitted into evidence at the Confirmation Hearing; and

(v)     the arguments of counsel and other parties-in-interest presented at the Confirmation Hearing;

(vi)    any objections filed with the Bankruptcy Court or asserted at the Confirmation Hearing with respect to Confirmation of the Plan;

(vii)   the resolution and settlement of all of the objections to Confirmation of the Plan; and,

(vii)   the pleadings and other documents filed by the Debtor in support of the Plan,

and has taken judicial notice of and considered the docket in this Chapter 11 Case, and is familiar with the Plan and other relevant factors affecting this Chapter 11 Case, and upon the record of the Confirmation Hearing, and after due deliberation thereon, and sufficient cause appearing therefor.

---

[1] Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in the Plan.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

IT IS HEREBY FOUND, DETERMINED, AND CONCLUDED that:

A.      Findings of Fact and Conclusions of Law.  The findings of fact and conclusions of law set forth herein shall constitute findings of fact and conclusions of law in accordance with Federal Rule of Civil Procedure 52, made applicable in this Chapter 11 Case by Bankruptcy Rules 7052 and 9014(c).  To the extent that any of the findings of fact constitute conclusions of law, they are adopted as such.  To the extent that any of the conclusions of law constitute findings of fact, they are adopted as such.

Jurisdiction and Venue

B.      Jurisdiction; Venue; Core Proceeding.  The Bankruptcy Court has jurisdiction over this Chapter 11 Case pursuant to 28 U.S.C. § 1334.  Venue in this Bankruptcy Court is proper under 28 U.S.C. § 1408.  Approval of the Disclosure Statement and Confirmation of the Plan constitutes core proceedings under 28 U.S.C. § 157(b)(2), and this Bankruptcy Court has exclusive jurisdiction and full constitutional authority to enter final orders and determine whether the Disclosure Statement and Plan comply with the applicable provisions of the Bankruptcy Code and should be approved and confirmed, respectively.

C.      Judicial Notice.  The Bankruptcy Court takes judicial notice of the docket in this Chapter 11 Case maintained by the clerk of the Bankruptcy Court, including, without limitation, all pleadings and other documents filed, all orders entered, and evidence and arguments made, proffered, and adduced at the hearings held before the Bankruptcy Court during the pendency of this Chapter 11 Case.

D.      Retention of Jurisdiction.  The Bankruptcy Court finds and concludes that the Bankruptcy Court's retention of jurisdiction as set forth herein and in the Plan comports with

28 U.S.C. §§ 157 and 1334. Consequently, the Court may properly retain jurisdiction over the matters set forth in Article XIII of the Plan.

<u>Notice, Solicitation and Acceptance</u>

E. <u>Adequate Notice of Confirmation Hearing</u>. The Bankruptcy Court finds and concludes that proper, timely, and adequate service and notice of the Disclosure Statement, Plan, Plan Supplement, Confirmation Hearing, and time for filing objections to the Plan, together with all deadlines for voting to accept or reject the Plan, were provided to all holders of Claims and Equity Interests, was in compliance with the provisions of the Bankruptcy Code and Bankruptcy Rules, and no other or further notice is necessary or shall be required.

F. <u>Good Faith Solicitation (11 U.S.C. § 1125(e))</u>. The Bankruptcy Court finds and concludes that the Debtor solicited acceptances of the Plan in good faith, in compliance with the Bankruptcy Code, and in accordance with the Disclosure Statement Order. The Debtor and its agents, members, managers, officers, employees, attorneys, and other professionals are deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the solicitation of the Plan, and each of them therefore is entitled to the protections afforded by 11 U.S.C. § 1125(e) and is not, and shall not be, on account of such issuance or solicitation, liable at any time for the violation of any law, rule, or regulation governing the solicitation of acceptances of the Plan or the distribution or dissemination of any information contained in the Plan, the Disclosure Statement, and any and all related documents. The Debtor has complied with the Disclosure Statement Order in all respects.

G. <u>Voting</u>. As evidenced by the *Declaration of Todd Headden Regarding the Solicitation and Tabulation of Votes Cast on Hot Crete, LLC Second Amended Liquidating Plan* [Docket No. 292] votes to accept or reject the Plan have been solicited and tabulated fairly, in good

---

**ORDER APPROVING DEBTOR'S SECOND AMENDED LIQUIDATING PLAN** <span style="float:right">**Page 4**</span>

faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules and the Disclosure Statement Order.

Compliance with Bankruptcy Code § 1129

H.     Plan Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1)).  In accordance with Bankruptcy Code § 1129(a)(1), the Bankruptcy Court finds and concludes that the Plan complies with the applicable provisions of the Bankruptcy Code:

(a)     Compliance with 11 U.S.C. §§ 1122 and 1123(a).  In accordance with Bankruptcy Code §§ 1122(a) and 1123(a), the Bankruptcy Court finds and concludes that the Plan: (a) classifies seven classes of Claims and Equity Interests for the Debtor and that the Claims and Equity Interests allocated to each class are substantially similar to other Claims and Equity Interests, as applicable, in each such class, and such classes do not unfairly discriminate among holders of Claims and Equity Interests; (b) specifies classes of Claims and Equity Interests that are not impaired under the Plan; (c) specifies the treatment of classes of Claims and Equity Interests under the Plan; (d) provides the same treatment for each Claim or Equity Interests of a particular class, unless the holder of a particular Claim or Equity Interests agreed to less favorable treatment of its respective Claim or Equity Interests; (e) provides for adequate means for the Plan's implementation and creation of the Liquidation Trust; (f) provides for the execution and effectuation of the Insurance Settlement Agreement; and (g) contains provisions that are consistent with the interests of holders of Claims and Equity Interests and with public policy with respect to the manner of selection of any officer, director, or trustee under the Plan and any successor to such officer, director, or trustee.  Based on the foregoing, the Plan satisfies the requirements of Bankruptcy Code §§ 1122(a) and 1123(a).

(b)     Compliance with 11 U.S.C. § 1123(b) and (d).  As permitted by Bankruptcy Code § 1123(b) and (d), the Plan:  (a) impairs the rights of the holders of classes of certain Claims

and Equity Interests (Classes 4, 5, 6, and 7); (b) does not impair the rights of the holders of all other classes of Claims (Classes 1, 2, and 3); (c) provides for the settlement, adjustment, or preservation of Claims belonging to the Debtor or the Estate, including but not limited to the Insurance Settlement Agreement with Federated Insurance; (d) incorporates procedures for resolving disputed, contingent and unliquidated Claims and Equity Interests; (e) contains procedures for the Liquidation Trust Agreement and funding thereof and making distributions to Allowed Claims; (f) releases certain Claims and Causes of Action against specified parties; (h) enjoins parties from asserting Causes of Action; (i) exculpates the Exculpated Parties from certain Claims and Causes of Action; and (j) includes other appropriate provisions not inconsistent with the applicable provisions of the Bankruptcy Code. The relief provided in the Plan is fair and necessary for the orderly implementation of the Plan, the administration of the Estate, and the creation of the Liquidation Trust. Based on the foregoing, the Plan satisfies the requirements of Bankruptcy Code § 1123(b) and (d).

I. **Debtor's Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2)).** In accordance with Bankruptcy Code § 1129(a)(2), the Bankruptcy Court finds and concludes that the Debtor has complied with the applicable provisions of the Bankruptcy Code. The Debtor is a proper debtor under Bankruptcy Code § 109. The Debtor complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Order in transmitting the Plan, the Disclosure Statement, the Ballots and all related documents and notices, and in soliciting and tabulating votes on the Plan.

J. **Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)).** In accordance with Bankruptcy Code § 1129(a)(3), the Bankruptcy Court finds and concludes that the Debtor has proposed the Plan in good faith and not by any means forbidden by law, and the Debtor and each

of the constituents involved in negotiating the Plan, have acted, and are presently acting, in good faith in conjunction with all aspects of the Plan. All transactions contemplated by the Plan, including the Liquidation Trust Agreement and the Insurance Settlement Agreement, were negotiated and consummated at arm's length, without collusion, and in good faith. In determining that the Plan has been proposed in good faith, the Bankruptcy Court has examined the totality of the circumstances surrounding the formulation and solicitation of the Plan. The Debtor filed this Chapter 11 Case and proposed the Plan with legitimate and honest purposes including, among other things, (1) facilitating the efficient and economic resolution of all disputes between the Debtor and the other parties-in-interest concerning Claims, distributions, releases and payment of Allowed Claims and maximizing the recovery to holders of Allowed Claims, under the circumstances of this Chapter 11 Case. Furthermore, the Plan is in the best interests of the Debtor's Estate and holders of Claims and Equity Interests.

K. <u>Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4))</u>. In accordance with Bankruptcy Code § 1129(a)(4), the Bankruptcy Court finds and concludes that all payments made or to be made by the Debtor for services or for costs and expenses in, or in connection with, this Chapter 11 Case, or in connection with the Plan and incident to this Chapter 11 Case, have been approved by, or are subject to approval of, the Bankruptcy Court as reasonable, unless otherwise ordered by the Bankruptcy Court. The Bankruptcy Court retains jurisdiction to hear and determine all applications for Professional Fee Claims incurred on or before the Effective Date. All requests for payment or any other means of preserving and obtaining payment of Professional Fee Claims that have not been paid in the ordinary course, released or otherwise settled shall be filed with the Bankruptcy Court and served upon the Post-Effective Date Debtor no later than forty-five (45) days after the Effective Date. Any requests for Allowance of

Administrative Expense Claims shall be filed within forty-five (45) days after the Effective Date or shall be barred. Any requests for Allowance of post-petition fees or costs pursuant to 11 U.S.C. § 506(b) shall be filed within forty-five (45) days after the Effective Date or shall be barred.

L.    <u>Identity of Officers (11 U.S.C. § 1129(a)(5))</u>. In accordance with Bankruptcy Code § 1129(a)(5), the Bankruptcy Court finds and concludes that the Debtor has disclosed the identity and affiliations of the individuals who will continue as managing members of the Debtor for the limited purposes consistent with the dissolution of IIot Crete.[2] The Plan has further defined the scope of the position of the Liquidation Trustee as well as identifying the proposed Trustee.

(a)    <u>Trustee</u>: In accordance with the Plan and the Liquidation Trust Agreement, the Debtor has selected Eric Taube to serve as the Liquidation Trustee. On the Confirmation Date, Eric Taube, without the need for further action or approval, shall be appointed as the Liquidation Trustee pursuant to the terms of the Liquidation Trust Agreement, a copy of which is attached as **Exhibit B**.

M.    <u>Releases, Exculpations, and Injunctions</u>. The releases, exculpations, and injunction provisions set forth in Article IX of the Plan constitute good-faith compromises and settlements of the matters covered thereby. Such provisions: (a) are within the jurisdiction of the Court; (b) are an essential means of implementing the Plan pursuant to § 1123(a)(5) of the Bankruptcy Code; (c) are integral elements of the Plan and the resolution of the Chapter 11 Case, such that the failure to effect such provisions would seriously impair the Debtor's ability to confirm the Plan; (d) confer material benefits on, and are in the best interests of, the Debtor, the Debtor's Estate, and holders of Claims and Equity Interests; (e) are supported by fair, reasonable and reciprocal consideration;

---

[2] The Bankruptcy Court finds and concludes that Bankruptcy Code § 1129(a)(6) does not apply to the Debtor or the Plan.

(f) are important to the overall objectives of the Plan to finally resolve all Claims among or against the parties-in-interest in the Chapter 11 Case with respect to the Debtor; and (g) are consistent with §§ 105, 1123, 1129, and other applicable sections of the Bankruptcy Code.

(a)     Debtor Release. Section 9(C) of the Plan describes certain releases granted by the Debtor (the "Debtor Release"). The Debtor has satisfied the business judgment standard with respect to the propriety of the Debtor Release. Such release is a necessary and integral element of the Plan and is fair, reasonable, and in the best interests of the Debtor, the Estate, and holders of Claims and Equity Interests. Also, the Debtor Release is: (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) a good-faith settlement and compromise of the Claims or Causes of Action released by the Debtor Release; (c) given, and made, after due notice and opportunity for hearing; and (d) a bar to the Debtor, the Post-Effective Date Debtor, and the Estate asserting any Claim or Cause of Action released by the Debtor Release against the Released Parties.

(b)     Appropriate Debtor Release. The Debtor Release appropriately offers protection to parties that participated in the Debtor's restructuring process. Each of the Released Parties made significant concessions and contributions to the Chapter 11 Case. The Debtor Release for the Debtor's current and former directors and officers is appropriate because the Debtor's directors and officers share an identity of interest with the Debtor, supported the Plan and this Chapter 11 Case, actively participated in meetings and negotiations leading up to and during this Chapter 11 Case, and have provided other valuable consideration to the Debtor to facilitate the Debtor's reorganization.

(c)     Tailored Debtor Release. The scope of the Debtor Release is appropriately tailored under the facts and circumstances of the Chapter 11 Case. The Debtor Release is

appropriate in light of, among other things, the value provided by the Released Parties to the Debtor's Estate and the critical nature of the Debtor Release to the Plan.

(d) <u>Third-Party Release</u>. Section 9(D) of the Plan describes certain consensual releases granted by the Releasing Parties (the "<u>Consenting Creditor Release</u>"). The Consenting Creditor Release is an integral part of the Plan. Like the Debtor Release, the Consenting Creditor Release facilitated Insurance Settlement Agreement and the funding for the Liquidation Trust, the Plan, and the Chapter 11 process generally. The Consenting Creditor Release was a critical and integral component of Insurance Settlement Agreement and the Plan. The Consenting Creditor Release appropriately offers certain protections to Federated Insurance who constructively participated in the Debtor's restructuring process by, among other things, reaching the Insurance Settlement Agreement.

(e) <u>Consensual Third-Party Release</u>. The Consenting Creditor Release is consensual as to all parties-in-interest, including all Releasing Parties, and such parties-in-interest were provided notice of the Chapter 11 proceedings, the Plan, the deadline to object to Confirmation of the Plan, and received the Confirmation Hearing Notice, and were properly informed that the holders of Claims against or Interests in the Debtor that checked the "Opt-in" box on the applicable Ballot and returned it in advance of the Voting Deadline would be deemed to have expressly, unconditionally, generally, individually, and collectively consented to the release and discharge of all Claims and Causes of Action against the Debtor and the Released Parties. Additionally, the release provisions of the Plan were conspicuous, emphasized with boldface type in the Plan, the Disclosure Statement, the Ballots, and the Notices.

(f) <u>Tailored Consenting Creditor Release</u>. The Consenting Creditor Release provides finality for the Debtor and the Released Parties regarding the parties' respective

obligations under the Plan. The Confirmation Hearing Notices sent to holders of Claims and Equity Interests and the Ballots sent to all holders of Claims entitled to vote on the Plan, in each case, unambiguously stated that the Plan contains the Consenting Creditor Release. Such release is a necessary and integral element of the Plan and is fair, equitable, reasonable, and in the best interests of the Debtor, the Estate, and all holders of Claims and Equity Interests. Also, the Consenting Creditor Release is: (a) specific in language and scope; (b) given in exchange for the good and valuable consideration provided by the Released Parties; (c) a good-faith settlement and compromise of the claims released by the Consenting Creditor Release; (d) in the best interests of the Debtor and all holders of Claims and Equity Interests; (e) fair, equitable, and reasonable; (f) given and made after due notice and opportunity for hearing; and (g) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Consenting Creditor Release.

N. <u>Best Interests of Creditors (11 U.S.C. § 1129(a)(7))</u>. In accordance with Bankruptcy Code § 1129(a)(7), the Bankruptcy Court finds and concludes that, with respect to impaired classes of Claims or Equity Interests (i.e., Classes 3, 4, 5, 6, and 7), each holder of a Claim or Equity Interests has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Equity Interests, property of a value, as of the Effective Date, that is not less than the amount that such holder would so receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code on such date.

O. <u>Acceptance or Rejection of Certain Classes (11 U.S.C. § 1129(a)(8))</u>. In accordance with Bankruptcy Code § 1129(a)(8), the Bankruptcy Court finds and concludes that: (1) Classes 1, 2, and 3 are not impaired under the Plan and are deemed to have accepted the Plan under Bankruptcy Code § 1126(f); and, (2) Classes 4, 5, 6, and 7 are impaired classes that have

accepted the Plan in accordance with Bankruptcy Code § 1126(c). With respect to any class that has rejected the Plan, the Bankruptcy Court finds and concludes that, pursuant to Bankruptcy Code § 1129(b)(1) and (2), the Plan does not discriminate unfairly, and is fair and equitable because no holder junior to those in this class will receive or retain any property under the Plan. Likewise, no holder in Class 7 has filed an objection to Confirmation of the Plan. Accordingly, the Plan can be confirmed under Bankruptcy Code § 1129(b).

P. <u>Treatment of Administrative and Priority Claims (11 U.S.C. § 1129(a)(9))</u>. The Bankruptcy Court finds and concludes that the Plan's treatment of Claims of a kind specified in Bankruptcy Code §§ 507(a)(1) through (8) satisfies the requirements set forth in Bankruptcy Code § 1129(a)(9).

Q. <u>Acceptance by Impaired Class (11 U.S.C. § 1129(a)(10))</u>. In accordance with Bankruptcy Code § 1129(a)(10), the Bankruptcy Court finds and concludes that at least one class of Claims that is impaired under the Plan has voted to accept the Plan, without including acceptances of the Plan by any insider.

R. <u>Feasibility (11 U.S.C. § 1129(a)(11))</u>. The Plan contemplates the further liquidation of the Debtor's remaining assets in accordance with the Plan. The Plan provides sufficient measures for the funding of distributions to be made under the Plan. Thus, the Plan satisfies the requirements of Bankruptcy Code § 1129(a)(11).

S. <u>Payment of Fees (11 U.S.C. § 1129(a)(12))</u>. In accordance with Bankruptcy Code § 1129(a)(12), the Bankruptcy Court finds and concludes that, to the extent that fees payable to the U.S. Trustee under 28 U.S.C. § 1930 have not been paid, the Plan provides for the payment of all such fees on the Effective Date and as they become due after the Effective Date.

T.      Other Provisions of 11 U.S.C. § 1129(a).   The Bankruptcy Court finds and concludes that the provisions of 11 U.S.C. §§ 1129(a)(13), (a)(14), (a)(15), and (a)(16) are not applicable to the Debtor.

U.      No Unfair Discrimination; Fair and Equitable (11 U.S.C. § 1129(b)).   The Debtor proved at the Confirmation Hearing that the Plan does not discriminate unfairly and is fair and equitable with respect to any class that has rejected the Plan, as required by Bankruptcy Code § 1129(b)(1).   Upon Confirmation and the occurrence of the Effective Date, the Plan shall be binding upon the members of all classes.

V.      Only One Plan (11 U.S.C. § 1129(c)).   The Plan (including its prior filed versions) is the only plan filed in this Chapter 11 Case, and accordingly, the Bankruptcy Court finds and concludes that Bankruptcy Code § 1129(c) is inapplicable to this Chapter 11 Case.

W.      Principal Purpose of the Plan (11 U.S.C. § 1129(d)).   The Bankruptcy Court finds and concludes that the principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933, and to the extent that an objection has been filed by a governmental unit asserting avoidance, all such objections have been overruled or otherwise resolved.[3]

X.      The Plan Should be Confirmed.   Based on the foregoing, the Debtor, as the proponent of the Plan, has met its burden of proving the elements of Bankruptcy Code §§ 1122, 1123, and 1129.

## Modifications to the Plan

Y.      Plan Modifications.   The Bankruptcy Court finds and concludes that all modifications made to the Plan after solicitation of votes on the Plan had commenced, as reflected

---

[3] The Bankruptcy Court finds and concludes that Bankruptcy Code § 1129(e) does not apply to the Debtor or the Plan.

in this Confirmation Order, as set forth on the record at the Confirmation Hearing, or as reflected in the Plan, satisfy the requirements of Bankruptcy Code § 1127(a) and Bankruptcy Rule 3019, are not material or do not adversely affect the treatment and rights of the holders of any Claims or Equity Interests under the Plan who have not otherwise accepted such modifications. Accordingly, the Debtor has satisfied Bankruptcy Code § 1127(c) and Bankruptcy Rule 3019 with respect to the Plan, as modified, and holders of Claims or Equity Interests that have accepted or rejected the Plan (or are deemed to have accepted or rejected the Plan) are deemed to have accepted or rejected, as the case may be, the Plan as modified on the date of this Confirmation Order, pursuant to Bankruptcy Code § 1127(d) and Bankruptcy Rule 3019.

**Transactions Pursuant to the Plan**

Z.     <u>Plan Settlements; Releases and Discharges</u>.  The Bankruptcy Court finds and concludes that, pursuant to Bankruptcy Rule 9019 and Section 1123 of the Bankruptcy Code, and in consideration of the distributions and other benefits provided under the Plan, including the Insurance Agreement Settlement, the provisions of the Plan constitute a good-faith compromise and settlement of all impaired Claims against the Debtor.  Such compromises and settlements represent sound exercises of the Debtor's business judgment, are in the best interests of the Debtor's Estate and holders of impaired Claims and Equity Interests, comply with § 1123 of the Bankruptcy Code, are made in exchange for fair, reasonable and reciprocal consideration, are within the range of possible litigation outcomes, are fair, equitable, reasonable, and are integral elements of the resolution of this Chapter 11 Case in accordance with the Plan.

AA.     <u>Release and Exculpation</u>.  The failure to effect the release and exculpation provisions of the Plan would impair the Debtor's ability to confirm and implement the Plan. Accordingly, the compromises and settlements embodied in the release and exculpation provisions

described in Article IX of the Plan are approved and incorporated by reference into and as an integral part of this Confirmation Order.

BB.     Plan Provisions Valid and Binding.  The Bankruptcy Court finds and concludes that, upon entry of this Confirmation Order, each term and provision of the Plan and the Plan Supplement are valid, binding, and enforceable pursuant to its terms and as amended by this Confirmation Order.

CC.     Plan Documents Valid and Binding.  The Bankruptcy Court finds and concludes that the Plan, the Plan Supplement, and all other documents reasonably necessary to implement the Plan (including but not limited to the Liquidating Trust Agreement) shall be, upon execution on or after the Effective Date, valid, binding, and enforceable agreements.  The Bankruptcy Court further finds and concludes that the Plan and Plan Supplement, and all other documents reasonably necessary to implement the Plan are in the best interests of the Debtor and the Estate and have been negotiated in good faith and at arm's length.

DD.     Executory Contracts and Unexpired Leases.  The Bankruptcy Court finds and concludes that the Debtor has exercised reasonable business judgment in determining whether to assume or reject executory contracts and unexpired leases pursuant to Article V of the Plan.

EE.     Compliance with Bankruptcy Rule 3017.  In accordance with Bankruptcy Rule 3017, the Debtor has given notice of the Confirmation Hearing as required by the applicable provisions of Bankruptcy Rule 3017 and the Disclosure Statement Order. The materials transmitted and notice given by the Debtor to holders of Claims entitled to vote on the Plan and the materials transmitted by the Debtor to holders of Equity Interests and other parties-in-interest satisfy the applicable provisions of Bankruptcy Rules 3017(d)-(f) and the Disclosure Statement Order.  Therefore, the requirements of Bankruptcy Rule 3017 have been satisfied.

FF.     Compliance with Bankruptcy Rule 3018.   The solicitation of votes to accept or reject the Plan in accordance with the Disclosure Statement Order satisfies Bankruptcy Rule 3018.

**Miscellaneous Provisions**

GG.     Best Interests.   The Bankruptcy Court finds that Confirmation of the Plan is in the best interests of the Debtor, the Estate, holders of Claims and Equity Interests, and all other parties-in-interest.

HH.     Oral Findings of Fact and Conclusions of Law.   All findings of fact and conclusions of law announced by this Bankruptcy Court on the record in connection with the Confirmation of the Plan or otherwise at the Confirmation Hearing are incorporated herein by reference.

II.     Findings of Fact and Conclusions of Law.   All findings of fact that are conclusions of law shall be deemed to be conclusions of law, and all conclusions of law which are findings of fact shall be deemed to be findings of fact.

**ORDER**

Based on the foregoing Findings of Fact and Conclusions of Law, it is hereby **ORDERED AS FOLLOWS**:

1.     Confirmation.   The Plan, as attached to this Confirmation Order and with the modifications and clarifications embodied in this Confirmation Order, is hereby **CONFIRMED**, and all objections, statements, and reservations of rights with respect to the Plan are overruled on the merits to the extent not withdrawn before the Confirmation Hearing.   The terms of this Confirmation Order are controlling if any inconsistency exists between the Plan and this Confirmation Order.   The failure specifically to include or to refer to any particular article, section, or provision of the Plan, the Plan Supplement, or any related document in this Confirmation Order shall not diminish or impair the effectiveness of such article, section, or provision, it being the

intent of the Bankruptcy Court that the Plan and any related documents be confirmed in their entirety.

2.     Approval of Insurance Settlement. Pursuant to Bankruptcy Rule 9019, as part of the Plan, and upon the Effective Date, the *Insurer Settlement, Release and Policy Exhaustion Agreement Settlement Agreement* between the Debtor and Federated Mutual Insurance Company and Federated Reserve Insurance Company (collectively referred to as "Federated") attached hereto as **Exhibit A** and defined herein as Insurance Settlement is hereby approved. The terms of the Insurance Settlement are deemed fair, equitable, and in the best interests of the Debtor's estates, creditors, and stakeholders.

3.     Implementation of the Insurance Settlement. On the Effective Date, or as otherwise provided in the Insurance Settlement, Federated will pay $9,916,456.02, the remaining limits of the Policies, to the Liquidation Trustee. The money will be used to fund the Liquidation Trust created under the Plan. In addition, Federated will pay to the Liquidation Trustee the additional sum of $270,000 to be used to fund the administrative costs of the Liquidation Trust.

4.     Binding Effect. The Plan, its provisions and this Confirmation Order shall be, and hereby are, binding upon the Debtor and any creditor or equity security holder of the Debtor, whether or not the Claim or Equity Interests of such creditor or equity security holder is impaired under the Plan and whether or not such creditor or equity security holder has accepted the Plan.

5.     Liquidation Trust Agreement. The Liquidation Trust Agreement, substantially in the form filed in the Plan Supplement, is hereby approved in all aspects. On the Effective Date, the Debtor shall irrevocably assign, transfer, convey and deliver (and shall be deemed to have irrevocably assigned, transferred, conveyed and delivered) all of its rights, title, and interest in and to all of the designated Trust Assets to the Liquidation Trust, free and clear of all Claims, Liens,

charges, and other encumbrances, and in accordance with section 1141 of the Bankruptcy Code, and the Trust Assets shall automatically vest in the Trust without further action by any Person. The Trust Assets shall be held by the Liquidation Trustee as of the Effective Date in trust for the benefit of the Beneficiaries (as defined in the Trust Agreement).

6.      The appointment of Eric Taube as Liquidation Trustee pursuant to the terms of the Liquidation Trust Agreement is hereby approved. The Liquidation Trustee is hereby (a) authorized to execute and perform under the Liquidation Trust Agreement, to appear and be heard before the Bankruptcy Court on all matters related to the Chapter 11 Case (as a representative of the Liquidation Trust and/or under section 1123(b) of the Bankruptcy Code, as applicable); and (b) vested with all of the powers and authority set forth in the Plan and Liquidation Trust Agreement.

7.      Plan Classification Controlling.  The terms of the Plan shall solely govern the classification of Claims and Equity Interests for purposes of distributions to be made thereunder. The classifications set forth on the Ballots tendered to or returned by the holders of Claims or Equity Interests in connection with voting on the Plan:  (a) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims and Equity Interests under the Plan for distribution purposes; (c) may not be relied upon by any holder of a Claim or Equity Interests as representing the actual classification of such Claim or Equity Interests under the Plan for distribution purposes; and (d) shall not be binding on the Debtor or the Post-Effective Date Debtor except for voting purposes.

8.      Allowance of Claims.  As provided in Article VIII of the Plan, no Claim is or shall be deemed Allowed until the later of the Claims Objection Deadline or the expiration of some other applicable period of limitation fixed by the Bankruptcy Code, Bankruptcy Rules, or

Bankruptcy Court, unless otherwise ordered by a Final Order of the Bankruptcy Court or Allowed pursuant to the Plan. The deemed allowance of a Claim for voting purposes shall in no way limit the rights of any party to challenge any Claim in accordance with the Bankruptcy Code, Bankruptcy Rules, Plan, and this Confirmation Order.

9. Preservation of Causes of Action Not Expressly Released. Pursuant to Article IV(F) and (I) of the Plan, except as otherwise provided in the Plan or in any contract, instrument, release, indenture or other agreement entered into in connection with the Plan, in accordance with Bankruptcy Code § 1123(b)(3), any Claims, Causes of Action, defenses and counterclaims that the Debtor may hold against any Person shall be assigned to the Liquidation Trust, and the Liquidation Trustee, shall retain and may exclusively enforce any and all such Claims or Causes of Action.

10. Releases, Exculpation, Injunction.

(a) The terms and conditions of the releases set forth in Article IX of the Plan are approved as reasonable, fair and equitable, and in the best interests of the Debtor and the Estate, and are authorized in their entirety.

(b) The Consenting Creditor Releases in Article IX(D) of the Plan are consensual. The Consenting Creditor Releases in Article IX(D) of the Plan are appropriate, afforded affected parties constitutional due process and a meaningful opportunity to opt-in to such releases, as provided by the Disclosure Statement Order. For the avoidance of doubt, to the extent any party-in-interest did not affirmatively opt-in to the Consenting Creditor, such release shall not be binding upon such party-in-interest.

(c) The terms and conditions of the exculpation set forth in Article IX(E) of the Plan are approved as reasonable, fair and equitable, and in the best interests of the Debtor and the Estate, and are authorized in their entirety.

(d)    The terms and conditions of the Channeling Injunction set forth in Article IX(I) of the Plan are approved as reasonable, fair and equitable, and in the best interests of the Debtor and the Estate, and are authorized in their entirety.

11.    <u>Executory Contracts and Unexpired Leases</u>. Pursuant to Article VII of the Plan, on the Effective Date, all Executory Contracts or Unexpired Leases will be deemed rejected by the applicable Post-Effective Date Debtor in accordance with the provisions and requirements of §§ 365 and 1123 of the Bankruptcy Code. Entry of this Confirmation Order shall constitute a Court order approving the rejection of such Executory Contracts or Unexpired Leases.

12.    <u>Disputed, Contingent and Unliquidated Claims</u>.  Any Contested Claims shall be resolved in accordance with the procedures set forth in Article VIII or, in the instance of a Pool Claim, Article VI(H) of the Plan.  No later than the applicable claim objection deadline, the Liquidation Trustee may file objections with the Bankruptcy Court and serve such objections on the creditors holding the Claims to which such objections are made.  Nothing contained herein, however, shall limit the right of the Liquidation Trustee to object to claims, if any, filed or amended after the Claims Objection Deadline or in accordance with Article VI (H).  The applicable objection deadline may be extended by the Bankruptcy Court upon motion by the Liquidation Trustee.  For the avoidance of doubt, no Claim is or shall be deemed Allowed until the later of the Claims Objection Deadline or the expiration of some other applicable period of limitation fixed by the Bankruptcy Code, Bankruptcy Rules, or Bankruptcy Court, unless otherwise ordered by a Final Order of the Bankruptcy Court or Allowed pursuant to the Plan.

13.    <u>U.S. Trustee Reporting and Payment of Fees</u>.  All fees payable pursuant to 28 U.S.C. § 1930(a) shall be paid in full in Cash by the Debtor (before the Effective Date) or the Post-Effective Date Debtor (on and after the Effective Date) for each quarter (including any

fraction therein) until the Chapter 11 Case is converted, dismissed, or a final decree is issued, whichever occurs first.

14. <u>Vesting of Assets in Liquidation Trust</u>. Except as otherwise provided herein, on the Effective Date, all property of the Debtor's Estate, including any property held or acquired by the Debtor under the Plan or otherwise, will vest in the Liquidation Trust free and clear of all Liens, Claims, Equity Interests and encumbrances, in accordance with § 1141 of the Bankruptcy Code. All parties are authorized, empowered and required to execute and accept all filings and other documents related to such conversion.

15. <u>Plan Implementation</u>. All implementing actions required or contemplated by the Plan are hereby authorized and approved in all respects. The Debtor shall be authorized to take any action as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, whether or not specifically referred to in the Plan or any exhibits or supplement thereto, without further order of the Court except as specifically required. From and after the Effective Date, the Liquidation Trust may manage the affairs and property of the Debtor in accordance with the Plan and the Plan Supplement, without supervision of or approval by the Bankruptcy Court, free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than restrictions expressly imposed by the Plan or this Confirmation Order. The Debtor and each of its officers are authorized, empowered and directed to execute all documents necessary or appropriate to effectuate the terms of the Plan to the fullest extent allowed under the Bankruptcy Code, including Bankruptcy Code § 1142(b).

16. <u>Term of Injunctions or Stay</u>. Except as otherwise provided in the Plan or this Confirmation Order, all injunctions and the stay pursuant to Bankruptcy Code § 362 shall remain

in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or this Confirmation Order shall remain in full force and effect in accordance with their terms.

17.     Permanent Injunction. From and after Confirmation, all holders of Claims against the Debtor are permanently restrained and enjoined (a) from commencing or continuing in any manner, any judicial, administrative, or other proceeding of any kind with respect to any such Claim against the Debtor, the Post-Effective Date Debtor, the Liquidation Trust, or their assets; (b) from enforcing, attaching, collecting, or recovering by any manner or means, any judgment, award, decree, or order against the Debtor, the Post-Effective Date Debtor, the Liquidation Trust or their assets with respect to any Claim; (c) from creating, perfecting, or enforcing any encumbrance or any kind against the Debtor, the Post-Effective Date Debtor, the Liquidation Trust, or their assets with respect to any Claim; and (d) from asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due to the Debtor or the Post-Effective Date Debtor except as may be allowed under the Bankruptcy Code or in connection with the Plan.

18.     Order Effective and Enforceable Immediately.  Notwithstanding Bankruptcy Rules 6004(h), 6006(d) and 7062, this Confirmation Order shall be effective and enforceable immediately upon entry.

19.     Notice of the Effective Date. On or before seven (7) days after occurrence of the Effective Date, the Post-Effective Date Debtor shall file with the Bankruptcy Court and mail or cause to be mailed to all holders of Claims and Equity Interests a notice that informs such holders of: (i) entry of this Confirmation Order; (ii) the occurrence of the Effective Date; (iii) the deadline to file Administrative Claims and Professional Fee Claims and the bar date for filing Claims arising from the rejection of the Debtor's executory contracts and unexpired leases; and (iv) such other

matters as the Debtor deems to be appropriate; provided, however, that failure to file such notice shall not affect the effectiveness of the Plan or the rights and substantive obligations of any Person hereunder.  The notice described herein is adequate under the particular circumstances and no other or further notice is necessary.

20.     Order Nonseverable.  The provisions of this Confirmation Order are nonseverable and mutually dependent.

21.     Captions and Headings.  Captions and headings herein are inserted for convenience of reference only and are not intended to be a part of, or to affect the interpretation of, this Confirmation Order.

22.     Governing Law.  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of Texas, without giving effect to the principles of conflicts of law thereof, shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of each such agreement shall control), as well as corporate governance matters with respect to the Debtor.

23.     Failure of Consummation.  If this Confirmation Order is vacated or Effective Date fails to occur, the Plan shall be null and void in all respects and nothing contained in the Plan, the Disclosure Statement, or Plan Supplement shall:  (a) constitute a waiver or release of any Claims, Interests, or Causes of Action by any Entity; (b) prejudice in any manner the rights of the Debtor, any holders of Claims or Equity Interests, or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking by the Debtor, any holders of Claims or Equity Interests, or any other Entity.

24. _Substantial Consummation_. The Plan shall be deemed to be substantially consummated, on the Effective Date, under § 1101(2) of the Bankruptcy Code, including for purposes of § 1127(b) of the Bankruptcy Code.

25. _Final Order_. This Confirmation Order is a final, appealable order, and the period within which an appeal must be filed shall commence upon the entry hereof.

26. _Bankruptcy Court Retained Jurisdiction_. The Court retains jurisdiction to interpret and enforce this Confirmation Order, the Plan, the Plan Supplement and any related documents.

27. _Modifications to Plan_. The following modifications to the Plan clarify points raised by creditors, or parties-in-interest, whether formally or informally. Those modifications are as follows:

(a) Notwithstanding anything to the contrary in the Plan, the Confirmation Order, or any other order of the Bankruptcy Court, any Class 4 Pool Claim may be amended within the time period provided for in Art. VI, Sections H and I, and the Non-Pool Claim Amendment Deadline of Art. VIII, Section H shall not apply to any Class 4 Pool Claim.

(b) Notwithstanding anything to the contrary in the Plan in Article VI(H)(3), the Confirmation Order, or any other order of the Bankruptcy Court, any Class 4 Pool Claim may be assigned from a Pool Owner to a Pool Builder and vice versa.

(c) Notwithstanding anything else, the claim of Premier Franchise Management, as agent for Premier Pools and Spas- South Austin, shall be treated as a Pool Builder for purposes of the Plan and its administration.

###

_Order submitted by_:

_/s/ Todd Headden_
Todd Headden
Texas State Bar No. 24096285
**HAYWARD PLLC**
7600 Burnet Road, Suite 530
Austin, TX 78757
theadden@haywardfirm.com

**_Counsel for Hot Crete, LLC_**

# EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **HOT CRETE, LLC,** | § | **CASE NO. 24-10303-smr** |
| | § | |
| *Debtor.* | § | **CHAPTER 11** |
| | § | |
| | § | |

## INSURER SETTLEMENT, RELEASE AND POLICY EXHAUSTION AGREEMENT

### Parties

The parties to this Insurer Settlement, Release and Policy Exhaustion Agreement ("Agreement") are Hot Crete, LLC ("Hot Crete") on the one hand, and Federated Mutual Insurance Company and Federated Reserve Insurance Company (collectively referred to herein as "Federated") on the other hand. Hot Crete and Federated may sometimes be referred to herein collectively as the "Parties" or singularly as a "Party."

### Recitals

WHEREAS, Federated Mutual Insurance Company issued primary liability insurance policy no. 9850923 (eff. 3/11/20 to 3/11/21, and renewed to 3/11/22) to Hot Crete and Federated Reserve Insurance Company issued primary liability insurance policy no. 9850923 (eff. 3/11/22 to 3/11/23, renewed to 3/11/24 and cancelled effective 10/2/23) and umbrella liability insurance policy no. 1827267 (eff. 3/11/22 to 3/11/23, renewed to 3/11/24 and cancelled effective 10/2/23) to Hot Crete (all of said primary and umbrella policies shall be referred to collectively herein as the "Policies"); and

WHEREAS, the combined aggregate limits of all the Policies as written total $10 million, of which $9,916,456.02 of said combined limits remains on the Policies; and

WHEREAS, numerous claims have been asserted and/or may be asserted against Hot Crete by various homeowners, pool builders, contractors, and/or subcontractors based primarily on Alkali-Silica Reaction ("ASR") in swimming pools installed by Hot Crete ("Pool Claims"), which have resulted in extensive property damage not only to portions of various swimming pools installed by Hot Crete, but have also resulted in damage to property outside the scope of Hot Crete's work or product, and have necessitated the tear out and/or repair and replacement of additional property outside the scope of Hot Crete's work or product; and

WHEREAS, Hot Crete filed for relief under Chapter 11 of Title 11 of the United States Bankruptcy Code (the "Bankruptcy Case"). Hot Crete continues to operate its business as a "Debtor in Possession" pursuant to Section 1107 and 1108 of the Bankruptcy Code.

WHEREAS, Hot Crete intends to pursue a liquidating plan with a trustee to administer a claims resolution process for the Pool Claims; and

WHEREAS, the number and value of the Pool Claims and the amount of damage resulting from ASR in swimming pools installed by Hot Crete vastly exceed the remaining available combined limits of the Policies and as such Hot Crete claims that the policy proceeds constitute the property of Hot Crete's bankruptcy estate; and

WHEREAS, both Federated and Hot Crete wish to avoid claimants racing to the courthouse to liquidate the Pool Claims, and wish to avoid coverage litigation between themselves and with claimants, as well as the time and expense of litigation of the Pool Claims; and

WHEREAS, Hot Crete and Federated wish to settle their disputes between themselves and to establish a process for addressing the Pool Claims that allows for neutral administration and

resolution of said claims, while providing finality and certainty with regard to Federated's exposure, and to have such claims resolution process be part of Hot Crete's bankruptcy plan approved by the Court, and to also secure injunctive relief that ensures the finality and comprehensiveness of the process to address the Pool Claims.

**Terms**

THE PARTIES HEREBY AGREE AS FOLLOWS:

1.      Upon the Effective Date and the appointment of the liquidation trustee (the "Liquidation Trustee") as the fiduciary for the Liquidation Trust, following the entry of a final non-appealable order confirming Hot Crete's bankruptcy plan and approval of this Agreement, Federated will pay $9,916,456.02, the remaining limits of the Policies, to the Liquidation Trustee, designated to be Eric J. Taube, in his capacity as the Liquidation Trustee in the Bankruptcy Case. Said money will be used to fund a liquidation trust created under Hot Crete's bankruptcy plan to address all present and future Pool Claims, which will be resolved in connection with the captioned proceeding.

2.      In consideration of the payment described in the preceding paragraph and in paragraph 4, Hot Crete does hereby forever RELEASE, ACQUIT, and DISCHARGE Federated Mutual Insurance Company and Federated Reserve Insurance Company, and each of them, and each and all of their parent and affiliated companies, successors, assigns, insurers, reinsurers, officers, directors, shareholders, members, employees, adjusters, agents, servants, and attorneys, and all such persons' and entities' parent and affiliated companies, successors, assigns, insurers, reinsurers, officers, directors, shareholders, members, employees, adjusters, agents, servants, and attorneys, and each of them, whether named herein or not, all of whom are sometimes referred to

herein as the "Released Parties," of and from any and all past, present, and future rights, claims, demands, actions, causes of action, losses, damages, lawsuits, awards, judgments and expenses, whether based on tort, contract, statute or equity, known or unknown, foreseen or unforeseen, that arise out of or that are directly or indirectly related to any Pool Claims, as well as of and from all other rights, claims, demands, actions, causes of action, losses, damages, lawsuits, awards, judgments and expenses, whether based on tort, contract, statute or equity, known or unknown, foreseen or unforeseen, that are or that could be covered under all or any of the Policies.

3.      As to the matters expressed in the immediately preceding paragraph, and without limiting the scope of that paragraph in any manner, Hot Crete releases the Released Parties, and each of them, of and from any and all claims for insurance coverage under the Policies in connection with the Pool Claims or any other claims, all duties of defense or indemnity under the Policies in connection with any past, present or future claims and lawsuits of any kind, and all future attempts to collect on any claims, awards or judgments that are or that could be covered under all or any of the Policies. This release also includes, but is not limited to, all claims for unfair trade practices or tort damages, punitive or exemplary damages, enhanced or treble damages, quasi-contractual damages, damage under or for breach of the Texas Deceptive Trade Practices – Consumer Protection Act, damages under or for breach of any provision of Chapter 541 of the Texas Insurance Code, damages under or for breach of any provision of Chapter 542 of the Texas Insurance Code, damages under or for breach of any order, rule or regulation by the Commissioner of Insurance of the State of Texas or the State Board of Insurance of the State of Texas or the Texas Department of Insurance, violations of the Texas Administrative Code, damages under or for breach of any similar law, statute, order, rule, or regulation, whether under any other state's law or under federal law, breach of contract, breach of any common law duty of good faith and

Insurer Settlement, Release and Policy Exhaustion Agreement

4

fair dealing, failure to settle, failure to investigate, failure to defend, failure to appeal, negligence, misrepresentation, failure to disclose information, waiver, estoppel, personal and advertising injury, bodily injury, property damage, economic loss, fraud, consequential damages, or any other damages under state or federal statutes or common law, interest, costs, attorney fees, or any declaratory, equitable, or other special relief, and including all claims based on Federated's handling of the Pool Claims or any other claims.

4.      In addition to the payment referenced in paragraph 1 above, Federated hereby agrees to pay to the Liquidation Trustee the total sum of $270,000. This payment will be used to fund the administrative costs of the Liquidation Trust, including trustee and attorney fees, in connection with the claims resolution process for the Pool Claims.

5.      This Agreement is conditioned upon: (1) the Bankruptcy Court issuing an order confirming Hot Crete's bankruptcy plan which provides in part for a claims resolution process for the Pool Claims administered through a Liquidation Trust, the administrative costs of which to be paid with the funds paid by Federated as provided in paragraph 4 above; (2) the Court issuing an order approving this Agreement as part of Hot Crete's confirmed bankruptcy plan, and (3) the Court approving as part of the confirmed bankruptcy plan injunctive relief with regard to any present or future Pool Claims and providing for the resolution of all such claims solely through the claims resolution process established in Hot Crete's confirmed bankruptcy plan. If any of these conditions are not met this Agreement shall be null and void and the Parties shall have no obligations hereunder.

6.      Federated and Hot Crete agree that the Policies are completely exhausted upon the making of the payment referenced in paragraph 1 above and that any duty on the part of Federated to pay anything else pursuant to the Policies, whether by way of defense, indemnity, administrative

Insurer Settlement, Release and Policy Exhaustion Agreement

costs or otherwise, is extinguished upon said payments.

7.      It is the express intent of the Parties that Federated will never have to pay any additional funds to or on behalf of Hot Crete, or to third parties or claimants, whether under the Policies or otherwise, in connection with any present or future Pool Claims against Hot Crete, or in connection with any other present or future claims against Hot Crete, including claims that are not resolved through the Liquidation Trust, whether because claimants have opted out of said process or for any other reason.

8.      Hot Crete and its counsel believe and acknowledge that the consideration paid for this Agreement is a reasonable amount in light of all of the surrounding circumstances, including the time and expense associated with litigation of the Pool Claims and with litigation of coverage issues among Hot Crete, Federated, and present and future claimants.

9.      Hot Crete understands and agrees that this settlement is a compromise of a doubtful and disputed claim, and that the payment made is not to be construed as an admission of liability on the part of either Hot Crete or Federated (or any other Released Party), by whom liability is expressly denied, but on the contrary this Agreement is being entered into merely to avoid litigation and to buy peace.

10.     Hot Crete further understands and agrees that there may be a risk that, after the signing of this Release, Hot Crete may incur or suffer loss, damage or injuries that are in some way caused by or related to matters that are the subject of this Agreement, but which are unknown or unanticipated at the time of the signing of this Agreement. Further, there is a risk that the loss or damage presently known may be or become greater than Hot Crete expects or anticipates. Hot Crete assumes these risks, including the risk of mutual mistake, and the releases given herein shall apply to all such unknown or unanticipated results, as well as those

Insurer Settlement, Release and Policy Exhaustion Agreement

known and anticipated.

11. Hot Crete agrees that it is signing this Agreement of its own free will and accord and that, except as expressly stated herein, Hot Crete has not relied upon any statements, promises, warranties, or representations made by any person representing or claiming to represent Federated or any other Released Party, and that Hot Crete is doing so upon its own knowledge of the facts and upon its own business judgment of the future development, progress, and result of injuries known and unknown, and after having consulted with legal counsel of its own choosing about this Agreement, Hot Crete realizing all the time that this Agreement is a final and complete settlement of a disputed matter.

12. Each signatory to this Agreement warrants that he, she, or it is duly authorized to execute this Agreement and to bind the persons or entities on behalf of which he, she or it signs to act with respect to the rights and claims that are being altered or otherwise affected by this Agreement.

13. It is understood and agreed that the consideration expressed herein is contractual and not a mere recital.

14. This Agreement shall be construed and enforced in accordance with the laws of the State of Texas and shall be binding upon Hot Crete and the Released Parties' respective heirs, personal representatives, successors, and assigns.

15. Any term defined in this Release stated in a singular form shall include the plural form, and any defined term stated in a plural form shall include the singular form.

16. This Release is a compromise and settlement of disputed claims. It is the product of arms-length negotiations. The language of this Release shall not be presumptively construed against either Hot Crete or any of the Released Parties.

Insurer Settlement, Release and Policy Exhaustion Agreement

7

17.     This Release constitutes the entire agreement by Hot Crete with any of the Released Parties with respect to the subject matter hereof and is entered into by Hot Crete of its own free will and accord.  Any prior oral or written statements concerning the subject matter hereof are merged herein for all purposes and shall be of no further force and effect; provided, however, that this Release may be extended or modified by subsequent written agreement executed and signed by the Party(ies) intending to be bound thereby, or by their respective legal counsel as authorized by the represented party. Hot Crete agrees to execute and deliver such other and further documents as may be necessary to effectuate the intent and purposes of this Release.

18.     Nothing in this Release shall affect the rights of Federated as to reinsurance or retrocessional recoveries arising as a result of this settlement, nor shall it affect the rights that Federated may have to seek those reinsurance or retrocessional recoveries in any action or proceeding of its choosing.

IN WITNESS WHEREOF, Hot Crete, Federated Mutual Insurance Company and Federated Reserve Insurance Company have signed this Agreement on the dates indicated following the below signatures, which last date shall be the date of this Agreement, Hot Crete having consulted with an attorney of its own choosing about the meaning and effect of this Release.

Signature Page follows:

Hot Crete, LLC

By: Hot Crete, Llc

Its: E. ASTRO

Date: 2/13/2026

Federated Mutual Insurance Company

By: _____

Its: _____

Date: _____

Federated Reserve Insurance Company

By: _____

Its: _____

Date: _____

Insurer Settlement, Release and Policy Exhaustion Agreement

9

Hot Crete, LLC

By: _____

Its: _____

Date: _____

Federated Mutual Insurance Company

By: _____

Its: _Vice President - General Manager_

Date: _2/16/26_

Federated Reserve Insurance Company

By: _____

Its: _Vice President - General Manager_

Date: _2/16/26_

# EXHIBIT B

**THE HOT CRETE LLC LIQUIDATION TRUST AGREEMENT**

This trust agreement (the "Trust Agreement") is made and entered into by and between Hot Crete, LLC (the "Debtor") and Eric J. Taube (the "Trustee") pursuant to the Chapter 11 Plan of Liquidation (together with any and all amendments, exhibits, and schedules, the "Plan") filed in the Debtor's chapter 11 bankruptcy case, case no. 24-10303-smr (the "Bankruptcy Case"), before the United States Bankruptcy Court for the Western District of Texas, Austin Division (the "Bankruptcy Court"). Unless otherwise stated in this Trust Agreement, capitalized terms used in this Trust Agreement shall have the meanings as ascribed to them in the Plan, Confirmation Order, and Bankruptcy Code.

## RECITALS

A.    On the Petition Date, the debtor filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code. The Debtor continues to operate its business as a debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

B.    It is anticipated that in 2026, the Bankruptcy Court will enter an order confirming the Plan (the "Confirmation Order").

C.    The Plan anticipates the existence of the Liquidation Trust and the transfer and assignment to the Liquidation Trust of the Liquidation Trust Assets.

D.    Pursuant to the Plan, the Liquidation Trust is to use the Liquidation Trust Assets to pay, if and only to the extent not otherwise paid under the Plan, the Administrative Claims, Priority Tax Claims, and Professional Fee Claims, Class 1, Class 2, Class 3, Class 4, and Class 5 Claims and carry out the purposes of the Plan, including payment of the expenses of the Liquidation Trust, including compensation to the Trustee and his professionals. .

E.    The Liquidation Trust is established for the benefit of the Beneficiaries of the Liquidation Trust, as defined in Section 1.6 of this Trust Agreement, and is intended to qualify as a "Designated" or "Qualified Settlement Fund" within the meaning of Section 468B of the Internal Revenue Code and the Treasury Regulations promulgated under the Internal Revenue Code and codified at 26 C.F.R. §§ 1.468B-1 to -5.

NOW, THEREFORE, pursuant to the Plan and the Confirmation Order, in consideration of the premises and provisions in the Plan, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, it is agreed as follows:

## DECLARATION OF TRUST

Subject to the occurrence of the Effective Date, the Debtor hereby absolutely assigns to the Liquidation Trust, and to its successors in trust and its successors and assigns, all rights, title, and interest of the Debtor in and to the Liquidation Trust Assets;

TO HAVE AND TO HOLD unto the Liquidation Trust and its successors in trust and its successors and assigns forever;

IN TRUST NEVERTHELESS upon the terms and subject to the conditions set forth in this Trust Agreement and for the benefit of the Beneficiaries, as defined below, as and to the extent provided in the Plan, and for the performance of, and compliance with, the terms of this Trust Agreement, the Plan, and the Confirmation Order;

PROVIDED, HOWEVER, that upon termination of the Trust in accordance with Article IV of this Trust Agreement, this Trust Agreement shall cease, terminate, and be of no further force and effect; and

IT IS HEREBY FURTHER COVENANTED AND DECLARED that the Trust Assets are to be held and applied by the Trustee upon the further covenants and terms and subject to the conditions set forth in this Trust Agreement.

I.

AGREEMENT OF TRUST

A.      Creation and Name. The Debtor hereby creates the Liquidation Trust known as "The Hot Crete, LLC, Liquidation Trust," which is the Liquidation Trust provided for in the Plan. In the event of any inconsistency between the Plan and this Trust Agreement, the terms of the Plan shall govern. All capitalized terms used herein, except to the extent otherwise defined herein, shall have the meaning given to them in the Plan.

B.      Purpose. The purpose of the Trust is to assume responsibility for preserving, managing, liquidating, and distributing Liquidation Trust Assets to Holders of the Administrative Claims, Priority Tax Claims, and Professional Fee Claims, Class 1, Class 2, Class 3, Class 4, and Class 5 Claims, in accordance with the Trust Agreement and the requirements of the Plan and Confirmation Order, to receive assignment of the Liquidation Trust Assets from the Debtor and to pursue recoveries against any parties other than the Released Parties under the Plan.

C.      Transfer of Liquidation Trust Assets. Pursuant to the Plan and upon the occurrence of the Effective Date, the Debtor  irrevocably transfers, absolutely grants, assigns, conveys, sets over and delivers to the Liquidation Trust at all times as set forth in the Plan, all of the Debtor's rights, titles, and interests in and to the Liquidation Trust Assets to be held in trust and for the uses and purposes stated in this Trust Agreement and in the Plan. The Trustee is hereby authorized to file with the proper governmental authorities any and all documents the Trustee determines in the Trustee's discretion are necessary or helpful to establish the Liquidation Trust and administer its assets as provided herein and the Plan.

D.      Irrevocability. The Liquidation Trust shall be irrevocable. The Debtor shall not alter, amend, revoke, or terminate the Liquidation Trust. The Debtor shall have no power or authority to direct the Trustee or require the Trustee to return any of the Liquidation Trust Assets to the Debtor.

E.      Beneficiaries. The beneficiaries of the Liquidation Trust are Holders of Allowed Administrative Claims, Priority Tax Claims, and Professional Fee Claims, Class 1, Class 2, Class 3, Class 4, and Class 5 Claims under the Plan whose Claims are (i) Allowed by operation of the Bankruptcy Code,  Final Order of the Bankruptcy Court or written agreement between the Holder

of such Claim and The Trustee, and (ii) not otherwise paid directly by the Reorganized Debtor under the Plan (the "Beneficiaries").

       F.      Acceptance of Assets and Assumption of Liabilities.

       1.      In furtherance of the purposes of the Liquidation Trust, the Trustee hereby accepts the role of trustee of the Liquidation Trust and accepts the grant, assignment, transfer, conveyance, and delivery of the Liquidation Trust Assets to the Liquidation Trust, subject to the terms and conditions set forth in this Trust Agreement, the Plan, and the Confirmation Order.

       2.      In furtherance of the purposes of the Liquidation Trust, the Trustee, on behalf of the Liquidation Trust, hereby expressly assumes responsibility for preserving, managing, liquidating, and distributing Liquidation Trust Assets to the Beneficiaries in accordance with the terms of this Trust Agreement, the Plan, and the Confirmation Order. The Claims of the Beneficiaries will be evaluated by the Trustee in accordance with the Trust Distribution Plan, attached as Exhibit 2 to this Trust Agreement.

       3.      The Trustee shall have all of the rights, powers, and duties set forth in this Trust Agreement, the Trust Distribution Plan, and the Plan, and available under applicable law, for accomplishing the purposes of the Liquidation Trust. The Trustee's powers are exercisable solely in a fiduciary capacity consistent with, and in furtherance of, the applicable provisions of the Plan, the purpose of the Liquidation Trust, and applicable law. The Trustee shall have the authority to bind the Liquidation Trust within the limitations set forth in this Trust Agreement, but shall be acting in the capacity as Trustee, and not individually, for all purposes contained in this Trust Agreement.

       4.      In furtherance of the purposes of the Liquidation Trust, the Trustee assumes responsibility for (a) making or directing payments to the Beneficiaries; (b) receiving, collecting, liquidating, maintaining, and distributing the Liquidation Trust Assets; and (c) fulfilling all other obligations of the Liquidation Trust under this Trust Agreement, the Plan, and the Confirmation Order. The Liquidation Trust will be administered consistent with the purpose of the Liquidation Trust and with no objective to continue or to engage in the conduct of a trade or business, except to the extent reasonably necessary to preserve the value of the Liquidation Trust Assets or as otherwise provided in the Plan or Confirmation Order.

       5.      All Liquidation Trust expenses and all liabilities of the Liquidation Trust with respect to the Beneficiaries shall be payable solely by the Trustee out of the Liquidation Trust Assets.

## II.

## CORPUS OF THE TRUST

       A.      Trust Composition. The Liquidation Trust Assets shall include all property transferred to the Liquidation Trust pursuant to the Plan, Confirmation Order, and any future orders

of the Bankruptcy Court, including without limitation all rights of every kind, nature, and description transferred to the Trust pursuant the Plan.

B.  Transfer to Trust. As of the Effective Date, pursuant to the Plan and Confirmation Order, title to and all rights and interests in the Liquidation Trust Assets shall be transferred to the Liquidation Trust free and clear of all Liens, claims, encumbrances or Interests of any kind in the Liquidation Trust Assets of any other Person (including all Liens, claims, encumbrances or Interests of creditors of, or holders of claims against or Interests in the Debtor) in accordance with Sections 1123, 1141, and 1146(a) of the Bankruptcy Code, except as otherwise provided for in the Plan. The Trustee, on behalf of the Liquidation Trust, shall receive the Liquidation Trust Assets when they are transferred to the Liquidation Trust.

C.  Trustee's Right to and Title and Interest in Trust Assets. Upon the transfer of the Liquidation Trust Assets, the Trust succeeds to all of the Debtor's and the Estate's right to and title and Interest in the Liquidation Trust Assets, and the Debtor and the Estate shall have no further right to, or title or Interest in or with respect to, the Liquidation Trust Assets or this Liquidation Trust, except as provided in this Trust Agreement, the Plan, or the Confirmation Order.

D.  No Tax on Transfers to Trust. Pursuant to Section 1146(a) of the Bankruptcy Code, the delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with this Liquidation Trust, including any deeds, bills of sale, or assignments executed in connection with any transfer to the Liquidation Trust or receipt or disposition/sale of assets by the Liquidation Trust contemplated by the Plan, shall not be subject to any stamp tax, real estate transfer tax, excise tax, sales tax, use tax, or similar tax.

E.  Spendthrift Provision. To the fullest extent permitted by law, neither the principal nor income of the Liquidation Trust, in whole or in part, shall be subject to (a) any legal or equitable claims of creditors of any Beneficiary or others, (b) legal process, or (c) voluntary or involuntary transfer, assignment, anticipation, pledge, or other form of alienation or encumbrance except as may be ordered by the Bankruptcy Court.

F.  Trust Corpus. Subject to the terms of the Plan, the entirety of the Liquidation Trust's corpus shall be available to pay the Beneficiaries and authorized expenses. The Trust Corpus shall be allocated, administered, and distributed as provided in the Trust Distribution Plan, the Plan, and the Confirmation Order.

III.

POWERS AND DUTIES OF TRUSTEE

A.  Trustee's Bond. The Trustee shall not be required to post any bond, surety, or other security for the performance of the Trustee's duties unless otherwise ordered by the Bankruptcy Court and, in the event the Trustee is so otherwise ordered, all reasonable costs and expenses of procuring any bond or surety shall be borne by the Liquidation Trust and paid for from the Liquidation Trust Assets.

B.  Powers and Duties. The Trustee shall have, in addition to any other powers and duties conferred on the Trustee by applicable trust law (to the extent not inconsistent with

applicable bankruptcy law, the Plan, and the Confirmation Order), the Plan, and the other provisions in this Trust Agreement, the following powers and duties:

1.      To act as custodian of, and to receive, control, manage, liquidate, monetize, and dispose of, all Liquidation Trust Assets for the benefit of the Beneficiaries as the Trustee deems appropriate in his reasonable discretion to accomplish the purpose of the Trust, in accordance with the terms contained in this Trust Agreement, the Plan, and the Confirmation Order.

2.      To abandon any property which the Trustee determines in the Trustee's reasonable discretion to be of *de minimis* value or of more burden than value to the Liquidation Trust.

3.      To protect and enforce the rights in and to the Liquidation Trust Assets by any method deemed appropriate by the Trustee, including without limitation by judicial and administrative proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium, or similar law and general principles of equity.

4.      To enter into contracts in the course of administering the Liquidation Trust Assets for liquidation and in conjunction with their disposition under this Trust Agreement and the Plan.

5.      To open and maintain bank and investment accounts on behalf of the Liquidation Trust, deposit funds in the bank accounts, and draw checks on the bank accounts, as appropriate under this Trust Agreement, the Plan, and the Confirmation Order.

6.      To obtain all reasonably necessary insurance coverage, if any, and in the Trustee's discretion with respect to any property that is, or may in the future become, a Liquidation Trust Asset.

7.      To incur on behalf of the Liquidation Trust, and pay from the assets of the Liquidation Trust, all fees, costs, retainers and expenses of administering the Liquidation Trust as provided in this Trust Agreement and the Plan. These fees, costs, and expenses include: (a) the fees of bankruptcy claims and/or distribution agents, (b) the fees and costs of professionals employed by the Trustee (the "Professionals"), including without limitation claims reviewers, investment advisors, accountants, agents, managers, attorneys-at-law, actuaries, or auditors, (c) the premiums charged by insurers, including without limitation professional liability insurers, (d) reimbursement of any statutory fees and court costs incurred by the Debtor (i) in the event the Trustee opposes the closure of the Bankruptcy Case, from the date of the filing of any such opposition through the closure of the Bankruptcy Case or (ii) should the Trustee reopen the Bankruptcy Case in the future; and (e) compensation payable to the Trustee.

8.      In accordance with the Trust Distribution Plan, to make distributions, in accordance with the Trust Distribution Plan and Plan to Beneficiaries.

9.      In the Trustee's discretion, as a party in interest, to seek enforcement of any provision of the Plan pertaining to the Liquidation Trust.

10. To retain any attorney-at-law, consultant, expert, accountant, investment advisor, bankruptcy management company or such other agents and advisors as are necessary and appropriate in the Trustee's reasonable discretion to effectuate the purpose of, and maintain and administer, the Liquidation Trust and shall be entitled to rely on advice given by such advisors within his, her, or its areas of competence. In no event, however, shall the Trustee incur fees from any professional, except the Trustee's primary legal counsel and accountants, in excess of $100,000.00 without prior approval of the Bankruptcy Court.

11. To make, sign, execute, acknowledge, and deliver any documents that may be necessary or appropriate to effectuate the purpose of the Plan or the Liquidation Trust or to maintain and administer the Liquidation Trust.

12. To seek the examination of any Person under, and subject to, the provisions of the Bankruptcy Rules, including without limitation Bankruptcy Rule 2004.

13. To amend, modify, or alter the Trust Agreement by filing a motion with the Bankruptcy Court, with notice to the Beneficiaries, the Debtor, and any or all other parties in interest. For the avoidance of doubt, the amendments, modifications, or alterations may not be inconsistent with the terms of the Plan, the terms of the Confirmation Order, or the purpose of the Liquidation Trust, as identified in Section 1.2 of this Trust Agreement.

14. Upon any event terminating the Liquidation Trust, to defer distribution of Liquidation Trust Assets for a reasonable time needed to wind up the affairs of the Liquidation Trust, including time needed to provide for payment of debts and expenses, although the Beneficiaries' rights to distributions shall vest immediately.

15. To establish the accounts, funds, and reserves, as required by the Plan, for ease of administration. Nothing in this provision shall restrict the Trustee's authority to pool the accounts, funds, or reserves for investment purposes or require separate bank accounts for the accounts, funds, or reserves.

16. To be responsible for only the Liquidation Trust Assets delivered to the Liquidation Trust and have no duty to make, nor incur any liability for failing to make, any search for unknown property or liabilities.

17. The Liquidation Trust will assume all duties, obligations, and indemnification responsibilities specified in the Plan to the extent of the Liquidation Trust Assets.

18. To protect and enforce the rights in and to the Liquidation Trust Assets by any method the Trustee deems appropriate, in its reasonable discretion including, without limitation, by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium or similar law and general principles of equity, including prosecuting, compromising, settling and collecting on any litigation Trust Assets.

19. To terminate the Liquidation Trust upon liquidation and disbursement of the Liquidation Trust Assets.

C.      Limitations on the Trustee. Notwithstanding anything in this Trust Agreement to the contrary, the Trustee shall not do or undertake any of the following:

1.      Guaranty any debt other than as provided for in this Trust Agreement or as required by the Plan;

2.      Loan Trust Assets;

3.      Make any transfer or distribution of Liquidation Trust Assets other than those authorized in this Trust Agreement, the Plan, or the Confirmation Order;

4.      Engage in any trade or business on behalf of the Liquidation Trust; or

5.      Engage in any investments or activities inconsistent with the treatment of the Liquidation Trust as a "Designated" or "Qualified Settlement Trust."

IV.

TERMINATION OF THE TRUST

A.      Pre-Confirmation Termination. The Trustee shall terminate the Trust if (a) the Effective Date does not occur within one year from the date the Trust Agreement is executed by the Debtor and the Trustee or (b) the Bankruptcy Case is dismissed or converted to a case under Chapter 7 of the Bankruptcy Code prior to confirmation of the Plan (the "Pre-Confirmation Termination"). Upon the Pre-Confirmation Termination of the Liquidation Trust, the Trust Agreement shall be null and void and of no force and effect, with the Trustee and the Debtor both discharged from any and all duties and obligations provided for in this Trust Agreement.

B.      Post-Confirmation Termination. The Trustee shall terminate the Liquidation Trust after (a) the Trustee's liquidation, administration, and distribution of the Liquidation Trust Assets in accordance with this Trust Agreement and the Plan and (b) the Trustee's full performance of all other duties and functions set forth in this Trust Agreement and the Plan (the "Post-Confirmation Termination"). The Liquidation Trust shall terminate no later than the fifth anniversary of the Effective Date unless extended by the Trustee, in the Trustee's reasonable discretion, after giving the Beneficiaries at least 30 days prior written notice.

C.      Post-Confirmation Termination Procedures. After the Post-Confirmation Termination of the Liquidation Trust and solely for the purpose of liquidating and winding up its affairs, the Trustee shall continue to act as Trustee until the Trustee's duties in this Trust Agreement and Plan have been fully performed. The Trustee shall retain the books, records, documents, and files that shall have been delivered to, or created by, the Trustee until distribution of all the Liquidation Trust Assets. For purposes of this provision, the Liquidation Trust Assets will be deemed distributed when the total amount remaining in the Liquidation Trust is less than $20,000.00. At the Trustee's discretion, all of the books, records, documents, and files may be destroyed at any time following the later of: (a) the first anniversary of the final distribution of the Liquidation Trust Assets or (b) the date until which the Trustee is required by applicable law to retain the books, records, documents, and files.

D.      Post-Confirmation Termination Distribution. Upon Post-Confirmation Termination of the Liquidation Trust, provided that all fees and expenses of the Liquidation Trust have been paid or provided for in full, the Trustee will make a final distribution to the remaining Beneficiaries of the Liquidation Trust. All unclaimed or undeliverable funds, if any, shall be distributed to a charity supporting homelessness in Austin, Texas, as selected by the Trustee in the Trustee's reasonable discretion, after 90 days from their attempted delivery or notice of availability of distributions

E.      Discharge, Exculpation, and Exoneration. Upon Post-Confirmation Termination of the Liquidation Trust and accomplishment of all activities described in this Article, the Trustee and the Trustee's Professionals shall be fully discharged and exculpated from liability, and the Trustee's bond (if any), shall be exonerated except for acts or omissions resulting from the willful misconduct, knowing and material violation of law, or fraud of the Trustee or his designated agents or representatives. The Trustee may, at the expense of the Liquidation Trust, seek an order of the Bankruptcy Court confirming the discharges, exculpations, and exoneration referenced in this Section.

V.

IMMUNITY, LIABILITY, AND INDEMNIFICATION OF TRUSTEE

A.      Limitations on Liability. Neither the Trustee nor any of the Trustee's duly designated agents, representatives, or Professionals shall be liable for any act or omission taken or omitted by the Trustee in good faith, other than acts or omissions resulting from such individuals own willful misconduct, knowing and material violation of law, or fraud of the Trustee or the Trustee's designated agents, representatives, or Professionals. The Trustee may, in connection with the performance of the Trustee's functions, and in the Trustee's sole and absolute discretion, consult with the Trustee's Professionals and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with the advice or opinions rendered by the Trustee's Professionals. Notwithstanding this authority, the Trustee shall be under no obligation to consult with the Trustee's Professionals, and the Trustee's good faith determination not to consult with the Trustee's Professionals shall not result in the imposition of liability on the Trustee, unless the determination is based on the Trustee's willful misconduct, knowing and material violation of law, or fraud.

B.      No Recourse Against the Trustee Personally. No recourse shall be had, directly or indirectly, against the Trustee personally, or against any employee, contractor, or Professional retained by the Trustee in accordance with the terms of this Trust Agreement, Plan, or Confirmation Order, by legal or equitable proceedings or by virtue of any statute or otherwise, nor upon any promise, contract, instrument, undertaking, obligation, covenant, or trust agreement executed by the Trustee in implementation of this Trust Agreement or the Plan or by reason of the creation of any indebtedness by the Trustee under the Plan for any purposes authorized by this Trust Agreement or the Plan, it being expressly understood and agreed that any promise, contract, instrument, undertaking, obligation, covenant, or trust agreement entered into by the Trustee, whether in writing or otherwise, shall be enforceable only against, and be satisfied only out of, the Liquidation Trust Assets and shall be evidence only of a right of payment out of the Liquidation Trust Assets. The Trustee may be held liable only for the Trustee's willful misconduct, knowing

and material violation of law, or fraud; and if liability for these grounds is established, recourse may be had directly against the Trustee. The Liquidation Trust will not be covered by a bond.

C. Indemnification. The Trust, using Liquidation Trust Assets, shall defend, indemnify, and hold harmless the Trustee, the Trustee's, professionals, agents, representatives, and employees to the fullest extent that a corporation or trust organized under the laws of the state of Texas may be entitled to defend, indemnify, and hold harmless its trustees, officers, directors, agents, representatives, and employees against any and all costs (including attorneys' fees and costs), judgments, awards, amounts paid in settlement, liabilities, expenses, claims, damages, or losses incurred by them in the performance of their duties under this Trust Agreement; provided that neither the Trustee nor the Trustee's officers, directors, agents, representatives, or employees shall be defended, indemnified, or held harmless in any way for any liability, expense, claim, damage, or loss for which they are ultimately held liable under Article V of this Trust Agreement. The Trustee and the Trustee's professionals, agents, representatives and employees shall be entitled to advancement of costs for such purposes.

## VI.

## COMPENSATION AND EXPENSE REIMBURSEMENT OF TRUSTEE AND ITS AGENTS

A. Trustee Compensation. The Trustee shall be entitled to receive compensation from the Liquidation Trust Assets as detailed in Exhibit 1. The Trustee may periodically (but not more often than monthly) make interim payments from the Trust Assets to satisfy compensation due the Trustee and the Trustee's expenses.

B. Compensation of the Trustee's Professionals. Any Professional retained by the Trustee pursuant to this Trust Agreement or the Plan will be entitled to reasonable compensation for services rendered paid by the Trustee from the Trust Assets. The Trustee may periodically (but not more often than monthly) make payments to the Trustee's Professionals for services provided to the Trustee.

C. Reimbursement of Expenses. Any and all reasonably necessary costs and expenses incurred by the Trustee and any Professional retained by the Trustee, in performing their respective duties under this Trust Agreement and the Plan, will be paid directly by or reimbursed by the Trustee from the Trust Assets.

## VII.

## SUCCESSOR TRUSTEE

A. Vacancy Caused by the Trustee's Resignation or Removal.

1. In Trustee's sole and absolute discretion, the Trustee may resign at any time upon 30-days written notice to be filed with the Bankruptcy Court. The outgoing trustee (the "Outgoing Trustee") shall, within 30 days after the Outgoing Trustee's resignation takes effect, deliver to the successor trustee (the "Successor Trustee") in the manner that they are held and as may be practical, all of the Liquidation Trust Assets which were in the

possession of the Outgoing Trustee along with a complete list of Liquidation Trust Assets and a complete accounting of all transactions engaged by the Outgoing Trustee while serving as the Trustee. The Trustee shall remain fully entitled to the protections provided in this Trust Agreement for actions taken during the time prior to his resignation.

2. Any Beneficiary may petition the Bankruptcy Court to remove the Trustee for cause, which shall be limited to willful misconduct, knowing and material violation of law, or fraud. The decision to remove the Trustee shall be in the sole discretion of the Bankruptcy Court after notice and a hearing. The Trustee is authorized to use the Trust Assets to obtain counsel and defend any such removal action.

3. In the event of removal, the Trustee shall, within thirty (30) days after such removal takes effect, or at some earlier date as the Bankruptcy Court may specify, deliver to the Successor Trustee all of the Liquidation Trust Assets which were in the possession of the Trustee in the manner that they are held and as may be practical along with a complete list of Liquidation Trust Assets and a complete accounting of all transactions engaged in by the Trustee while serving as such.

B. Outgoing Trustee Obligations. In the event of the resignation or the removal of the Trustee, the Outgoing Trustee, shall:

1. Execute and deliver by the effective date of the resignation or removal the documents, instruments, records, and other writings as may be reasonably requested by the Successor Trustee to effect the resignation or removal of the Outgoing Trustee and the conveyance of the Liquidation Trust Assets to the Successor Trustee.

2. Deliver to the Successor Trustee all documents, instruments, records, and other writings relating to the Liquidation Trust Assets as may be in the possession or under the control of the Outgoing Trustee.

3. Otherwise reasonably assist and cooperate in effecting the assumption of the Outgoing Trustee's obligations and functions by the Successor Trustee.

4. All costs of the Outgoing Trustee in performing the activities described in paragraphs 1-3 hereof shall be at the cost of the Liquidating Trust.

The Outgoing Trustee hereby irrevocably appoints the Successor Trustee (and any interim trustee) as the Outgoing Trustee's attorney-in-fact and agent solely with respect to the Liquidating Trust and the Liquidation Trust Assets with full power of substitution for the Outgoing Trustee and in the Outgoing Trustee's name, place, and stead to do any and all acts that the Outgoing Trustee is obligated to perform under this Trust Agreement. The appointment of the Successor Trustee as the Outgoing Trustee's attorney-in-fact and agent shall not be affected by the subsequent disability or incompetence of the Outgoing Trustee. The Bankruptcy Court may also enter any order necessary to effect the termination of the appointment of the Outgoing Trustee and the subsequent appointment of the Successor Trustee.

C. Appointment of Successor Trustee. Any vacancy in the office of the Trustee shall be filled by the nomination of the Office of the United States Trustee, subject to the approval of

the Bankruptcy Court, after notice to Beneficiaries and a hearing. If the Office of the United States Trustee declines to participate in the nomination of the Successor Trustee within 10 days after the Outgoing Trustee resigns, is removed, or otherwise becomes unable to serve, the Bankruptcy Court shall designate a successor, after notice to Beneficiaries.

D.      Preservation of Record of Changes in Trustees. A copy of each instrument of resignation, removal, appointment, and acceptance of appointment shall be attached to an executed counterpart of this Trust Agreement.

## VIII.

## TRUSTEE REPORTING AND DISCHARGE

A.      Annual Accountings. The Trustee shall prepare or have the Trustee's professionals prepare, at least annually, a written accounting of the administration of the Liquidation Trust listing the current assets with fair market values as determined by the Trustee and detailing all transactions that occurred during the period covered by the accounting. Each accounting may, but need not, be filed with the Bankruptcy Court for as long as the Bankruptcy Case remains open and pending before the Bankruptcy Court. Copies of the accounting shall be available to the Beneficiaries upon request. However, the Trustee shall redact any and all confidential and personal identifying information from any and all accountings or reports filed with the Bankruptcy Court or provided to any Beneficiary.

B.      Approval of Accountings and Discharge of the Trustee. At any time when the Bankruptcy Case is open, the Trustee may file with the Bankruptcy Court a motion for approval of any accounting described of this Trust Agreement. Upon the entry of an order of the Bankruptcy Court approving the accounting, the Trustee shall be discharged from all liability to the Liquidation Trust, any Beneficiary, or any Person who has or may have a claim against the Trustee or Trust for acts or omissions in the Trustee's capacity as Trustee with respect to all assets listed and transactions detailed in the accounting.

## IX.

## SECTION 468B SETTLEMENT FUND

A.      Qualification. In accordance with the Plan, the Trustee shall take all reasonable steps to ensure that the Trust will qualify as, and remain, a "Designated" or "Qualified" settlement fund within the meaning of Section 468B of the Internal Revenue Code of 1986 (as amended, the "Tax Code") and the regulations promulgated pursuant the Tax Code (the "Treasury Regulations"). The Debtor shall be the "Transferor" within the meaning of Treasury Regulation Section 1.468B-1(d)(1). The Trustee shall be classified as the "Administrator" within the meaning of Treasury Regulation Section 1.468B-2(k)(3).

B.      All Events Test and Economic Performance Requirement. It is intended that the transfer of the Liquidation Trust Assets to the Liquidation Trust shall satisfy the "All Events Test" and the "Economic Performance" requirement of Section 461(h)(1) of the Tax Code and Treasury Regulation Section 1.461-1(a)(2).

C.      Employer Identification Number. Upon establishment of the Trust, the Trustee shall apply for an employer identification number for the Trust in accordance with Treasury Regulation Section 1.468B-2(k)(4).

D.      Filing Requirements. The Trustee shall cause to be filed, on behalf of the Liquidation Trust, all required federal, state, and local tax returns in accordance with the provisions of Treasury Regulation Section 1.468B-2(k)(1). The Debtor shall file an election statement satisfying the requirements of Treasury Regulation Section 1.468B-1(k)(2)(ii) so that the Liquidation Trust is treated as a grantor trust under Section 671 of the Tax Code and the Treasury Regulations. The election statement shall be included with the Liquidation Trust's first timely filed trust income tax return. The Debtor shall supply to the Trustee and to the Internal Revenue Service the statement described in Treasury Regulation Section 1.468B-3(e)(2) no later than February 15 of the year following each calendar year in which the Debtor makes a transfer to the Liquidation Trust.

E.      Broad Powers of the Trustee. The Trustee is empowered to take all actions, including any action consistent with those expressly set forth in Article IX of this Trust Agreement, as the Trustee deems necessary to reasonably ensure that the Trust is treated as a "Designated" or "Qualified" settlement fund under Section 468B of the Tax Code and the Treasury Regulations. Further, the Trustee may, unilaterally and without order from the Bankruptcy Court, amend, either in whole or in part, any administrative provision of this Trust Agreement which causes unanticipated tax consequences or liabilities inconsistent with Article IX of this Trust Agreement, provided such amendment does not create any tax liabilities or administrative responsibilities for the Debtor.

X.

BENEFICIARIES

A.      Register. The Trustee shall keep a register (the "Register") in which the Trustee shall at all times maintain the (i) names and addresses of the Beneficiaries and the actual distributions made to the Beneficiaries pursuant to the Plan. The Trustee may rely upon the Register for the purposes of delivering distributions or notices. In preparing and maintaining this Register, the Trustee may rely on the name and address of each holder of a Claim as set forth in a proof of claim filed by the holder or schedules prepared by the Debtor, or proper notice of a name or address change, which has been delivered by the Beneficiary to the Trustee.

B.      Rights of Beneficiaries. The rights of a Beneficiary under this Trust Agreement shall, upon the death or incapacity of an individual Beneficiary, pass to the legal representative of the Beneficiary. A Beneficiary shall have no title to, right to, possession of, management of, or control of the Liquidation Trust Assets, or any right to call for a partition or division of the Liquidation Trust Assets. Title to all the Liquidation Trust Assets shall be vested in the Trustee, and the sole interest of the Beneficiaries shall be the rights and benefits given to the Beneficiaries under this Trust Agreement, the Plan, the Confirmation Order, and the Trust Distribution Plan.

C.      Tax Identification Numbers. The Trustee shall require any Beneficiary to furnish to the Trustee the Beneficiary's employer or taxpayer identification number or social security

number as assigned by the IRS, and other records or documents necessary to satisfy the Trustee's tax reporting obligations (including, but not limited to, certificates of non-foreign status). The Trustee shall condition the payment of any distribution to any Beneficiary upon receipt of the number and records or documents.

## XI.

## MISCELLANEOUS PROVISIONS

A.      Plan Incorporation. The terms of the Plan and the Confirmation Order are incorporated into and made part of this Trust Agreement as if fully set forth herein. In the event of any conflict between the terms of this Trust Agreement and the Plan, the terms of the Plan shall govern.

B.      Notices. All notices or deliveries required or permitted under this Trust Agreement shall be given as directed in the Plan, to the following:

If to the Trust or Trustee:

Eric J. Taube, Trustee
PO Box 160038
3201 Bee Caves Rd, Sute 120
Austin, Texas 78716
With copy to counsel as retained and email address to be designated in future notice

If to a Beneficiary:

Counsel who signed the Beneficiary's Proof of Claim or, for an unrepresented Beneficiary, to the address for the Beneficiary provided in the Proof of Claim or the Bankruptcy Schedules if no Proof of Claim was filed.

If to the Debtor:

Hot Crete, LLC
2010 Brushy Creek Rd., Unit A
Cedar Park, Texas 78613

with a copy to:

Hayward PLLC
Attention: Todd Headden
7600 Burnet Rd, Suite 530
Austin, Texas 78757
E-mail: theadden@haywardfirm.com

C.      Waiver. No failure or delay of any party to exercise any right or remedy pursuant to this Trust Agreement shall affect the right or remedy or constitute a waiver by the party of any

right or remedy pursuant to this Trust Agreement. Resort to one form of remedy shall not constitute a waiver of alternative remedies.

D. Reimbursement of Costs. If the Trustee, the Liquidation Trust or the Debtor, as the case may be, is the prevailing party in a dispute regarding the provisions of this Trust Agreement or the enforcement of a provision of this Trust Agreement, the Trustee, the Liquidation Trust or the Debtor, as the case may be, shall be entitled to collect from the non-prevailing party any and all costs, reasonable and documented out-of-pocket expenses and fees, including attorneys' fees, incurred in connection with the dispute or enforcement action.

E. Entirety of Trust Agreement. Except with respect to the Plan and Confirmation Order, this Trust Agreement supersedes any and all prior oral discussions and agreements with respect to the subject matter in this Trust Agreement. This Trust Agreement, together with the Exhibits to the Trust Agreement, the Plan, and the Confirmation Order, contain the sole and entire Trust Agreement and understanding with respect to the matters addressed in the Trust Agreement. It is acknowledged that there are no communications or oral understandings that are contrary to, or that in any way restrict, this Trust Agreement and that all prior agreements or understandings within the scope of the subject matter of this Trust Agreement are, upon execution and delivery of this Trust Agreement, superseded, null, and void.

F. Counterparts. This Trust Agreement may be executed in two or more counterparts, with the same effect as if all signatures on the counterparts appeared on one document, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Facsimile signatures or signatures delivered by any other electronic means shall have the same force and effect as original signatures.

G. Captions. The captions of Articles and Sections are included for convenience only and are to be disregarded in interpreting this Trust Agreement.

H. Representation. It is acknowledged that each of the parties to this Trust Agreement has reviewed this Trust Agreement and has consulted counsel, or knowingly chose not to consult counsel, before executing this Trust Agreement. Each of the parties to this Trust Agreement relied upon its own judgment and that of its counsel in executing this Trust Agreement and has not relied on, or been induced by, any representation, statement, or act by any party that is not referred to in this instrument. It is specifically acknowledged and understood that this Trust Agreement has not been submitted to, nor reviewed or approved by, the Internal Revenue Service or the taxing authorities of any state or territory of the United States of America. Each of the parties entered into this Trust Agreement voluntarily, with full knowledge of its significance, and the Trust Agreement is, in all respects, complete and final.

I. Interpretation. This Trust Agreement has been reached through negotiations between the parties to this Trust Agreement. Each of the parties to this Trust Agreement acknowledges that the party has participated in the drafting of this Trust Agreement and reviewed the terms of the Trust Agreement and, as such, no rule of construction shall apply which might result in this Trust Agreement being construed in favor or against any of the parties, including without limitation, any rule of construction to the effect that ambiguities ought to be resolved

against the drafting party. The parties to this Trust Agreement have used their own judgment in entering into this Agreement.

J.    Savings Clause. If any clause or provision of this Trust Agreement shall for any reason be held invalid or unenforceable by the Bankruptcy Court or any other court with competent jurisdiction, such invalidity or unenforceability shall not affect any other clause or provision in this Trust Agreement, but this Trust Agreement shall be construed, insofar as reasonable to effectuate the purpose of this Trust Agreement, as if the invalid or unenforceable provision had never been contained in the Trust Agreement.

K.    Applicable Law. This Trust Agreement shall be administered under, governed by, and enforced according to the laws of the State of Texas applicable to contracts and trust agreements made and to be performed in this Trust Agreement, except that all matters of federal tax law and the Trust's compliance with Section 468B of the Tax Code and any Treasury Regulations shall be governed by federal tax law and all matters of federal bankruptcy law shall be governed by the Bankruptcy Code and federal bankruptcy law.

**[SIGNATURE PAGE TO FOLLOW]**

IN WITNESS WHEREOF, the Debtor and the Trustee execute this Trust Agreement as of the 2nd of April, 2026.

**TRUSTEE:**

Eric J. Taube

By: _____

Title: _____

**HOT CRETE, LLC,**
a Texas LLC, as Debtor

By: _____

Title: _____

IN WITNESS WHEREOF, the Debtor and the Trustee execute this Trust Agreement as of the 2~~——~~nd of April, 202~~6~~5.

**TRUSTEE:**

Eric J. Taube[————]

By: _____

Title: _____

**HOT CRETE, LLC,**
a Texas LLC, as Debtor

By: _E. CASTRO_____

Title: _Member_____

## EXHIBIT 1

## TRUSTEE COMPENSATION

The Trustee shall receive compensation from the Trust for his or her services as Trustee. The Trustee shall be authorized to take a monthly payment of $15,000 as compensation for his services without further approval or order from the Bankruptcy Court.. The Trust shall also, be authorized to pay, or reimburse all reasonable and documented out-of-pocket costs and expenses incurred by the Trustee in the course of carrying out his or her duties as Trustee.

The amounts paid to the Trustee for compensation and expenses shall be disclosed in the Final Report and Accounting of the Trust, to be prepared and filed 28 days of the Final Distribution of the Trust.

**EXHIBIT 2**

**TRUST DISTRIBUTION PLAN**

Below sets forth the proposed Trust Distribution Plan for the Liquidation Trust. This Trust Distribution Plan may be amended or modified by amendment to the Trust Agreement, the Plan or the Confirmation Order, or as otherwise permitted in the Trust Agreement. All capitalized, undefined terms shall have the meanings ascribed to them in the Plan and the Trust Agreement.

**I.      Liquidation Trust Assets**

The Liquidation Trust shall receive all assets of the Debtor's Estate, including, without limitation, the following:

A.      Cash allocated to the Liquidation Trust under the Plan and the Confirmation Order including, without limitation, the portion of Cash allocated to the Liquidation Trust from the Initial Settlement Payment.

B.      All right, title and interest of the Debtor in and to all tax credits and refunds including, without limitation, all employee retention credits.

C.      All rights under insurance policies.

D.      All Estate claims and causes of action.

For informational purposes only, after payment of all Administrative Claims and Professional Fee Claims, the Debtor anticipates that the Liquidation Trust Assets will have a value of over $9.5 million.

**II.     Beneficiaries Under Liquidation Trust**

The Beneficiaries of the Liquidation Trust are defined in the Trust Agreement, and are generally described as follows:

A.      Administrative Claims (if and only to the extent that the Allowed Administrative Claims are not satisfied in full by the Administrative and Priority Claims Reserve);

B.      Professional Fee Claims (if and only to the extent that the Allowed Professional Fee Claims are not satisfied in full by the Professional Fee Escrow Account and, after exhaustion of the Professional Fee Escrow Account, the Administrative and Priority Claims Reserve);

C.      Class 1 Other Priority Claims (if and only to the extent that the Allowed Priority Claims are not satisfied in full by the Administrative and Priority Claims Reserve);

D.      Class 2 Other Secured Claims;

E.      Class 3 Convenience Claims;

F.        Class 4 General Unsecured Claims (Pool Claims);

G.        Class 5 General Unsecured Claims (Non-Pool Claims)

The Classes of Claims described herein shall only be deemed Beneficiaries (i) if included within the definition of Beneficiaries under the Trust Agreement and (ii) if and only to the extent that you are a Holder of an Allowed Claim as defined in the Plan.

### III.        Initial Settlement Procedure

A.        Initial Settlement Payment and Election.

Pending an initial review and approval by the Trustee, the Liquidation Trust Beneficiaries holding Class 3 Convenience Claims will receive payment in full of such claims within thirty (30) days of the Effective Date.

B.        Claim Allowance, Mediation, and Objections:

1.        Objection Deadline: Except as provided in Article VI.H of the Plan for Class 4 Claims, within 180 days of the Effective Date, the Trustee shall file an objection to the allowance or amount of any claim. Claims not objected to are deemed allowed.

2.        Mediation: Claims that are objected to may be selected for mediation if the Trustee believes, in his sole discretion, that mediation will be a quicker or more cost-effective process to adjudicate the claim. Mediations pursuant to this section shall be conducted by a mediator selected by the Trustee.

3.        Claim Settlement-Approvals:  The Trustee shall have the authority to agree to a stipulated allowed claim of $250,000 or less as part of a mediation settlement or claim objection without order of the Court or any other further approval.  If a mediation settlement includes a proposed allowed claim exceeding $250,000, such settlement must be approved by the Bankruptcy Court after notice and an opportunity for a hearing.

### IV.        Distribution of Liquidation Trust Assets to Beneficiaries

A.        All Beneficiaries holding Claims other than Class 3, 4, or 5 Claims shall receive distributions on the conditions and timelines set forth in the Plan and the Trust Agreement.

B.        All Beneficiaries holding Class 3 Claims shall receive distributions on the conditions and timelines set forth in Section III.A. of the Trust Distribution Plan.

C.        Upon completion of the Pool Builders' Claim Resolution Process as set forth in Article VI.H of the Plan, all Beneficiaries holding allowed Class 4 Claims shall receive distributions as follows:

1.      Upon completion of the Pool Builders' Claim Resolution Process"), the Trustee may, in his sole discretion, make an interim and periodic distribtutionsto the Beneficiaries of the Liquidation Trust who hold Allowed Class 4 Claims and are not subject to a Pool Builder Claim or the subject of an objection.

2.      After the Trustee has liquidated all Liquidation Trust Assets and completed the Claim allowance process, the Trustee shall make a final distribution to the Beneficiaries of the Liquidation Trust (the "Final Distribution"), which shall include the proceeds from liquidation of Estate claims and causes of action after deducting the costs, expenses, and attorneys' fees incurred in liquidating such claims or causes of action (the "Net Claim Proceeds").

D.      Distributions shall be in an amount as determined by the Trustee to be reasonable and appropriate in the Trustee's discretion taking into account anticipated expenses of the Liquidating Trust and a reserve for Claims that are subject to dispute and future allowance. Distributions to Beneficiaries whose Claim(s) are subject to objection that has not been fully resolved shall be reserved until any objection has been fin

## V.      Distribution of Liquidation Trust Assets to Opt-Out Beneficiaries

Any Beneficiary who has opted out of the releases of the Released Parties set forth in the Plan (each an "Opt-Out Beneficiary") will have no right to any distribution from the Liquidation Trust Assets except solely from Estate claims and causes of action. The Opt-Out Beneficiaries shall receive their pro rata share of the Net Claim Proceeds and shall receive their first and final distribution as part of the Final Distribution.